**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| LMCHH PCP LLC, *et al.*,[1] | ) | Case No. 17-10353 |
| | ) | |
| | ) | Section "B" |
| Debtors. | ) | |
| | ) | |
| | ) | Jointly Administered with |
| | ) | Case No. 17-10354 |

**MOTION OF THE DEBTORS PURSUANT TO**
**SECTIONS 105, 363, and 1146 OF THE BANKRUPTCY CODE**
**AND BANKRUPTCY RULES 2002, 6004 AND 6006 FOR THE**
**SALE OR LEASE OF THE PHYSICIAN PRACTICE ASSETS**

LMCHH PCP LLC, a Delaware limited liability company (the "**Physicians Group**") and Louisiana Medical Center and Heart Hospital, LLC a North Carolina limited liability company ("**LHH**" and together with the Physicians Group, the "**Debtors**"), hereby file this motion (the "**Motion**") for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Physician Practice Sale and Lease Order**"), pursuant to sections 363 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for the sale of certain personal property consisting of furniture, fixtures, telephone numbers, patient information, supplies, and, in certain instances, patient medical records (the "**Physician Practice Assets**"), all as set forth in greater detail in the Purchase Agreements attached as **Exhibits B, C, D, E, F, G, H, I and J** hereto (the "**Physician Practice Assets Purchase Agreements**"), free and clear of liens, with all liens, claims, interests, and encumbrances attaching to the proceeds thereof in their lawful rank and priority  In

---

[1] The last four digits of the taxpayer identification numbers for each of the Debtors follow in parenthesis: (i) LMCHH PCP LLC (8569); and (ii) Louisiana Medical Center and Heart Hospital, LLC (7298). The mailing address for both of the Debtors is 64030 Highway 434, Lacombe, LA 70445.

{N3377027.1}

addition, the Debtors seek authority to lease certain other Physician Practice Assets, all as set forth in greater detail in the Lease Agreements attached as **Exhibits K and L** hereto (the "**Physician Practice Assets Lease Agreements**"), with the lease payments serving as credits in reduction of the purchase price of the Physician Practice Assets in the applicable circumstance. In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these proceedings and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory and legal predicates for the relief sought herein are Sections 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

## THE DEBTORS' BUSINESS

3. On January 30, 2017 (the "**Petition Date**"), the Debtors commenced voluntary cases (the "**Bankruptcy Cases**") under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Debtor LHH is a nationally recognized 132-bed acute-care hospital located in the heart of St. Tammany Parish in Lacombe, Louisiana (the "**Hospital**"), specializing in treatment of cardiovascular disease and injuries affecting the spine. In addition to cardiovascular and spine care, the Debtor LHH offers a full range of inpatient and outpatient medical, surgical, and diagnostic services covering more than 35 specialties including orthopedics, vascular and general surgery, urology, gastroenterology, and neurology.

5. In recent years, admissions revenue and net outpatient revenue have fallen below projections, while salaries, wages, and benefits have risen substantially. In an attempt to increase revenue, the Debtors employed additional physicians in the Physician Group, engaged in a concerted marketing effort, and sought out supplier contracts with advantageous terms. Despite implementing these new strategic initiatives, hospital intake volume has remained flat, the growth of the physician network has not generated sufficient revenues to cover expenses, and increased revenue growth has been outpaced by expenses.

6. On February 10, 2017, Debtor LHH ceased all operations when it discharged the last remaining inpatient. The Hospital no longer has any admitted patients or otherwise provides any patient care.

7. Prior to the filing of this Motion, physicians employed by Physician Group continued to provide patient care at physician clinics, but the Physician Group ceased operations at all of its clinics on February 28, 2017.

8. Since the Petition Date, the Debtors worked to conduct an orderly wind down of their business that both preserved patient safety and continuity of care during its continued operations and complied with applicable federal, state, and local regulations (the "**Wind Down**").

9. As part of the Wind Down, the Debtors sought and obtained authority to enter into post-petition agreements with physicians to enable the physicians to transition from being Physician Group employees to being able to operate their medical practices independently (the "**Independent Contractor Professional Services Agreements**"). *See* Docket Nos. 7, 89.

