# EXHIBIT F

# PURCHASE AGREEMENT

This Purchase Agreement (the "Agreement") is made and entered into this 2JR day of February, 2017 by and between Our Lady of the Lake Physician Group, L.L.C. (the "Practice") and Louisiana Medical Center and Heart Hospital, LLC and LMCHH PCP LLC, debtors in possession under Chapter 11 of the United States Bankruptcy Code (collectively referred to as "Hospital") (Practice and Hospital may sometimes be referred to herein collectively as the "Parties" and individually as a "Party").

## RECITALS

**WHEREAS**, Hospital operates a physician group practice;

**WHEREAS**, Matti W. Palo, M.D., Timothy Devraj, M.D., and Brian Galofaro, M.D. (collectively, the "Physicians")were employed by Hospital in its group practice to provide professional medical services in the specialty of orthopedic surgery in an office located at 70411 Hwy 21, Covington, LA 70433 (the "Practice Location");

**WHEREAS**, on January 30, 2017 (the "Petition Date"), Hospital commenced chapter 11 bankruptcy cases (collectively, the "Bankruptcy Cases") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

**WHEREAS**, Hospital has petitioned the Bankruptcy Court to reject all physician employment agreements and in connection with the same, Hospital will provide notice to patients served by physicians within the past year of the closure of the Hospital practice locations, effective February 28, 2017;

**WHEREAS**, Practice has agreed to employ the Physicians, effective March 1, 2017;

**WHEREAS**, the Parties desire to enter into this Agreement pursuant to which Hospital proposes to sell to Pracitce, and Practice proposes to purchase from Hospital, substantially all of the assets owned by Hospital and used or held for use in the Practice Location (the "Acquisition") so Physician can transition to private practice through employment Practice;

**WHEREAS**, this Agreement and the transactions contemplated herein are subject to the approval of the Bankruptcy Court pursuant to Sections 105, 363 and 365 of title 11 of the United States Code (11 U.S.C. § 101, et seq.) (the "Bankruptcy Code"); and

**WHEREAS**, the Parties desire to make certain representations, warranties, agreements, and covenants in connection with the Acquisition and the other transactions contemplated hereby.

**NOW, THEREFORE**, in consideration of the foregoing and the respective representations, warranties, covenants, agreements and conditions hereinafter set forth, and intending to be legally bound hereby, each Party hereby agrees as follows:

1. <u>Recitals</u>. Each of the recitals above is hereby incorporated into this Agreement by this reference.

2. <u>Acquisition</u>. Subject to approval of the Bankruptcy Court, the Parties agree to the following:

*Initials of Parties*
_____ / _μ__
*Practice   Hospital*

2.1 Practice agrees to buy the assets identified on *Exhibit A* (Furniture, Fixtures and Equipment), *Exhibit B* (Assumed Contracts) and *Exhibit C* (Supplies) (collectively, the "Company Assets") for the purchase price of Sixty Thousand Four Hundred Dollars ($60,400), free and clear of any and all liens of any kind or nature, whatsoever. **Practice is accepting the Company Assets AS IS, WHERE IS. HOSPITAL DOES NOT MAKE ANY OTHER REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO THE DESIGN, CONDITION, CAPACITY, VALUE, UTILITY, PERFORMANCE OR QUALITY OF THE COMPANY ASSETS AND MAKES NO IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT THERETO.**

2.2 Unless otherwise set forth in accordance with *Section 2.1*, all other assets remain the sole property of the Hospital (the "Excluded Assets"). For the avoidance of doubt, Excluded Assets shall include all computers and monitors, copiers, printers, fax machines, phone systems, and all paper patient medical records and billing records. Excluded Assets shall also include milestone signage, Quantum IV Body Composition Analyzers, 767 Integrated Diagnostic Systems Equipment, Piccolo Express Chemistry Analyzers, Piccolo Express and Chemistry Analyzer vials.

2.3 On March 1, 2017, all Hospital employees staffing the Practice Location shall cease to be employees of the Hospital and the Hospital shall not provide any compensation or benefits to such employees on or after March 1, 2017. The Practice shall be solely responsible for employment of, compensation of and benefits for any such staff as Practice elects to retain at the Practice Location.

