# EXHIBIT K

## FURNITURE AND EQUIPMENT LEASE AGREEMENT

This FURNITURE AND EQUIPMENT LEASE AGREEMENT ("Agreement") is made and entered into on this 23rd day of February, 2017, to be effective as of March 1, 2017 ("**Effective Date**"), by and between Louisiana Medical Center and Heart Hospital, LLC and LMCHH PCP LLC (collectively referred to as "Lessor"), and Our Lady of the Lake Physician Group, L.L.C. ("Lessee").

### WITNESSETH:

**WHEREAS**, Lessor operates a physician group practice, with operations in an office located at 70411 Highway 21, Covington, Louisiana (the "Practice Location");

**WHEREAS**, on January 30, 2017 (the "Petition Date"), Lessor commenced chapter 11 bankruptcy cases (collectively, the "Bankruptcy Cases") in the United States Bankruptcy Court for the District of Delaware, which was subsequently transferred to the United States Bankruptcy Court for Eastern District of Louisiana on February 2, 2017 (the "Bankruptcy Court");

**WHEREAS**, Lessor intends to close all the Practice Location, effective February 28, 2017;

**WHEREAS**, Lessee has executed a purchase agreement (the "Purchase Agreement") to acquire certain furniture and equipment ("F&E") located at Practice Location, subject to Bankruptcy Court approval;

**WHEREAS**, in order to permit Lessee to take possession of the F&E prior to approval by to Bankruptcy Court approval, Lessor desires to lease and Lessee desires to lease and rent in accordance with the terms and for the consideration herein set forth certain F&E located at the Practice Location;

**WHEREAS**, this Agreement and the transactions contemplated herein are subject to the approval of the Bankruptcy Court pursuant to Sections 105, 363 and 365 of title 11 of the United States Code (11 U.S.C. § 101, et seq.) (the "Bankruptcy Code"); and

**WHEREAS**, the parties desire to make certain representations, warranties, agreements, and covenants in connection with this Agreement and the other transactions contemplated hereby.

**NOW, THEREFORE**, in consideration of the premises and the mutual promises, covenants, and undertakings herein contained, the parties hereto, each intending to be legally bound, agree as follows:

1.      On the Effective Date, Lessor hereby leases to Lessee and Lessee hereby leases and rents from Lessor the F&E described on **Schedule "A"** attached hereto and made a part hereof.

2.    The term of this Agreement will commence on the Effective Date and end on the earlier of: (a) a sale order issued by the Bankruptcy Court for the assets identified in the Purchase Agreement, (b) dismissal of Lessor's bankruptcy proceeding, (c) foreclosure of all of the F&E leased hereunder by Lessor's creditors, or (d) April 30, 2017, in which case the parties may agree in writing to extend the term of this Agreement.

3.    F&E.

The lease rental rate for the F&E hereunder shall be payable in equal monthly installments in the amount of $2,500.00 (prorated for any partial months), on or before the first (1st) business day of each month during the term of this Agreement; provided, however, that rent for the first month is due upon execution of this Agreement.  All rent payments shall be made to: Louisiana Heart Hospital, 64030 LA Hwy 434, Lacombe Louisiana 70445, Attn: Neil Luria, CRO.  All rent is payable without prior notice or demand, and without abatement, deduction, or offset in any amount for any cause.  Lessor hereby agrees to remit timely all sales taxes collected by Lessor during the term hereof to the Louisiana Department of Revenue.  In the event of the foreclosure of any of the F&E by Lessor's creditor(s) prior to termination of this Agreement, the monthly rental payment to be made by Lessee hereunder shall be reduced to reflect the loss of the foreclosed assets from the leased F&E.  In addition, in the event Lessee consummates a purchase of all or such portion of the F&E as Lessee may select, the total rental payments made by Lessee hereunder (exclusive of sales tax) shall be credited against the fair market value purchase price payable by Lessee to Lessor for such F&E.