11. This structure including the Independent Contractor Professional Services Agreements allows the physicians to transition, and during the transition to continue to provide

care to their existing patients as in-network providers under the Debtors' current managed care contracts. Without the Independent Contractor Professional Services Agreements, continuity of patient care could be disrupted, patients would incur higher out of pocket costs for medical care provided by out-of-network providers and the physicians could not bill payors and recover for the value of the medical services being provided to their existing patients.

12. Additional information regarding the Debtors, their business and the events leading to the commencement of the Bankruptcy Cases and the Wind Down can be found in the Declaration of Neil F. Luria, Chief Restructuring Officer (the "**CRO**"), in Support of Chapter 11 Petitions and First Day Motions (the "**Luria Declaration**"), which is incorporated herein by reference. [Docket No. 9].

## FACTS RELEVANT TO THE MOTION AND REQUESTED RELIEF

### A. Disposition of Assets

13. The Debtors commenced these Chapter 11 cases to orderly liquidate assets and pay liabilities to the fullest extent possible. To ensure that its estates maximize value for all creditors, the Debtors have been engaged in intensive efforts to identify entities that are interested in acquiring or liquidating the Debtors' significant assets. The Debtors have also been engaged in a process to transition physician practices and sell related assets that the Debtors no longer need and that can be sold to maximize value for creditors, and to assist in the transition of patients and patient care.

14. In connection therewith, physician contracts and leases where the physicians conducted their practices are in the process of being rejected and the leased premises vacated. In many instances physicians have entered into Physician Practice Assets Purchase Agreements attached as Exhibits hereto. Additionally, as part of the transition of certain groups of

physicians, Lakeview Cardiology Specialists, LLC, an affiliate of HCA, and Our Lady of the Lake Physician Group, L.L.C. have entered into agreements to lease certain Physician Practice Assets, with the lease payments to be credited against the purchase prices under the applicable Physician Practice Assets Purchase Agreement.

15. The purchase price for the assets being acquired is derived from the amount for which the physicians originally sold the assets to the Debtors, the current book values for the assets, and an assessment of current market value for the subject assets. The prices and rents were negotiated by the CRO with the acquirers and lessees at arm's length and in good faith.

16. The relevant agreements and terms are summarized in the following chart:

| Party | Sale/Lease | Assets (greater detail is in the applicable agreement) | Price | Independent Contractor Agreement |
|---|---|---|---|---|
| Dietze & Logan Spine Specialist, LLC | Sale | Furniture, telephone numbers, supplies, records including patient medical records, all equipment (excluding information technologies storing patient information) | $47,396 | No |
| Dr. Miguel A. Culasso | Sale | Furniture, telephone numbers, supplies, all equipment (excluding information technologies storing patient information) | $22,500 | Yes |
| Finger, Fong and Gosey Group Practice, LLC | Sale | Furniture, telephone numbers, supplies, paper records including patient medical records, all equipment (excluding information technologies storing patient information) | $116,000 [2] | Yes |
| Elite Physical Therapy | Sale | Physical Therapy Equipment | $13,500 | Yes |
| Our Lady of the | Sale | Furniture, telephone numbers, | $60,400 | Yes |

---

[2] Drs. Finger, Fong and Gosey will become employees of St. Tammany Parish Hospital Service District #2 dba Slidell Memorial Hospital, effective March 1, 2017. Slidell Memorial Hospital and Physician Group are entering into a separate Medical Records Transfer Agreement, which is part of the subject matter of the instant motion and is included in Exhibit D hereto.

{N3377027.1} 5

| | | | | |
|---|---|---|---|---|
| Lake Physician Group, L.L.C. | | supplies, records including patient medical records but excluding paper records,[3] all equipment (excluding information technologies storing patient information) | | |
| Our Lady of the Lake Physician Group, L.L.C. | Lease | The personal property included in the preceding sale to Our Lady of the Lake Physician Group, L.L.C. | $2500/ Month[4] | Yes |
| Dr. Walter E. Gipson | Sale | Furniture, telephone numbers, supplies, all equipment (excluding information technologies storing patient information and all medical records) | $8000 | No |
| Dr. Pranod V. Menon | Sale | Furniture, telephone numbers, supplies, all equipment (excluding information technologies storing patient information and all medical records) | $12,200 | No |
| Lakeview Cardiology Specialists, LLC | Lease | Furniture, equipment and telephone numbers for four Physician Group clinics | $37,696/ Month[5] | No |
| Dr. Christy Graves | Sale | Furniture, telephone numbers, supplies, records including patient medical records, all equipment (excluding information technologies storing patient | $1800[6] | Yes |

---

[3] Our Lady of the Lake Physician Group, L.L.C. and Physician Group are entering into a separate Medical Records Transfer Agreement which is part of the subject matter of the instant motion and is included in Exhibit F hereto.