2.4 The Hospital shall no longer lease space for the Practice Location, effective March 1, 2017. On or before that date, Practice shall be solely responsible for obtaining the lease for the Practice Location. If applicable, the Hospital shall reasonably cooperate with Practice in communications with third party landlords regarding the transfer of the lease to Practice.

3. Costs and Fees. Each Party to this Agreement shall bear its own attorneys' fees, costs and expenses incurred in connection with this Agreement, including, without limitation, any efforts to resolve or settle the disputes giving rise to this Agreement or in connection with the preparation of this Agreement.

4. Representations and Warranties. Each Party represents and warrants:

4.1 that they have the full right and authority to enter into this Agreement, and that the consent of no other person is required to effectuate this Agreement, subject only to approval of the Bankruptcy Court;

4.2 that, in negotiating and entering into this Agreement, they have consulted with and relied upon legal counsel of their own selection, or have had the opportunity to do so but have voluntarily elected not to seek legal advice;

4.3 that, in negotiating and entering into this Agreement, they are not relying upon any representation or statement made by any other Party, or by any other Party's agents, representatives or attorneys, that is not expressly set forth in this Agreement; and

4.4 each has the authority to execute this Agreement on their respective behalf, subject to approval of the Bankruptcy Court.

5. <u>Arm's Length Negotiation and Fair Market Value</u>. This Agreement was executed after an arm's length negotiation between the Parties and reflects the conclusion of the Parties that the consideration hereunder is consistent with fair market value. It is the Parties' express intention and desire that this Agreement complies with the applicable provisions of the Physician Self-Referral Law and the Anti-Kickback Statute.

6. <u>Entire Agreement</u>. This Agreement contains the entire understanding between the Parties with respect to its subject matter and supersedes all other prior and contemporaneous oral or written communications, representations, or agreements.

7. <u>Successors and Assigns</u>. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective parent companies, subsidiaries, affiliates, heirs, personal representatives, successors and assigns.

8. <u>No Admission</u>. This Agreement and the transactions consummated or contemplated pursuant hereto are a compromise and settlement of disputed claims and in no way constitute an admission by any Party of any fault whatever or any liability whatever in connection with any matter or thing.

9. <u>Further Cooperation</u>. The Parties promise to execute such other further and different documents and instruments as may be reasonably required to effectuate this Agreement

10. <u>Applicable Law</u>. This Agreement shall be construed and interpreted in accordance with the laws of the State of Delaware.

11. <u>Counterparts</u>. This Agreement shall become effective upon its execution and delivery by or on behalf of all Parties. This Agreement may be executed in counterparts, and faxed, scanned or photocopies of the Parties' signatures shall be effective. When each Party has signed and delivered at least one counterpart, each counterpart shall be deemed an original, and when taken together with other signed counterparts shall constitute one Agreement, which shall be binding on all Parties.

*[Signature Page Follows]*

Initials of Parties
_____ / _____
Practice   Hospital

**IN WITNESS WHEREOF**, Hospital and Practice have executed this Agreement effective as of the day and year first above written.

LOUISIANA MEDICAL CENTER AND HEART HOSPITAL, LLC
AND LMCHH PCP LLC

By: _____
      Neil F. Luria, CRO

**PRACTICE:**
**Our Lady of the Lake Physician Group, L.L.C.**

By: _____
      Jeffrey D. Limbocker
Its: Manager

IN WITNESS WHEREOF, Hospital and Practice have executed this Agreement effective as of the day and year first above written.

                    LOUISIANA MEDICAL CENTER AND HEART HOSPITAL, LLC
                    AND LMCHH PCP LLC

By: _____
     Neil F. Luria, CRO

PRACTICE:
Our Lady of the Lake Physician Group, L.L.C.

By: _____
     Curtis C. Chastain, M.D., FACP
Its: President

# EXHIBIT A
## Furniture, Fixtures and Equipment

1. The furniture and fixtures located at 70411 Hwy 21, Covington, LA 70433, as follows:

   - Brewer Adjustable Beds, 4
   - Coffee Machine, 2
   - Computer Stand, 2
   - Dell Medical X-ray Machine
   - File Cabinet, 7
   - Foot pedestal
   - Fridge
   - Garbage Container, 26+
   - Hallway Chair, 38+
   - HP Monitors, 25
   - Keyboards, 25
   - Microwave
   - Mini Fridge, 2
   - Mouse, 25
   - Moveable Cart, 3
   - Office Chair, 47+
   - Office Desk, 3
   - Paintings, 10
   - Plant, 6+
   - Printers Fujitsu, 7
   - Scale
   - Step Ladder
   - Table, 8
   - TV in lobby
   - TV, 2

2. All telephone numbers associated with the Practice Location, to the extent reasonably transferable by the Hospital.

3. All equipment (other than information technologies storing patient information) located at 70411 Hwy 21, Covington, LA 70433.