(a)    Lessee shall use the F&E solely in the conduct of its business and in a careful and prudent manner, and shall not part with possession of or enter into any sublease with respect to the F&E or any part thereof or assign the F&E or its interest hereunder without the prior written consent of the Lessor, such consent not to be unreasonably withheld.  Lessee, at its own cost and expense, shall keep the F&E in good repair, condition, and working order and shall furnish any and all parts and labor required for that purpose.  Lessee shall not make any material alterations to the F&E without the prior written consent of Lessor.  All F&E, accessories, parts and replacements for or which are added to or become attached to the F&E shall immediately become the property of the Lessor and shall be deemed incorporated in the F&E and subject to the terms of this Agreement as if originally leased hereunder.

(b)    Lessee hereby assumes and shall bear the entire risk of loss of (other than loss due to foreclosure) and damage to the F&E from any and every cause whatsoever.  No loss of (other than loss due to foreclosure) or damage to the F&E or any part thereof shall impair any obligation of Lessee under this Agreement, which shall continue in full force and effect.  In the event of damage of any kind whatsoever to the F&E (unless the same is damaged beyond repair), Lessee shall, at Lessee's expense:

(1)    place the same in good repair, condition, and working order, or

(2)    replace the same with like F&E of the same make and of the same or a later model, and in good repair, condition, and working order.  If the F&E or any part thereof is determined by Lessor to be lost, stolen, destroyed, or damaged beyond repair, Lessee shall immediately pay Lessor therefor in cash an amount equal to the fair market value of like

F&E in the condition it was in prior to its being lost, stolen, destroyed, or damaged beyond repair. Upon such payment this Agreement shall terminate with respect to such F&E so paid for, and Lessee thereupon shall become entitled to such F&E as is and where is, without warranty, express or implied, with respect to any matter whatsoever.

(d)     Lessee shall comply with all laws and regulations relating to, and shall promptly pay when due, all license fees, registration fees, assessments, charges, and taxes, municipal, state, and federal, including, without limitation, property taxes, but specifically excluding, however, any taxes payable in respect to Lessor's income, which may now or hereafter be imposed upon the ownership, possession, leasing, renting, operation, control, use, maintenance, delivery, and/or return of the F&E, and shall save Lessor harmless against actual or asserted violations, and pay all costs and expenses of every character in connection therewith or arising therefrom.

(e)     Title to the F&E shall at all times remain in Lessor, and Lessee, at its own cost and expense, shall protect and defend the title of Lessor. Lessee shall at all times keep the F&E free and clear from all levies, attachments, liens, encumbrances, and charges or other judicial process of every kind whatsoever, shall give Lessor immediate written notice thereof and shall indemnify and save Lessor harmless from any loss or damage caused thereby. The F&E is and shall remain personal property irrespective of its use or manner of attachment to realty, and Lessee will not cause or permit the F&E to be attached to realty in such manner that it might become part of such realty without securing prior written consent of Lessor.

(f)     Lessor may, for the purpose of inspection, at all reasonable times, enter upon any job, building, or place where the F&E is located and may remove the F&E forthwith, without notice to Lessee, if the F&E is, in the opinion of Lessor, being used beyond its capacity or in any manner improperly cared for or abused; provided, however, that in the event Lessor so removes any of the F&E, (a) the lease rental rate hereunder shall be revised to accommodate the fair market value of such removed F&E, and (b) Lessee no longer shall bear the risk of loss or damage for such removed F&E from and after the date of removal.

(g)     Lessor shall retain all investment tax credits in respect of the F&E for itself.