[4] Until the Physician Practice Assets Sale Order is entered or 4/30/17, unless extended by agreement. The lease payments are to be credited against the purchase price.

[5] Lakeview Cardiology Specialists, LLC and Physician Group were unable to negotiate a purchase agreement for the 4 clinics before March 1, 2017. The parties anticipate negotiating a purchase agreement no later than March 31, 2017. The lease will remain in effect until the Physician Practice Assets Sale Order is entered or 4/30/17, unless extended by agreement. The lease payments are to be credited against the purchase price. In addition, Lakeview Cardiology Specialists, LLC and the Physician Group are entering into a separate Medical Records Transfer Agreement which is part of the subject matter of the instant motion and is included in Exhibit L hereto.

[6] Dr. Graves will become an employee of St. Tammany Parish Hospital Service District #2 d/b/a Slidell Memorial Hospital, effective March 1, 2017. Slidell Memorial Hospital and Physician Group are entering into a separate Medical Records Transfer Agreement, which is part of the subject matter of the instant motion and is included in Exhibit D hereto.

| | | information) | | |
|---|---|---|---|---|
| Drs. Cary Gray and David Kaplan | Sale | Furniture, telephone numbers, supplies, all equipment (excluding information technologies storing patient information and all medical records) | $8500 | No |

17. By this Motion, the Debtors request the entry of the Physician Practice Sale and Lease Order in the proposed form attached hereto, pursuant to Sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

18. The Physician Practice Assets include furniture, fixtures, telephone numbers, supplies, and electronic and paper patient medical records owned by the Debtors[7] that they formerly used to facilitate the Debtor Physician Group's provision of a full range of inpatient and outpatient medical, surgical, and diagnostic services.[8]

### B. The Private Sale of Debtors' Physician Practice Assets is Warranted

19. Bankruptcy Rule 6004(f)(1) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1). A large measure of discretion is available to a bankruptcy court in determining whether a private sale should be approved, and the bankruptcy court should exercise its discretion based upon the facts and circumstances of the proposed sale. *In re Wieboldt Stores, Inc.*, 92 B.R. 309 (N.D. Ill. 1988).

20. Courts routinely allow Chapter 11 estates to sell assets outside of the ordinary course of business by private sale when the debtor demonstrates that the sale is permissible pursuant to Section 363(b) of the Bankruptcy Code. *See, e.g.*, *Palermo v. Pritam Reality, Inc.* (*In*

---

[7] To the extent the Debtors sell any Physician Practice Assets containing personally identifiable information, confidential information or other proprietary information, the Debtors will not take steps to remove such information from the Physician Practice Assets before it is transferred to the purchasers. The reason for this is that this information is present in the ordinary course in the assets needed by the Physicians acquiring the Physician Practice Assets.

[8] For the avoidance of doubt, nothing herein shall apply to the Debtors' efforts to sell any interest in real estate or the physical Hospital building.

*re Pritam Realty, Inc.*), 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a chapter 11 debtor); *In re Condere Corp.*, 288 B.R. 615 (Bankr. S.D. Miss. 1998) (approving a private sale of a chapter 11 debtor's assets where the standards of §363(b) were met).

21. Under Section 363 of the Bankruptcy Code, a debtor in possession may sell property of its estate outside of the ordinary course of its business, subject to the approval of the court after notice and a hearing. *See* 11 U.S.C. § 363(b)(1). Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan. However, courts have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the debtor. *See Licensing By Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 387 (2d Cir. 1997) ("A sale of a substantial part of a Chapter 11 estate may be conducted if a good business reason exists to support it."); *ASARCO, L.L.C. v. Elliott Mgt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011); *Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Stephens Indus. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) ("bankruptcy court can authorize a sale of all a Chapter 11 debtor's assets under [Section] 363 (b)(1) when a sound business purpose dictates such action."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

22. Courts typically consider the following four factors in determining whether a

proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale, (b) whether adequate and reasonable notice of the sale was given to interested parties, (c) whether the sale will produce a fair and reasonable price for the property and (d) whether the parties have acted in good faith. *See, e.g., In re Weatherly Frozen Food Group, Inc.*, 149 B.R. 480, 483 (Bankr. N.D. Ohio 1992); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