*Page 5 of 7*

*Initials of Parties*
_____ / _____
*Practice   Hospital*

## EXHIBIT B
## Assumed Contracts

None.

# EXHIBIT C
## Supplies

All supplies located at 70411 Hwy 21, Covington, LA 70433, that were purchased in normal quantities in the ordinary course of business.

*Page 7 of 7*

Initials of Parties
_____ / _____
Practice   Hospital

## MEDICAL RECORDS TRANSFER AGREEMENT

This MEDICAL RECORDS TRANSFER AGREEMENT ("**Agreement**") is made and entered into to be effective as of 12:01 a.m., C.S.T., March 1, 2017 ("**Effective Date**"), by and between LMCHH PCP LLC ("**Transferor**"), and **Our Lady of the Lake Physician Group, L.L.C.** ("**Transferee**").

## PRELIMINARY STATEMENT

WHEREAS, Transferor owns and controls the patient electronic medical records ("**EMR**") of patients treated by physicians employed or otherwise engaged by Transferor in multiple practice locations ("**Practice Locations**") prior to the Effective Date;

WHEREAS, Transferor owns and controls the patient paper medical records ("**Paper MR**") of patients treated by Drs. Matti W. Palo, Timothy Devraj, and Brian Galofaro, M.D. (collectively, the "**Physicians**");

WHEREAS, on January 30, 2017 (the "**Petition Date**"), Transferor commenced a Chapter 11 bankruptcy case in the United States Bankruptcy Court for the District of Delaware, which was subsequently transferred to the United States Bankruptcy Court for Eastern District of Louisiana on February 2, 2017 (the "**Bankruptcy Court**");

WHEREAS, Transferor intends to close all Practice Locations, effective February 28, 2017;

WHEREAS, Transferee intends to employ the Physicians;

WHEREAS, Transferor and Transferee desire to provide Physicians with on-going access to and provide for maintenance of the EMR of individuals who were treated by such Physicians prior to the Effective Date;

WHEREAS, Transferor and Transferee desire to provide Physicians with on-going access to and provide for the maintenance of Paper MR of individuals treated by such Physicians at Clinic prior to the Effective Date;

WHEREAS, this Agreement is subject to the approval of the Bankruptcy Court pursuant to Sections 105, 363 and 365 of title 11 of the United States Code (11 U.S.C. § 101, et seq.); and

WHEREAS, the parties desire to make certain representations, warranties, agreements, and covenants in connection with this Agreement.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, the parties hereto agree as follows:

1. *Recitals.* The recitals set forth in the Preliminary Statement are hereby acknowledged as accurate and set forth the rationale and purpose of this Agreement and are incorporated herein by this reference.

2. *Retention and Storage of Medical Records.*

(a) Pursuant to this Agreement, all medical records, case records, case histories, x-ray files, or personal and regular files concerning patients of Transferor's physicians prior to the Effective Date that are maintained as Paper MR and all medical records, case records, case histories, x-ray files, or personal and regular files concerning patients of Transferor's physicians at each Clinic prior to the Effective Date that are maintained as EMR (collectively, "**Medical Records**"), shall be transferred by Transferor to the care and custody of Transferee. Transferee shall store, preserve, and maintain such records in a commercially reasonable and prudent manner in accordance with the provisions of this Agreement and in compliance with all applicable state and federal laws and regulations during the Retention Period (as hereinafter defined).

(b) Except as otherwise provided in Section 2(c) below, Transferee agrees to estore, preserve, and maintain the Medical Records for a period of seven (7) years following the Effective Date or such longer period as may be required by applicable state or federal law or regulation ("**Retention Period**").

(c) With respect to the EMR transferred by Transferor to Transferee hereunder, Transferor shall reasonably cooperate with Transferee to migrate patient EMR data on eClinicalWorks ("**eCW**") to Transferee at the Transferee's sole cost. Following the migration, Transferee shall be have sole ownership, custody and control of such eCW patient medical records.