(h)     If:

(1)     Lessee shall default in the payment of any rent or in making of any other payment hereunder when due;

(2)     Lessee shall default in the payment when due of any indebtedness of Lessee to Lessor arising independently of this Agreement;

(3)     Lessee shall default in the performance of any other covenant herein and such default shall continue for 2 days after written notice thereof to Lessee by Lessor;

(4)     Lessee becomes insolvent or makes an assignment for the benefit of creditors;

(5)     Lessee applies for or consents to the appointment of a receiver, trustee, or liquidator of Lessee or of all or a substantial part of its assets, or if such receiver, trustee, or liquidator is appointed with the application or consent of Lessee; or

(6)     a petition is filed by or against Lessee under the United States Bankruptcy Code or any amendment thereto, including but not limited to a petition for reorganization, arrangement, or extension, or under any other insolvency law or law providing for the relief of debtors;

then, if and to the extent permitted by applicable law, the full amount of rent then unpaid hereunder shall become due and payable forthwith at the election of Lessor, and Lessor may, at its option, without notice or demand and without legal process,

(1)     take possession of the F&E wherever it may be located, with all additions and substitutions, whereupon all rights of Lessee in the F&E shall terminate absolutely, and (i) retain the F&E and all prior payments of rent, or (ii) retain all prior payments and either sell the F&E, applying the net balance of rent, or retain the F&E, crediting Lessee reasonable value, Lessee remaining liable for any deficiency;

(2)     recover the balance of rent and other amounts due hereunder; and

(3)     pursue any other remedy at law or in equity.

All remedies shall be cumulative and may, to the extent permitted by law, be exercised concurrently or separately, and the exercise of one shall not be an election or preclude the exercise of any other. No failure on the part of Lessor to exercise, and no delay in exercising, any right or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of Lessor of any right or remedy hereunder preclude any other of further exercise thereof of the exercise of any other right or remedy.

Time is of the essence in the performance of all of the terms of this Agreement and shall not be affected by acceptance of any overdue payment. Should Lessee fail to pay any part of the rent herein reserved or any other sum required to be paid by Lessee to Lessor hereunder, Lessee shall pay Lessor interest on such delinquent payment at the highest lawful contract rate from the date when such payment was due until paid, and expenses of collection, including reasonable attorneys' fees.

(i).     Lessor covenants to and with Lessee that Lessor is the lawful owner of the F&E, and that, upon approval from the Bankruptcy Court and Lessee's paying the rents and performing the promises, terms, and conditions hereof, Lessee shall peaceably and quietly hold, possess and use the F&E without hindrance. If this Agreement is terminated for a reason other than approval of the Purchase Agreement by the Bankruptcy Court, Lessee shall return the F&E to Lessor at an address specified by Lessor in the same condition as received, reasonable wear and tear and normal depreciation excepted.

4.     Each party represents and warrants to the other party that it (i) is not currently excluded, debarred or otherwise ineligible to participate in the Federal health care programs as defined in 42 U.S.C. § 1320a-7b(f) ("**Federal health care programs**"); (ii) is not convicted of a criminal offense related to the provision of healthcare items or services but has not yet been excluded, debarred, or otherwise declared ineligible to participate in the Federal health care programs; and (iii) is not under investigation or otherwise aware of any circumstances which may result in such party's being excluded from participation in the Federal health care programs. This shall be an ongoing representation and warranty during the term of this Agreement, and each party agrees immediately to notify the other party of any change in the status of the representation and warranty set forth in this section.

5. All notices, requests, and communications required or permitted hereunder shall be in writing and shall be sufficiently given and deemed to have been received upon personal delivery or delivery by overnight courier, if mailed, upon the first to occur of actual receipt or seventy-two (72) hours after being placed in the United States mail, postage prepaid, registered or certified mail, receipt requested, or transmitted via facsimile addressed to the parties as follows:

If to Lessor:
Louisiana Medical Center and Heart Hospital, LLC and
LMCHH PCP LLC
64030 Louisiana Highway 434
Lacombe, Louisiana 70445
Attn: Chief Restructuring Officer
Facsimile: 801.751.9537

With a copy to:

Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Attn: Dawnmarie Matlock
Facsimile: 404-253-8660

If to Lessee:
Our Lady of the Lake Physician Group, L.L.C.
Attn: Vice President
5000 Hennessy Blvd.
Baton Rouge, LA 70808
Facsimile: _____

with a copy to:

Franciscan Missionaries of Our Lady Health System, Inc.
Attn: General Counsel
4200 Essen Lane
Baton Rouge, LA 70809
Facsimile: _____

6. This Agreement contains the entire agreement of the parties and may not be modified except in writing. If any provision hereof conflicts with any statute or rule of law of any jurisdiction wherein it may be sought to be enforced, then such provision shall be deemed void to the extent that it may conflict therewith, but without invalidating the remaining provisions hereof.

7. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

8.    The parties expressly agree that nothing contained in this Agreement shall require either party or its representatives to refer or admit any patients to, or order any goods or services from the other party.   Notwithstanding any unanticipated effect of any provision of this Agreement, the parties intend to comply with 42 U.S.C. § 1320a-7b (commonly known as the Anti-Kickback Statute), 42 U.S.C. § 1395nn (commonly known as the Stark law) and any other federal or state law provision governing fraud and abuse or self-referrals under the Medicare or Medicaid programs, as such provisions may be amended from time to time.

9.    To the extent applicable to this Agreement, the parties agree to comply with the Health Information Technology for Economic and Clinical Health Act of 2009 (the "**HITECH Act**"), the Administrative Simplification provisions of the Health Insurance Portability and Accountability Act of 1996, as codified at 42 U.S.C. Section 1320d et seq. ("**HIPAA**") and any current and future regulations promulgated under either the HITECH Act or HIPAA, including, without limitation the federal privacy regulations contained in 45 C.F.R. Parts 160 and 164 (the "**Federal Privacy Regulations**"), the federal security standards contained in 45 C.F.R. Parts 160, 162 and 164 (the "**Federal Security Regulations**") and the federal standards for electronic transactions contained in 45 C.F.R. Parts 160 and 162 (the "**Federal Electronic Transactions Regulations**"), all as may be amended from time to time and all collectively referred to herein as "**HIPAA Requirements**"). The parties agree not to use or further disclose any Protected Health Information, including Electronic Protected Health Information (as those terms are defined in the HIPAA Requirements), other than as permitted by the HIPAA Requirements and the terms of this Agreement. The parties agree to make their internal practices, books and records relating to the use and disclosure of Protected Health Information available to the Secretary of Health and Human Services to the extent required for determining compliance with the HIPAA Requirements. In addition, the parties agree to comply with any state laws and regulations that govern or pertain to the confidentiality, privacy, security of, and electronic transactions pertaining to health care information.

10.    This Agreement shall be governed by and construed under the laws of the State of Louisiana, and venue shall be in St. Tammany Parish, Louisiana.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, this Agreement has been duly executed on the day and year written below.

**LESSOR:**

**LOUISIANA MEDICAL CENTER AND HEART HOSPITAL, LLC AND LMCHH PCP LLC**

By: _____

        Neil F. Luria,
        Chief Restructuring Officer

DATE: _____

**LESSEE:**

**OUR LADY OF THE LAKE PHYSICIAN GROUP, L.L.C.**

By: _____

        Jeffrey D. Limbocker,
        Manager

DATE: _____

IN WITNESS WHEREOF, this Agreement has been duly executed on the day and year written below.

LESSOR:

LOUISIANA MEDICAL CENTER AND
HEART HOSPITAL, LLC
AND LMCHH PCP LLC
By:_____
     Neil F. Luria,
     Chief Restructuring Officer

DATE: _____

LESSEE:

OUR LADY OF THE LAKE PHYSICIAN GROUP, L.L.C.


By:_____
     Curtis C. Chastain, M.D., FACP
     President

DATE: ___2/24/17_____

## SCHEDULE "A"
### F&E

Brewer Adjustable Beds, 4
Coffee Machine, 2
Computer Stand, 2
Dell Medical X-ray Machine
File Cabinet, 7
Foot pedestal
Fridge
Garbage Container, 26+
Hallway Chair, 38+
HP Monitors, 25
Keyboards, 25
Microwave
Mini Fridge, 2
Mouse, 25
Moveable Cart, 3
Office Chair, 47+
Office Desk, 3
Paintings, 10
Plant, 6+
Printers Fujitsu, 7
Scale
Step Ladder
Table, 8
TV in lobby
TV, 2