23. Here, each of these four factors has been satisfied. First, the rapid, but orderly, sale of the Physician Practice Assets will provide a way for the Debtors to efficiently monetize the Physician Practice Assets for the benefit of its creditors. Second, as discussed this Motion, the Debtors will be providing adequate and reasonable notice to affected parties of the sale of the Physician Practice Assets and of the opportunity to object to the sale of those assets. *See, e.g., Folger Adam Security Inc. v. DeMatteis/MacGregor*, 209 F.3d 252, 265 (3d Cir. 2000) (stating that notice is sufficient if it includes "the time and place of any public sale, the terms and conditions of any private sale, states the time for filing objections and, if real estate is being sold, provides a general description of the property"); *In re WBQ Partnership*, 189 B.R. 97, 103 (Bankr. E.D. Va. 1995) ("notice is sufficient if it includes the terms and conditions of the sale, if it states the time for filing objections, and if the estate is selling real estate, it generally describes the property") (quoting *In re Karpe*, 84 B.R. 926, 929 (Bankr. M.D. Pa. 1988)). Third, the arms' length negotiation with the physicians best able to use the subject property provides for the most cost-effective means of realizing the highest possible return on the Physician Practice Assets. Fourth, the Debtors are proceeding in good faith. Courts generally conclude that parties have acted in good faith with respect to a proposed sale if the purchase price is adequate and reasonable and the terms of the sale are disclosed fully. *See, e.g., In re Abbotts Dairies of Pa.,*

*Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986).

24. The Debtors submit that private negotiated sales of the Physician Practice Assets, approved by the CRO in an exercise of his fiduciary duties and independent judgment, are reasonable and appropriate in light of the facts and circumstances of this Chapter 11 case. Moreover, private sales of this kind conducted by the CRO will maximize the value of the Physician Practice Assets and will facilitate the continuity of patient care and physician practices related thereto, for the benefit of the estate, patients, and the community. As noted above, the purchase price for the assets being acquired is derived from the amount for which the physicians originally sold the assets to the Debtors, the current book values for the assets, and an assessment of current market value for the subject assets.

25. Similarly, the limited leases of certain of the Physician Practice Assets in anticipation of a sale should also be authorized under Section 363 of the Bankruptcy Code and applicable law.

26. Accordingly, the sale of the Physician Practice Assets should be approved as a proper exercise of the Debtors' business judgment.

    **C.**    **The Proposed Sales Satisfy the Requirements of 11 U.S.C § 363(f).**

27. Section 363(f) of the Bankruptcy Code authorizes the sale of property under 11 U.S.C. § 363(b) to be free and clear of interests in such property held by an entity if:

    (a)    applicable non-bankruptcy law permits a sale of such property free and clear of such interests;

    (b)    such entity consents;

    (c)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    (d)    such interest is in bona fide dispute; or

    (e)  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). A debtor need only satisfy one of the requirements set forth in 11 U.S.C. § 363(f) to justify approval of a sale free and clear of liens and interests. *In re Riverbend Marine, L.L.C.*, No. 13-10014, 2013 WL 625320, at *3 (Bankr. E.D. La. Feb. 20, 2013) ("The Trustee may sell the Vessel free and clear of all liens, claims, interests or encumbrances, with all such liens, claims, interest or encumbrances attaching to the proceeds from the Sale, because, with respect to each creditor asserting liens, claims, interests or encumbrances, one or more of the standards set forth in Section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied."); *In re Nature Leisure Times, LLC*, No. 06-41357, 2007 WL 4554276, at *3 (Bankr. E.D. Tex. Dec. 19, 2007) ("The language of § 363(f) is in the disjunctive such that a sale free and clear of an interest can be approved if any one of the aforementioned conditions contained in § 363(f) are satisfied."); *Mich. Employment Security Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.),* 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (". . . the language of section 363(f) is disjunctive and the sale free and clear of the interest concerned can occur if any one of the conditions of section 363(f) have been met . . . .") (internal citation omitted); *see also In re Sumner Regional Health Sys., Inc.*, 2010 WL 2521081, *2 (Bankr. M.D. Tenn.) (same).