3. *Regulatory Compliance.* Each party hereby represents and warrants to the other party that it is not (i) currently excluded, debarred or otherwise ineligible to participate in the Federal health care programs as defined in 42 U.S.C. § 1320a-7b(f) ("**Federal health care programs**"); (ii) convicted of a criminal offense related to the provision of healthcare items or services but has not yet been excluded, debarred, or otherwise declared ineligible to participate in the Federal health care programs; and (iii) under investigation or otherwise aware of any circumstances which may result in such party's being excluded from participation in the Federal health care programs. Each party immediately shall notify the other party of any change in the status of the representation and warranty set forth in this section.

4. *Miscellaneous.*

(a) *Amendments.* Except as provided herein, this Agreement shall not be amended except with the prior written consent of each party hereto affected by the proposed change.

(b) *Notices.* All notices, demands, requests, consents, or other communications required or permitted to be given or made under this Agreement shall be in writing and shall be sent (i) postage prepaid, by certified mail, return receipt requested, (ii) by personal delivery to the intended recipient, or (iii) transmitted via facsimile, and shall be addressed as follows:

    If to Transferor:    LMCHH PCP LLC
                              64030 Louisiana Highway 434

2

       Lacombe, Louisiana 70445
       Attn: Chief Restructuring Officer
       Facsimile: _____

With a copy to:

Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Attn: Dawnmarie Matlock
Facsimile: 404-253-8660

  If to Transferee:  Our Lady of the Lake Physician Group, L.L.C.

       Attn: _____
       Facsimile: _____

or any other address of which prior written notice has been given. Notice shall be deemed to have been made upon deposit in the mails or upon actual delivery, whichever occurs first.

  (c) ***Severability.*** Each provision hereof is intended to be severable, and the invalidity or illegality of any portion of this Agreement shall not affect the validity or legality of the remainder hereof.

  (d) ***Binding Agreement.*** Subject to the restrictions on assignment herein contained, the terms and provisions of this Agreement shall be binding upon, and shall inure to the benefit of, the heirs, personal representatives, successors, and permitted assigns of the respective parties.

  (e) ***Applicable Law.*** Notwithstanding the place where this Agreement may be executed by either of the parties hereto, the parties expressly agree that all the terms and provisions hereof shall be construed in accordance with the internal laws of the State of Louisiana (i.e., the laws other than those relating to conflict of laws rules) applicable to contracts, transactions, and obligations entered into and to be performed in Louisiana.

  (f) ***Entire Agreement.*** This Agreement constitutes the entire agreement of the parties hereto with respect to the matters set forth herein and supersedes any prior understanding or agreement, oral or written, with respect thereto.

  (g) ***Specific Performance.*** If either party should fail to comply with its obligations hereunder, the other party shall be entitled to enforce such obligations by suit for specific performance or have such other remedy as may be available at law or in equity.

  (h) ***Remedies Cumulative.*** Each right, power, and remedy provided for in this Agreement or now or hereafter existing at law, in equity, by statute, or otherwise shall be cumulative and concurrent and shall be in addition to every other right, power, or remedy

LEGAL02/36981145v1

provided for herein or now or hereafter existing at law, in equity, by statute, or otherwise, and the exercise by either party of any one or more of such rights, powers, or remedies shall not preclude the simultaneous or later exercise by such party of any or all of such rights, powers, or remedies.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

LEGAL02/36981145v1

IN WITNESS WHEREOF, the parties hereto have entered into this Agreement as of the date and year written below.

TRANSFEROR:

**LMCHH PCP LLC**

By: _____
Neil F. Luria,
Chief Restructuring Officer

DATE: 2/25/2017

TRANSFEREE:

OUR LADY OF THE LAKE PHYSICIAN GROUP, L.L.C.

By: _____
Jeffrey D. Limbocker,
Manager

DATE: _____

IN WITNESS WHEREOF, the parties hereto have entered into this Agreement as of the date and year written below.

TRANSFEROR:

LMCHH PCP LLC

By: _____
Neil F. Luria,
Chief Restructuring Officer

DATE: _____

TRANSFEREE:

OUR LADY OF THE LAKE PHYSICIAN GROUP, L.L.C.

By: _____
Curtis C. Chastain, M.D., FACP
President

DATE: 2/24/17