  28. The Debtors believe that the requirements of 11 U.S.C. § 363(f) have been met with respect to the proposed sales of the Physician Practice Assets because every interest in the Physician Practice Assets fits within at least one of the Section 363(f) tests, and such interests will be adequately protected by attachment to the proceeds of the sale, subject to any claims and defenses that the Debtors and/or others may possess with respect thereto. Accordingly, the Debtors respectfully request that the Court order that the proposed sales of the Physician Practice Assets be free and clear of all liens, claims, interests, and encumbrances and that as part of the

Physician Practice Assets Sale Order approving the sale, that the Court reserve exclusive jurisdiction to enforce its order on this and all other provisions thereof.

### D. Sale of the Debtors' Physician Practice Assets Satisfies the Good-Faith Requirement of Section 363(m) of the Bankruptcy Code

29. Section 363(m) provides, in pertinent part

> The reversal or modification on appeal of an authorization under [Section 363(b) or (c)]. . . of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

30. A bankruptcy court is not required to make an explicit finding of good faith in order to authorize a sale under the Bankruptcy Code. *See Harbison-Fischer Mfg. Co. v. Zinke* (*In re Zinke*), 97 B.R. 155, 156 (E.D.N.Y. 1989) (finding that a duty to make an explicit finding of good faith before permitting a sale "has not been imposed by the Second Circuit or the United States Supreme Court"). Although the Bankruptcy Code does not define "good faith purchaser," courts interpreting Section 363(m) of the Bankruptcy Code have held that "to show lack of good faith [a party] must show fraud, collusion . . . or an attempt to take grossly unfair advantage of other bidders." *Marin v. Coated Sales, Inc.* (*In re Coated Sales, Inc.*), No. 89 Civ. 3704 (KMW), 1990 WL 212899 (S.D.N.Y. Dec. 13, 1990). *See, e.g., In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (*quoting In re Bel Air Assocs., Ltd.*, 706 F.2d 301, 305 (10th Cir. 1983)). Yet, because there is no bright line test, courts examine the facts of each case by concentrating on the "integrity of [an actor's] conduct during the sale proceedings." *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (*quoting In re Rock Indus. Machinery Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

31. The process by which the Debtors have sold the Physician Practice Assets secured

the highest reasonable price for the Physician Practice Assets under the circumstances. To facilitate the transactions, the purchasers of the Physician Practice Assets are entitled to a Section 363(m) finding.

### E. Relief Under Bankruptcy Rules 6004(g) and 2002(a)(2)

32. Bankruptcy Rule 6004(g) provides that an order authorizing the use, sale, or lease of property is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise. The Debtors submit that the order approving the sales of the Physician Practice Assets, be effective immediately. It is in the best interests of the Debtors' estates to facilitate the closing of the sale transaction thereby expediting the flow of related sale proceeds into the estate. Moreover, the sale of the Physician Practice Assets will facilitate the continuity of patient care and physician practices related thereto, for the benefit of the estate, patients, and the community. Accordingly, the Debtors submit that the ten-day stay set forth in Bankruptcy Rule 6004(g) should be waived in connection with the sale of the Physician Practice Assets.

### NOTICE

33. No trustee or examiner has been appointed in these Chapter 11 cases. Notice of this Motion has been served on the following parties or, in lieu thereof, to their counsel, if known: (i) the United States Trustee; (ii) those creditors listed on the Debtors' List of Creditors Holding 20 Largest Unsecured Claims; (iii) the Debtors' prepetition secured lenders and other persons or entities that may claim an interest in the Physician Practice Assets; (iv) the debtor-in-possession financing lender; (v) counsel to the Official Committee of Unsecured Creditors and (vi) other parties requesting notice in these Chapter 11 cases. In light of the nature of the relief requested herein, the Debtors submits that no other or further notice need be given.

WHEREFORE, the Debtors respectfully requests that the Court enter an order granting the relief requested herein that is substantially in the form annexed hereto as Exhibit A, and such

other and further relief to the Debtors as the Court may deem proper.

DATED: March 6, 2017

**JONES WALKER LLP**

/s/*Elizabeth J. Futrell*
Elizabeth J. Futrell (LA Bar No. 05863)
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8260
Facsimile: (504) 589-8260

-and-

**ALSTON & BIRD LLP**

Grant T. Stein (admitted *pro hac vice*)
David A. Wender (admitted *pro hac vice*)
Sage M. Sigler (admitted *pro hac vice*)
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

*Proposed Attorneys for the Debtors*