## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| LMCHH PCP LLC, *et al.*,[1] | ) | Case No. 17-10353 |
| | ) | |
| | ) | Section "B" |
| Debtors. | ) | |
| | ) | Jointly Administered with |
| _____ | ) | Case No. 17-10354 |

**DISCLOSURE STATEMENT DESCRIBING AMENDED JOINT PLAN OF LIQUIDATION BY LMCHH PCP LLC, LOUISIANA MEDICAL CENTER AND HEART HOSPITAL, LLC, AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AS OF AUGUST 1, 2017**

ALSTON & BIRD LLP

Grant T. Stein (admitted pro hac vice)
David A. Wender (admitted pro hac vice)
Sage M. Sigler (admitted pro hac vice)
Alessandra Backus (admitted pro hac vice)
1201 West Peachtree Street, N.E.
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

-and-

JONES WALKER LLP

Elizabeth J. Futrell (LA Bar No. 05863)
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8260
Facsimile: (504) 589-8260

*Attorneys for the Debtors*

HELLER, DRAPER, PATRICK, HORN & DABNEY, L.LC.

William H. Patrick, III LA Bar No. 10359
Tristan Manthey, LA. Bar No. 24539
Cherie Nobles, LA Bar No. 30476
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130-6103
Phone: 504-299-3300
Facsimile: (504) 299-3399

*Counsel for Official Committee of Unsecured Creditors*

---

[1]     The last four digits of the taxpayer identification numbers for each of the Debtors follow in parenthesis: (i) LMCHH PCP LLC (8569); and (ii) Louisiana Medical Center and Heart Hospital, LLC (7298). The mailing address for both of the Debtors is 64030 Highway 434, Lacombe, LA 70445.

The Plan Proponents have filed the Plan and recommend that Holders of Claims entitled to vote on the Plan vote to accept the Plan in accordance with the voting instructions set forth in this Disclosure Statement. To be counted, your Ballot must be duly completed, executed and actually received no later than the Voting Deadline. Holders of Claims entitled to vote on the Plan should read and carefully consider this Disclosure Statement, the Plan and the exhibits thereto in their entirety.

The Disclosure Statement contains summaries of certain provisions of the Plan, statutory provisions, documents related to the Plan, events in the Bankruptcy Cases and financial information. The Debtors believe that the Plan and related documents are fair and accurate, nevertheless, the summaries set forth herein are qualified to the extent that they do not set forth the entire text of such documents or statutory provisions. Factual information contained in the Disclosure Statement has either been provided by the Debtors' management or is otherwise contained in documents related to the Debtors. If the terms of this Disclosure Statement and the Plan are inconsistent, the Plan will control.

In determining whether to vote to accept the Plan, Holders of Claims entitled to vote must rely on their own examination of the Debtors and the terms of the Plan, including the merits and risks involved. Similarly, Holders agreeing to the compromises and settlements described below and contained in the Plan must rely on their own evaluation of the Claims they are compromising and settling, examination of the Debtors, and the terms of the Plan, including the merits and risks involved. The Plan is structured to maximize the immediate return to Holders of Allowed Claims through the use of compromises and settlements, and the failure to agree to or otherwise take advantage of the benefits of these compromises and settlements will result in delay in the Distribution of monies to Holders of Allowed Claims in the Bankruptcy Cases and could potentially result in a lower Distribution. The contents of this Disclosure Statement should not be construed as providing any legal, business, financial or tax advice. Each Holder entitled to vote on the Plan should consult with their own legal, business, financial and tax advisors with respect to any such matters concerning this Disclosure Statement, the solicitation, the Plan and the transactions contemplated thereby.

Except as set forth in this Disclosure Statement, no Person has been authorized by the Plan Proponents in connection with the Plan or the solicitation to give any information or to make any representation other than as contained in this Disclosure Statement and the exhibits annexed hereto or incorporated by reference or referred to herein and, if given or made, such information or representation may not be relied upon as having been authorized by the Plan Proponents. The Disclosure Statement does not constitute an offer to sell or the

solicitation of an offer to buy any securities, or an offer to sell or a solicitation of an offer to buy any securities.

The statements contained in this Disclosure Statement are made as of the date hereof (unless otherwise indicated). Any estimates of Claims and Interests set forth in this Disclosure Statement may vary from the amounts of Claims and Interests ultimately Allowed by the Bankruptcy Court.

The information contained in this Disclosure Statement, including, but not limited to, the information regarding the history, businesses and operations of the Debtors, the historical and projected financial information of the Debtors and the liquidation analysis relating to the Debtors are included for purposes of soliciting acceptances of the Plan and enabling person to evaluate the compromises and settlements contained in the Plan. As to any judicial proceedings in any court, including any Adversary Proceedings or contested matters that may be filed in the Bankruptcy Court, this information is not to be construed as an admission or stipulation but rather as statements made in settlement negotiations and will be inadmissible for any purpose absent the express written consent of the Plan Proponents.

The information contained in this Disclosure Statement, including but not limited to the factual and financial information, is held and prepared by the Debtors. The Creditors' Committee does not purport to verify the accuracy or completeness of such information. Rather, the Creditors' Committee is a signatory to this Disclosure Statement for the purposes of reflecting its approval and support of the Plan and to encourage all creditors to vote in favor of the Plan.

## INTRODUCTION

LMCHH PCP LLC, a Delaware limited liability company, and Louisiana Medical Center and Heart Hospital, LLC, a North Carolina limited liability company (together, the "**Debtors**"), as debtors and chapter 11 debtors in possession, jointly with Official Committee of Unsecured Creditors (the "**Creditors' Committee**" and collectively with the Debtors, the "**Plan Proponents**") provide the following Disclosure Statement containing a discussion of the Debtors' history, business, properties and operations, risk factors, a summary and analysis of the Plan (as defined herein), and certain related matters.[2] The Plan Proponents are soliciting votes on the Plan. A copy of the Plan is attached to this Disclosure Statement as Exhibit B.

This Disclosure Statement summarizes certain information regarding the Debtors' operations before the Debtors filed for bankruptcy protection, the Debtors' stated basis for filing a bankruptcy petition, and significant events that have occurred during Debtors' Bankruptcy Cases.[3] This Disclosure Statement also describes the Plan, the proposed compromise and settlement of certain claims through the Plan (including the compromise and settlement of Employee Claims through the Employee Settlement), estimated Creditor recoveries under the Plan, the effect of confirmation of the Plan, and the manner in which Distributions will be made under the Plan. This Disclosure Statement also summarizes the process to confirm the Plan and the voting procedures that Holders of Claims entitled to vote on the Plan must follow for their votes to be counted.

The consummation and effectiveness of the Plan are subject to certain material conditions precedent described herein and set forth in the Plan. There is no assurance that the Bankruptcy Court will confirm the Plan.

You are encouraged to read this Disclosure Statement and the Plan in their entirety before submitting your Ballot to vote on the Plan.

The Bankruptcy Court's approval of this Disclosure Statement does not constitute a guarantee by the Bankruptcy Court of the accuracy or completeness of the information contained herein or an endorsement by the Bankruptcy Court of the merits of the Plan.

Summaries of the Plan and statements made in this Disclosure Statement are qualified in their entirety by reference to the Plan. The statements contained in this Disclosure Statement are made only as of the date of this Disclosure Statement, and there is no assurance that the statements contained herein will be correct at any time after such date. Except as otherwise provided in the Plan or in accordance with applicable law, the Plan Proponents are under no duty to update or supplement this Disclosure Statement.

---

[2] By executing this Disclosure Statement, the Creditors' Committee does not verify the accuracy or completeness of such information.

[3] Capitalized terms not defined in this Disclosure Statement are defined in Article I of the Plan, which is attached hereto as Exhibit A.

The Plan Proponents are providing the information in this Disclosure Statement to Holders of Claims for purposes of soliciting votes to accept or reject the Plan pursuant to Chapter 11 of the Bankruptcy Code. In the event of any inconsistency between the Disclosure Statement and the Plan, the relevant provisions of the Plan will govern. Nothing in this Disclosure Statement may be relied upon or used by any entity for any other purpose. Before deciding whether to vote for or against the Plan, each Holder entitled to vote should carefully consider all of the information in this Disclosure Statement.

The Debtors urge each Holder of a Claim or Interest to consult with its own advisors with respect to any legal, financial, securities, tax, or business advice in reviewing this Disclosure Statement, the Plan, and each proposed transaction contemplated by the Plan.

This Disclosure Statement contains, among other things, summaries of the Plan, certain statutory provisions, certain events in the Debtors' Bankruptcy Cases, and certain documents related to the Plan, attached hereto and/or incorporated by reference herein. Although the Debtors believe that these summaries are fair and accurate, they are qualified in their entirety to the extent that they do not set forth the entire text of such documents or statutory provisions or every detail of such events. In the event of any inconsistency or discrepancy between a description in this Disclosure Statement and the terms and provisions of the Plan or any other documents incorporated herein by reference, the Plan or such other documents will govern for all purposes. Factual information contained in this Disclosure Statement has been provided by the Debtors' management except where otherwise specifically noted.

The Debtors have prepared this Disclosure Statement in accordance with section 1125 of the Bankruptcy Code, Bankruptcy Rule 3016(b), and Local Bankruptcy Rule 3016-1 and is not necessarily prepared in accordance with federal or state securities laws or other similar laws.

This Disclosure Statement does not constitute, and should not be construed as, an admission of fact, liability, stipulation, or waiver. The Plan Proponents or the Plan Administrator may seek to investigate, file, and prosecute Claims and may object to Claims after the entry of the Confirmation Order or the Effective Date of the Plan irrespective of whether this Disclosure Statement identifies such Claims or objections to Claims.

The Debtors are making the statements and providing the financial information contained in this Disclosure Statement as of the date hereof, unless otherwise specifically noted. Although the Debtors may subsequently update the information in this Disclosure Statement, they have no affirmative duty to do so, and expressly disclaim any duty to publicly update any forward looking statements, whether as a result of new information, future events, or otherwise. Holders of Claims and Interests reviewing this Disclosure Statement should not infer that, at the time of their review, the facts set forth herein have not changed since this Disclosure Statement was filed. Information contained herein is subject to completion, modification, or amendment. The Plan Proponents reserve the right to file an amended or modified Plan and related Disclosure Statement from time to time, subject to the terms of the Plan.  The Plan Proponents have not authorized any Person to give any information about or

concerning the Plan other than that contained in this Disclosure Statement. The Plan Proponents have not authorized any representations concerning the Debtors other than as set forth in this Disclosure Statement.

If the Bankruptcy Court confirms the Plan and the Effective Date occurs, the terms of the Plan and the compromises and settlements and transactions contemplated by the Plan will bind the Debtors, any Person acquiring property under the Plan, all Holders of Claims and Interests (including those Holders of Claims and Interests that do not submit Ballots to accept or reject the Plan or that are not entitled to vote on the Plan), and any other Person or Entity as may be ordered by the Bankruptcy Court in accordance with the applicable provisions of the Bankruptcy Code.

On August __, 2017, the Bankruptcy Court entered an order finding that this Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code. "Adequate information" is "information of a kind, and in sufficient detail … that would enable … a hypothetical investor … to make an informed judgment about the plan." The Bankruptcy Court has also authorized the Plan Proponents to use this Disclosure Statement to solicit votes on the Plan. **Although the Bankruptcy Court has approved this Disclosure Statement and authorized the Plan Proponents to use this Disclosure Statement to solicit votes on the Plan, the Bankruptcy Court has not yet determined whether the Plan should be confirmed.**

The Bankruptcy Court has authorized **only** this Disclosure Statement (and accompanying exhibits) to be used in connection with solicitation of votes on the Plan. In voting to accept or reject the Plan, you should rely only on information contained in this Disclosure Statement (and accompanying exhibits) and should not rely on information from other sources.

**The Plan Proponents recommend that Holders of Claims entitled to vote on the Plan vote to accept the Plan, and that Employees not opt out of the Employee Settlement contained in Section 6.1 of the Plan.**

## SUMMARY OF VOTING PROCEDURES AND PROCEDURES TO OPT OUT OF THE COMPROMISE AND SETTLEMENT FOR CERTAIN EMPLOYEE CLAIMS

Together with this Disclosure Statement and the accompanying exhibits, you should receive a Ballot to vote on the Plan. After reviewing this Disclosure Statement, the Plan and the accompanying exhibits, if you are entitled to vote on the Plan, you should vote to accept or reject the Plan on the enclosed Ballot and return it by overnight courier or regular mail to the Voting Agent at the address specified on the Ballot. Additionally, if you are an Employee of the Debtors asserting a claim under the WARN Act or for any and all Employee Claims, you should (i) review the Employee Settlement set forth in Section 6.1 of the Plan (including the Employee Settlement Worksheet attached thereto as an exhibit, which identifies the specific amount to be distributed to each Employee) and (ii) determine whether to (x) accept

the Plan (including the Employee Settlement Amount or (y) opt out of the Employee Settlement Amount in order to pursue contested litigation against the Debtors.

**Only Holders of Claims in Classes 5, 6, and 7 are entitled to vote on the Plan. Holders of Claims in Classes 1, 2, 3, and 4 are Unimpaired and are deemed to have accepted the Plan. Holders of Interests in Class 8 will not receive or retain any property under the Plan and are deemed to reject the Plan. If you are entitled to vote on the Plan, you must return your Ballot by overnight courier or regular mail. Ballots submitted by facsimile or other electronic transmission will not be accepted and will be void.**

**The deadline to vote on the Plan is _____, 2017 at 12:00 p.m. Central time (the "Voting Deadline"). Holders of Claims in Classes 5, 6, and 7 who vote to reject the Plan must return their Ballot to the Voting Agent (at the address set forth below) such that the Ballot is _received_ on or before the Voting Deadline for your vote on the Plan to be counted. As set forth in the Plan and this Disclosure Statement, the Plan proposes to resolve all Employee Claims against the Debtors and the Employee Released Parties through the Employee Settlement. The Employee Settlement proposes a compromise and settlement of each and every Claim that an Employee may have against the Debtors and the Employee Released Parties in exchange for the payment to the Settling Employee of the Employee Settlement Amount in order to avoid the cost, delay and risk of litigation. If the Holder of an Employee Claim does not want to participate in the Employee Settlement their timely received Ballot must also expressly acknowledge the Holder's intent to "opt out" of the Employee Settlement by checking the "Opt Out" box contained on the Ballot. Failure to timely submit the Ballot and check the Opt-Out box as provided therein shall result in the Holder of the Employee Claim being deemed to have accepted the Employee Settlement.** If you have not received a Ballot, or if your Ballot is lost or mutilated, you may obtain a replacement Ballot by contacting the Voting Agent at the following addresses:

LMCHH PCP LLC, c/o GCG
P.O. Box 10363
Dublin, OH 43017-5537

*If via overnight delivery:*

LMCHH PCP LLC, c/o GCG
5151 Blazer Parkway, Suite A
Dublin, OH 43017

You may also obtain a replacement Ballot by contacting the Voting Agent at (844) 571-1546. You may also obtain copies of the Plan, this Disclosure Statement and other Plan related documents on the internet at the following website: http://cases.gcginc.com/lhh/.

# ARTICLE I:
# OVERVIEW OF THE PLAN

The following is a brief overview of the material provisions of the Plan and is qualified in its entirety by the full text of the Plan, which is attached as Exhibit B.

## A.      Summary of Plan Structure.

### The Plan is a plan of liquidation.

Substantially all of the Assets other than certain Causes of Action and miscellaneous property have already been reduced to Cash by the Debtors.  Specifically, on May 26, 2017, the Debtors closed the sale of substantially all of their assets pursuant to section 363 of the Bankruptcy Code to Stirling Medical Lacombe, L.L.C. ("**Stirling**").  The sale to Stirling resulted in gross proceeds of $22,035,000.  In furtherance of their liquidation, the Debtors also closed a series of sales of miscellaneous assets and assets related to their physician practices generating in excess of $1,100,000.  If any Assets have not been liquidated by the Effective Date, the Plan Administrator, in consultation with the Plan Committee, will liquidate those Assets in accordance with the terms of the Plan.  Similarly, the Plan Administrator will be able to pursue certain Causes of Action on behalf of the Debtors.  The Plan Administrator will distribute the Cash and the proceeds of the Assets and Causes of Action (net of expenses) to Holders of Claims in accordance with the terms of the Plan.

### The Plan Proposes a Compromise and Settlement of Employee Claims.

As of the Petition Date, Employees held various alleged Employee Claims against the Debtors and the Employee Released Parties.  These alleged Employee Claims, described in detail below, include Claims held by Employees arising out of or related to the WARN Act, the Debtors' "paid days off" policy, the Debtors' benefits and medical plans, and under various employee agreements/programs against the Debtors.  The Plan seeks to resolve all Employee Claims against the Debtors and the Employee Released Parties by proposing two alternatives. First, in order to avoid what is anticipated to be expensive and protracted litigation associated with the Uncertified WARN Class Actions and the difficulty that Employees may face in seeking to establish their potential right to a Priority Employee Claim, Section 6.1 of the Plan proposes the Employee Settlement.

As described in further detail below, the Employee Settlement addressed herein and set forth in the Joint Plan represents a material economic increase from the Employee Settlement originally proposed by the Plan Proponents on June 29, 2017.  The improved proposed Employee Settlement provides for an increase in the aggregate amount made available by the Debtors to settle Employee Claims from $2,730,536.58 to $3,800,000.  The increase in total consideration was the result of multiple mediations conducted by the Honorable Robert Summerhays and extensive arms'-length negotiations involving Fishman Haygood L.L.P. and Bruno and Bruno LLP (counsel of record in *King et al., v. LMCHH PCP, LLC, et al.*  (Adv.

5

Pro. No. 17-01024))[4] on the one hand and the Plan Proponents, CCG, and MedCare on the other hand.

The Employee Settlement proposes to compromise and settle each and every Claim that an Employee may have against the Debtors and the Employee Released Parties in exchange for the Employee Settlement Amount. The Employee Settlement Amount, which is set forth on the Employee Priority Worksheet and shall be set forth on each Employee Ballot, will provide each Employee who does not opt out of the Employee Settlement (a "**Settling Employee**") with a Distribution equal to 50% of the Employee's estimated Priority WARN Act Claim plus 100% of the Employee's Priority PDO Claim plus 10% of the Employee's Remaining Employee Unsecured Claim each as calculated by the Debtors and otherwise set forth on the Employee Settlement Worksheet attached as Exhibit C to this Disclosure Statement. If accepted by all Holders of Employee Claims, the Employee Settlement will provide the Holders of Employee Claims a near-immediate Distribution totaling $2,730,536.58 in the aggregate. In addition, as a result of multiple mediations before the Honorable Robert Summerhays and extensive negotiations involving Fishman Haygood L.L.P. and Bruno and Bruno LLP on the one hand and the Plan Proponents, CCG, and MedCare on the other hand, the proposed Employee Settlement now provides for an allocation of additional sums to satisfy legal fees that Employees may owe if they receive a Distribution on account of their Employee Claims. Those fees would have been payable out of the $2,730,536.58 originally proposed by the Plan Proponents. Under the revised proposal, all these funds will be available to Employees without reduction for legal fees or related expenses. Specifically, as described in additional detail below, the total amount available for distribution under the Employee Settlement has been increased to maximize the amount that Settling Employees are able to retain by increasing the aggregate consideration offered to offset the fees that Settling Employees will have to pay contingency fee counsel.

Although the Plan Proponents vigorously dispute that the Debtors are liable under the WARN Act and dispute the total amount Employees have claimed to be owing to Employees on an unsecured and priority basis, they recognize that resolving the Uncertified WARN Class Actions and the Employee Claims in general will likely require years to litigate and will result in significant expense. Accordingly, in view of the costs that the Debtors' Estates will incur in litigation, the risks associated with litigation (such as the potential that the Employees would not be able to establish an entitlement to a claim under the WARN Act and the chance that they could), the delay in receiving Distributions and the fees that counsel in the Uncertified WARN Class Actions would be receive out of the Distributions to Employees, Fishman Haygood L.L.P. and Bruno and Bruno LLP (who directly represented 125 Employees and indirectly sought to protect the interests of Employees) on the one hand and the Plan Proponents, CCG, and MedCare on the other hand agree that the proposed Employee Settlement is (i) well within the range of reasonable and (ii) represents the optimal means through which to resolve the Employee Claims. Additionally, through the acceptance of the

---

[4]     The Plan Proponents are informed that in excess of 125 Employees have retained Fishman Haygood L.L.P. and Bruno and Bruno LLP to represent them with respect to Employee Claims.

Employee Settlement, the Settling Employees will obtain their Distributions promptly; without the Employee Settlement, the Settling Employees will likely wait years for any payment on their alleged Claims, that result assumes they will prevail at trial and on appeal. Nevertheless, in the event an Employee affirmatively decides not to participate in the Employee Settlement by electing to opt out of the Employee Settlement on the Ballot, the Plan includes Classes for each such Employee Claimant to ensure that an Employee's Claim – once validly established in a Final Order – is classified and treated after such judicial determination in accordance with the Plan.

**B.      Summary of Estimated Distributions.**

**If you are an Employee.**  If you do not opt out of the Employee Settlement, and the Plan is confirmed, you will receive an amount, calculated by the Debtors based on their reasonable independent analysis of the Employee Claims and the potential liability therefor, that equals 50% of the Employee's estimated Priority WARN Act Claim plus 100% of the Employee's Priority PDO Claim plus 10% of the Employee's Remaining Employee Unsecured Claim as set forth on the Employee Settlement Worksheet.  If all Employees accept the Employee Settlement, they will receive a near-immediate Distribution totaling $2,730,536.58 in the aggregate and without reduction for payment of legal fees and expenses.

**Any Employee who fails to timely opt out of the Employee Settlement on the Employee's timely submitted Class 6 Ballot shall be deemed to have accepted the compromise and settlement proposal detailed in Section 6.1 of the Plan and shall be deemed to be a Settling Employee and, in addition, shall be deemed to waive, discharge, and release the Employee Released Parties from all Employee Claims, including those arising out of or related to the WARN Act or any similar state or federal law, including, without limitation, all Employee Claims that are identified in, or could have been identified in, the Uncertified WARN Class Actions. The Employee Released Parties are the defendants in the Uncertified WARN Class Actions and, for the avoidance of doubt, include: (i) the Debtors; (ii) the present and former members of the Debtors' Board of Directors; (iii) the present and former officers and employees of the Debtors, (iv) the Creditors Committee and its past and present members (but only in their capacity as members of the Creditors Committee); (v) the Professionals; (vi) SOLIC as well as its employees who assisted or otherwise advised the Debtors; (vii) any attorneys, financial advisors, investment bankers, accountants, consultants, or other professionals of the parties described above, in clauses (i) through (vi) hereof; and (viii) CCG and MedCare and each of their Affiliates and subsidiaries, and their respective shareholders, partners, members, agents, advisors, officers, directors, attorneys, insurers, and employees.**  The Debtors or the Plan Administrator will Distribute the applicable Employee Settlement Amount to Settling Employees within 30 days of the Effective Date.

If the Holder of an Employee Claim timely opts out of the Employee Settlement set forth in Section 6.1 of the Plan, such Holder will not be entitled to receive a Distribution of the Employee Settlement Amount and, instead, will need to establish by Final Order, which will be opposed by the Debtors and the Plan Administrator, such Holder's Employee Claim. **If the**

**Holder of an Employee Claim timely opts out of the Employment Settlement set forth in Section 6.1 of the Plan, such Holder will <u>NOT</u> be deemed to waive, discharge, or release the Employee Released Parties from any Employee Claims**. **If the Holder of an Employee Claim opts out of the Employment Settlement, the offer of the Employee Settlement to such Holder shall automatically terminate upon the occurrence of the Effective Date.** If the Holder of an Employee Claim establishes its Allowed Employee Claim by Final Order, in full satisfaction, release, discharge of and in exchange for each Employee Unsecured Claim, each Holder of an Allowed Employee Unsecured Claim, as of the Effective Date, shall receive Distributions set forth in the Plan and described below:

**If you are the Holder of an Unsecured Claim other than an Employee Claim or a CCG Unsecured Claim.** You will receive a Pro Rata Unsecured Distribution on the later to occur of (x) the Effective Date of the Plan or (y) the Allowance of such Class General Unsecured Claim pursuant to Section 6.5 of the Plan.

**If you are the Holder of a Secured Claim.** You will receive payment in full, in Cash, on the later to occur of: (x) the Effective Date of the Plan; or (y) pursuant to Section 6.4 of the Plan after Allowance of such Class 3 Claim.

**If you are the Holder of a Priority Non-Tax Claim.** You will receive payment in full, in Cash, on the later to occur of: (x) the Effective Date of the Plan; or (y) pursuant to Section 6.3 of the Plan after Allowance of such Class 3 Claim.

**If are an Interest Holder** You will receive nothing and your common stock will be cancelled because the Debtors are insolvent and their Creditors will not be repaid in full.

**C.     Summary of Timing and Amount of Estimated Distributions under the Plan.**

The Plan classifies all pre-petition Claims against and Interests in the Debtors into separate Classes, except for Non-Professional Administrative Expense Claims, Professional Administrative Expense Claims, WARN Act Administrative Expense Claims (if any), and Priority Tax Claims, which are not classified. The following chart identifies the classified and unclassified Claims specified in the Plan, estimates the amount of unclassified and classified Claims, and summarizes the treatment of the classified and unclassified Claims under the Plan.

The estimated amount of Claims is based on the Plan Proponents' review of the Debtors' schedules, Claims as filed with the Bankruptcy Court, and the outcome of objections, both those that have been liquidated and the Plan Proponents' estimate of such outcomes, and Claims that are contingent, disputed, or unliquidated. Not all objections to Disputed Claims have been filed or finally adjudicated, and there still remain pending Causes of Action (including Avoidance Actions yet to be brought), the outcome of which will impact the ultimate amount of Allowed Claims and the amounts available for Distribution. The Debtors' basis for the estimated amount of Claims in each Class is set forth further below. Because the amounts set forth herein are estimates, the actual amounts of Allowed Claims could be different than the estimated amounts shown in the chart that follows.

| | |
|---|---|
| ***Non-Professional Administrative Expense Claims***<br>Estimated Amount: $5,408 to $424,366 | **Unimpaired**<br><br>**Estimated Recovery:** Payment of the Allowed amount of each Non-Professional Administrative Expense Claim in full in cash. |
| ***Professional Administrative Expense Claims***<br>Estimated Amount: $1,445,000 | **Unimpaired**<br><br>**Estimated Recovery:** Payment of the Allowed amount of each Professional Administrative Expense Claim in full in cash. |
| ***WARN Act Administrative Expense Claim***<br>Estimated Amount: $0.00 to $5,901,397 | **Unimpaired**:<br>If the Holder of a WARN Act Administrative Expense Claim timely opts out of the Employee Settlement set forth in Section 6.1 of the Plan and obtains a Final Order that such Holder's WARN Act Claim is an Allowed WARN Act Administrative Expense Claim, which will be opposed by the Debtors and the Plan Administrator, such Holder shall be paid in full pursuant to Section 6.2 of the Plan following Allowance by a Final Order of such WARN Act Administrative Expense Claim.<br><br>**Estimated Recovery:** Payment of the Allowed amount of each WARN Act Administrative Expense Claim in full in cash. |
| ***Class 1: Priority Non-Tax Claims***<br>Estimated Amount: $0.00 | **Unimpaired**:<br>In full satisfaction, release, and discharge of and in exchange for each Allowed Priority Non-Tax Claim, the Holder thereof shall receive payment in full, in Cash, on the later to occur of: (x) the Effective Date; or (y) in accordance with Section 6.4 of the Plan after Allowance of such Class 1 Claim<br><br>**Estimated Recovery:** Payment of the Allowed amount of each Class 1 Claim in full in cash. |
| ***Class 2 –Priority Employee Claims (Sub Classes of Priority Employee Claims)***<br>Estimated Amount: $321,402 to $4,525,615 | **Unimpaired**:<br>If the Holder of a Priority Employee Claim timely opts out of the Employee Settlement set forth in Section 6.1 of the Plan and thereafter establishes that such Holder's Employee Claim is an Allowed Priority Employee Claim by a Final Order (which as noted will be opposed by the Debtors and the Plan Administrator), then in full satisfaction, release, discharge of and in exchange for each Allowed Priority Employee Claim, the Holder thereof shall receive payment in full, in Cash, on the later to occur of: (x) the Effective Date; or (y) in accordance with Section 6.6 of the Plan after Allowance of such Class 2 Claim by Final Order.<br><br>**Estimated Recovery:** Payment of the Allowed amount of each Class 2 Claim in full in cash. |
| ***Class 3: Secured Claims***<br>Estimated Amount: $393,945 | **Unimpaired**:<br>In full satisfaction, release, discharge of and in exchange for each Allowed Secured Claim, each Holder of an Allowed Secured Claim shall receive, at the discretion of the Plan Administrator, (a) the return of property securing such Holder's Secured Claim or (b) payment in full, in Cash, on the on the later to occur of: (x) the Effective Date; or (y) pursuant to Section 6.4 of the Plan after Allowance of such Class 3 Claim.<br><br>**Estimated Recovery:** At the discretion of the Plan Administrator, (a) the return of property securing such Holder's Secured Claim or |

| | |
|---|---|
| | (b) Payment of the Allowed amount of each Class 3 Claim in full in cash. |
| *Class 4: Secured Claim of CMS*<br>      Estimated Amount: $850,000 | **Unimpaired**:<br>CMS has a reserve account established for it from the proceeds of the sale to Stirling described below.  If Allowed, in full satisfaction, release, discharge of and in exchange for the Allowed Claim of CMS, if any, CMS shall have the Allowed Secured Claim of CMS satisfied in full, in Cash, on the later to occur of (x) the Effective Date; or (y) pursuant to Section 6.4 of the Plan after Allowance of such Class 4 Claim.<br><br>**Estimated Recovery:** Payment of the Allowed amount of each Class 4 Claim in full in cash. |
| *Class 5: CCG Unsecured Claim*<br>      Estimated Amount: $175,592,443 | **Impaired:**<br>In full satisfaction, release, discharge of and in exchange for the CCG Unsecured Claim, CCG and the Plan Proponents agree that, for purposes of the Plan, CCG holds an Allowed Claim in the amount of $175,592,443.00 (the "CCG Unsecured Claim").  Notwithstanding the agreement concerning the total amount owing in respect of the CCG Unsecured Claim, in view of certain objections that the Plan Proponents believe exist with respect to the CCG Unsecured Claim, CCG and the Plan Proponents have agreed to a compromise and settlement in respect of the distribution to the Holders of Allowed General Unsecured Claims, including CCG, that is being implemented by the Plan.  Specifically, the compromise and settlement provides for CCG to receive a Distribution equal to 50% of any Distribution to Holders of Unsecured Claims.<br><br>**Estimated Recovery:** 0.9% to 2.8% |
| *Class 6:   Unsecured Employee Claims (Sub Classes of Unsecured Employee Claims)*<br>      Estimated Amount: $1,373,091 to $3,070,275 | **Impaired:**<br>If the Holder of an Employee Unsecured Claim opts out of the Employee Settlement set forth in Section 6.1 of the Plan, by submitting a timely filed and properly completed Class 6 Ballot making such election, and thereafter establishes that such Holder's Employee Claim is an Allowed Employee Unsecured Claim by Final Order (which will be opposed by the Debtors and the Plan Administrator), such Holder shall receive a Pro Rata Unsecured Distribution on the later to occur of (x) the Effective Date or (y) pursuant to Section 6.6 of the Plan after Allowance of such Class 6 Claim in a Final Order.<br><br>**Estimated Recovery:** 10.7% to 31.6% |
| *Class 7: General Unsecured Claims*<br>      Estimated Amount:  $13,443,809 to $14,256,711 | **Impaired:**<br>In full satisfaction, release, discharge of and in exchange for each General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive a Pro Rata Unsecured Distribution on the later to occur of (x) the Effective Date or (y) the Allowance of such Class 7 General Unsecured Claim pursuant to Section 6.5 of the Plan<br><br>**Estimated Recovery:** 10.7% to 31.6% |
| *Class 8 – Interests* | **Impaired**<br><br>**Estimated Recovery:** 0.0% |

**ARTICLE II:**
**HISTORY OF THE DEBTOR AND EVENTS LEADING TO CHAPTER 11**

**A.   Basis of Presentation.**

The description and history of the Debtors' businesses in this Article II is based upon representations made to the Debtors by former Employees, former counsel to the Debtors, and other agents and representatives of the Debtors.  The Debtors believe the information described below to be generally true and accurate; however the Debtors have not undertaken an independent audit or investigation of the facts and circumstances presented in this Article II.

**B.   The Debtors**.

Louisiana Medical Center and Heart Hospital, LLC ("**LHH**"), a North Carolina limited liability company was formed to develop, own, and operate an acute care hospital (the "Hospital") in Lacombe, Louisiana, located on the Interstate 12 corridor on the "North Shore" of New Orleans, at 64030 Hwy 434, Lacombe, LA  70445.  The Hospital opened as a Cardiology and Spine Center in 2003 with 19 physician partners specializing in all aspects of cardiology and cardiovascular surgery.  In 2007, eight additional physicians were added as partners, bringing the total number of physician partners to 27.

LMCHH PCP LLC (the "**Physicians Group**"), a Delaware limited liability company, was formed to facilitate LHH's goal of providing a diversified offering of acute care specialties and to enable it to satisfy patient needs.  The Physicians Group formally associated first-class physicians and physician practice groups with LHH's core operations.  In view of the symbiotic relationship between the Physicians Group and the Hospital's operations, the Hospital and the Physicians Group began to operate as one consolidated entity with the expenses of the Physicians Group being funded by the Hospital, using revenue generated by both Debtors.

**C.   The Debtors' Prepetition Growth**

St. Tammany Parrish, where the Hospital is located, escaped the devastation of Hurricane Katrina causing LHH and the Physicians Group to experience unprecedented market growth as a result of relocation of residents from New Orleans to the "North Shore."  While an increase in population expanded LHH's potential patient base, due to its limited initial service lines, LHH was not prepared to fulfill the full range of healthcare needs that the growing population demanded.

To address the growing population's patient-care needs, in 2007, LHH undertook a physical and image expansion to: (i) boost access to acute patients; (ii) meet the expanded population's expectations, and (iii) build a franchise opportunity as a mainstream hospital.  As part of its image expansion and to communicate its transition into a full-service and mainstream hospital and surgical care center, in 2007, LHH changed its name to Louisiana Medical Center and Heart Hospital.  In May 2009, LHH completed its $40 million expansion

of the Hospital and its diversification of medical staff to include non-cardiac services. The expansion more than tripled the Hospital's patient capacity by adding 120 beds, a 109,000-square-foot four-story patient tower, new operating rooms, twice as many emergency room beds and a full-modality, high-technology diagnostic imaging suite in the emergency center that includes a new MRI machine. The first 79 beds from the expansion were licensed in spring 2009.

**D.      The Debtors' Acquisition by Current Affiliates.**

On or about July 7, 2004, MedCath Finance and LHH entered into that certain Real Estate Note and Loan Agreement (the "**MedCath Note**" and collectively with all amendments, restatements, supplements, modifications, mortgages, assignments of leases and rents and other related documents, the "**MedCath Loan Documents**") to refinance the construction loan LHH incurred in connection with the construction on the Hospital related to the expansion. The MedCath Loan Documents, including the MedCath Note, were secured by a mortgage in the Hospital and the MOBs (defined below) pursuant to that certain Mortgage, Assignment of Lease and Rents and Security Agreement between MedCath and LHH.

On or about September 30, 2011, Cardiovascular Care Group, Inc. ("**CCG**") through a wholly-owned subsidiary, CCG of Louisiana, LLC ("**CCG LA**"), acquired all of the direct and indirect Interests of LHH owned by MedCath Corporation ("**MCC**"), Louisiana Hospital Management, LLC ("**Hospital Management**") and MedCath Financing Company, LCC ("**MedCath Finance**" and collectively with MCC and Hospital Management, "**MedCath**") and the outstanding loans between LHH and MedCath Finance pursuant to that certain Debt and Equity Purchase Agreement (the "**Acquisition**").

CCG's Acquisition of the direct and indirect Interests in the Debtors was in furtherance of its corporate vision to build a world class network of cardiovascular specialty hospitals with an integrated delivery system, delivering optimal patient-focused healthcare across the entire continuum of care for patients with cardiovascular diseases. Through the Acquisition, CCG sought to establish LHH as "The Cardiovascular Center of Excellence" in the North Shore region of New Orleans by (i) integrating a multi-disciplinary team of cardiovascular physicians into LHH's preexisting team; (ii) implementing a system of outreach clinics in surrounding communities to drive an increase in admissions; (iii) developing strategic relationships with Louisiana State University's residency programs; (iv) establishing strategic relationships with Bogalusa Medical Center; and (v) building upon the Debtors' non-cardiovascular lines.

Immediately prior to the Acquisition, LHH was indebted to MedCath in an amount in excess of $81 million. In connection with the Acquisition, MedCath converted a portion of the indebtedness owing to it into equity in LHH, thereby increasing its ownership interest to 95.4% of the outstanding membership Interests in LHH and reducing the outstanding amount owing to MedCath to $21,763,903 (the "**MedCath Debt**"). The MedCath Debt, now held by CCG, remains outstanding and accrues interest monthly at a fixed rate of 7.50%.

On December 12, 2011, following the Acquisition, CCG provided supplemental working capital to the Debtors pursuant to that certain Demand Note between CCG and LHH in the principal amount of $15,000,000 (as amended, modified, and supplemented over time, the "**CCG Demand Note**").  Through several amendments, the allowed outstanding principal amount of the CCG Demand Note was increased prepetition to $105,000,000.

## E.      MidCap Debt

In 2014, LHH entered into a revolving line of credit with MidCap Financial, LLC ("**MidCap**") in the amount of $12,000,000 (the "**MidCap Revolver**").  The MidCap Revolver bears interest at a variable rate based on the greater of the 1-month LIBOR rate or 1.50% plus an applicable margin of 4.25%.  The total amount owing under the MidCap Revolver (the "**MidCap Indebtedness**") is secured by a first-priority lien on substantially all of the Debtors' assets.

## F.      Prepetition Indebtedness

As of the Petition Date, the Debtors' debt structure included the following:

- **MidCap Indebtedness:**  The Debtors owed approximately $6,729,460.83.
- **MedCath Debt held by CCG:** The Debtors owed approximately $21,763,903.00 plus accrued and unpaid interest of $11,055,976.00.
- **CCG Demand Note:** As of January 18, 2017, the amount owing under the CCG Demand Note was $104,342,442 plus accrued and unpaid interest of $20,300,745.00.
- **Capital Leases:** The Debtors owed approximately $263,000.00 on capital leases for equipment used at the Hospital.
- **Unpaid Management fees:** The Debtors owed approximately $18,129,377.00 in accrued and unpaid management fees.
- **Unpaid Trade Debt:**  As of the Petition Date, the Debtors owed an estimated $11,539,399 to trade creditors.

## ARTICLE III:
## PRE-BANKRUPTCY EVENTS

## A.      Basis of Presentation

The description of pre-bankruptcy events of the Debtors contained in this Article III is based upon representations made to the Debtors by former Employees, former counsel to the Debtors, other agents and representatives of the Debtors, prior disclosures filed in these Bankruptcy Cases, and public filings made by the Debtors.  The Debtors believe the information described below to be generally true and accurate; however, the Debtors have not undertaken an independent audit or investigation of the facts and circumstances presented in this Article III.

**B.     The Debtors' Pre-Bankruptcy Losses**

Notwithstanding the growth of population in the North Shore and the Debtors' proven track record of providing excellent treatment of cardiovascular disease and injuries affecting the spine, the Debtors failed to generate sufficient revenue to cover operating costs. Although the Debtors implemented a physical and image expansion, the expansion did not create the anticipated growth in revenue and the cost-savings measures implemented by the Debtors' management failed to result in profitability. For the three years preceding the Debtors' bankruptcy filings, the Debtors' yearly combined losses exceeded $20 million.

**C.     Retention of Financial Advisor and Pre-Bankruptcy Restructuring Alternatives**

In light of the Debtors continued financial losses, on September 15, 2016, the Debtors engaged SOLIC to serve as financial advisor to identify viable strategic alternatives involving the Hospital and related assets and operations, including identifying opportunities for the sale of the Hospital's facility, real estate, equipment, supplies, contracts, and accounts receivable (a "**Potential Transaction**"). In furtherance of a Potential Transaction, SOLIC engaged in an extensive marketing process, working with several prospective buyers over a period of several months. As a result of SOLIC's efforts, in early January 2017, the Debtors received a non-binding letter of intent (the "**Letter of Intent**") from a third party concerning the sale of the Hospital as a going concern. After receiving the Letter of Intent, the Debtors, SOLIC, and the third party conducted multiple site visits and engaged in in-depth substantive discussions concerning the Letter of Intent and an acceptable definitive agreement concerning the sale of the Hospital. In light of the Letter of Intent and the ongoing discussions with the third party, the Debtors scheduled a Board Meeting for January 19, 2017, to consider the Letter of Intent and the anticipated successful conclusion of the Potential Transaction.

**D.     Significant and Unforeseen Pre-Bankruptcy Circumstances**

On January 19, 2017, immediately preceding the Debtors' board meeting scheduled for that evening, the third party abruptly and unexpectedly informed the Debtors that it would not proceed with an acquisition of the Hospital. On or about the same time, the Debtors were also informed that the Debtors would no longer be able to draw on the CCG Demand Note to fund operations. As a result of these notices, at the January 19, 2017 board meeting, the Board unanimously approved the Debtors' retention of Neil Luria as the Debtors' Chief Restructuring Officer ("**CRO**") and tasked him with implementing the wind down of the Debtors' operations as expeditiously as Louisiana law permitted, and liquidating substantially all of the Debtors' assets. In furtherance of the wind-down and liquidation, on January 30, 2017 (the "**Petition Date**"), both Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the District of Delaware. The Debtors' cases were transferred to the Bankruptcy Court on February 14, 2017.

At the time the Debtors implemented their liquidation, the Debtors and the CRO understood that certain aspects of the Hospital would need to remain operational for a period of not less than thirty (30) days and that certain scheduled surgeries and procedures could not

be cancelled without jeopardizing patient care and/or lives. Nevertheless, as soon as the Debtors obtained authority from the relevant Louisiana state authorities (on or about February 5, 2017), the Debtors closed the Hospital's emergency department and soon thereafter, stopped admitting patients and providing patient care services. The last patient was discharged from the Hospital on February 10, 2017. By February 28, 2017, the Debtors had also ceased all operations at their satellite facilities. The Debtors have neither admitted patients nor provided patient care services in any capacity since February 28, 2017, other than the provision of management services through independent contractor agreements with certain physicians during March and April of 2017 that facilitated the Debtors' liquidation.

**E.      Termination of the Debtors' Employees**

On January 27, 2017, after the Debtors' board authorized the retention of the CRO and the wind-down of the Debtors' operations, the Debtors (at the direction of the Debtors' advisors) started to finalize and, thereafter, mailed notices to all of their Employees, at their home address of record, of the Debtors' shut down and liquidation (individually a "WARN Notice," together, the "**WARN Notices**"). The Debtors also provided notice to its employees of their planned shut-down, immediately preceding the Debtors' bankruptcy filing, through an email from LHH's Chief Executive Officer to all of the Debtors' Employees.

**ARTICLE IV:**
**DESCRIPTION OF THE PLAN**

**A.      Designation and treatment of unclassified Non-Professional Administrative Expense Claims, Professional Administrative Expense Claims, WARN Act Administrative Expense Claims, and Priority Tax Claims.**

**1.      Non-Professional Administrative Expense Claims.**

All Administrative Expense Claims arising between July 1, 2017 and the Effective Date ("**Supplemental Administrative Expense Claims**") must be filed no later than thirty (30) days after the Effective Date of the Plan. This includes all Administrative Expense Claims other than Claims under section 503(b)(9) of the Bankruptcy Code,[5] which were subject to the July 10, 2017 bar date, and Administrative Expense Claims accruing prior to July 1, 2017, which were subject to a July 28, 2017 bar date. Any Supplemental Administrative Expense Claim that is not timely filed will be forever barred by confirmation of the Plan without the need for any party to file an objection or other pleading.

All Non-Professional Administrative Expense Claims are subject to being Allowed or Disallowed by the Bankruptcy Court if an objection is filed thereto. Under the Plan, the Plan Administrator must file objections to any asserted Non-Professional Administrative Expense

---

[5]      Under Section 503(b)(9) of the Bankruptcy Code, a Person who delivered goods to the Debtor within twenty (20) days of the Petition Date, may be entitled to Administrative Expense Priority with respect to the value of the goods received by the Debtor.

Claim within 120 days of the Effective Date or the filing of the Non-Professional Administrative Expense Claim, whichever is later. Non-Professional Administrative Expense Claims that are ultimately Allowed by the Bankruptcy Court will be paid in full and in Cash in accordance with Article III of the Plan. These distribution procedures are described in greater detail in Article 4.H of this Disclosure Statement.

The Debtors estimate that the total Face Amount of Non-Professional Administrative Expense Claims will be between $5,408 and $424,366 through the Effective Date of the Plan based upon those that have been filed to date and the Debtors' estimate of those that have not been filed to date, but may later be asserted. Because the Bar Date for some Non-Professional Administrative Expense Claims will not occur until after the Effective Date of the Plan and all Non-Professional Administrative Expense Claims are subject to objection, the actual number and amount of Non-Professional Administrative Expense Claims may be materially different from the Debtors' estimate.

### 2. Professional Administrative Expense Claims

Unless otherwise agreed by such Holder, the Professionals who hold Professional Administrative Expense Claims shall receive payment in full, in Cash, of any unpaid portion of such Allowed Professional Administrative Expense Claims subject to the provisions of Sections 328, 330, 331 and 503(b) of the Bankruptcy Code, the Interim Compensation Order and the Plan, as soon as practicable after Bankruptcy Court approval thereof. The Debtors estimate that the total Face Amount of Professional Administrative Expense Claims will be approximately $1,455,000 through the Effective Date of the Plan.

### 3. WARN Act Administrative Expense Claims

If the Holder of a WARN Act Administrative Expense Claim timely opts out of the Employee Settlement set forth in Section 6.1 of the Plan and obtains a Final Order that such Holder's WARN Act Claim is an Allowed WARN Act Administrative Expense Claim, which will be opposed by the Debtors and the Plan Administrator, such Holder shall be paid in full pursuant to Section 6.2 of the Plan following Allowance by a Final Order of such WARN Act Administrative Expense Claim. The Plan Proponents estimate that the total Amount of WARN Act Administrative Expense Claims will be $0.00, but the WARN Act Claimants could be Allowed, through trial and over objection, an amount that is approximately $5,901,397 through the Effective Date of the Plan.

### 4. Priority Tax Claims.

All Priority Tax Claims are subject to the July 10, 2017, Bar Date that has already passed. Priority Tax Claims must be Allowed before they are paid. Under the Plan, the Plan Administrator must file objections to any asserted and timely filed Priority Tax Claim within 120 days of the Effective Date or the filing of the Priority Tax Claim, whichever is later. Priority Tax Claims that are Allowed by Final Order will be paid in full and in Cash in accordance with Articles III and IV of the Plan. These distribution procedures are described in greater detail in Article IV.H of this Disclosure Statement.

The total Face Amount of Priority Tax Claims is approximately $0.00. Because all Priority Tax Claims are subject to objection, the Allowed Amount of Priority Tax Claims may be materially different from this amount.

**B.      Classification and treatment of Claims and Interests.**

**1.      Designation of Classes.**

Section 1123(a)(1) of the Bankruptcy Code requires that the Plan Proponents designate Classes of Claims and Interests, other than Administrative Expense Claims and Priority Tax Claims, consistent with section 1122 of the Bankruptcy Code. The Plan therefore designates such Classes of Claims and Interests. The classification set forth in the Plan is applicable for purposes of voting, Distribution and confirmation of the Plan. A description of the classification of Claims and Interests is set forth below.

Set forth below are the Classes of Claims and Interests that are Impaired and Unimpaired within the meaning of section 1124 of the Bankruptcy Code and that are entitled to vote on the Plan. Only certain Impaired Classes may vote on the Plan. Unimpaired classes are deemed to accept the Plan and may not vote. Impaired classes that will not receive or retain any property under the Plan are deemed to reject the Plan and are not entitled to vote.

**2.      Classification and Treatment of Classified Claims and Interests.**

**a.      Unimpaired Classes – Not entitled to vote and deemed to accept.**

*Class 1:  Priority Non-Tax Claims*.  Class 1 consists of all Priority Non-Tax Claims against the Debtors other than WARN Act Claims and Priority Employee Claims. Claims in Class 1 are Unimpaired. Holders of Claims in Class 1 will be deemed to accept the Plan and are not entitled to vote to accept or reject the Plan. In full satisfaction, release, and discharge of and in exchange for each Allowed Priority Non-Tax Claim, the Holder thereof shall receive payment in full, in Cash, on the later to occur of: (x) the Effective Date; or (y) in accordance with Section 6.4 of the Plan after Allowance of such Class 1 Claim.

*Class 2 –Priority Employee Claims (Sub Classes of Priority Employee Claims)*.  If a Holder of a Priority Employee Claim opts out of the Employee Settlement, such Holder's Class 2 Priority Employee Claim shall be classified in a separate sub-Class of Class 2. Claims in Class 2 are Unimpaired. Holders of Claims in Class 2 will be deemed to accept the Plan and are not entitled to vote to accept or reject the Plan. While Claims in Class 2 are designated as Unimpaired, such designation assumes that the Holder of a Priority Employee Claim in such sub-Class first timely opts out of the Employee Settlement set forth in Section 6.1 of the Plan, by submitting a timely filed and properly completed Class 6 Ballot making such election, and thereafter establishes in a Final Order, which will be opposed by the Debtors and the Plan Administrator, such Holder's entitlement to an Allowed Priority Employee Claim. If the Holder of a Priority Employee

Claim timely opts out of the Employee Settlement set forth in Section 6.1 of the Plan and thereafter establishes that such Holder's Employee Claim is an Allowed Priority Employee Claim by a Final Order (which as noted will be opposed by the Debtors and the Plan Administrator), then in full satisfaction, release, discharge of and in exchange for each Allowed Priority Employee Claim, the Holder thereof shall receive payment in full, in Cash, on the later to occur of: (x) the Effective Date; or (y) in accordance with Section 6.6 of the Plan after Allowance of such Class 2 Claim by Final Order.

*Class 3:  Secured Claims*.  Class 3 consists of Holders of Secured Claims against the Debtors.  Claims in Class 3 are Unimpaired.  Holders of Claims in Class 3 will be deemed to accept the Plan and shall not be entitled to vote to accept or reject the Plan.  In full satisfaction, release, discharge of and in exchange for each Allowed Secured Claim, each Holder of an Allowed Secured Claim shall receive, at the discretion of the Plan Administrator, (a) the return of property securing such Holder's Secured Claim or (b) payment in full, in Cash, on the the later to occur of: (x) the Effective Date; or (y) pursuant to Section 6.4 of the Plan after Allowance of such Class 3 Claim.  The holders of Class 3 Secured Claims include the following:

| | |
|---|---|
| FAUNTLEROY LATHAM WELDON - | $23,463.18 |
| OLD MASTER & SON - | $333,034.00 |
| RED HAWK FIRE & SECURITY - | $4,983.80 |
| STAR SERVICE - | $27,468.50 |
| BRINSON PLUMBING - | $4,995.48 |

These Claims are purported Holders of Liens whose Liens, if valid, attached to the proceeds of the sale of the Debtors' assets to Stirling described herein; and it is expected that the Debtors or the Plan Administrator will object to these Claims.  If and when Allowed, they will then be paid as described above.  Holders of Class 3 Secured Claims also include those Holders who hold valid Claims for reclamation of goods.  Goods subject to valid claims of reclamation were not included in the sale of the Debtors' assets to Stirling described herein.  Accordingly, the liens (if any) of Holders of valid reclamation Claims did not attached to the proceeds of the sale of the Debtors' assets to Stirling described herein.

*Class 4:  Secured Claim of CMS.*  Class 4 consists of the Secured Claim of CMS against the Debtors.  The Claim in Class 4 is Unimpaired.  The Holder of the Claim in Class 4 will be deemed to accept the Plan and shall not be entitled to accept or reject the Plan.  CMS has a reserve account established for it from the proceeds of the sale to Stirling described herein.  The Secured Claim of CMS claim has not been agreed to or otherwise Allowed.  If Allowed, in full satisfaction, release, discharge of and in exchange for the Allowed Claim of CMS, if any, CMS shall have the Allowed Secured Claim of CMS satisfied in full, in Cash,

on the later to occur of (x) the Effective Date; or (y) pursuant to Section 6.4 of the Plan after Allowance of such Class 4 Claim. The Debtors or the Plan Administrator anticipate objecting to the Secured Claim of CMS if it is not agreed to.

**b. Impaired Classes – Entitled to vote.**

*Class 5: CCG Unsecured Claim.* Class 5 consists of the CCG Unsecured Claim against the Debtors. The Claim in Class 5 is Impaired. The Holder of the Claim in Class 5 shall be entitled to accept or reject the Plan. In full satisfaction, release, discharge of and in exchange for the CCG Unsecured Claim, CCG and the Plan Proponents agree that, for purposes of the Plan, CCG holds an Allowed Claim in the amount of $175,592,443.00 (the "CCG Unsecured Claim"). Notwithstanding the agreement concerning the total amount owing in respect of the CCG Unsecured Claim, in view of certain objections that the Plan Proponents believe exist with respect to the CCG Unsecured Claim, CCG and the Plan Proponents have agreed to a compromise and settlement in respect of the distribution to the Holders of Allowed General Unsecured Claims, including CCG, that is being implemented by the Plan. Specifically, the compromise and settlement provides for CCG to receive a Distribution equal to 50% of any Distribution to Holders of Unsecured Claims. CCG and the Plan Proponents believe that this compromise and settlement adequately takes into account the costs and delays associated with litigation, the risks associated with litigation and the delay that the Holders of General Unsecured Claims will experience waiting for potential Distributions.

In consideration of the compromise and settlement of the Allowed CCG Unsecured Claim, the Debtors, on behalf of the Debtors and their estates, and the Creditors Committee (the "Releasing Parties") shall release and agree not to sue (i) the Debtors' Released Parties, (ii) present and former members of the Debtors' Board of Directors (iii) Debtors' members, or managers, (iv) the present and former officers and employees of the Debtors, (v) CCG, (vi) MedCare, and (vii) any attorneys, financial advisors, investment bankers, accountants, consultants, insurers, Affiliates or other professionals of the persons and parties described in clauses (i) through (vii) in respect of any Claim held by or through the Debtors.

*Class 6: Unsecured Employee Claims (Sub Classes of Unsecured Employee Claims).* If a Holder of an Unsecured Employee Claim timely opts out of the Employee Settlement, such Holder's Class 6 Unsecured Employee Claim shall be classified in a separate sub-Class of Claims in Class 6. Claims in Class 6 are Impaired. Holders of Claims in Class 6 shall be entitled to accept or reject the Plan. If the Holder of an Employee Unsecured Claim opts out of the Employee Settlement set forth in Section 6.1 of the Plan, by submitting a timely filed and properly completed Class 6 Ballot making such election, and thereafter

establishes that such Holder's Employee Claim is an Allowed Employee Unsecured Claim by Final Order (which will be opposed by the Debtors and the Plan Administrator), such Holder shall receive a Pro Rata Unsecured Distribution on the later to occur of (x) the Effective Date or (y) pursuant to Section 6.6 of the Plan after Allowance of such Class 6 Claim in a Final Order.

_Class 7: General Unsecured Claims_. Class 7 consists of all General Unsecured Claims against the Debtors, other than Unsecured Employee Claims and the Unsecured CCG Claim. Claims in Class 7 are Impaired. Holders of Claims in Class 7 shall be entitled to accept or reject the Plan. In full satisfaction, release, discharge of and in exchange for each General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive a Pro Rata Unsecured Distribution on the later to occur of (x) the Effective Date or (y) the Allowance of such Class 7 General Unsecured Claim pursuant to Section 6.5 of the Plan.

Notwithstanding any provision in the Plan to the contrary, to the extent and only to the extent a General Unsecured Claim is subordinated under applicable law, including but not limited to, Sections 510(a), (b) or (c) of the Bankruptcy Code or recharacterized under applicable law, including but not limited to, Section 105 of the Bankruptcy Code, any Distributions on account of such General Unsecured Claim shall be made as provided in the Order of the Bankruptcy Court governing such Claim.

**c.      Impaired Classes – Not entitled to vote and deemed to reject.**

_Class 8 - Interests._ An Interest is any ownership or management interest or share in Debtors (including, without limitation, all options, warrants or other rights to obtain such an interest or share in Debtors) whether preferred, common, voting, or denominated "stock" or a similar security issued prior to the Effective Date of the Plan. All Interests will be canceled, annulled and voided, and Holders of Interests will receive no Distribution under the Plan or in the Bankruptcy Case on account of their Interests.

**3.      Claims May Be in More Than One Class.**

A Claim is part of a particular Class or subclass only if the Claim qualifies within the definition of that Class or subclass and the Claim is part of a different Class or subclass if the remainder of the Claim qualifies within the description of a different Class or subclass. A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent the Claim is an Allowed Claim or an Allowed Interest and the Claim has not been paid, released or otherwise settled prior to the Effective Date.

**4.      Impairment, classification, and related disputes.**

If a Holder of a Claim or Interest disputes the classification of the Claim or Interest or the treatment of a Class (including whether a Class is Impaired or Unimpaired), the Holder of the Claim or Interest may file a motion with the Bankruptcy Court to challenge and establish

the classification, characterization or treatment of the Claim or may file an objection to confirmation of the Plan.  The deadline for filing any such motion is the deadline set by the Bankruptcy Court to object to confirmation of the Plan.  If the Bankruptcy Court does not grant the motion or otherwise confirms the Plan without conditioning confirmation upon any grounds raised in such a motion or objection, the treatment, characterization, and classification set forth in the Plan will be binding upon all Holders of Claims and Interests.

**C.      Acceptance or rejection of the Plan; Cramdown.**

**1.      Classes and Claims Entitled to Vote.**

Creditors in Classes 5, 6 and 7 are entitled to vote on the Plan.  Holders of Claims in Classes 1 through 4 are not Impaired under the Plan and, therefore, are presumed to accept the Plan.  Holders of Interests in Class 8 will not receive or retain property under the Plan and are therefore presumed to reject the Plan and are not entitled to vote on the Plan.

**2.      Acceptance by a Class of Claims.**

Except as provided in section 1126(e) of the Bankruptcy Code, a Class of Claims will accept the Plan if Holders of one half in number and two-thirds in amount of Claims voting in that Class timely and properly vote to accept the Plan.

**3.      Cramdown**.

Because Class 8 is presumed to have rejected the Plan, the Plan Proponents request that the Bankruptcy Court confirm the Plan notwithstanding the rejection by Class 8, or any other Class that votes to reject the Plan, on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to any Class that rejects the Plan.

**D.      Plan Compromises and Settlements**

**1.      The Employee Settlement**

As of the Petition Date, Employees held various Employee Claims (as defined in this Disclosure Statement and the Plan, and further explained below, including Claims arising out of the WARN Act) against the Debtors and the Employee Released Parties.  Although the Debtors dispute their liability for many of the Employee Claims, the Debtors understand that these Employee Claims include potential Claims for paid days off, Claims relating to their medical plan, Claims under various employee agreements/programs, Claims under the Louisiana Wage Payment law, and Claims under the WARN Act.  These claims were asserted against the Debtors and the Employee Released Parties in two Uncertified WARN Class Actions filed against the Debtors by Plaintiffs Barbara Kusnick and Rose H. Delaney on behalf of themselves and a putative class of others similarly situated, in the action entitled *Kusnick, et al. v. LMCHH PCP, LLC, et al.* (Adv. Proc. No. 17-01021) (the "**Kusnick Litigation**") and by Plaintiffs Terry King, April Eschete, Leonida Galloway, Marvette Leblanc-Clarkston, John Fayard, III, Bambilynn Jordan, Lou Ann Lea, Monica Smith, and Marlena Ross, on behalf of

themselves and a putative class of others similarly situated, in the action entitled *King et al., v. LMCHH PCP, LLC, et al.* (Adv. Pro. No. 17-01024) (the "**King Litigation**").

On May 25, 2017, the Honorable Robert Summerhays conducted a mediation involving the Plan Proponents, CCG, Medcare, Fishman Haygood L.L.P. and Bruno and Bruno LLP (counsel of record in the King Litigation)[6] and Outten & Golden LLP (counsel of record in the Kusnick Litigation)[7] in respect of the Employee Claims and the CCG Unsecured Claim. Although the mediation did not result in a settlement on the issues being mediated that day. Judge Summerhays encouraged the parties to continue discussion of potential compromises and settlements and indicated that he would remain available for further mediations. With respect to Employee Claims, although the Plan Proponents sought to engage in ongoing discussions concerning the consensual resolution of Employee Claims, having realized that a resolution would not occur prior to the expiration of the Debtors' exclusive period to file the Plan, on June 29, 2017, the Plan Proponents filed their Original Plan.

The Original Plan included a proposed compromise and settlement of Employee Claims that, if accepted by all Holders of Employee Claims, would have provided the Holders of Employee Claims a near-immediate Distribution totaling $2,730,536.58 in the aggregate to Settling Employees[8] in full compromise, settlement, release, satisfaction, and discharge of the Employee Claims, if any, and without admitting or conceding liability to any Employee for any Employee Claim against the Debtors; including, without limitation, in respect of any WARN Act Administrative Expense Claim, Priority Employee Claim, WARN Act Claim, and for any and all other Claims of any kind held by Employees against the Debtors or any director, officer, successor, assignor, or other such person or entity or any Employee Released Party, each Settling Employee.

After the submission of the Original Plan, the Plan Proponents, CCG and MedCare engaged in further informal settlement communications with Fishman Haygood L.L.P. and Bruno and Bruno LLP, and Outten & Golden LLP. Although these informal discussions in furtherance of a consensual resolution did not result in a settlement, on July 24, 2017, the Honorable Robert Summerhays conducted a supplemental mediation with these parties in respect of the Employee Claims. Following the supplemental mediation, the Plan Proponents,

---

[6] The Plan Proponents are informed that in excess of 125 Employees have retained Fishman Haygood L.L.P. and Bruno and Bruno LLP to represent them with respect to Employee Claims.

[7] On July 13, 2017, the Bankruptcy Court issued an order appointing Outten & Golden as Interim Class Counsel. The King Plaintiffs have filed a motion for vacatur and reconsideration of that order.

[8] The aggregate amount set forth in the Employee Settlement Worksheet attached to the Original Plan reflected aggregate consideration of $2,727,163.56. Based on the Debtors' review, the Debtors confirmed that Employee No. 110346 was inadvertently excluded. Accordingly, the Plan Proponents revised the Employee Settlement Worksheet to provide for this Employee.

CCG and MedCare, on the one hand, and Fishman Haygood L.L.P. and Bruno and Bruno LLP, on the other hand, agreed to an improved proposed Employee Settlement that provides for an increase in consideration allocated to Settling Employees. Discussions between the Debtors and Outten & Golden LLC did not result in an exchange of offers nor their acceptance of the improved Employee Settlement. Specifically, in full compromise, settlement, release, satisfaction, and discharge of the Employee Claims, if any, and without admitting or conceding liability to any Employee for any Employee Claim against the Debtors and the Employee Released Parties; including, without limitation, in respect of any WARN Act Administrative Expense Claim, Priority Employee Claim, WARN Act Claim, and for any and all other Claims of any kind held by Employees against the Debtors or any director, officer, successor, assignor, or other such person or entity or any Employee Released Party, each Settling Employee shall receive two forms of consideration. First, Settling Employees shall receive the Employee Settlement Amount, set forth on the Employee Settlement Worksheet and on each Employee's Ballot. The Employee Settlement Amount will provide each Settling Employee with a Distribution of the Employee Settlement Amount on or before the date that is 30 days after the Effective Date. The Employee Settlement Amount payable to each Employee has been calculated by the Debtors, based on their reasonable independent analysis of the Employee Claims and the potential liability therefor, to be 50% of the Employee's estimated Priority WARN Act Claim plus 100% of the Employee's Priority PDO Claim plus 10% of the Employee's Remaining Employee Unsecured Claim each as calculated by the Debtors and otherwise set forth on the Employee Settlement Worksheet. If accepted by all Holders of Employee Claims, the Employee Settlement will provide the Holders of Employee Claims a near-immediate Distribution totaling $2,730,536.58 in the aggregate. The Employee Settlement Amount has been calculated by the Debtors on an employee-by-employee and claim-by-claim basis to be an estimation of each Holder's individual Employee Claim, should they have merit, a point vigorously disputed by the Plan Proponents.

In addition to the Employee Settlement Amount payable to each Settling Employee, to ensure that each Settling Employee receives the entire Employee Settlement amount without reduction for legal fees and related expense, each Settling Employee has been allocated a Pro Rata share of the aggregate WARN Act Fees on the Employee Settlement Worksheet.[9] The WARN Act Fee set forth on the Employee Settlement Worksheet shall be placed into a fund for the payment of legal fees of each Settling Employees as follows: (i) if the Settling Employee is represented by an attorney pursuant to a valid and binding engagement agreement dated and actually executed on or before August 3, 2017, that entitles such attorney to a portion of the Settling Employee's Distribution,[10] the Settling Employee shall be entitled to receive the WARN Act Fee allocated to such Settling Employee on the Employee Settlement

---

[9]     The WARN Act Fees represents 28.4% of the total amount attributable to a Settling Employee.

[10]     The Settling Employee shall be required to submit its engagement agreement to the Plan Administrator prior to receiving its Distribution.

Worksheet to satisfy such Settling Employee's obligation to its attorney[11] and (ii) if the Settling Employee is not represented by an attorney in accordance with a valid and binding engagement agreement dated and actually executed on or before August 3, 2017, that entitles such attorney to a portion of the Settling Employee's Distribution, the WARN ACT Fees allocated to such Settling Employee shall become part of the WARN Act Substantial Contribution Reserve. If an attorney maintains that she or he is entitled to a Claim against the Debtors pursuant to Sections 503(b)(3) and 503(b)(4) of the Bankruptcy Code on account of a substantial contribution that it made for the benefit of Settling Employees, the attorney shall be required to assert such a claim as provided in Section 5.1 of the Plan. The WARN Act Substantial Contribution Reserve shall be sole source available to satisfy any and all Allowed Claims seeking substantial contribution Claims for legal fees and expenses in connection with each Settling Employee Claim against the Debtors pursuant to Sections 503(b)(3) and 503(b)(4) of the Bankruptcy Code. The total amount payable to the Settling Employees, including amounts that are allocated to attorneys retained by the each Settling Employee or that may be awarded as an Administrative Expense Claim for making a substantial contribution, shall be no more than $3,800,000.00. Any amounts in the WARN Act Substantial Contribution Reserve not allowed and awarded by the Bankruptcy Court in a Final Order in respect of a timely motion for allowance shall revert to the Post-Effective Debtors and their Estates for further administration consistent with the Plan and to the extent (if any) required further orders from the Bankruptcy Court

**Any Employee who fails to timely opt out of the Employee Settlement on the Employee's timely submitted Class 6 Ballot shall be deemed to have accepted the compromise and settlement proposal detailed in Section 6.1 of the Plan and shall be deemed to be a Settling Employee and, in addition, shall be deemed to waive, discharge, and release the Employee Released Parties from all Employee Claims, including those arising out of or related to the WARN Act or any similar state or federal law, including, without limitation, all Employee Claims that are identified in, or could have been identified in, the Uncertified WARN Class Actions. The Employee Released Parties are the defendants in the Uncertified WARN Class Actions and, for the avoidance of doubt, include: (i) the Debtors; (ii) the present and former members of the Debtors' Board of Directors; (iii) the present and former officers and employees of the Debtors, (iv) the Creditors Committee and its past and present members (but only in their capacity as members of the Creditors Committee); (v) the Professionals; (vi) SOLIC as well as its employees who assisted or otherwise advised the Debtors; (vii) any attorneys, financial advisors, investment bankers, accountants, consultants, or other professionals of the parties described above, in clauses (i) through (vi) hereof; and (viii) CCG and MedCare and each of their Affiliates and subsidiaries, and their respective shareholders, partners, members, agents, advisors, officers, directors, attorneys, insurers, and.** The Debtors or

---

[11] The Plan Proponents are informed that the law firms of Fishman Haygood L.L.P. and Bruno and Bruno LLP have agreed to reduce the contingency fee owing by their clients from 33% to 28.4% to facilitate the Employee Settlement.

the Plan Administrator will Distribute the applicable Employee Settlement Amount to Settling Employees within 30 days of the Effective Date.

In the event an Employee affirmatively decides not to participate in the Employee Settlement by timely opting out of the Employee Settlement on its Class 6 Ballot, such Employee will not be a Settling Employee and will not be paid (i) the Employee Settlement Amount or (ii) the related WARN Act Fees potentially payable on behalf of each such non-Settling Employee and such amounts shall remain in the Estate for administration in accordance with the Plan. Instead, the Employee who timely opts out of the Employee Settlement will retain his Employee Claims and the ability to establish the validity and amount of such against the Debtors, their Estates and the Employee Released Parties on an individual basis. The Plan establishes Classes for each such Holder of an Employee Claim to ensure that such Employee Claim is classified and treated in the appropriate fashion in accordance with the Plan after it is allowed by a Final Order. If the Holder of an Employee Claim opts out of the Employee Settlement, the Plan provides that the Plan Administrator may object to such Holder's Claim, which is anticipated. If an objection is filed to an Employee Claim, the Holder of such Claim shall be required to obtain a Final Order Allowing such Employee Claim and, among other things, establishing the validity, priority and amount of such Employee Claim. **If the Holder of an Employee Claim timely opts out of the Employment Settlement set forth in Section 6.1 of the Plan, such Holder will <u>NOT</u> be deemed to waive, discharge, and release the Employee Released Parties from any Employee Claims**. **If the Holder of an Employee Claim opts out of the Employment Settlement, the offer of the Employee Settlement to such Holder shall automatically terminate upon the occurrence of the Effective Date.**

The rfailure to resolve Employee Claims represents a significant impediment to the timely Distribution of monies to Employees and the conclusion of the Bankruptcy Cases. As of the Petition Date, Employees held a number of contractual Claims against the Debtors relating to the Debtors "paid days off" policy, the Debtors' benefits and medical plans, and various employee agreements/programs. While the Debtors were prepared to honor and satisfy these Employee Claims in accordance with the Bankruptcy Code, their policies, and otherwise applicable law, the Debtors' ability to honor Employee Claims has been negatively affected by the commencement of the Uncertificated WARN Class Actions. In the WARN Class Actions, two law firms who specialize in filing class actions shortly after the occurrence of an event,[12] commenced lawsuits (the Uncertified WARN Class Actions) against the Debtors and the Employee Released Parties on behalf of a purported class of Employees asserting Claims under the WARN Act, Employee's employment agreements with the Debtors and Louisiana Law. While it appears that only a minority of the Debtors' Employees have retained one or more of the firms pursuing the Uncertified WARN Class Actions, the pendency of these lawsuits preclude the Debtors from making a timely Distribution of proceeds to Employees.

---

[12]    For example, on Sunday, February 5, 2017, less than six (6) days after the Debtors commenced their bankruptcy cases, the Debtors were named as defendants in a purported class action lawsuit.

While the Debtors' dispute the Claims asserted in the Uncertified WARN Class Actions, the Debtors believe that protracted litigation will not benefit Employees or the Debtors' Estates. Specifically, because the Uncertified WARN Class Actions assert claims that the Plan Proponents and the Plan Administrator are obligated to dispute – because they are not supported by applicable law and improperly prefer Employees over other creditors – monies otherwise available to satisfy Claims today will be reallocated to satisfy the expense associated with litigation. Similarly, time spent resolving the Uncertified WARN Class Actions in Court will only serve to delay Distributions to Employees. Accordingly, in furtherance of the Plan Proponents' fiduciary duties, desire to maximize recoveries for all stakeholders, and understanding that delayed Distributions do not benefit creditors, the Plan Proponents have incorporated into the Plan the proposed compromise and settlement of each and every Claim that an Employee may have against the Debtors and the Employee Released Parties in exchange for the expeditious payment to Employees of the Employee Settlement Amount in order to avoid the cost, delay, and risk of litigation.[13]

As set forth in the attached letter attached hereto as **Exhibit __** the improved proposed Employee Settlement is being supported by Fishman Haygood L.L.P. and Bruno and Bruno LLP (counsel of record in the King Litigation).[14] Critically, counsel to the King Plaintiffs have calculated that the net amount recoverable by each Employee under the Employee Settlement equates to an approximate 75% recovery of the amount they could recover if they successfully litigated their Employee Claims and had to pay one-third of their recovery in legal fees. The Plan as amended reflects the proposal to pay the WARN Act Fees, which will mean that all Settling Employees will net out the entire $2,730,536.58 proposed under the original Plan. Stated simply, each Settling Employee's attorney's fees will be paid from the increased amount ($1.07 million) agreed to under the improved Employee Settlement. In addition to the improved economic recovery for Settling Employees, value must also be recognized on account of the fact that, as a result of the Employee Settlement, Settling Employees will receive their Distribution shortly following the Effective Date of the Plan, rather than years down the road and then only if they are successful in litigation.

To assist Employees in their analysis of the Employee Settlement, the following is a high-level summary of the Claims asserted in the Uncertified WARN Class Actions and the

---

[13] The Plan Proponents understand that a majority of Employees have not retained any of the counsel involved with the Uncertified WARN Class Actions. Although it appears that a majority of Employees have not retained any of the counsel involved in the Uncertified WARN Class Actions, if the Uncertified WARN Class Actions result in a judgment against the Debtors, the Plan Proponents understand that counsel in the Uncertified WARN Class Actions will be entitled to a portion of the damages awarded to Employees thereby reducing the recovery of every Employee (including those who did not elect to retain the counsel).

[14] The Plan Proponents are informed that in excess of 125 Employees have retained Fishman Haygood L.L.P. and Bruno and Bruno LLP to represent them with respect to Employee Claims.

proposed compromise and settlement. The following includes comments provided by Fishman Haygood L.L.P. and Bruno and Bruno LLP.

### 1. Employee/WARN Act Claims

#### a. Claims Under the WARN Act

The WARN Act is intended to give workers and their families time to adjust to potential layoffs and to seek or train for new jobs. 20 C.F.R. § 639.1. It generally requires employers with more than 100 employees provide 60 days' notice prior to a mass layoff of employees or an office or plant closing. See 29 U.S.C. § 2102. To prove a WARN Act claim, a plaintiff must demonstrate that: (1) the defendant was "an employer;" (2) the defendant ordered a "plant closing" or "mass layoff;" (3) the defendant failed to give to the plaintiff sixty days' notice of the closing or layoff; and (4) the plaintiff is an "aggrieved" or "affected" employee. 29 U.S.C. §§ 2102, 2104; *see also In re TWL Corp.*, 712 F.3d 886, 897–98 (5th Cir. 2013).

#### b. Defenses to WARN Act Claims

Section 3(b) of the WARN Act provides three statutory exceptions to the 60-days' notice requirement, allowing employers to shorten the notice period if certain circumstances are shown. The reduced notice period applies to employers that:

1)    are forced to shut down as a direct result of a natural disaster ;

2)    are forced to shut down due to dramatic unforeseen business circumstances; or

3)    qualify as a faltering company when they believe in good faith that providing notice of a shutdown would hinder efforts to attract capital or new business to the workplace in question.

29 U.S.C. § 2102(b).

A judicially created fourth exception to the WARN Act, the liquidating fiduciary exception, also exists. The liquidating fiduciary exception applies where a company is in liquidation and therefore no longer operating as a business enterprise at the time it would have been required to provide WARN Act notice. *See generally*, *Official Comm. of Unsecured Creditors of United Healthcare Sys., Inc. v. United Healthcare Sys. (In re United Healthcare Sys., Inc.)*, 200 F.3d 170, 172-73 (3d Cir. 1999). The liquidating fiduciary exception removes the company from the definition of "employer" as defined under the WARN Act. Accordingly, unlike the three statutory exceptions, which simply reduce an employer's notice obligations, the liquidating fiduciary exception excludes the company from the purview of the WARN Act and the obligations thereunder. Id. at 179.

#### i) *Analysis and Summary of Proposed Employee Settlement*

The Debtors believe that they have no liability under the WARN Act because they, among other defenses available to them, qualify for both the liquidating fiduciary exception

and the unforeseeable business circumstances exception. The Debtors understand that the counsel in the Uncertified WARN Class Actions contend that neither exception applies. The Plan Proponents are prepared to contest the commencement of the Uncertified WARN Class Actions, because (i) a "class" action is not appropriate or permitted under the applicable federal rules and (ii) the Debtors have complete defenses.

Notwithstanding the Plan Proponents' belief that they will be able to successfully establish their defenses in litigation, the Plan Proponents similarly believe that litigating the Uncertified Warn Class Actions could take in excess of two (2) years and likely cost in excess of $1 million dollars. Accordingly, to determine whether a compromise and settlement could be used to resolve the Employee Claims, the Debtors analyzed their records to determine their potential liability to Employees and how such Claims would be treated under the Bankruptcy Code. Based on the independent analysis of the Debtors' CRO, and the assistance of the Debtors' advisors, the Debtors prepared a detailed worksheet reflecting the potential amount owing to Employees. The Debtors' analysis assumes that Employees would be able to establish a viable Claim under the WARN Act. The following provides a high-level summary from the Employee Settlement Worksheet.

| | | [A] Estimated Priority Pre-Petition PDO Accrued | [B] Remaining Estimated Priority WARN Claim | [C] Potential Estimated Unsecured WARN Claim | [D] Potential Unsecured PDO Claim | | | |
|---|---|---|---|---|---|---|---|---|
| Total | | $ 321,402.63 | $    4,204,212.80 | $1,697,184.10 | $    1,373,091.36 | | | |
| Proposed Settlement Methodology | | Allowed at 100.0% | Allowed at 50.0% | Allowed at 10.0% | Allowed at 10.0% | Net Settlement Amount | WARN Act Legal Fees | Total Settlement Amount |
| | | 100%*[A] | 50%*[B] | 10%*[C] | 10%*[D] | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] | | |
| Settlement Amount (Aggregate) | | $ 321,402.63 | $    2,102,106.40 | $ 169,718.41 | $     137,309.14 | $                               2,730,536.58 | $    1,069,463.42 | $    3,800,000.00 |

As set forth above, in calculating the total Claim that Employees may have under the WARN Act, the Debtors classify the WARN Act Claim as prepetition Unsecured Claims entitled to priority under Section 507(a)(4). The Debtors made this determination because (i) the Debtors' commenced their wind-down/liquidation process prior to the commencement of the Bankruptcy Cases; (ii) the Debtors served the WARN Act Notices by placing them in the mail prior to the commencement of the Bankruptcy Cases and (iii) the Debtors informed employees in an email from LHH's Chief Executive Officer that their jobs were being terminated hours before the Debtors actually filed for bankruptcy (collectively, the "**Prepetition Actions**"). Of note, the Debtors' calculation assumes that no Employee obtained a new job after being terminated by the Debtors during the period covered by the WARN Act; which would reduce the amount potentially owing to Employees. To the extant an Employee opts out of the Employee Settlement, the Plan Proponents and/or the Plan Administrator reserve all defenses.

ii)     *Priority under Section 507 of the Bankruptcy Code*

The application of Section 507 of the Bankruptcy Code is significant. Section 507(a) of the Bankruptcy Code delineates categories of claims that are entitled to priority Distribution in bankruptcy cases. In particular, Section 507(a)(4) provides fourth-level priority for "allowed unsecured claims, but only to the extent of $12,850 for each individual . . . earned within 180 days before the date of the filing of the petition . . . for wages, salaries, or

commissions, including vacation, severance, and sick leave pay earned by an individual." 11 U.S.C. § 507(a)(4)(A) (emphasis added). Ultimately, if a Claim is allowed as a Priority Claim, it will be entitled to payment in cash in full, up to the cap of $12,850.

When Section 507(a)(4) governs, "there is a maximum amount allowable per individual for a claim…any amount exceeding that limit is a general unsecured claim." *In re Powermate Holding Corp.*, 394 B.R. at 773; *see also In re Konidaris*, 87 B.R. 846, 854 (Bankr. E.D. Pa. 1988) (classifying the balance of prepetition wage claims beyond the statutory cap as unsecured); *In re Chicago Lutheran Hosp. Ass'n*, 75 B.R. 854, 856 (Bankr. N.D. Ill. 1987) (holding that the balance of any employee's claim for wages and benefits in excess of the statutory cap within the allotted prepetition is nothing more than a general unsecured claim entitled to no priority whatsoever).

On January 30, 2017, the Debtors filed a Motion for Entry of an Order Authorizing the Debtors to Pay Certain Prepetition Employee Wages (the "**Wage Motion**," Docket No. 6). The Bankruptcy Court for the District of Delaware issued an order on the Wage Motion on February 3, 2017 (the "**Wage Order**," Docket No. 42) granting the Wage Motion. The Wage Order provided the Debtors with authorization to pay their employees' salaries and hourly wages that accrued prior to the Petition Date, not to exceed the $12,850.00 amount afforded priority status pursuant to Section 507(a)(4) of the Bankruptcy Code in the aggregate. The Wage Order did not authorize the Debtors to pay Employees for PDO or other forms of compensation that may have accrued. The Debtors paid all prepetition salaries and hourly wages owing to their Employees pursuant to the Wage Order, including the Putative Class Plaintiffs. Because the Debtors have already disbursed amounts to the Putative Class Plaintiffs for prepetition salaries and hourly wages, any amounts owing for PDO or WARN Act damages must be categorized as general unsecured claims to the extent they would exceed the $12,850 statutory cap. In light of the amounts paid by the Debtors in accordance with the Wage Order, the Debtors estimate that the potential exposure to Employees for a Priority Claim under the WARN Act could total up to $4,204,212.80.

The Debtors understand that counsel in the Uncertificated WARN Class Actions disagree with the Debtors' classification of the potential WARN Act Claim under Section 507. First, the Debtors believe that counsel to the Uncertified WARN Class Actions will likely contend that the WARN Act Claims are not prepetition Unsecured Claims because the Prepetition Actions were not sufficient under the WARN Act and that the employees did not "receive" notice of the Debtors' planned shut-down and termination of the Employees' jobs. The Debtors disagree with these arguments. Nevertheless, assuming that (i) the Debtors are unsuccessful in establishing their complete defenses described above, (ii) counsel to the Uncertified WARN Class Actions are able to establish that the "class" of Employees are entitled to postpetition Claims, and (iii) the determinations survive the Debtors' appeal, the Debtors believe that these rulings could increase the amount owing to Employees in respect of the WARN Act from $4,204,212.80 to $5,901,396.90.

Second, the Debtors believe that counsel in the two Uncertificated WARN Class Actions will likely argue that the calculation of damages under the WARN Act should

commence from a later date than that used by the Debtors.  Again, the Debtors disagree with this contention.  Nevertheless, assuming that (i) the Debtors are unsuccessful in establishing their complete defenses described above, (ii) counsel to the Uncertified WARN Class Actions are able to establish that their calculation of damages, and (iii) the determinations survive the Debtors' appeal, the Debtors understand that these rulings could increase the amount owing to Employees in respect of the WARN Act by approximately $1 million.

Third, the Debtors believe that counsel in the two Uncertificated WARN Class Actions will likely argue that the Debtor's calculation of damages improperly excludes amounts associated with the Employees' health/medical plans.  While the Debtors acknowledge that the Employee Worksheet does not include a separate amount for Employees' health/medical plans, the Debtors believe that such is appropriate because (i) the Debtors maintained their health/medical plans through the end of February 2017, (ii) certain Employees waived their right to receive benefits associated with the Debtors' health/medical plans, and (iii) the Debtors provided actual payments in respect of their health/medical plans postpetition that exceeded the amount that Employees otherwise would have received under their health/medical plans, thereby reducing  the amount attributable to unpaid the Employee health benefits to $0.00.

If not resolved via the Employee Settlement, the Plan Proponents will mount a vigorous defense to the Uncertificated WARN Class Actions and oppose class certification.  The Debtors project that resolution of the Uncertificated WARN Class Actions, could take in excess of two (2) years and likely cost in excess of $1 million dollars.  Additionally, if the Uncertificated WARN Class Actions proceed, proposed counsel in those Adversary Proceedings would likely be entitled to a significant portion of the amounts awarded to Employees.

### c.      Claims for Unpaid Wages Under Louisiana Labor Law

In one of the Uncertificated WARN Class Actions, counsel also seek payment of allegedly unpaid wages, paid time off, and accrued vacation time as well as related statutory penalties under La.R.S. 23:631, 23:632.  Pursuant to La.R.S. 23:631, employers are required to pay all wages, including vacation and paid time off, within 15 days of an employee's termination.  La.R.S. 23:632 provides, in pertinent part,

> Any employer who fails or refuses to comply with the provisions of [La.] R.S. 631 shall be liable to the employee either for ninety days wages at the employees daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.

La.R.S. 23:632.

With narrow exceptions, debtors in bankruptcy are generally prohibited from making postpetition payments to creditors, including employees, for prepetition claims.  In some circumstances, however, it may be proper with court approval to pay prepetition wages entitled

to priority under Section 507(a)(4) of the Bankruptcy Code, based on "the presence of a legal or factual inevitability of payment." *In re Egualnet Communications Corp.*, 258 B.R. 368 (Bankr. S.D. Tex. 2000). Although debtors may seek authority to pay prepetition wages, the Debtors did not obtain such authority in the Bankruptcy Cases. Because the Bankruptcy Code prohibited the Debtors from paying these amounts to Employees, the Debtors believe that they have no liability in respect of Claims under La.R.S. 23:631, 23:632 other than the obligations already included in the Employee Settlement Worksheet and set forth generally above.

### d.    Claims for Unpaid PDO

Under the Debtors' prepetition "paid days off" policy, certain Employees accrued paid days off over time, subject to an ultimate cap and certain Employees waived their right to accrue paid days off in exchange for an increase in pay. Under the Bankruptcy Code, Employees may be entitled to a Priority Claim with respect to the amount of PDO that a particular Employee accrued during the 180-day period preceding the Petition Date. In the Employee Settlement Worksheet, the Debtors analyzed the Employees' accrual of PDO and concluded that certain amounts – summarized in the Estimated Priority Pre-Petition PDO Accrued column in the Employee Settlement Worksheet – may be entitled to classification in Class 2 as Priority Employee Claims. In calculating the portion of an Employee Claim potentially entitled to classification in Class 2, the Debtors compared each Employee's accrued PDO balance on the date that was six months prior to the Petition Date against each Employee's accrued PDO balance on the Petition Date. If an Employee's accrued PDO balance increased during this period, the Debtors concede for purpose of the Employee Settlement that such Employee would be entitled to a Priority Employee Claim in respect of the increase in accrued PDO (subject to the Section 507(a)(4) cap). However, if an Employee's accrued PDO balance decreased during this period, the Debtors submit that the Employee would not be entitled to classification in Class 2. Pursuant to the Employee Settlement, the Debtors propose to satisfy the Priority Employee Claim in respect of the increase in accrued PDO (subject to the Section 507(a)(4) cap) by paying 100% of such Claim in full in cash and the balance of such Employee Claim would receive a Distribution equal to 10% of the remaining amount without the need to assert and prove the amount and validity of such Employees Claim by a Final Order. Of note, the proposed settlement of PDO does not take into account an Employee's waiver of PDO. If litigated, the Debtors intend to assert that any PDO awarded as a lump sum, (e.g., a full year's PDO in advance),[15] should be pro-rated over the full year and, thus, not be entitled to a Priority Employee Claim.

### e.    Claims for Unpaid Severance

The Debtors understand that certain Employees have contended that, in addition to their other Employee Claims, they are entitled to a Claim in respect of the Debtors' prepetition Severance Policy. Under the Debtors' Severance Policy, Employees were entitled to additional payment, in the form of a severance payment, pay based on, among other things,

---

[15]    Certain employees received PDO in lump sums annually.

the Employee's years of service, base pay, and position, provided they enter into a "Confidential Release and General Release".[16] Thus, based on the express terms of the Debtors' Severance Policy, Employees are not entitled to any severance unless they release any and all other claims against the Debtors. If an Employee agrees to and enters into a Confidential Release and General Release, their Claim (if any) under the Debtors' Severance Policy will constitute a General Unsecured Claim against the Debtors because such Claim is a contractual claim that accrued prior to the Petition Date. If the Holder of an Employee Claim seeks allowance of a Claim under the Debtors' Severance Policy in addition to a Claim under the Debtors' prepetition "paid days off" policy and/or a WARN Act Claim, the Debtors will object to such Claim as being contrary to their Severance Policy; specifically, the requirement that an Employee release all other Claims against the Debtors.

## 2. CCG Settlement

The Debtors' largest purported General Unsecured creditor is CCG. As described in detail above, as of the Petition Date, CCG held purported claims against the Debtors totaling in excess of $175,592,443.00 (the "**Total CCG Claim**"), which includes: (i) $32,819,879.00 in respect of the MedCath Debt;[17] (ii) $124,643,187 in respect of the CCG Demand Note;[18] and (iii) $18,129,377.00 in respect of unpaid management fees. If CCG's Claims were allowed in full, the Plan Proponents believe that CCG would hold approximately 94% of the Total Allowed Unsecured Claims.

Although the documents supporting the Total CCG Claim, including the Debtors' books and records, state that the Total CCG Claim constituted debt owing by the Debtors to CCG, the Plan Proponents believed that some, if not all, of the Total CCG Claim should be recharacterized as "equity" under the Bankruptcy Code.

Under Section 105 of the Bankruptcy Code and otherwise applicable non-bankruptcy law, a bankruptcy court may look beyond the form of a transaction, including the characterizations used by the parties, and consider the substance of a transaction to determine whether a particular transaction should be properly characterized as equity as opposed to debt. *See, e.g.*, *In re Lothian Oil, Inc.*, 650 F.3d 539 (5th Cir. 2011).

In recognizing that "debt" may be recharacterized as equity, the Fifth Circuit in *Jones v. United States*, 659 F.2d 618, 622 n.12 (5th Cir. 1981), identified the following factors to be used in evaluating recharacterization of a claim:

(1) name of the instrument memorializing the transaction;
(2) definitiveness of maturity date;
(3) source of payments;

---

[16]    Certain Employees also had separate contractual severance agreements.

[17]    $21,763,903.00 in principal plus accrued and unpaid interest of $11,055,976.00.

[18]    $104,342,442 in principal plus accrued and unpaid interest of $20,300,745.00.

(4) right to enforce payment;
(5) participation in management;
(6) relationship of would be "creditors" to general creditors;
(7) intent of the parties;
(8) adequacy of capitalization;
(9) identity of ownership;
(10) source of interest payments; and
(11) ability of corporation to obtain loans elsewhere.

*Id.* However, in acknowledging the existence of factors that should be considered, the Fifth Circuit recognized that no one factor is controlling and that courts should consider all of the factors and weigh the evidence with the understanding that the factors may not be of equal significance. *See In re Lothian Oil*, 650 F.3d 539,544 (5th Cir. 2011)(citing *Estate of Mixon v. United States*, 464 F.2d 394 (5th Cir. 1972).

Based on the Plan Proponents' analysis of the Debtors' course of dealings with CCG, the Plan Proponents concluded that a significant portion of the Total CCG Claim could be recharacterized as equity based on, among other things, the second, third, fifth, sixth, eighth, ninth and eleventh factors identified in *Jones*. Specifically, the Plan Proponents concluded that, although characterized as debt by the Debtors and CCG, the facts and circumstances associated with the CCG Demand Note and the unpaid management fees owing to CCG supported a claim for recharacterization. For example, because no payments were ever made by the Debtors to CCG in respect of either the CCG Demand Note or management fees, the Plan Proponents believe that these aspects of the Total CCG Claim could be found to constitute equity. CCG believes that none of its claim would be recharacterized, and that it made loans expecting them to be repaid.[19]

In connection with a mediation conducted on May 25, 2017, the Plan Proponents and CCG commenced discussions with respect to the Allowance of the CCG Claim and the Plan Proponents' intent and ability to seek the recharacterization of the Total CCG Claim as equity. Although no agreement was reached at the mediation, the Plan Proponents and CCG continued informal discussions toward a resolution of the Total CCG Claim. As a result of these efforts, the Plan Proponents and CCG negotiated a compromise and settlement in the Plan that will result in an increased Distribution to Classes 6 and 7. Specifically, in full satisfaction, release, discharge of and in exchange for the CCG Unsecured Claim, CCG will receive a Distribution equal to 50% of any Unsecured Distribution, which reflects a 44% decrease in the percentage of CCG's potential Distribution if the Total CCG Claim were Allowed in full.

In consideration of the above-described compromise and settlement of the CCG Unsecured Claim, the Debtors, on behalf of the Debtors and their estates alone, and the Creditors Committee (the "Releasing Parties") have agreed to release and not sue  (i) the Debtors' Released Parties, (ii) present and former members of the Debtors' Board of Directors

---

[19]     Because the MedCath Debt was acquired from a third party, the Plan Proponents concluded that they would have a more difficult time recharacterizing that debt into equity.

(iii) Debtors' members, or managers, (iv) the present and former officers and employees of the Debtors, (v) CCG, (vi) MedCare, and (vii) any attorneys, financial advisors, investment bankers, accountants, consultants, insurers, Affiliates or other professionals of the persons and parties described in clauses (i) through (vii) in respect of any Claim held by or through the Debtors.  For the avoidance of doubt, the release and agreement not to sue CCG in connection with this compromise and Settlement shall not release or otherwise affect any direct claim held by a third party.  In arriving at the determination to proceed with this settlement, the Plan Proponents reviewed the Board Minutes and related information that was produced during the course of the case.  The information available was evaluated under the applicable standards associated with measuring whether the Board Members met or breached the duty of care, duty of loyalty, and duty of good faith.  Also considered was the "entire fairness" standard because several of the Board Members were arguably "interested" based on the loans to the Debtors. Making loans, and authorizing loans, to operating companies over a series of years to try to turn those companies profitable does not reflect a breach of the duties of care, loyalty, or good faith.  *See generally In re Global Service Group LLC*, 316 B.R. 451, 460 (Bankr. S.D.N.Y. 2004).  It is not rational to think that CCG would put over $100 million into the Debtors without expecting to be paid those sums back (whether as a loan or equity), and nothing we have seen indicates otherwise.  Also, in making these loans, neither CCG nor MedCare, nor any officer, director, member, or manager, obtained collateral or improved their economic position vis-à-vis other creditors.  New loans were barred by the negative pledge in the MidCap loan documents, and the secured MedCath loan acquired by CCG (a) was already in existence when acquired in 2011, and (b) ended up being unsecured due to the failure to reinscribe the debt. The only new secured debt was the DIP loan that was approved by the Bankruptcy Court and paid back at the time of the closing of the sale to Stirling.

## E.    Effects of Confirmation.

### 1.    Estate Assets to Remain in Estates; No Revesting of Estate Assets.

Property of the Estate, including Causes of Action, shall not revest with Debtors or the Post-Effective Date Debtor, but shall remain property of the Estate subject to the jurisdiction of the Bankruptcy Court, under the exclusive control of the Plan Administrator, until distributed to Holders of Allowed Claims in accordance with the provisions of the Plan and the Confirmation Order.

### 2.    Preservation and Retention of Causes of Action, Defenses of the Debtor, and Rights to Object to Claims.

Other than those Causes of Action expressly released under the Plan, Confirmation of the Plan will have no impact upon, and will not render *res judicata* any:  (i) Causes of Action; (ii) any defenses that the Debtors may have (including rights of setoff) in any action brought against it; or (iii) any party in interest's right to object to any Claim against the Debtors, subject to any limitation expressly set forth in the Plan including with regard to who has standing to object to claims after Confirmation of the Plan. The Debtors do not waive, relinquish, or abandon (nor shall the Plan Administrator  be estopped or otherwise precluded from asserting)

any right, claim, Cause of Action, defense, or counterclaim that constitutes property of the Estates:  (a) whether or not such right, claim, Cause of Action, defense, or counterclaim has been listed or referred to in the Plan, the Schedules, the Plan Supplement, or any other document filed with the Bankruptcy Court; (b) whether or not such right, claim, Cause of Action, defense, or counterclaim is currently known to the Debtors; and (c) whether or not a party in any litigation relating to such right, claim, cause of action, defense or counterclaim filed a proof of Claim in the  Bankruptcy Cases, filed a notice of appearance or any other pleading or notice in the Bankruptcy Cases, voted for or against the Plan, or received or retained any consideration under the Plan.  Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principle of law or equity including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, THE FAILURE TO LIST, DISCLOSE, DESCRIBE, IDENTIFY, OR REFER TO A RIGHT, CLAIM, CAUSE OF ACTION, DEFENSE, OR COUNTERCLAIM, OR POTENTIAL RIGHT, CLAIM, CAUSE OF ACTION, DEFENSE, OR COUNTERCLAIM, IN THE PLAN, THE SCHEDULES, THE PLAN SUPPLEMENT OR ANY OTHER DOCUMENT FILED WITH THE BANKRUPTCY COURT SHALL IN NO MANNER WAIVE, ELIMINATE, MODIFY, RELEASE, OR ALTER ANY RIGHT OF THE PLAN ADMINISTRATOR TO COMMENCE, PROSECUTE, DEFEND AGAINST, SETTLE, AND REALIZE UPON ANY RIGHTS, CLAIMS, CAUSES OF ACTION, DEFENSES, OR COUNTERCLAIMS THAT THE DEBTORS HAVE, OR MAY HAVE, AS OF THE EFFECTIVE DATE.  In addition, the Debtors expressly reserve and as of the Effective Date the Plan Administrator shall have the right to pursue or adopt any claim alleged in any lawsuit in which the Debtors are a party.

Except as is otherwise expressly provided herein or in the Confirmation Order, nothing in the Plan or the Confirmation Order shall preclude or estop (i) the Plan Administrator from bringing a subsequent action in any court or adjudicative body of competent jurisdiction, to enforce any or all of its or their respective rights in connection with the Causes of Action or assets of the estates.  Moreover, the failure to commence any of the Causes of Action prior to the Effective Date shall not constitute res judicata, judicial or collateral estoppel with respect to any Cause of Action.

A partial listing of potential parties against whom the Plan Administrator, or in certain circumstances the Plan Committee, may bring Causes of Action will be included in the Plan Supplement.  This list is not comprehensive but is intended to be thorough.  **Causes of Action may be brought against parties not listed on the exhibit to the Plan Supplement and those Causes of Action are expressly preserved under the Plan and may still be brought.**

### 3.       Authority to effectuate the Plan.

Except as expressly set forth in the Plan, on the Effective Date, all matters provided for under the Plan will be authorized and approved without further approval or order of the Bankruptcy Court.

4. **No waiver of legal privileges.**

Confirmation of the Plan will not waive the attorney/client, work product or other legal privileges of Debtors or the Official Creditors' Committee. The attorney-client privilege, the attorney work product doctrine and any similar privilege against disclosure, and all other similar immunities, including all documents and confidential documents, including but not limited to confidential and/or privileged internal communications of the Board of Directors or Officers of the Debtors and any Professionals or committees or committee members of the Debtors that concern or relate in any way to the Bankruptcy Cases, any Claims, any actions or matters prior to the filing of or during the Bankruptcy Cases, or any matters or Claims or actions dealt with or related to any releases or exculpations set forth in the Plan, or relating to property of the Debtors under section 541(a) of the Bankruptcy Code, shall remain in the Estates and shall be subject to the sole control of the Plan Administrator. Any dispute over whether such privileges, immunities or documents are subject to the sole control of the Plan Administrator shall be determined by the Bankruptcy Court.

F. **Means of implementation of the Plan.**

1. **Limited corporate existence and dissolution of Debtors.**

    a. **Continued corporate existence.**

After the Effective Date of the Plan, Debtors will continue in existence as the Post-Effective Date Debtors pursuant to the terms of their operating agreements, by-laws, and other corporate governance documents, as the same were in effect prior to the Effective Date, except to the extent that such corporate governance documents are amended by the terms of the Plan that establish the Plan Administrator as the sole member, director, and manager of each of the Debtors, for the limited purpose of (i) effectuating the terms of the Plan, (ii) liquidating the Estate Assets, (iii) making Distributions in accordance with the Plan; and (iv) filing appropriate tax returns.

    b. **Dissolution of Post-Effective Date Debtors.**

As soon as practicable after the Plan Administrator liquidates or otherwise disposes of the Estates' Assets and makes the Final Distribution, the Plan Administrator shall, at the expense of the Estate and with the consultation of the Plan Committee, (i) provide for the retention of books and records delivered to or created by the Plan Administrator until the time that such books and records are no longer required to be retained under applicable law recognizing the establishment of certain rights and duties in connection therewith under the April 28, 2017 Motion to Dispose of Patient Records under Section 351 of the Bankruptcy Code and related May 17, 2017 Order Authorizing the Disposition of Patient Records Under Section 351 of the Bankruptcy Code (Bankruptcy Docket Nos. 326 and 369), and file a certificate with the Bankruptcy Court stating the location at which such books and records are being stored, (ii) file a certificate with the Bankruptcy Court stating that the Plan Administrator has liquidated or otherwise disposed of the Estate Assets and made a Final Distribution under the Plan, (iii) file any necessary paperwork with the Office of the Secretaries of State for the

States of North Carolina and Delaware to effectuate the dissolution of the Post-Effective Date Debtors in accordance with the laws of the States of North Carolina and Delaware, and (iv) resign as the sole member, director, and manager of the Post-Effective Date Debtors.

### 2.     Directors and Officers of Debtors.

On the Effective Date, the Plan Administrator will succeed to all of the rights and powers of the members, directors, officers and managers of the Debtors and occurrence of the Effective Date of the Plan will divest the members, directors, officers, and managers in place prior to the Effective Date of any and all rights and powers with respect to the Debtors.

### 3.     Corporate governance documentation.

On or as soon as practicable after the Effective Date, the operating agreements of the Post-Effective Date Debtors shall be deemed to be modified to, among other things, (i) authorize the issuance of one new membership Interest in each of the Debtors to the Plan Administrator, to be held by the Plan Administrator in accordance with the terms of the Plan, (ii) prohibit the issuance of non-voting equity securities, and (iii) limit the activities of the Post-Effective Date Debtors to matters related to the implementation of the Plan and to matters reasonably incidental thereto.

### 4.     The Plan Administrator.

#### a.     Appointment.

The Plan Proponents will file and serve a notice no later than five (5) days before the deadline for filing objections to the Plan designating a Person to serve as the Plan Administrator. The Plan Administrator will be appointed on the Effective Date. The Plan Administrator will serve as Plan Administrator pursuant to the terms of the Plan and a Plan Administrator Agreement. The Debtors, the Plan Committee through an amendment after the Effective Date, and the Plan Administrator will be parties to the Plan Administrator Agreement. If there are any inconsistency between the terms of the Plan Administrator Agreement and the terms of the Plan, the terms of the Plan will govern.

#### b.     Plan Administrator Agreement.

Prior to the Effective Date, the Plan Administrator and Debtors will execute a Plan Administrator Agreement that will be in the included in the Plan Supplement and that specifies the terms by which the Plan Administrator will be employed. After the Effective Date, the Plan Committee and the Plan Administrator may agree to non-material modifications of the Plan Administrator Agreement, which non-material modifications will not be subject to approval of the Bankruptcy Court. The Plan Committee and the Plan Administrator may agree to material modifications of the Plan Administrator Agreement; provided, however, that material modifications shall be subject to approval of the Bankruptcy Court.

### c. Rights, powers, and duties of the Post-Effective Date Debtors and the Plan Administrator.

The Plan Administrator, on behalf of the Debtors, the Estates and the Post-Effective Date Debtors will retain and have all of the rights, powers, and duties necessary to carry out its responsibilities under the Plan. The Plan Administrator will exercise these rights, powers and duties on behalf of the Debtors, the Post-Effective Date Debtors and the Estates pursuant to the Plan and the Plan Administrator Agreement. Additionally, the Plan Administrator may bring claims, including Causes of Action, on behalf of the Debtors, the Post-Effective Date Debtors, and the Estates that could otherwise be brought by a trustee appointed under the Bankruptcy Code. Without limiting the generality of the foregoing, the Plan Administrator's rights, powers, and duties include:

(a) liquidation of the Estate Assets and any assets of the Post-Effective Date Debtors;

(b) investment of Cash of the Estates and the Post-Effective Date Debtors in (I) direct obligations of the United States of America or obligations of any agency or instrumentality thereof that are backed by the full faith and credit of the United States of America, (II) money market deposit accounts, checking accounts, savings accounts, certificates of deposit, or other time deposit accounts that are issued by a commercial bank or savings institution organized under the laws of the United States of America or any state thereof, or (III) any other investments that may be permissible under section 345 of the Bankruptcy Code or as otherwise ordered by the Bankruptcy Court;

(c) calculating and paying Distributions in accordance with the terms of the Plan or as otherwise ordered by the Bankruptcy Court to Holders of Allowed Claims;

(d) employing, supervising, and compensating professionals retained to represent the interests of the Plan Administrator, the Post-Effective Date Debtors and the Estates, subject to the terms of the Plan;

(e) making and filing tax returns for the Debtors, the Estates and/or the Post-Effective Date Debtors;

(f) subject to the terms of the Plan, objecting to or seeking the subordination of Claims filed against the Debtors or the Estates or set forth in the Schedules, except for Claims that have been previously Allowed by Order or Final Order, as may be the case;

(g) seeking the estimation of contingent or unliquidated Claims filed against the Debtors, the Post-Effective Date Debtors, or the Estates pursuant to section 502(c) of the Bankruptcy Code;

(h)  seeking determination of tax liability for the Debtors, the Estates, or the Post-Effective Date Debtors under section 505 of the Bankruptcy Code;

(i)  investigating, pursuant to Rule 2004 of the Bankruptcy Rules or other applicable law, any Entity, including investigating any Entity authorized to be investigated;

(j) filing, prosecuting, settling or otherwise resolving Causes of Action on behalf of the Debtors, the Estates or the Post-Effective Date Debtors;

(k)  closing the Bankruptcy Cases of the Post-Effective Date Debtors;

(l)  dissolving and winding up the Estates and the Post-Effective Date Debtors; and

(m)  exercising all powers and rights, and taking all actions contemplated by or provided for in the Plan Administrator Agreement.

### d.  Compensation of the Plan Administrator.

The Plan Administrator will be compensated from the Estate Assets or the assets of the Post-Effective Date Debtors subject to the terms of the Plan Administrator Agreement. The Plan Administrator Agreement shall provide that the Plan Administrator will be compensated pursuant to the terms of a compensation agreement, which provides for compensation to the Plan Administrator on an hourly basis and at his standard rate or pursuant to a fixed monthly fee, and, in each case, approved by the Bankruptcy Court. Any compensation to be paid to the Plan Administrator or his or her professionals will require notice to the Plan Committee and a ten (10) day period to object to such payment, and if no objections are received, such compensation may be paid. Notwithstanding anything in the Plan to the contrary, the Bankruptcy Court is not required to authorize and approve any compensation to be paid to the Plan Administrator.

### e.  Insurance.

Subject to the terms of the Plan Administrator Agreement and agreement by the Plan Committee, the Plan Administrator may obtain insurance, to be paid from the Estates Assets, for the Plan Administrator, or any employees, agents, representatives, or independent contractors employed by the Plan Administrator or the Post-Effective Date Debtors, including, without limitation, any tail coverage or other similar coverage.

### f.  Limitations on Liability.

The Plan Administrator will not incur liability to any Person or Entity by reason of discharge of the Plan Administrator's duties as set forth in the Plan and in the Plan Administrator Agreement, except in the event of Final Order finding gross negligence or willful misconduct by the Plan Administrator.

### g.      Retention of Employees.

The Plan Administrator may retain any employees, or other agents or representative of Debtors or the Post-Effective Date Debtors, either on the Plan Administrator's own behalf or on behalf of the Post-Effective Date Debtor.  The Plan Administrator may compensate such employees in the ordinary course of the Plan Administrator's activities, without seeking approval of such compensation from the Bankruptcy Court.

### h.      Retention of Professionals.

Subject to the other limitations set forth in the Plan, the Plan Administrator may retain attorneys, accountants, or other professionals to represent the interests of the Plan Administrator or the Post-Effective Date Debtors, including attorneys, accountants, and other professionals employed by Debtors or the Creditors Committee.  Professionals retained by Debtors or the Creditors Committee prior to the Effective Date will not be retained by the Post-Effective Date Debtors unless the Plan Administrator agrees to such retention in writing.

### i.      Limitations on Actions of the Plan Administrator.

Without the prior written consent of the Plan Committee or approval by the Bankruptcy Court, the Plan Administrator will not take any other action that is inconsistent with the terms of the Plan or the Plan Administrator Agreement.  In addition, the Plan Administrator shall not be authorized to settle any WARN Act Claim by an Employee who has affirmatively and timely decided not to participate in the Employee Settlement the Plan Administrator shall not be authorized to settle any WARN Act Claim by an Employee who is not a Settling Employee within the first twelve months after the Effective Date if the proposed settlement with such Employee exceeds the Settlement Amount attributable to such Employee on the Employee Settlement Worksheet or is otherwise approved unanimously by the Plan Committee and the Bankruptcy Court for administrative convenience;

### j.      Meeting with and Reports to the Plan Committee.

At the request of the Plan Committee, the Plan Administrator will meet with and provide written or oral reports to the Plan Committee.

### k.      Replacement of the Plan Administrator.

If the Plan Administrator initially appointed pursuant to the terms of the Plan be removed or become unable or unwilling to continue in such role, then the Plan Committee shall select a successor subject to approval of the Bankruptcy Court.  Alternatively, any party in interest may move the Bankruptcy Court to appoint a successor for cause.  Once approved by the Bankruptcy Court, such successor shall become the Plan Administrator for all purposes, and shall have all the rights and powers of the Plan Administrator as set forth in the Plan.

5. **The Creditors Committee and the Plan Committee**.

a. **Appointment and Membership of the Plan Committee.**

On the Effective Date, the Plan Committee will be appointed and will succeed to any and all rights of the Creditors Committee, as well as the other additional rights and obligations set forth in the Plan or the Plan Committee Agreement. A copy of the Plan Committee Agreement will be included in the Plan Supplement. The initial members of the Plan Committee will be (a) one member to be designated by the Creditors Committee, (b) one member designated by CCG, and (c) the Plan Administrator.

b. **Rights, Powers, and Duties of the Plan Committee.**

The Plan Committee will retain and have all of the rights, powers, and duties necessary to carry out its responsibilities under the Plan. Such rights, powers, and duties include, but are not limited to:

(i) The Plan Committee shall be entitled to oversee the actions of the Plan Administrator in carrying out the Plan Administrator's duties under the Plan, as set forth in the Plan Committee Agreement. In such capacity, the Plan Committee has standing to object to any action taken by the Plan Administrator or to seek to enforce the Plan Administrator's responsibilities under the Plan;

(ii) The Plan Committee shall have the right to appoint a successor Plan Administrator pursuant to the terms of the Plan and the Plan Administrator Agreement; and

(iii) Taking any and all other actions necessary or appropriate to implement the Plan.

c. **Compensation of Members of the Plan Committee.**

Members of the Plan Committee will be compensated by the Estate for expenses in connection with serving on the Plan Committee that would otherwise be compensable for members of a creditors committee under section 503(b)(3)(F) of the Bankruptcy Code.

d. **Insurance.**

The Plan Committee may obtain insurance, to be paid from the Estates Assets or the assets of the Post-Effective Date Debtors, for the Plan Committee, including, without limitation, any tail coverage or other similar coverage.

### e. Limitations on Liability.

The Plan Committee will not incur liability to any Entity by reason of discharge of the Plan Committee's duties as set forth in the Plan, except in the event of gross negligence or willful misconduct by the Plan Committee or any member thereof; provided, however, that when acting as a party litigant in any proceeding the Plan Committee will be subject to all applicable rules and statutory procedures governing such proceedings, including, without limitation, those governing standards of conduct.

### f. Retention of Professionals and Other Agents or Representatives.

The Plan Committee may retain attorneys, accountants, or other professionals to represent the interests of the Plan Committee (or, where the Plan Committee acts in the name of or on behalf of the Post-Effective Date Debtors, the Post-Effective Date Debtors), including attorneys, accountants, and other professionals employed by Debtors or the Creditors Committee. Professionals retained by the Official Creditors' Committee or the Debtors prior to the Effective Date will not be retained by the Plan Committee in any capacity without the prior express written consent of the Plan Committee, and conflict waivers as may be appropriate.

### g. Change in membership of the Plan Committee.

Except as set forth herein, each Member shall have the absolute right to designate a successor representative or alternate, whichever the case may be, who shall be an authorized employee or agent of such Member, provided that such successor otherwise satisfies the membership requirements set forth in Section 1.1 hereof. In the event that any Member does not fulfill his obligations and responsibilities under the Plan Agreement, the Plan Administrator or another Member of the Plan Committee may, after written notice to the Member, file a motion with the Bankruptcy Court to remove the Member from the Committee. If such Member is removed by Order of the Bankruptcy Court, the Member shall not be replaced on the Plan Committee. Any member of the Plan Committee that sells all of its Unsecured Claim against Debtors will be immediately removed from the Plan Committee; and the purchaser of an Unsecured Claim from a member of the Plan Committee will not succeed to the member's position on the Plan Committee by reason of the purchase of the Unsecured Claim. A member's rights of membership on the Plan Committee may not be transferred to or otherwise be assigned or delegated to another person or entity without the express unanimous consent of the Plan Committee.

### h. Dissolution.

The Plan Committee will be dissolved upon entry of the Final Decree and the members of the Plan Committee will be released and discharged from all further authority, duties, responsibilities and obligations related to and arising from their service as Plan Committee members.

6. **Common Interest Agreement Between and Among the Plan Administrator, and the Plan Committee.**

From and after the Effective Date, (i) the Plan Administrator may share its own information or information of the Debtors or the Post-Effective Date Debtors with the Plan Committee, and (ii) the Plan Committee may share its own information or information of the Creditors Committee with the Plan Administrator or the Post-Effective Date Debtors, and the shared information will be considered shared pursuant to a common interest agreement and the sharing of information will not constitute a waiver of any attorney/client privilege, work product privilege, or other similar privilege recognized by applicable law.

G. **Provisions for the resolution of Claims against Debtors, resolution of Causes of Action and liquidation of other Assets.**

1. **Objection to and resolution of Claims against Debtors or the Estate.**

    a. **Plan Administrator's authority to object to and resolve objections to Claims.**

The Plan Administrator will prosecute, settle, or decline to pursue objections to any Claims in this Bankruptcy Case in accordance with the terms of the Plan, whether the objections to the Claims were filed prior to or after the Effective Date.

    b. **Limitations on Filing Objections to Claims.**

From and after the Effective Date, no party other than the Plan Administrator may object to Claims.

    c. **Deadline for Objection to Claims.**

The Plan Administrator will file any objections to Claims that are not subject to a pending objection on the Effective Date not later than the Claim Objection Bar Date which is within 120 days of the Effective Date or the Filing of the Claim, whichever is later.  The Plan Administrator shall be authorized to seek an extension of such deadline by ex parte motion. Any objection not filed by such deadline shall be deemed waived, and the Claim shall be an Allowed Claim in the amount set forth on the Proof of Claim Filed by the Holder of such Claim.

    d. **Estimation of Claims.**

The Plan Proponents, prior to the Effective Date, and the Plan Administrator, after the Effective Date, may at any time request that the Bankruptcy Court estimate any Claim pursuant to section 502(c) of the Bankruptcy Code.  The Bankruptcy Court may estimate Claims to: (i) establish the Allowed amount of the Claim for purposes of voting and Distribution; or (ii) to establish the maximum amount of any such Claim, without prejudice to the Plan Administrator

later objecting to the Claim or otherwise bringing Causes of Action against the Holder of the Claim.

### e. Applicability.

In objecting to a Claim, if the Plan Administrator asserts counterclaims or other grounds for affirmative relief, against the Holder of the Claim, including any assertion that the Claim may be Disallowed pursuant to section 502(d) of the Bankruptcy Code, resolution of the objection to the Claim will be governed by applicable law.

### f. Continued Investigation of Claims.

**The Plan Proponents have not fully investigated all of the Claims in this Bankruptcy Case. This investigation is ongoing and may occur after confirmation of the Plan including in the course of litigation with respect to such Claims, or any objection to such Claims. Creditors and other parties in interest are advised that, notwithstanding that no specific reference is made to a particular Claim in the Plan, the Disclosure Statement, or in other documents filed in the Bankruptcy Case, objections to Claims may still be brought against any Creditor or party in interest at any time (subject to the Claims Objection Bar Date, any applicable statute of limitations and other limitations set forth in the Plan).**

### 2. Prosecution and resolution of Causes of Action.

### a. Plan Administrator's authority to bring, prosecute and settle Causes of Action.

The Plan Administrator will prosecute, settle, or decline to pursue any Causes of Action in the Bankruptcy Case in accordance with the terms of the Plan, whether the Cause of Action was commenced prior to or after the Effective Date.

### b. Causes of Action Deadline for Bringing Causes of Action.

Nothing in the Plan limits the time by which the Plan Administrator must bring a Causes of Action. The deadline for bringing Causes of Action is any applicable statute of limitations, as such statute of limitations may be altered or amended by the terms of the Bankruptcy Code. For purposes of determining the applicable statute of limitations, section 108 of the Bankruptcy Code will be applicable to all Causes of Action, and confirmation of the Plan will not limit any time periods contained therein.

### c. Continued Investigation of Causes of Action.

**The Plan Proponents have not fully investigated the Causes of Action in this Bankruptcy Case. This investigation is ongoing and will continue after confirmation of the Plan including in the course of litigation with respect to such Claims, or any objection to such Claims. Creditors and other parties in interest are advised that, notwithstanding**

that no specific reference is made to a particular Cause of Action in the Plan, this Disclosure Statement, or in other documents filed in the Bankruptcy Case, the Plan Administrator may still bring Causes of Action against any party at any time (subject to any applicable statute of limitations). A partial listing of potential parties against whom the Plan Administrator may bring a Cause of Action will be included in the Plan Supplement. This list is not comprehensive. Causes of Action may be brought against parties not listed on the exhibit to the Plan Supplement and those Causes of Action are expressly preserved under the Plan and may still be brought.

**H.    Distributions.**

**1.    Distributions on account of Allowed Administrative Expense Claims.**

Subject to the Debtors' rights of set-off , the Plan Administrator will pay Allowed Administrative Expense Claims in full, without interest, in Cash, on or as soon as practicable after the later of: (v) the date on which such Allowed Administrative Expense Claim or Supplemental Administrative Expense Claim becomes due in the ordinary course of business and in accordance with the terms and conditions of the particular agreement(s) governing such obligation, (w) the Effective Date, (x) the date that the Administrative Expense Claim or Supplemental Administrative Expense Claim becomes an Allowed Claim; (y) with respect to WARN Act Administrative Expense Claims, following Allowance in a Final Order of such WARN Act Administrative Expense Claim; or (z) at such other time and in such other manner as may be agreed upon in writing between the Holder of the Allowed Administrative Expense Claim or Supplemental Administrative Expense Claim and the Plan Administrator.

**2.    Distributions on account of Allowed Priority Tax Claims.**

Subject to the Debtors' rights of set-off, unless otherwise agreed to by the Holder of a Priority Tax Claim and the Plan Administrator, Plan Administrator shall pay Allowed Priority Tax Claims in full, in Cash, on or as soon as practicable after the later of: (x) the Effective Date, (y) the date that the Claim becomes an Allowed Priority Tax Claim, or at such other time and in such other manner as may be agreed upon in writing between the Holder of the Allowed Priority Tax Claim and the Plan Administrator; provided, however, that any Priority Tax Claim not due and owing on the Effective Date will be paid when such Claim becomes due and owing.

**3.    Distributions on account of Classified Claims.**

**a.    Claims Allowed prior to the Initial Distribution Date.**

Subject to the Debtors' rights of set-off and subsections (b) and (d) below, on the Initial Distribution Date, the Plan Administrator will distribute Cash or other property to each Holder of a Claim in Classes 1 through 7 that is Allowed prior to the Initial Distribution Date as provided in the Plan. The Plan Administrator will make no Distributions to Claims that have received Payment in Full.

### b. Distribution to the Holders of the Class 5, 6, and 7 Claims

Unless the Holder of a Claim in Classes 5, 6, or 7 agree otherwise with the Plan Administrator, Holders of the Allowed Claim will receive their Pro Rata Unsecured Distribution on or as soon as practicable after the later to occur of: (x) the Effective Date, or (y) the date that the Claim becomes an Allowed Claim pursuant to the terms of the Plan. If a Distribution to a Holder of an Allowed Claim in Classes 5, 6, and 7 would be less than $100, such Distribution may be held until the Final Distribution. Additionally, notwithstanding any other provision of the Plan, the Plan Administrator is not be required to, but may in its sole discretion, make any Distribution of less than $25.00 to the Holder of any Allowed Claim.

Prior to making any Distributions to the Holder of Allowed Claims in Classes 5, 6, and 7, the Plan Administrator shall first reserve (i) a sufficient sum for the payment of all present and future expenses of the Plan Administrator, the Estates and the Post-Effective Date Debtors, and (ii) for amounts due, or which may be due, the payments required to be made to other classes of Claims under this Plan that may have a prior or equal right of payment to that of the Holder of Allowed Claims Holders of Claims in Classes 5, 6, and 7, except that after Disallowance of such Claim after objection thereto, the Plan Administrator shall have no duty or obligation to reserve for the Claim pending an appeal absent a timely stay pending appeal obtained by a party with respect to such Claim Disallowance.

### c. Distribution to Holders of Class 2 Claims

Unless otherwise agreed to by Holders of Claims in Class 2 and the Plan Administrator, Holders of Allowed Claims in Class 2 will receive payment in full, without interest, in Cash, on or as soon as practicable after the later to occur of: (x) the Effective Date, or (y) the date that the Claim becomes an Allowed Claim pursuant to a Final Order. Prior to making any Distributions to the Holder of Allowed Claims in Class 2, the Plan Administrator shall first reserve for amounts due, or which may be due, the payments required to be made to other classes of Claims under this Plan that may have a prior or equal right of payment to that of the Holder of Allowed Claims Holders of Claims in Class 2, except that after Disallowance of such Claim after objection thereto, the Plan Administrator shall have no duty or obligation to reserve for the Claim pending an appeal absent a timely stay pending appeal obtained by a party with respect to such Claim Disallowance.

### d. Claims Allowed on or after the Initial Distribution Date.

Subject to the Debtors' rights of set-off, for Claims Allowed on or after the Initial Distribution Date, the Plan Administrator will make a Distribution to the Holders Allowed Claims no later than the first Subsequent Distribution Date after such Claim is Allowed in an amount equal to the amount provided for in the Plan to such Holder from funds then available for such purpose. Except as otherwise provided in the Plan or as otherwise ordered by the Bankruptcy Court, the Plan Administrator, upon approval of the Plan Committee, may make interim or partial Distributions on Allowed Claims other than on a Subsequent Distribution Date. The Plan Administrator will make no Distributions on account of Claims that have received Payment in Full. The Plan Administrator is specifically authorized by the Plan to

make Distributions after a judicial determination providing for the Allowance or Disallowance of such Claim, and the Plan Administrator shall have no duty or obligation to reserve for any such Claim pending an appeal absent a timely stay pending appeal obtained by a party with respect to such Claim Allowance or Disallowance. Further, no funds may be recovered from any Holder of a Claim receiving such a Distribution or from anyone else in the event of reversal of any Order disallowing a Claim.

### 4. Interest on Allowed Claims.

Except as otherwise set forth in the Plan with respect to Allowed Secured Claims, no interest will be paid in respect of any Allowed Claim.

### 5. Distributions to Holders of record.

Distributions to be made pursuant to the Plan with respect to Claims of any nature may be made by the Disbursing Agent to the Holder of record of the Claim. For purposes of making Distributions under the Plan, the following applies: (i) if no Proof of Claim has been filed, the Holder of record and address will be as identified in the Schedules; (ii) if a Proof of Claim has been filed, the Holder of record and address will be as identified in the Proof of Claim; (iii) if a notice of transfer of Claim has been properly filed pursuant to Rule 3001(e) of the Bankruptcy Rules not less than forty-five days prior to any Distribution Date and no objection to the transfer of Claim has been filed, then to the Holder of record and address as identified on the notice of transfer of Claim as filed with the Bankruptcy Court.

### 6. No Distributions on account of Disputed or Disallowed Claims.

Except as may otherwise be ordered by the Bankruptcy Court or authorized under the terms of the Plan, the Plan Administrator will make no Distribution to the Holder of a Disputed Claim until the Disputed Claim becomes an Allowed Claim. The Plan Administrator will not make Distributions to Holders of Disallowed Claims.

### 7. Setoff.

The Plan Administrator may set-off against any Allowed Claim (and Distributions to be made thereto), the claims, rights and causes of action of any nature (regardless of whether such claims, rights, or causes of action are reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured) that Debtors, the Post-Effective Date Debtors, or the Estates may hold under applicable non-bankruptcy law (and notwithstanding any limitations or restrictions placed on such rights under the Bankruptcy Code) against the Holder of an Allowed Claim or any recipient of any Distribution in respect of an Allowed Claim. Neither the failure to effect a set-off nor the Allowance of any Claim under the Plan will waive or release any such Claims, rights and causes of action that any Entity may possess under Bankruptcy Code Section 553 or applicable non-bankruptcy law.

8.      **The Required Reserve Amount and the Reserve Account.**

On the Effective Date, the Plan Administrator will establish and maintain a bank account which shall be used to pay any Claim not Allowed or Disallowed as of the Effective Date, including potential Administrative Expense Claims, in the amounts and on the terms provided in the Plan.  The Plan Administrator shall maintain the Required Reserve Amount in the Reserve Account until such Claims are either Allowed and paid as provided for in the Plan, or Disallowed in full or in part, either by (i) agreement between counsel to the Debtors or the Plan Administrator and the Holder of the Disputed Claim or (ii) by Final Order once such Claims become Allowed Claims.  Upon payment of all Claims in the amounts and on the terms provided in the Plan, all funds remaining in the Reserve Account shall revert to the Estate, and be made available for Distribution in the Final Distribution.  The Plan Supplement shall set forth the Required Reserve Amount.  **Maintenance of the Disputed Claims Reserve, the Operating Reserve, and other Cash of the Debtor and the Estate.**

Except as otherwise provided in the Plan, the Plan Administrator, in consultation with the Plan Committee, may hold Cash of the Estate in one or more accounts that the Plan Administrator determines to be in the best interests of the Estate.  Any reference to the establishment or maintenance of any reserves contained in the Plan, including the Reserve Account, will not require the Plan Administrator to establish separate deposit or similar accounts for such reserves.  The establishment of reserves under the Plan may be accomplished by accounting, general ledger, paper, or other book entry, as the Plan Administrator may determine, in consultation with the Plan Committee.

9.      **Effectuation of Distributions.**

The Plan Administrator may designate a Disbursing Agent, which may be the Plan Administrator, to make all Distributions in accordance with the terms of the Plan.  At the request of the Plan Administrator, the Claims Agent will assist in making Distributions under the Plan and will be entitled to reasonable compensation, as approved by the Plan Committee or the Bankruptcy Court, for providing such services.

10.      **Finality of Distributions.**

Except for payments made to Holders of Allowed Administrative Claims, all Distributions made under the Plan are final, and no party may seek disgorgement of any Distributions.  The Plan Administrator is specifically authorized by the Plan to make Distributions after a judicial determination providing for the Allowance or Disallowance of such Claim, and the Plan Administrator shall have no duty or obligation to reserve for any such Claim pending an appeal absent a timely stay pending appeal obtained by a party with respect to such Claim Allowance or Disallowance.  Further, no funds may be recovered from any

Holder of a Claim receiving such a Distribution or from anyone else in the event of reversal of any Order disallowing a Claim.

**11. Manner of Payment; Delivery of Distributions.**

Except as otherwise set forth in the Plan, the Plan Administrator will make all Distributions under the Plan in Cash made by check drawn on a domestic bank or by wire transfer from a domestic bank.

**12. Undeliverable Distributions.**

**a. Holding of Undeliverable Distributions.**

If the Distribution to any Holder of a Claim or Interest is returned to the Post-Effective Date Debtors, the Plan Administrator or the Disbursing Agent as undeliverable or is otherwise unclaimed (including by the failure to timely negotiate a check issued to such Holder), no further Distributions shall be made to such Holder unless and until the Plan Administrator or the Disbursing Agent is notified in writing of such Holder's then current address.

**b. Failure to Claim Undeliverable Distributions.**

Any Holder of a Claim that does not assert a Claim pursuant to the Plan for an undeliverable or unclaimed Distribution within the later of (x) one (1) year after the Effective Date and (y) six months after the Allowance of such Claim shall be deemed to have forfeited its Claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such Claim for an undeliverable or unclaimed Distribution against the Debtors, the Post-Effective Date Debtors, or the Estate or their property. In such cases, any Cash for Distribution on account of such Claims for undeliverable or unclaimed Distributions shall become the property of the Estates free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary. Nothing contained in the Plan shall require any Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

**c. Satisfaction**

Notwithstanding any other provision of the Plan, (i) each Holder of an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution, and (ii) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Plan Administrator for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon any disbursing agent in connection with such distribution. Any property to be distributed pursuant to the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution under the Plan.

I.     **Satisfaction of Claims, injunctions, and limitations of liability.**

1.     **Satisfaction of Claims; Injunction.**

**Pursuant to section 1141(d)(3) of the Bankruptcy Code, confirmation of the Plan will not discharge Claims against Debtors; provided, however, that no Holder of a Claim against or Interest in Debtors may, on account of such Claim or Interest, seek or receive any payment or other Distribution from, or seek recourse against, Debtors, the Post-Effective Date Debtors, the Debtors' Released Parties, or the Estates, except as expressly provided in the Plan.   Accordingly, except as otherwise provided in the Plan, the Confirmation Order shall provide, among other things, that from and after confirmation of the Plan until entry of the Final Decree, all Persons who have held, hold or may hold Claims against or Interests in Debtors are enjoined from taking any of the following actions against Debtors, the Post-Effective Date Debtor, the Estates, the Debtors' Released Parties, the Plan Administrator, the Official Creditors' Committee, or the Plan Committee and each of their respective offices, directors, employees, agents or other professionals of the persons and parties described: (i) commencing or continuing, in any manner or any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; and (iv) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall: (i) preclude any Person from exercising their rights pursuant to and consistent with the terms of the Plan; or (ii) enjoin or otherwise stay or limit any action or other undertaking not stayed under section 362 of the Bankruptcy Code.   Notwithstanding anything to the contrary set forth in the Plan, Creditors' rights of setoff and recoupment are preserved, and the injunctions referenced in the Plan will not enjoin the valid exercise of such rights of setoff or recoupment.**

2.     **No Liability for Solicitation or Participation.**

Pursuant to section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

3.     **Limitation of Liability of Exculpated Persons.**

**From and after the Effective Date, the Debtors' Released Parties shall neither have nor incur any liability to, or be subject to any right of action by, any Holder of a Claim or Interest, or any other party in interest, or any of their respective employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Bankruptcy Case, formulating, negotiating or implementing the Plan, the solicitation of acceptances of the Plan, the pursuit of approval**

of the Disclosure Statement and confirmation of the Plan, the confirmation of the Plan, the Plan Documents, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan; provided, however, that the foregoing provision shall not apply to an act or omission that is determined by a Final Order of the Bankruptcy Court to have constituted willful misconduct or gross negligence. Any of the Released Parties shall be entitled to rely, in all respects, upon the advice of counsel with respect to their duties and responsibilities under the Plan.

### 4. Term of Injunctions and Stays.

Unless otherwise provided herein or in another order of the Bankruptcy Court, all injunctions or stays provided for in the Bankruptcy Case pursuant to sections 105, 362 and 524 of the Bankruptcy Code, or otherwise, and in effect on the Confirmation Date shall remain in full force and effect until the Effective Date; provided however, that the provisions of section 362 of the Bankruptcy Code will remain in effect with respect to property of the Estate until entry of the Final Decree.

### 5. Release of Liens.

Except as otherwise provided in the Plan or the Confirmation Order, all Liens, security interests, deeds of trust, or mortgages against property of Debtors or the Estate shall and shall be deemed to be released, terminated, and nullified on the Effective Date.

### 6. Cancellation of Instruments.

Unless otherwise provided for in the Plan, on the Effective Date, all promissory notes, instruments, indentures, agreements, or other documents evidencing, giving rise to, or governing any Claim against Debtors shall represent only the right, if any, to participate in the Distributions contemplated by the Plan. All shares, instruments or other evidences of any Interest that constitute Interests in Debtors, shall be cancelled as of the Effective Date, to be replaced by one new member interest for each Debtor given to the Plan Administrator.

## J. Other Plan Matters.

### 1. Executory Contracts and Unexpired Leases.

#### a. Rejection of Executory Contracts and Unexpired Leases.

All Executory Contracts that exist between Debtors and any Person that have not previously been assumed, assumed and assigned, or rejected by Debtors, or are not the subject of a pending motion to assume, assume and assign or reject as of the Confirmation Date, will be deemed rejected pursuant to section 365 of the Bankruptcy Code. Entry of the Confirmation Order shall constitute approval, pursuant to section 365(a) of the Bankruptcy Code, of the rejection of such Executory Contracts pursuant to the Plan.

#### b. Claims for Rejection Damages.

Proofs of Claim for damages allegedly arising from the rejection of any Executory Contract pursuant to the Plan must be filed not later than thirty (30) days after the Effective Date. All Proofs of Claim for such damages not timely filed and properly served as set forth in Section 7.2 of the Plan shall be forever barred and the Holder of such a Claim shall not be entitled to participate in any Distribution under the Plan on account of the claim for rejection damages.

### 2.    Conditions Precedent to the Effective Date.

The following are conditions precedent to the Effective Date of the Plan: (i) the Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably satisfactory to the Plan Proponents, (ii) the Plan Administrator shall have been duly appointed and approved by the Bankruptcy Court, and entered into the Plan Administrator Agreement, and (iii) no stay of the Confirmation Order is in effect.

### 3.    Retention of Jurisdiction.

From and after the Effective Date, and notwithstanding the entry of the Confirmation Order, the Bankruptcy Court shall retain exclusive jurisdiction of the Bankruptcy Case and all matters arising under, arising out of, or related to, the Bankruptcy Case, the Plan, and the Confirmation Order to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    hear and determine motions, applications, adversary proceedings, and contested matters pending before or commenced after the Effective Date;

(b)    hear and determine objections (whether filed before or after the Effective Date) to, or requests for estimation of any Claim, and to enter any Order requiring the filing of Proof of any Claim before a particular date;

(c)    estimate any Claim at any time, including, without limitation, during litigation concerning any objection to such Claim, including any pending appeal;

(d)    ensure that Distributions to Holders of Allowed Claims and Interests are accomplished as provided in the Plan;

(e)    enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(f)    issue or construe such Orders or take any action as may be necessary for the implementation, execution, enforcement and consummation of the Plan and the Confirmation Order, and hear and determine disputes arising in connection with the foregoing;

(g)     hear and determine any applications to modify the Plan, to cure any defect or omission or to reconcile any inconsistency in the Plan, the Disclosure Statement or in any Order of the Bankruptcy Court including, without limitation, the Confirmation Order;

(h)     hear and determine all applications for Professional Fees;

(i)     hear and determine other issues presented or arising under the Plan, including disputes among Holders of Claims and arising under agreements, and the documents or instruments executed in connection with the Plan;

(j)     hear and determine any action concerning the recovery and liquidation of Estate Assets, wherever located, including without limitation, litigation to liquidate and recover Estate Assets that consist of, among other things, the Causes of Action, or other actions seeking relief of any sort with respect to issues relating to or affecting Estate Assets;

(k)     hear and determine any action concerning the determination of taxes, tax refunds, tax attributes, and tax benefits and similar or related matters with respect to the Debtors or the Estates including, without limitation, matters concerning federal, state and local taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(l)     hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code; and

(m)     enter the Final Decree closing the Bankruptcy Cases upon a request for such Final Decree by the Plan Administrator.

**4.      Modification of the Plan.**

The Plan Proponents may alter, amend or modify the Plan under section 1127 of the Bankruptcy Code or as otherwise permitted by applicable law at any time prior to the Confirmation Date.  After the Confirmation Date and prior to the substantial consummation of the Plan, any party in interest in the Bankruptcy Case may, so long as the treatment of Holders of Claims or Interests under the Plan are not materially adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and any other matters as may be necessary to carry out the purposes and intents of the Plan; provided, however, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

**5.      Revocation or withdrawal of the Plan.**

The Plan Proponents may revoke or withdraw the Plan at any time prior to the Confirmation Date.  If the Plan Proponents revoke or withdraw the Plan prior to the

Confirmation Date, the Plan shall be deemed null and void.  In such event, nothing contained in the Plan or in this Disclosure Statement shall be deemed to constitute a waiver or release of any claims by or against the Plan Proponents or any other Person or to prejudice in any manner the rights of the Plan Proponents or any Person in any further proceedings involving the Plan Proponents.

## K.    Miscellaneous provisions.

### 1.    Exemption from Transfer Taxes.

All transfers of Assets of the Estates or Assets of the Post-Effective Date Debtors made pursuant to the terms of the Plan, to the fullest extent permitted by law, shall be exempt from all stamp, transfer and similar taxes within the meaning of section 1146(c) of the Bankruptcy Code.

### 2.    Closing of the Bankruptcy Case.

In conjunction with the Final Distribution, the, the Plan Administrator shall cause to be Filed a certification of counsel requesting the entry of the Final Decree.

### 3.    No Admissions.

Notwithstanding anything in the Plan to the contrary, nothing contained in the Plan or this Disclosure Statement shall be deemed an admission by Debtors with respect to any matter set forth in the Plan or Disclosure Statement including, without limitation, liability on any Claim or Interest or the propriety of any classification of any Claim or Interest.

### 4.    Controlling Documents.

If there is an inconsistency or ambiguity between any term or provision contained in this Disclosure Statement and the Plan, the terms and provisions of the Plan shall control.  To the extent there is an inconsistency or ambiguity between any term or provision contained in the Plan and the Confirmation Order, the terms and provisions of the Confirmation Order shall control.

### 5.    Governing Law.

Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal or state laws are applicable, the laws of the State of Louisiana shall govern the construction, implementation and enforcement of the Plan and all rights and obligations arising under the Plan, without giving effect to the principles of conflicts of law.

### 6.    Successors and Assigns.

The rights, benefits and obligations of any Person named or referred to in the Plan will be binding upon, and will inure to the benefit of, the heir, executor, administrator, representative, successor, or assign of such Person.

7.       **Severability.**

Should the Bankruptcy Court determine, on or prior to the Confirmation Date, that any provision of the Plan is either illegal or unenforceable on its face or illegal or unenforceable as applied to any Claim or Interest, the Bankruptcy Court, at the request of Debtors and the Official Creditors' Committee, may alter and modify such provision to make it valid and enforceable to the maximum extent practicable consistent with the original purpose of such provision.  Notwithstanding any such determination, interpretation, or alteration, the remainder of the terms and provisions of the Plan shall remain in full force and effect.

8.       **Notices and Distributions.**

On and after the Effective Date, all notices, requests and Distributions to a Holder of a Claim or Interest shall be sent to the last known address of (i) the Holder or its attorney of record as reflected in the Holder's proof of Claim or Administrative Expense Claim filed by or on behalf of such Holder, or (ii) if there is no such evidence of a last known address, to the last known address of the Holder according to the books and records of the Debtor.  Any Holder of a Claim or Interest may designate another address for the purposes of this Article of the Plan by providing the Plan Administrator written notice of such address, which notice will be effective upon receipt by the Plan Administrator of the written designation.  Any notices to the Plan Administrator or the Plan Committee or in connection with the Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) via facsimile with a copy sent via First Class Mail, postage prepaid, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

*To the Official Creditors Committee:*

McKesson Technologies, Inc.
Attn: Travis Lawrence,
5995 Windward Parkway, Alpharetta, GA 30005
Phone: 404-338-3259
Travis Lawrence
Travis.Lawrence@McKesson.com

Jeffrey K. Garfinkle, Esq.
Buchalter, A Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612
jgarfinkle@buchalter.com
Telephone: (949) 760-1121
Facsimile: (949) 780-0182

With a copy to:

William H. Patrick, III
wpatrick@hellerdraper.com
Tristan Manthey
tmanthey@hellerdraper.com
Cherie Dessauer Nobles
cnobles@hellerdraper.com
HELLER, DRAPER, PATRICK, HORN & DABNEY, LLC
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130-6103
Phone: 504-299-3300

***To the Debtors:***

Neil F. Luria
nluria@soliccapital.com
SOLIC Capital
1603 Orrington Avenue
Suite 1600
Evanston, Illinois 60201
Phone: 847.583.1618

With a copy to:

Grant T. Stein
grant.stein@alston.com
David A. Wender
david.wender@alston.com
Sage M. Sigler
sage.sigler@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street, N.E.
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

**9.      Binding Effect.**

The Plan shall be binding on and inure to the benefit of (and detriment to, as the case may be) Debtors, the Creditors Committee, all Holders of Allowed Claims or Interests (whether or not they have accepted the Plan) and their respective personal representatives, successors and assigns.

## 10.     Other Documents and Actions.

Subject to the provisions of the Plan Administrator Agreement, the Plan Administrator may execute, deliver, file or record such documents, contracts, instruments, releases and other agreements, and take such other action as is reasonable, necessary, or appropriate to effectuate the transactions provided for in the Plan, without any further action by or approval of the Bankruptcy Court or the Board of Directors of Debtors.

## ARTICLE V:
### FINANCIAL INFORMATION

The Debtors have filed Schedules and monthly operating reports with the Bankruptcy Court. This financial information may be examined in the Bankruptcy Court Clerk's Office or on the internet at the following website: http://cases.gcginc.com/lhh/.

## ARTICLE VI:
### ALTERNATIVES TO CONFIRMATION
### AND CONSUMMATION OF THE FIRST AMENDED PLAN

The Plan Proponents have determined that recoveries for Creditors will be maximized if the Debtors' Assets are liquidated. Additionally, since filing for bankruptcy, the Debtors have substantially reduced its staffing capacity to those necessary to complete the liquidation of Assets. The Plan Proponents therefore believe that the only feasible alternatives to the Plan are (a) development of an alternative plan, or (b) conversion of the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code.

The Plan Proponents do not believe that an alternative plan would result in any greater Distributions being paid to Creditors and would result in lower Distributions because of the efficiency associated with the claims allowance process by persons knowledgeable about the claim. The Plan is a plan of liquidation that provides releases as part of compromises and settlement that substantially increase the Distribution to non-insider unsecured creditors and provides for liquidation of the Assets of the Estates by a third party Plan Administrator. Similarly, the Plan provides for a mechanism for to preserve and assert Causes of Action for the benefit of Creditors. Assertion and recovery on these Non-Estate Claims will further enhance Creditor recoveries in a manner not possible without a mechanism such as the Private Actions Trust. The Plan Proponents therefore believe that no other alternative plan would result in higher recoveries to Creditors.

The Plan Proponents also do not believe that conversion of the Bankruptcy Case to a case under chapter 7 would result in increased recoveries to Creditors, and, to the contrary, will increase administrative costs of liquidation. In chapter 7, a trustee would be appointed by the United States Trustee and would be responsible for liquidating the Estate Assets. The Creditors Committee would also be disbanded and the chapter 7 trustee would likely retain separate counsel. The Plan Proponents believe that this would lead to lower recoveries for Creditors. First, a chapter 7 trustee will not have the background in the complex issues

presented in this case and that will be part of the claims allowance process. The Plan Proponents believe that substantially less value will be realized from the Estate Assets if they are not professionally managed and liquidated. Additionally, conversion to chapter 7 would result in an additional layer of administrative fees and a chapter 7 trustee would be entitled to receive fees prescribed in the Bankruptcy Code. The Plan Proponents believe that the amounts that will be paid to the Plan Administrator will be less than a chapter 7 trustee would be entitled to receive. Additionally, the Plan Proponents believe that a conversion to chapter 7 would also reduce recoveries to creditors because the Creditors Committee would be disbanded and the Plan Committee would not be established. The members of the Plan Committee have significant Claims against Debtors and will represent Creditors in a fiduciary capacity. The existence of the Creditors Committee (and the Plan Committee after the Effective Date) has helped to ensure that the Estate Assets are (and will continue to be) appropriately managed. The Plan Proponents therefore believe that disbanding the Creditors Committee would not be in the best interests of Creditors and would lead to reduced Creditor recoveries.[20] Therefore, the Plan Proponents believe that confirmation of the Plan will lead to higher recoveries than conversion of the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code.

## ARTICLE VII:
## CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The confirmation and execution of the Plan may have tax consequences to Holders of Claims and Interests. The Plan Proponents do not offer an opinion as to any federal, state, local, or other tax consequences to Holders of Claims and Interests as a result of the confirmation of the Plan. All Holders of Claims and Interests are urged to consult their own tax advisors with respect to the federal, state, local and foreign tax consequences of the Plan. **This Disclosure Statement is not intended, and should not be construed, as legal or tax advice to any Creditor or other party in interest.**

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

---

[20] Attached to this Disclosure Statement as Exhibit D is a liquidation analysis showing the estimated recoveries for Holders in Claims in a case under chapter 7 of the Bankruptcy Code.

## ARTICLE VIII:
### CONCLUSION AND RECOMMENDATION

The Plan Proponents believe that confirmation of the Plan is in the best interests of all Holders of Claims and urge all Holders of Claims in Classes 5 through 7 to vote to accept the Plan and to evidence such acceptance by returning their Ballots to the Voting Agent at the address set forth above so that they will actually be received on or before 12:00 p.m., prevailing Central Time, on _____, 2017.

Respectfully submitted this 1st day of August 2017.

*For the Debtors:*                               *For the Creditors Committee:*

/s/   Neil Luria_____        /s/   Travis Lawrence_____
Chief Restructuring Officer         *Chairman*

59

## Exhibit A

## DEFINED TERMS IN THE PLAN

A.    <u>Defined Terms</u>.  As used herein, capitalized terms shall have the meanings set forth below.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code, the Bankruptcy Rules or the Local Rules, shall have the meaning given to that term in the Bankruptcy Code, the Bankruptcy Rules or the Local Rules, as applicable.

1.1    <u>Administrative Expense Claim</u> means a claim for an expense of the Debtors for costs and expenses of administration of the Bankruptcy Cases, including, without limitation, (a) claims arising from or related to expenses Allowable under Sections 327, 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2) and 1114(e) of the Bankruptcy Code , (b) any actual and necessary costs and expenses of preserving the Debtors' Estates and operating the business of the Debtors; (c) all compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses allowed by the Bankruptcy Court under Sections 328, 330 or 503(b) of the Bankruptcy Code; (d) any indebtedness or obligations incurred or assumed by the Debtors, as debtors in possession, during the Bankruptcy Cases; and (e) out-of-pocket expenses incurred by members of the Creditors Committee (excluding any fees or expenses for legal or financial advisors except as otherwise provided herein).  All fees and charges assessed against the Debtors' Estates under Section 1930, Chapter 123, of Title 28 of the United States Code are excluded from the definition of Administrative Expense Claim and shall be paid in accordance with Section 10.8 of the Plan.

1.2    <u>Adversary Proceeding</u>  means a proceeding defined in Bankruptcy Rule 7001.

1.3    <u>Allowance, Allowed or allowed</u> means, with respect to a Claim, Administrative Expense against the Debtors, or any portion thereof, in any Class or category specified, (a) a Claim which has been listed by the Debtors in its Schedules, as may be amended by the Debtors from time to time, in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary assertion has been filed, (b) a Claim or Administrative Expense Claim as to which no objection or request for estimation has been filed within the later of: (i) one hundred twenty (120) days after the Effective Date or (ii) one hundred twenty (120) days after the filing of such Claim, or Administrative Expense Claim, subject to further extension upon *ex parte* motion; or (c) a Claim, Administrative Expense Claim that is expressly allowed (i) by an Order, or (ii) pursuant to the terms of this Plan; *provided, however*, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an Order of the Bankruptcy Court shall not be considered "Allowed" Claims hereunder.

1.4    <u>Assets</u> means any and all right, title, and interest of either of the Debtors in and to property of whatever type or nature.

1.5    <u>Asset Sales</u> means any and all sales of the Assets.

1.6    <u>Ballot</u> means the forms distributed to each Holder of Impaired Claims, if any, entitled to vote on the Plan for the purposes of accepting or rejecting this Plan.

1.7     Bankruptcy Cases means the voluntary cases commenced on January 30, 2017, by the Debtors in the U.S. Bankruptcy Court for the District of Delaware under Chapter 11 of the Bankruptcy Code, which were ultimately transferred to the Bankruptcy Court on February 14, 2017.

1.8     Bankruptcy Code means Title 11 of the United States Code, as now in effect or hereafter amended, as applicable to the Bankruptcy Cases.

1.9     Bankruptcy Court means the United States Bankruptcy Court for the Eastern District of Louisiana or any other court with jurisdiction over the Bankruptcy Cases.

1.10    Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of Title 28 of the United States Code, as now in effect or hereafter amended.

1.11    Bar Date Order means the Order entered by the Bankruptcy Court establishing a bar date.

1.12    Business Day means any day other than a Saturday, a Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.13    CCG   means, collectively, Cardiovascular Care Group Inc. and CCG of Louisiana, LLC.                            .

1.14    CCG Unsecured Claim shall have the meaning given to it in Section 3.2(e) below.

1.15    Cash means legal tender of the United States of America.

1.16    Causes of Action means all Claims, rights, causes of action, defenses, demands, damages, suits or proceedings of any kind or nature, whether under contract or tort, in law or in equity or otherwise, whether known or unknown, contingent or matured, liquidated or unliquidated, and all rights and remedies with respect thereto, including (i) causes of action arising under Chapter 5 of the Bankruptcy Code or similar state statutes, (ii) derivative claims of the Debtors or Debtors in possession or the estates pursuant to state or non-bankruptcy laws, the Bankruptcy Code or any statute or legal theory or under equity, and (iii) any rights to, Claims, or causes of action for recovery under policies of insurance issued to or on behalf of the Debtors, Debtors in possession or the Estates,  and with respect to each claim or cause of action described in (i)-(iii), whether or not litigation has been commenced with respect to such action or Claim as of the Effective Date, that the Debtors, the Creditors Committee, a trustee or the Estates may hold or assert against any person or entity as of or following the Effective Date unless otherwise expressly waived or specifically released pursuant to this Plan.  For the avoidance of doubt, Causes of Action; include, without limitation, those items set forth on the Causes of Action exhibit to the Plan Supplement.

1.17    Claim means a "claim," as defined in Section 101(5) of the Bankruptcy Code.

1.18    Class means each category of Holders of Claims established under Article II of this Plan pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.19    CMS   means the Centers for Medicare & Medicaid Services, the agency of the United States Department of Health and Human Services that administers the Medicare program.

1.20    Confirmation Date means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order.

1.21    Confirmation Hearing means the hearing held by the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020 on confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.22    Confirmation Order means the Order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

1.23    Creditors Committee means the Official Committee of Unsecured Creditors appointed and acting in the Bankruptcy Cases.

1.24    Debtors' Released Parties means (i) the Debtors, (ii) the present and former members of the Debtors' Board of Directors, (iii) the present and former officers and employees of the Debtors, (iv) the Creditors Committee and its past and present members (but only in their capacity as members of the Creditors Committee), (v) the Professionals, (vi) SOLIC as well as its employees who assisted or otherwise advised the Debtors and (vii) any attorneys, financial advisors, investment bankers, accountants, consultants, or other professionals of the parties described in clauses (i) through (vii) hereof; provided, however, that such Released Parties shall only include those that provided services related to the Debtors, the Bankruptcy Cases, the Plan, or the transactions contemplated by this Plan.

1.25    Debtors shall have the meaning set forth in the introduction to this Plan.

1.26    Disallowed means all or such part of a Claim or Administrative Expense Claim that is disallowed by an Order of the Bankruptcy Court or other court of competent jurisdiction.

1.27    Disbursing Agent means any entity designated by the Plan Administrator as such.

1.28    Disclosure Statement means that certain disclosure statement relating to this Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

1.29    Disputed Claim means any Claim against the Debtors, including any portion thereof (a) that is neither an Allowed Claim nor a Disallowed Claim or (b) for which a written request for payment has been made, to the extent the Debtors, the Plan Administrator or any

3

party in interest has interposed a timely objection or request for estimation, which objection or request for estimation has not been withdrawn or determined by a Final Order of the Bankruptcy Court.  Unless a Claim has been Allowed by an Order of the Bankruptcy Court prior to the Effective Date or was specifically listed in the Plan Supplement as an Allowed Claim, the Claim shall be deemed a Disputed Claim.  For the avoidance of doubt, each and every Employee Claim that opts out of the Employee Settlement as provided for herein shall be deemed a Disputed Claim.

1.30    <u>Distribution</u> means a distribution of the Debtors' Cash to the Record Holders of Allowed Claims, as set forth in Article VI of the Plan.

1.31    <u>Distribution Record Date</u> means, with respect to all Classes, the Effective Date or such other date as may be designated in the Confirmation Order as the date of record for which distribution on Claims will be made.

1.32    <u>Effective Date</u> means a Business Day on or after the Confirmation Date specified by the Debtors and the Creditors Committee in a Notice of Effective Date filed as provided for in Article 8.3 of the Plan.

1.33    <u>Employee</u> means any individual who worked for one or more of the Debtors on an hourly, salaried or other basis.

1.34    <u>Employee Claims</u> any Claim of an Employee; including, without limitation, WARN Act Administrative Expense Claim, Priority Employee Claims, Secured Claims, Claims under the Louisiana Wage Payment law (La. R.S. 23:631), or any applicable wage payment law, rule or regulation and Unsecured Employee Claims.

1.35    [Reserved]

1.36    <u>Employee Released Parties</u> means the Debtors' Released Parties, CCG and MedCare and each of their Affiliates and subsidiaries, and their respective shareholders, partners, members, agents, advisors, officers, directors, attorneys, insurers, and employees.

1.37    <u>Employee Settlement</u> shall mean the compromise and settlement with Employees described in Section 6.1 below.

1.38    <u>Employee Settlement Amount</u> means the amount set forth in the Employee Settlement Worksheet and as provided on the Employee's Ballot.

1.39    <u>Employee Settlement Worksheet</u> means that worksheet attached to the Plan as Exhibit A.

1.40    <u>Estates</u> means the bankruptcy estates created in the Debtors' Bankruptcy Cases pursuant to Section 541 of the Bankruptcy Code.

1.41    <u>Estate Assets</u> means all Assets of the Estates, and the proceeds thereof, including, but not limited to, the Causes of Action.

1.42    Exhibit means an exhibit to this Plan, the Disclosure Statement, filed herewith or with the Disclosure Statement, or the Plan Supplement.

1.43    File, Filed or Filing means file, filed or filing with the Bankruptcy Court or its authorized designee in the Bankruptcy Cases.

1.44    Final Distribution means the Distribution to the Record Holders of Allowed Claims of the Debtors' remaining Cash in accordance with the Plan upon the completion of the liquidation of the Debtors' Assets, including the resolution of any Causes of Action.

1.45    Final Order means an Order which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari* or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such Order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such Order was appealed, or *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such Order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such Order shall not cause such Order not to be a Final Order.

1.46    General Unsecured Claim means any Claim against the Debtors that is not an Administrative Expense Claim or a Claim in Classes 1, 2, 3, and 4 or Claims that are Disallowed, subordinated, recharacterized or released, whether by operation of law or pursuant to Order of the Bankruptcy Court, written release or settlement, the provisions of this Plan or otherwise.

1.47    Governmental Unit means the United States, any State thereof, including, but not limited to, the State of Louisiana, any commonwealth, district, territory, municipality, foreign state, parish, department, agency or instrumentality of a State, a commonwealth, district or territory or municipality of a foreign state or other foreign or domestic government.

1.48    Holder means an entity holding a Claim as of the Distribution Record Date.

1.49    Impaired means, with respect to any Class of Claims, "impaired" within the meaning of Section 1124 of the Bankruptcy Code.

1.50    [Reserved] .

1.51    Initial Distribution Date means a date selected by the Plan Administrator that is not earlier than the Effective Date and not later than thirty (30) days after the Effective Date.

1.52    Interest means, without limitation, any equity security in the Debtors that is of a kind specified in Section 101(16) of the Bankruptcy Code and any options, warrants, puts,

calls, registration rights, subscriptions or other similar rights or other agreements, commitments, or outstanding securities obligating the Debtors to issue, transfer, purchase, redeem, register or sell any shares of capital stock or other securities, any Claims arising out of any appraisal or dissenter's rights, any Claims arising from rescission of a purchase, sale or other acquisition of any common stock or other equity security (or any right, Claim, or interest in and to any common stock or equity security) of the Debtors, any Claims for damages or any other relief arising from any such purchase, sale, or other acquisition of such common stock or other equity security, and any Claims or damages or any other relief arising from the failure to register or maintain the registration of any common stock or other equity security.

1.53    Interim Compensation Order means the Order Granting Motion to Establish Procedures for Interim Compensation and Reimbursement of Professional, entered by the Bankruptcy Court on March 7, 2017.

1.54    Lien means, with respect to any interest in property, any mortgage, lien, pledge, charge, security interest, easement or encumbrance of any kind whatsoever affecting such interest in property to secure payment of a debt or performance of an obligation.

1.55    LMCHH PCP LLC  means the Debtor LMCHH PCP LLC, a Delaware limited liability company.

1.56    Louisiana Medical Center and Heart Hospital, LLC  means the Debtor Louisiana Medical Center and Heart Hospital, LLC, a North Carolina limited liability company.

1.57    Local Rules  means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Louisiana, as amended from time to time.

1.58    MedCare means MedCare Investment Fund V, L.P.

1.59    Non-Professional Administrative Expense Claim means an Administrative Expense Claim other than a Professional Administrative Claim or a WARN Act Administrative Expense Claim.

1.60    Order means an order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered by the clerk of the Bankruptcy Court on the docket in the Bankruptcy Cases (or on the docket of any other court of competent jurisdiction).

1.61    Pension and Retirement Plans means the Debtors' defined contribution plan, or any similar pension or retirement plan related to the Employees of the Debtors.

1.62    Person means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in Section 101(27) of the Bankruptcy Code, or other entity.

1.63    Petition Date means January 30, 2017, the date on which the Debtors commenced the Bankruptcy Cases.

1.64    Plan means this Chapter 11 plan of liquidation, including the Plan Supplement, the Exhibits, and all supplements, appendices and schedules thereto, either in its present form or as the same may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.65    Plan Administrator means the person appointed to administer the Plan and the provisions thereof in the manner provided in the Plan.

1.66    Plan Administrator Agreement means the agreement to be executed pursuant to Section 5.6 of the Plan setting forth the rights, powers and duties of the Plan Administrator to carry out the terms of the Plan and wind down the Debtors' Estates.

1.67    Plan Committee means the committee to be appointed to oversee the Plan Administrator's administration of the Plan, in the manner provided in the Plan and the Plan Supplement.

1.68    Plan Committee Agreement means that certain agreement by and among the Debtors, the Plan Administrator, and each member of the Plan Committee that shall set forth the oversight of the post-confirmation actions of the Plan Administrator and the Plan Committee.

1.69    Plan Documents means the documents to be executed, delivered, assumed, and/or performed in conjunction with the consummation of the Plan on or about the Effective Date.

1.70    Plan Proponents means the Debtors and the Creditors Committee acting in their capacities as proponents of the Plan.

1.71    Plan Supplement means the Plan Administrator Agreement, the designation of the person to serve as the initial Plan Administrator, the Plan Committee Agreement, the Causes of Action Exhibit, the designation of Allowed Claims, and any other relevant documents or agreements.

1.72    Plan Supplement Filing Deadline means the date which is three (3) Business Days prior to the date of the Confirmation Hearing.

1.73    Post-Effective Date Debtors means the Debtors, from and after the occurrence of the Effective Date.

1.74    Priority Employee Claim means any Employee Claim entitled to priority under Sections 503 and 507 of the Bankruptcy Code, including any Priority WARN Act Claim and any Priority PDO Claim.

1.75    Priority Non-Tax Claim means any Claim against the Debtors, other than an Administrative Expense Claim, Priority Employee Claim, or a Priority Tax Claim, entitled to priority in payment as provided for in Sections 503 and 507(a) of the Bankruptcy Code.

1.76    Priority PDO Claim means any Claim of an Employee under the Debtors' "paid days off" policy entitled to priority under Sections 503 and 507 of the Bankruptcy Code.

1.77    Priority Tax Claim means any Claim against the Debtors of a Governmental Unit of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.78    Priority WARN Act Claim means any Claim against the Debtors or any Employee Released Parties brought by a former employee seeking damages under the WARN Act to the extent it is entitled to priority in payment as specified in Sections 502(i) and 507(a)(4) of the Bankruptcy Code.

1.79    Pro Rata means, with respect to a Claim, that proportion that a Claim in a particular Class bears to the aggregate amount of all Claims in such Class, except in cases where Pro Rata is used in reference to multiple Classes, Pro Rata means the proportion that a Claim in a particular Class bears to the aggregate amount of all Claims in such multiple Classes.

1.80    Pro Rata Unsecured Distribution means (a) with respect to the CCG Unsecured Claim, 50% of any Unsecured Distribution and (b) with respect to a Claim in Classes 6, and 7, a Pro Rata proportion of 50% of any Unsecured Distribution that the particular Claim bears to the Total Allowed Unsecured Claims in such Classes.

1.81    Professional means an entity:  (a) employed in the Bankruptcy Cases pursuant to an Order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to Sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

1.82    Professional Administrative Expense Claims means all Administrative Expense Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other Order of the Bankruptcy Court.

1.83    Proof of Claim means a proof of Claim Filed against any of the Debtors in the Bankruptcy Cases

1.84    Record Date means such date as the Bankruptcy Court designates in any Order approving voting procedures and the mailing of the Disclosure Statement and Plan to Holders of Claims.

1.85    Record Holder means the Holder of a Claim as of the Record Date.

1.86    Remaining Employee Unsecured Claim means the amount set forth on the Employee Settlement Worksheet to reflect the unsecured non-priority portion of any Employee Claim.

1.87    Required Reserve Amount means a cash reserve equal to the Distributions that the Plan Proponents and the Plan Administrator conclude that Holders of Claims, including potential Administrative Expense Claims, that are neither Allowed nor disallowed as of the Effective Date would be entitled to under this Plan if such Claims were Allowed.

1.88    Reserve Account means an interest bearing or noninterest-bearing bank account (as determined by the Plan Administrator in his reasonable discretion) which shall be used to pay any Claim not Allowed or Disallowed as of the Effective Date, including potential Administrative Expense Claims, in the amounts and on the terms provided in the Plan. The Plan Administrator shall maintain the Required Reserve Amount in the Reserve Account until such Claims are either Allowed and paid as provided for in this Plan, or Disallowed in full or in part, either by (i) agreement between counsel to the Debtors or the Plan Administrator and the Holder of the Disputed Claim or (ii) by Final Order once such Claims become Allowed Claims. Upon payment of all Claims in the amounts and on the terms provided in the Plan, all funds remaining in the Reserve Account shall revert to the Estate, and be made available for Distribution in the Final Distribution. The Plan Supplement shall set forth the Required Reserve Amount.

1.89    Schedules means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors pursuant to Section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

1.90    Section 503(b)(9) Claim means any Claim filed against the Debtors pursuant to Section 503(b)(9) of the Bankruptcy Code for goods delivered with the 20 days preceding the Petition Date.

1.91    Secured Claim means, pursuant to Section 506 of the Bankruptcy Code, that portion of a Claim against the Debtors that is reflected in the Schedules or in a Proof of Claim as a Claim which is (a) secured by a valid, perfected and enforceable security interest, lien, mortgage or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of the Debtors in and to property of the Estates, to the extent of the value of the Holder's interest in such property as of the relevant determination date or (b) Allowed as such pursuant to the terms of this Plan (subject to the occurrence of the Effective Date). The defined term Secured Claim includes any Claim against the Debtors that is subject to a permissible setoff under Section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

1.92    Settling Employee means an Employee who does not timely opt out of the Employee Settlement.

1.93    SOLIC means SOLIC Capital Advisors LLC together with SOLIC Capital, LLC.

1.94    Subsequent Distribution Date means a date selected by the Plan Administrator, in his or her discretion and in accordance with the provisions of this Plan, that is, except as set forth otherwise in Section 6 of this Plan, (a) not less than sixty (60) days after the date on which the previous Distribution was made to Holders of Allowed Claims, and (b) on which date the Plan Administrator determines that, after taking into account the Plan Administrator's anticipated costs associated with the administration of the Post-Effective Date Debtors, there is at least (i) one hundred thousand dollars ($100,000) available to distribute to Holders of Allowed Claims, (ii) sufficient Cash available to pay all Allowed Claims then extant in full in the amounts and on the terms provided in the Plan, whichever is less as between (i) and (ii), or (iii) such other amount constituting a Final Distribution, whichever is less as between (i), (ii), and (iii).

1.95    Total Allowed Unsecured Claims means the aggregate amount of Unsecured Claims in Classes 5, 6 and 7.

1.96    Uncertified WARN Class Actions means the claims filed as Adversary Proceedings in the Bankruptcy Cases by Plaintiffs Barbara Kusnick and Rose H. Delaney on behalf of themselves and a putative class of others similarly situated, in the action entitled *Kusnick, et al. v. LMCHH PCP, LLC, et al.* (Adv. Proc. No. 17-01021) and Plaintiffs Terry King, April Eschete, Leonida Galloway, Marvette Leblanc-Clarkston, John Fayard, III, Bambilynn Jordan, Lou Ann Lea, Monica Smith, and Marlena Ross, on behalf of themselves and a putative class of others similarly situated, in the action entitled *King et al., v. LMCHH PCP, LLC, et al.* (Adv. Pro. No. 17-01024).

1.97    Unimpaired means, with respect to a Claim or Interest, that such Claim or Interest is not "Impaired" within the meaning of Section 1124 of the Bankruptcy Code as a result of being either (a) Reinstated or (b) paid in full and in Cash on or after the Effective Date pursuant to the terms of this Plan or any Order of the Bankruptcy Court.

1.98    Unsecured Distribution  means the total amount available for Distribution to Holders of Claims in Classes 5, 6, and 7.

1.99    Unsecured Employee Claim means an Employee Claim that is not a Priority Employee Claim or a WARN Act Administrative Expense Claim.

1.100    Unsecured PDO Claim means any Claim of an Employee under the Debtors' paid days off policy that is not entitled to priority under Sections 503 and 507 of the Bankruptcy Code.

1.101   <u>Unsecured WARN Act Claim</u>  means any portion of an Employees Claim under the WARN Act not entitled to priority under Sections 503 and 507 of the Bankruptcy Code.

1.102   <u>WARN Act</u> means the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101-2009.

1.103   <u>WARN Act Administrative Expense Claim</u> means any WARN Act Claim against the Debtors that is entitled to administrative priority in payment pursuant to Sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code.

1.104   <u>WARN Act Claim</u> means a Claim under the WARN Act against the Debtors or any Employee Released Parties.

1.105   <u>WARN Act Fees</u> means the amounts set forth on the Employee Settlement Worksheet as Warn Act Legal Fees and described in further detail in Section 6.1.

1.106   <u>WARN Act Substantial Contribution Reserve</u> means the aggregate amount set forth on the Employee Settlement Worksheet allocated to Employees who do not provide evidence to the Plan Proponents and the Plan Administrator that they are represented by an attorney in accordance with a valid and binding engagement agreement dated and actually executed on or before August 3, 2017, that entitles such attorney to a portion of the Settling Employee's Distribution.

# **EXHIBIT B**

## **PLAN OF LIQUIDATION**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| LMCHH PCP LLC, *et al.*,[1] | ) | Case No. 17-10353 |
| | ) | |
| | ) | Section "B" |
| Debtors. | ) | |
| | ) | Jointly Administered with |
| | ) | Case No. 17-10354 |

---

### AMENDED JOINT PLAN OF LIQUIDATION FILED BY LMCHH PCP LLC, LOUISIANA MEDICAL CENTER AND HEART HOSPITAL, LLC AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AS OF AUGUST 1, 2017

| | |
|---|---|
| **ALSTON & BIRD LLP**<br><br>Grant T. Stein (admitted pro hac vice)<br>David A. Wender (admitted pro hac vice)<br>Sage M. Sigler (admitted pro hac vice)<br>1201 West Peachtree Street, N.E.<br>Atlanta, Georgia 30309-3424<br>Telephone: (404) 881-7000<br>Facsimile: (404) 881-7777<br><br>-and- | **HELLER, DRAPER, PATRICK, HORN & DABNEY, L.LC.**<br><br>William H. Patrick, III LA Bar No. 10359<br>Tristan Manthey, LA. Bar No. 24539<br>Cherie Dessauer Nobles, LA Bar No. 30476<br>650 Poydras Street, Suite 2500<br>New Orleans, Louisiana 70130-6103<br>Phone: 504-299-3300<br><br>*Counsel for Official Committee of Unsecured Creditors* |
| **JONES WALKER LLP**<br><br>Elizabeth J. Futrell (LA Bar No. 05863)<br>201 St. Charles Avenue, Suite 5100<br>New Orleans, Louisiana 70170-5100<br>Telephone: (504) 582-8260<br>Facsimile: (504) 589-8260<br><br><br>*Attorneys for the Debtors* | |

Dated:  August 1, 2017

---

[1]     The last four digits of the taxpayer identification numbers for each of the Debtors follow in parenthesis: (i) LMCHH PCP LLC (8569); and (ii) Louisiana Medical Center and Heart Hospital, LLC (7298).  The mailing address for both of the Debtors is 64030 Highway 434, Lacombe, LA  70445.

ARTICLE I:    DEFINED TERMS AND RULES OF INTERPRETATION ..............................1

1.1    Administrative Expense Claim ....................................................................1
1.2    Adversary Proceeding ...............................................................................1
1.3    Allowance, Allowed or allowed ................................................................1
1.4    Assets .......................................................................................................2
1.5    Asset Sales ...............................................................................................2
1.6    Ballot .......................................................................................................2
1.7    Bankruptcy Case .......................................................................................2
1.8    Bankruptcy Code .......................................................................................2
1.9    Bankruptcy Court .......................................................................................2
1.10    Bankruptcy Rules ......................................................................................2
1.11    Bar Date Order .........................................................................................2
1.12    Business Day ............................................................................................2
1.13    CCG ........................................................................................................2
1.14    CCG Unsecured Claim ..............................................................................2
1.15    Cash ........................................................................................................2
1.16    Causes of Action ......................................................................................2
1.17    Claim ......................................................................................................3
1.18    Class .......................................................................................................3
1.19    CMS ........................................................................................................3
1.20    Confirmation Date .....................................................................................3
1.21    Confirmation Hearing ................................................................................3
1.22    Confirmation Order ...................................................................................3
1.23    Creditors Committee .................................................................................3
1.24    Debtors' Released Parties ...........................................................................3
1.25    Debtors ....................................................................................................3
1.26    Disallowed ...............................................................................................3
1.27    Disbursing Agent ......................................................................................4
1.28    Disclosure Statement .................................................................................4
1.29    Disputed Claim .........................................................................................4
1.30    Distribution ..............................................................................................4
1.31    Distribution Record Date ...........................................................................4
1.32    Effective Date ..........................................................................................4
1.33    Employee .................................................................................................4
1.34    Employee Claims ......................................................................................4
1.35    [Reserved] ................................................................................................4
1.36    Employee Released Parties .........................................................................4
1.37    Employee Settlement .................................................................................4
1.38    Employee Settlement Amount ....................................................................5
1.39    Employee Settlement Worksheet ................................................................5
1.40    Estates .....................................................................................................5
1.41    Estate Assets ............................................................................................5
1.42    Exhibit ....................................................................................................5
1.43    File, Filed or Filing ...................................................................................5
1.44    Final Distribution .....................................................................................5

1.45    Final Order ........................................................................................5
1.46    General Unsecured Claim ...................................................................5
1.47    Governmental Unit ............................................................................5
1.48    Holder ...............................................................................................6
1.49    Impaired ............................................................................................6
1.50    [Reserved] .........................................................................................6
1.51    Initial Distribution Date .....................................................................6
1.52    Interest ..............................................................................................6
1.53    Interim Compensation Order ..............................................................6
1.54    Lien ..................................................................................................6
1.55    LMCHH PCP LLC ............................................................................6
1.56    Louisiana Medical Center and Heart Hospital, LLC ...........................6
1.57    Local Rules .......................................................................................6
1.58    MedCare ...........................................................................................6
1.59    Non-Professional Administrative Expense Claim ...............................6
1.60    Order ................................................................................................7
1.61    Pension and Retirement Plans ............................................................7
1.62    Person ...............................................................................................7
1.63    Petition Date .....................................................................................7
1.64    Plan ..................................................................................................7
1.65    Plan Administrator ............................................................................7
1.66    Plan Administrator Agreement ...........................................................7
1.67    Plan Committee .................................................................................7
1.68    Plan Committee Agreement ................................................................7
1.69    Plan Documents ................................................................................7
1.71    Plan Proponents ................................................................................7
1.71    Plan Supplement ...............................................................................7
1.72    Plan Supplement Filing Deadline .......................................................8
1.73    Post-Effective Date Debtors ..............................................................8
1.74    Priority Employee Claims ..................................................................8
1.75    Priority Non-Tax Claim .....................................................................8
1.76    Priority PD Claim ..............................................................................8
1.77    Priority Tax Claim .............................................................................8
1.78    Priority WARN Act Claim .................................................................8
1.79    Pro Rata ............................................................................................8
1.80    Pro Rata Unsecured Distribution ........................................................8
1.81    Professional ......................................................................................8
1.82    Professional Administrative Expense Claims ......................................8
1.83    Record Date ......................................................................................9
1.84    Record Date ......................................................................................9
1.85    Record Holder ...................................................................................9
1.86    Remaining Employee Unsecured Claim .............................................9
1.87    Required Reserve Amount ..................................................................9
1.88    Reserve Account ...............................................................................9
1.89    Schedules ..........................................................................................9
1.90    Section 503(b)(9) Claim ....................................................................9

| | | |
|---|---|---|
| 1.91 | Secured Claim | 9 |
| 1.92 | Settling Employee | 10 |
| 1.93 | SOLIC | 10 |
| 1.94 | Subsequent Distribution Date | 10 |
| 1.95 | Total Allowed Unsecured Claims | 10 |
| 1.96 | Uncertified WARN Class Actions | 10 |
| 1.97 | Unimpaired | 10 |
| 1.98 | Unsecured Distribution | 10 |
| 1.99 | Unsecured Employee Claims | 11 |
| 1.100 | Unsecured PD Claim | 11 |
| 1.101 | Unsecured WARN Act Claim | 11 |
| 1.102 | WARN Act | 11 |
| 1.103 | WARN Act Administrative Expense Claim | 11 |
| 1.104 | WARN Act Claim | 11 |
| 1.105 | WARN Act Fees | 11 |
| 1.106 | WARN Act Substantial Contribution Reserve | 11 |
| ARTICLE II: | CLASSIFICATION OF CLAIMS AND INTERESTS | 12 |
| 2.1 | Unclassified Claims | 15 |
| 2.2 | Classes of Claims and Interests | 15 |
| ARTICLE III: | TREATMENT OF CLAIMS AND INTERESTS | 16 |
| 3.1 | Unclassified Claims | 16 |
| 3.2 | Classes of Claims and Interests | 17 |
| ARTICLE IV: | ACCEPTANCE OR REJECTION OF THE PLAN | 19 |
| 4.1 | Acceptance by an Impaired Class | 19 |
| 4.2 | Presumed Acceptances or Rejections by Various Classes | 19 |
| 4.4 | Confirmation Pursuant to Section 1129(a) of the Bankruptcy Code | 20 |
| 4.5 | Non-Consensual Confirmation | 20 |
| ARTICLE V: | MEANS FOR IMPLEMENTATION OF THE PLAN | 20 |
| 5.1 | Bar Date for Administrative Expense Claims | 20 |
| 5.2 | Cancellation of Claims and Interests | 21 |
| 5.3 | Revesting of Estate Assets | 21 |
| 5.4 | Preservation and Retention of Causes of Action, Defenses of the Debtors, and Rights to Object to Claims | 21 |
| 5.5 | Effective Date | 22 |
| 5.6 | The Plan Administrator | 22 |
| 5.7 | Limitations on Liability | 22 |
| 5.8 | Rights, Powers, and Duties of the Post-Effective Date Debtors and the Plan Administrator | 23 |
| 5.9 | Compensation of the Plan Administrator | 24 |
| 5.10 | Successor Plan Administrator | 24 |
| 5.11 | Continued Existence | 25 |
| 5.12 | Directors of the Debtors | 25 |
| 5.13 | Intentionally Omitted | 25 |
| 5.14 | Plan Committee | 25 |

ARTICLE VI:   COMPROMISE AND SETTLEMENTS WITH HOLDERS OF EMPLOYEE CLAIMS, AND PROVISIONS GOVERNING DISTRIBUTIONS ..................................................................26
6.1      Compromise and Settlement with Employees.....**Error! Bookmark not defined.**
6.2      Payment of Administrative Expenses ...............................................29
6.3      Payment of Allowed Priority Tax Claims ........................................29
6.3      Distribution to Holders of Class 1, 3 and 4 Claims .........................29
6.5      Distribution to the Holders of the Class 5, 6, and 7 Claims ..............29
6.6      Distribution to the Holders of the Class 2 Claims ...........................30
6.7      Establishment of Reserve Account ...................................................30
6.8      Final Distribution .............................................................................30
6.9      Delivery of Distributions..................................................................31
6.10     Distributions by Disbursing Agent ...................................................31
6.11     Undeliverable and Unclaimed Distributions ...................................31
6.12     Objections to Claims ........................................................................32
6.13     Distributions Pending Appeal of Disallowance................................32
6.14     Contingent and Unliquidated Claims ...............................................32
ARTICLE VII: TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................................................................33
7.1      Rejection of Remaining Executory Contracts ..................................33
7.2      Rejection Claims ..............................................................................33
ARTICLE VIII:CONFIRMATION AND CONSUMMATION OF THE PLAN.......................33
8.1      Conditions to Confirmation .............................................................33
8.2      Conditions to the Effective Date......................................................33
8.3      Notice of the Effective Date ............................................................33
ARTICLE IX:  EFFECT OF PLAN CONFIRMATION ...........................................33
9.1      Binding Effect...................................................................................33
9.2      Exculpation .......................................................................................34
9.3      Injunction Related to Exculpation ...................................................34
9.4      Intentionally Omitted .......................................................................34
9.5      Intentionally Omitted .......................................................................34
9.6      Satisfaction of Claims and Termination of Interests........................34
9.7      Injunction..........................................................................................34
9.8      Term of Bankruptcy Injunction or Stays..........................................35
ARTICLE X:   MISCELLANEOUS PROVISIONS ................................................35
10.1     Retention of Jurisdiction ..................................................................35
10.2     Governing Law ..................................................................................36
10.3     Headings ............................................................................................36
10.4     Time ...................................................................................................37
10.5     Severability........................................................................................37
10.6     Modification ......................................................................................37
10.7     Revocation.........................................................................................37
10.8     Plan Controls .....................................................................................37
10.9     Statutory Fees ...................................................................................37
10.10    Dissolution of the Creditors Committee............................................37
10.11    Claims Agent .....................................................................................38

10.12    Dissolution of Post-Effective Date Debtors ......................................................38
10.13    Effectuating Documents..................................................................................38
10.14    Operating Reports and U.S. Trustee Fees .......................................................38
10.16    Final Decree...................................................................................................38
10.17    Post-Confirmation Notice...............................................................................38
10.18    Section 1146 Exemption .................................................................................39
10.19    Section 1146 Exemption .................................................................................39
ARTICLE XI:   FINAL FEE HEARING .................................................................................39
11.1    The Professional Administrative Expense Bar Date..........................................39
11.2    Final Fee Hearing............................................................................................39
ARTICLE XII:  REQUEST FOR CONFIRMATION ..............................................................40
12.1    Request for Confirmation ................................................................................40

## INTRODUCTION

LMCHH PCP LLC, a Delaware limited liability company, and Louisiana Medical Center and Heart Hospital, LLC, a North Carolina limited liability company (together, the "**Debtors**"), as debtors and chapter 11 debtors in possession, jointly with the Creditors Committee propose the following Plan for the resolution of the outstanding Claims against and Interests in the Debtors. Reference is made to the Disclosure Statement (as defined herein), distributed contemporaneously herewith, for a discussion of the Debtors' history, business, properties and operations, risk factors, a summary and analysis of this Plan (as defined herein), and certain related matters. Subject to certain restrictions and requirements set forth herein and in 11 U.S.C. § 1127 and Fed. R. Bankr. P. 3019, the Debtors and the Creditors Committee reserve their right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation in accordance with the terms hereof, the Confirmation Order (as defined herein), and the Bankruptcy Code (as defined herein).

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

A.    Defined Terms. As used herein, capitalized terms shall have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code, the Bankruptcy Rules or the Local Rules, shall have the meaning given to that term in the Bankruptcy Code, the Bankruptcy Rules or the Local Rules, as applicable.

1.1    Administrative Expense Claim means a claim for an expense of the Debtors for costs and expenses of administration of the Bankruptcy Cases, including, without limitation, (a) claims arising from or related to expenses Allowable under Sections 327, 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2) and 1114(e) of the Bankruptcy Code, (b) any actual and necessary costs and expenses of preserving the Debtors' Estates and operating the business of the Debtors; (c) all compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses allowed by the Bankruptcy Court under Sections 328, 330 or 503(b) of the Bankruptcy Code; (d) any indebtedness or obligations incurred or assumed by the Debtors, as debtors in possession, during the Bankruptcy Cases; and (e) out-of-pocket expenses incurred by members of the Creditors Committee (excluding any fees or expenses for legal or financial advisors except as otherwise provided herein). All fees and charges assessed against the Debtors' Estates under Section 1930, Chapter 123, of Title 28 of the United States Code are excluded from the definition of Administrative Expense Claims and shall be paid in accordance with Section 10.8 of the Plan.

1.2    Adversary Proceeding  means a proceeding defined in Bankruptcy Rule 7001.

1.3    Allowance, Allowed or allowed means, with respect to a Claim, Administrative Expense Claim against the Debtors, or any portion thereof, in any Class or category specified, (a) a Claim which has been listed by the Debtors in its Schedules, as may be amended by the Debtors from time to time, in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary assertion has been filed, (b) a Claim or Administrative Expense Claim as to which no objection or request for estimation has been filed within the later of: (i) one hundred twenty (120) days after the Effective Date, or (ii) one hundred twenty (120) days after the filing of such Claim, or Administrative Expense Claim, subject to further extension upon *ex parte* motion; or (c) a Claim or Administrative Expense Claim that is

expressly allowed (i) by an Order, or (ii) pursuant to the terms of this Plan; *provided, however*, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an Order of the Bankruptcy Court shall not be considered "Allowed" Claims hereunder.

1.4     <u>Assets</u> means any and all right, title, and interest of either of the Debtors in and to property of whatever type or nature.

1.5     <u>Asset Sales</u> means any and all sales of the Assets.

1.6     <u>Ballot</u> means the forms distributed to each Holder of Impaired Claims, if any, entitled to vote on the Plan for the purposes of accepting or rejecting this Plan.

1.7     <u>Bankruptcy Cases</u> means the voluntary cases commenced on January 30, 2017 by the Debtors in the U.S. Bankruptcy Court for the District of Delaware under Chapter 11 of the Bankruptcy Code, which were ultimately transferred to the Bankruptcy Court on February 14, 2017.

1.8     <u>Bankruptcy Code</u> means Title 11 of the United States Code, as now in effect or hereafter amended, as applicable to the Bankruptcy Cases.

1.9     <u>Bankruptcy Court</u> means the United States Bankruptcy Court for the Eastern District of Louisiana.

1.10    <u>Bankruptcy Rules</u> means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of Title 28 of the United States Code, as now in effect or hereafter amended.

1.11    <u>Bar Date Order</u> means the Order entered by the Bankruptcy Court establishing a bar date [Doc. No. 368].

1.12    <u>Business Day</u> means any day other than a Saturday, a Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.13    <u>CCG</u> means, together, Cardiovascular Care Group Inc. and CCG of Louisiana, LLC.                          .

1.14    <u>CCG Unsecured Claim</u> shall have the meaning given to it in Section 3.2(e) below.

1.15    <u>Cash</u> means legal tender of the United States of America.

1.16    <u>Causes of Action</u> means all Claims, rights, causes of action, defenses, demands, damages, suits or proceedings of any kind or nature, whether under contract or tort, in law or in equity or otherwise, whether known or unknown, contingent or matured, liquidated or unliquidated, and all rights and remedies with respect thereto, including (i) causes of action arising under Chapter 5 of the Bankruptcy Code or similar state statutes, (ii) derivative claims of the Debtors or Debtors in possession or the estates pursuant to state or non-bankruptcy laws, the

Bankruptcy Code or any statute or legal theory or under equity, and (iii) any rights to, Claims, or causes of action for recovery under policies of insurance issued to or on behalf of the Debtors, Debtors in possession or the Estates, and with respect to each claim or cause of action described in (i)-(iii), whether or not litigation has been commenced with respect to such action or Claim as of the Effective Date, that the Debtors, the Creditors Committee, a trustee or the Estates may hold or assert against any person or entity as of or following the Effective Date unless otherwise expressly waived or specifically released pursuant to this Plan. For the avoidance of doubt, Causes of Action; include, without limitation, those items set forth on the Causes of Action Exhibit to the Plan Supplement.

1.17    Claim means a "claim," as defined in Section 101(5) of the Bankruptcy Code.

1.18    Class means each category of Holders of Claims established under Article II of this Plan pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.19    CMS    means the Centers for Medicare & Medicaid Services, the agency of the United States Department of Health and Human Services that administers the Medicare program.

1.20    Confirmation Date means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order.

1.21    Confirmation Hearing means the hearing held by the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020 on confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.22    Confirmation Order means the Order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

1.23    Creditors Committee means the Official Committee of Unsecured Creditors appointed and acting in the Bankruptcy Cases.

1.24    Debtors' Released Parties means (i) the Debtors, (ii) the present and former members of the Debtors' Board of Directors, (iii) the present and former officers and employees of the Debtors, (iv) the Creditors Committee and its past and present members (but only in their capacity as members of the Creditors Committee), (v) the Professionals, (vi) SOLIC as well as its employees who assisted or otherwise advised the Debtors and (vii) any attorneys, financial advisors, investment bankers, accountants, consultants, or other professionals of the parties described in clauses (i) through (vii) hereof; provided, however, that such Released Parties shall only include those that provided services related to the Debtors, the Bankruptcy Cases, the Plan, or the transactions contemplated by this Plan.

1.25    Debtors shall have the meaning set forth in the introduction to this Plan.

1.26    Disallowed means all or such part of a Claim or Administrative Expense Claim that is disallowed by an Order of the Bankruptcy Court or other court of competent jurisdiction.

1.27     Disbursing Agent means any entity designated by the Plan Administrator as such.

1.28     Disclosure Statement means that certain disclosure statement relating to this Plan, including, without limitation, all Exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

1.29     Disputed Claim means any Claim against the Debtors, including any portion thereof (a) that is neither an Allowed Claim nor a Disallowed Claim or (b) for which a written request for payment has been made, to the extent the Debtors, the Plan Administrator or any party in interest has interposed a timely objection or request for estimation, which objection or request for estimation has not been withdrawn or determined by a Final Order of the Bankruptcy Court. Unless a Claim has been Allowed by an Order of the Bankruptcy Court prior to the Effective Date or was specifically listed in the Plan Supplement as an Allowed Claim, the Claim shall be deemed a Disputed Claim. For the avoidance of doubt, each and every Employee Claim that opts out of the Employee Settlement as provided for herein shall be deemed a Disputed Claim.

1.30     Distribution means a distribution of the Debtors' Cash to the Record Holders of Allowed Claims, as set forth in Article VI of the Plan.

1.31     Distribution Record Date means, with respect to all Classes, the Effective Date or such other date as may be designated in the Confirmation Order as the date of record for which distribution on Claims will be made.

1.32     Effective Date means a Business Day on or after the Confirmation Date specified by the Debtors and the Creditors Committee in a Notice of Effective Date filed as provided for in Article 8.3 of the Plan.

1.33     Employee means any individual who worked for one or more of the Debtors on an hourly, salaried or other basis.

1.34     Employee Claims any Claim of an Employee; including, without limitation, WARN Act Administrative Expense Claim, Priority Employee Claims, Secured Claims, Claims under the Louisiana Wage Payment law (La. R.S. 23:631), or any applicable wage payment law, rule or regulation and Unsecured Employee Claims.

1.35     [Reserved]

1.36     Employee Released Parties means the Debtors' Released Parties, CCG and MedCare and each of their Affiliates and subsidiaries, and their respective shareholders, partners, members, agents, advisors, officers, directors, attorneys, insurers, and employees.

1.37     Employee Settlement shall mean the compromise and settlement with Employees described in Section 6.1 below.

- 4 -

1.38    Employee Settlement Amount means the amount set forth in the Employee Settlement Worksheet and as provided on the Employee's Ballot.

1.39    Employee Settlement Worksheet means that worksheet attached to the Plan as Exhibit A.

1.40    Estates means the bankruptcy estates created in the Debtors' Bankruptcy Cases pursuant to Section 541 of the Bankruptcy Code.

1.41    Estate Assets means all Assets of the Estates, and the proceeds thereof, including, but not limited to, the Causes of Action.

1.42    Exhibit means an exhibit to this Plan, the Disclosure Statement, filed herewith or with the Disclosure Statement, or the Plan Supplement.

1.43    File, Filed or Filing means file, filed or filing with the Bankruptcy Court or its authorized designee in the Bankruptcy Cases.

1.44    Final Distribution means the Distribution to the Record Holders of Allowed Claims of the Debtors' remaining Cash in accordance with the Plan upon the completion of the liquidation of the Debtors' Assets, including the resolution of any Causes of Action.

1.45    Final Order means an Order which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari* or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such Order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such Order was appealed, or *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such Order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such Order shall not cause such Order not to be a Final Order.

1.46    General Unsecured Claim means any Claim against the Debtors that is not an Administrative Expense Claim or a Claim in Classes 1, 2, 3, and 4 or Claims that are Disallowed, subordinated, recharacterized or released, whether by operation of law or pursuant to Order of the Bankruptcy Court, written release or settlement, the provisions of this Plan or otherwise.

1.47    Governmental Unit means the United States, any State thereof, including, but not limited to, the State of Louisiana, any commonwealth, district, territory, municipality, foreign state, parish, department, agency or instrumentality of a State, a commonwealth, district or territory or municipality of a foreign state or other foreign or domestic government.

1.48    Holder means an entity holding a Claim as of the Distribution Record Date.

1.49    Impaired means, with respect to any Class of Claims, "impaired" within the meaning of Section 1124 of the Bankruptcy Code.

1.50    [Reserved] .

1.51    Initial Distribution Date means a date selected by the Plan Administrator that is not earlier than the Effective Date and not later than thirty (30) days after the Effective Date.

1.52    Interest means, without limitation, any equity security in the Debtors that is of a kind specified in Section 101(16) of the Bankruptcy Code and any options, warrants, puts, calls, registration rights, subscriptions or other similar rights or other agreements, commitments, or outstanding securities obligating the Debtors to issue, transfer, purchase, redeem, register or sell any shares of capital stock or other securities, any Claims arising out of any appraisal or dissenter's rights, any Claims arising from rescission of a purchase, sale or other acquisition of any common stock or other equity security (or any right, Claim, or interest in and to any common stock or equity security) of the Debtors, any Claims for damages or any other relief arising from any such purchase, sale, or other acquisition of such common stock or other equity security, and any Claims or damages or any other relief arising from the failure to register or maintain the registration of any common stock or other equity security.

1.53    Interim Compensation Order means the Order Granting Motion to Establish Procedures for Interim Compensation and Reimbursement of Professional, entered by the Bankruptcy Court on March 7, 2017.

1.54    Lien means, with respect to any interest in property, any mortgage, lien, pledge, charge, security interest, easement or encumbrance of any kind whatsoever affecting such interest in property to secure payment of a debt or performance of an obligation.

1.55    LMCHH PCP LLC  means the Debtor LMCHH PCP LLC, a Delaware limited liability company.

1.56    Louisiana Medical Center and Heart Hospital, LLC  means the Debtor Louisiana Medical Center and Heart Hospital, LLC, a North Carolina limited liability company.

1.57    Local Rules  means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Louisiana, as amended from time to time.

1.58    MedCare means MedCare Investment Fund V, L.P.

1.59    Non-Professional Administrative Expense Claim means an Administrative Expense Claim other than a Professional Administrative Claim or a WARN Act Administrative Expense Claim.

1.60    Order means an order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered by the clerk of the Bankruptcy Court on the docket in the Bankruptcy Cases (or on the docket of any other court of competent jurisdiction).

1.61    Pension and Retirement Plans means the Debtors' defined contribution plan, or any similar pension or retirement plan related to the Employees of the Debtors.

1.62    Person means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in Section 101(27) of the Bankruptcy Code, or other entity.

1.63    Petition Date means January 30, 2017, the date on which the Debtors commenced the Bankruptcy Cases.

1.64    Plan means this First Amended Joint Plan of liquidation, including the Plan Supplement, the Exhibits, and all supplements, appendices and schedules thereto, either in its present form or as the same may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.65    Plan Administrator means the person appointed to administer the Plan and the provisions thereof in the manner provided in the Plan.

1.66    Plan Administrator Agreement means the agreement to be executed pursuant to Section 5.6 of the Plan setting forth the rights, powers and duties of the Plan Administrator to carry out the terms of the Plan and wind down the Debtors' Estates.

1.67    Plan Committee means the committee to be appointed to oversee the Plan Administrator's administration of the Plan, in the manner provided in the Plan and the Plan Supplement.

1.68    Plan Committee Agreement means that certain agreement by and among the Debtors, the Plan Administrator, and each member of the Plan Committee that shall set forth the oversight of the post-confirmation actions of the Plan Administrator and the Plan Committee.

1.69    Plan Documents means the documents to be executed, delivered, assumed, and/or performed in conjunction with the consummation of the Plan on or about the Effective Date.

1.70    Plan Proponents means the Debtors and the Creditors Committee acting in their capacities as proponents of the Plan.

1.71    Plan Supplement means the Plan Administrator Agreement, the designation of the person to serve as the initial Plan Administrator, the Plan Committee Agreement, the Causes of Action Exhibit, the designation of Allowed Claims, and any other relevant documents or agreements.

1.72    Plan Supplement Filing Deadline means the date which is three (3) Business Days prior to the date of the Confirmation Hearing.

1.73    Post-Effective Date Debtors means the Debtors, from and after the occurrence of the Effective Date.

1.74    Priority Employee Claim means any Employee Claim entitled to priority under Sections 503 and 507 of the Bankruptcy Code, including any Priority WARN Act Claim and any Priority PDO Claim.

1.75    Priority Non-Tax Claim means any Claim against the Debtors, other than an Administrative Expense Claim, Priority Employee Claim, or a Priority Tax Claim, entitled to priority in payment as provided for in Sections 503 and 507(a) of the Bankruptcy Code.

1.76    Priority PDO Claim means any Claim of an Employee under the Debtors' "paid days off" policy entitled to priority under Sections 503 and 507 of the Bankruptcy Code.

1.77    Priority Tax Claim means any Claim against the Debtors of a Governmental Unit of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.78    Priority WARN Act Claim means any Claim against the Debtors brought by a former employee seeking damages under the WARN Act to the extent it is entitled to priority in payment as specified in Sections 502(i) and 507(a)(4) of the Bankruptcy Code.

1.79    Pro Rata means, with respect to a Claim, that proportion that a Claim in a particular Class bears to the aggregate amount of all Claims in such Class, except in cases where Pro Rata is used in reference to multiple Classes, Pro Rata means the proportion that a Claim in a particular Class bears to the aggregate amount of all Claims in such multiple Classes.

1.80    Pro Rata Unsecured Distribution means (a) with respect to the CCG Unsecured Claim, 50% of any Unsecured Distribution and (b) with respect to a Claim in Classes 6, and 7, a Pro Rata proportion of 50% of any Unsecured Distribution that the particular Claim bears to the Total Allowed Unsecured Claims in such Classes.

1.81    Professional means an entity:  (a) employed in the Bankruptcy Cases pursuant to an Order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to Sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

1.82    Professional Administrative Expense Claims means all Administrative Expense Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have

not been paid pursuant to the Interim Compensation Order or any other Order of the Bankruptcy Court.

1.83     Proof of Claim means a proof of Claim Filed against any of the Debtors in the Bankruptcy Cases

1.84     Record Date means such date as the Bankruptcy Court designates in any Order approving voting procedures and the mailing of the Disclosure Statement and Plan to Holders of Claims.

1.85     Record Holder means the Holder of a Claim as of the Record Date.

1.86     Remaining Employee Unsecured Claim means the amount set forth on the Employee Settlement Worksheet to reflect the unsecured non-priority portion of an Employee's WARN Act Claim and Claim in respect of the Debtors' "paid days off" policy .

1.87     Required Reserve Amount means a cash reserve equal to the Distributions that the Plan Proponents and the Plan Administrator conclude that Holders of Claims, including potential Administrative Expense Claims, that are neither Allowed nor disallowed as of the Effective Date would be entitled to under this Plan if such Claims were Allowed.

1.88     Reserve Account means an interest bearing or noninterest-bearing bank account (as determined by the Plan Administrator in his reasonable discretion) which shall be used to pay any Claim not Allowed or Disallowed as of the Effective Date, including potential Administrative Expense Claims, in the amounts and on the terms provided in the Plan.  The Plan Administrator shall maintain the Required Reserve Amount in the Reserve Account until such Claims are either Allowed and paid as provided for in this Plan, or Disallowed in full or in part, either by (i) agreement between counsel to the Debtors or the Plan Administrator and the Holder of the Disputed Claim or (ii) by Final Order once such Claims become Allowed Claims.  Upon payment of all Claims in the amounts and on the terms provided in the Plan, all funds remaining in the Reserve Account shall revert to the Estate, and be made available for Distribution in the Final Distribution.  The Plan Supplement shall set forth the Required Reserve Amount.

1.89     Schedules means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors pursuant to Section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

1.90     Section 503(b)(9) Claim  means any Claim filed against the Debtors pursuant to Section 503(b)(9) of the Bankruptcy Code for goods delivered with the 20 days preceding the Petition Date.

1.91     Secured Claim means, pursuant to Section 506 of the Bankruptcy Code, that portion of a Claim against the Debtors that is reflected in the Schedules or in a Proof of Claim as a Claim which is (a) secured by a valid, perfected and enforceable security interest, lien, mortgage or other

- 9 -

encumbrance (including a valid Claim of reclamation), that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of the Debtors in and to property of the Estates, to the extent of the value of the Holder's interest in such property as of the relevant determination date or (b) Allowed as such pursuant to the terms of this Plan (subject to the occurrence of the Effective Date). The defined term Secured Claim includes any Claim against the Debtors that is subject to a permissible setoff under Section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

1.92    Settling Employee means an Employee who does not timely opt out of the Employee Settlement.

1.93    SOLIC means SOLIC Capital Advisors LLC together with SOLIC Capital, LLC.

1.94    Subsequent Distribution Date means a date selected by the Plan Administrator, in his or her discretion and in accordance with the provisions of this Plan, that is, except as set forth otherwise in Section 6 of this Plan, (a) not less than sixty (60) days after the date on which the previous Distribution was made to Holders of Allowed Claims, and (b) on which date the Plan Administrator determines that, after taking into account the Plan Administrator's anticipated costs associated with the administration of the Post-Effective Date Debtors, there is at least (i) one hundred thousand dollars ($100,000) available to distribute to Holders of Allowed Claims, (ii) sufficient Cash available to pay all Allowed Claims then extant in full in the amounts and on the terms provided in the Plan, whichever is less as between (i) and (ii), or (iii) such other amount constituting a Final Distribution, whichever is less as between (i), (ii), and (iii).

1.95    Total Allowed Unsecured Claims means the aggregate amount of Unsecured Claims in Classes 5, 6 and 7.

1.96    Uncertified WARN Class Actions means the claims filed as Adversary Proceedings in the Bankruptcy Cases by Plaintiffs Barbara Kusnick and Rose H. Delaney on behalf of themselves and a putative class of others similarly situated, in the action entitled *Kusnick, et al. v. LMCHH PCP, LLC, et al.* (Adv. Proc. No. 17-01021) (the "Kusnick Litigation") and by Plaintiffs Terry King, April Eschete, Leonida Galloway, Marvette Leblanc-Clarkston, John Fayard, III, Bambilynn Jordan, Lou Ann Lea, Monica Smith, and Marlena Ross, on behalf of themselves and a putative class of others similarly situated, in the action entitled *King et al., v. LMCHH PCP, LLC, et al.* (Adv. Pro. No. 17-01024) (the "King Litigation").

1.97    Unimpaired means, with respect to a Claim or Interest, that such Claim or Interest is not "Impaired" within the meaning of Section 1124 of the Bankruptcy Code as a result of being either (a) Reinstated or (b) paid in full and in Cash on or after the Effective Date pursuant to the terms of this Plan or any Order of the Bankruptcy Court.

1.98    Unsecured Distribution  means the total amount available for Distribution to Holders of Claims in Classes 5, 6, and 7.

1.99    Unsecured Employee Claim means an Employee Claim that is not a Priority Employee Claim or a WARN Act Administrative Expense Claim.

1.100    Unsecured PDO Claim means any Claim of an Employee under the Debtors' paid days off policy that is not entitled to priority under Sections 503 and 507 of the Bankruptcy Code.

1.101    Unsecured WARN Act Claim  means any portion of an Employees Claim under the WARN Act not entitled to priority under Sections 503 and 507 of the Bankruptcy Code.

1.102    WARN Act means the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101-2009.

1.103    WARN Act Administrative Expense Claim means any WARN Act Claim against the Debtors that is entitled to administrative priority in payment pursuant to Sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code.

1.104    WARN Act Claim means a Claim under the WARN Act against the Debtors or any Employee Released Parties.

1.105    WARN Act Fees means the amounts set forth on the Employee Settlement Worksheet as Warn Act Legal Fees and described in further detail in Section 6.1.

1.106    WARN Act Substantial Contribution Reserve means the aggregate amount set forth on the Employee Settlement Worksheet allocated to Settling Employees who do not provide evidence to the Plan Administrator that they are represented by an attorney in accordance with a valid and binding engagement agreement dated and actually executed on or before August 3, 2017, that entitles such attorney to a portion of the Settling Employee's Distribution.

B.    Rules of Interpretation.  For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document, schedule or Exhibit Filed or to be Filed means such document, schedule, or Exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (g) subject to the provisions of any contract, certificates or articles of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code, the Bankruptcy Rules

and the Local Rules; (h) the rules of construction set forth in Section 102 of the Bankruptcy Code will apply; (i) any reference to payment or Distribution means to pay, Distribute, or otherwise reserve for the subsequent or potential Distribution of and (j) in computing any period of time prescribed or allowed by this Plan, the provision of Bankruptcy Rule 9006(a), as then in effect, will apply.

C.      Exhibits and Plan Supplement.  All Exhibits and the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits or Plan Supplement shall be timely Filed in accordance with this Plan.  Holders of Claims may obtain a copy of the Filed Exhibits upon written request to the Debtors.  Upon their Filing, the Exhibits may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours.  Upon entry of the Confirmation Order, the documents contained in the Exhibits, the Plan Supplement, and any amendments to the Plan shall be and hereby are approved by the Bankruptcy Court.  The Debtors shall file the Plan Supplement by the Plan Supplement Filing Deadline.

**ARTICLE II**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

All Claims and Interests, except Administrative Expense Claims and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims, as described below, have not been classified.

A Claim or Interest is placed in a particular Class or sub-Class only to the extent that the Claim or Interest qualifies within the description of such Class or sub-Class and is in a different Class to the extent that it qualifies within the description of such different Class, but the same portion of a Claim may not be in more than one Class.  A Claim or Interest is also placed in a particular Class for all purposes, including voting, confirmation and Distribution under this Plan and under Sections 1122 and 1123(a)(1) of the Bankruptcy Code.  However, a Claim or Interest is placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

As of the Petition Date, Employees held various Employee Claims (as defined in this Plan, the Disclosure Statement, and further explained below, including Claims arising out of the WARN Act) against the Debtors and the Employee Released Parties.  Although the Debtors dispute their liability for many of the Employee Claims, the Debtors understand that these Employee Claims include potential Claims for paid days off, Claims relating to their medical plan, Claims under various employee agreements/programs, Claims under the Louisiana Wage Payment law, and Claims under the WARN Act.  The Plan proposes to resolve all Employee Claims against the Debtors and the Employee Released Parties.  In order to avoid what is anticipated to be expensive and protracted litigation associated with the Employee Claims, especially the Uncertified WARN Class Actions, and to avoid the cost, delay, and risks to the Employees and the Debtors with respect

to litigating the Employee Claims, Section 6.1 of the Plan proposes the Employee Settlement. The Employee Settlement proposes a compromise and settlement of each and every Claim that an Employee may have against the Debtors and any Employee Released Parties in exchange for the payment to the Employee of the Employee Settlement Amount. The total Employee Settlement Amount is the product of lengthy arms'-length negotiations between Debtors and other Plan Proponents and counsel in the King Litigation. The Employee Settlement Amount, set forth on the Employee Settlement Worksheet and on each Employee's Ballot, will provide each Settling Employee with an expedited Distribution of the Employee Settlement Amount.

The Employee Settlement Amount payable to each Settling Employee has been calculated by the Debtors, based on their reasonable independent analysis of the Employee Claims and the potential liability therefor, to be 50% of the Employee's estimated Priority WARN Act Claim plus 100% of the Employee's Priority PDO Claim plus 10% of the estimated Employee's Remaining Employee Unsecured Claim (to provide Employees with a Distribution on account of claims that they may have had in Class 7 of the Plan). The Employee Settlement Amount payable to each Settling Employee is expressly set forth on the Employee Settlement Worksheet and on each Employee's Ballot. In addition to the Employee Settlement Amount payable to each Settling Employee, each Settling Employee has been allocated a Pro Rata share of the aggregate WARN Act Fees on the Employee Settlement Worksheet.[1]

The WARN Act Fee set forth on the Employee Settlement Worksheet shall be available to satisfy legal fees of each Settling Employee as follows: (i) if the Settling Employee is represented by an attorney pursuant to a valid and binding engagement agreement dated and actually executed on or before August 3, 2017, that entitles such attorney to a portion of the Settling Employee's Distribution,[2] the Settling Employee shall be entitled to receive the WARN Act Fee allocated to such Settling Employee on the Employee Settlement Worksheet to satisfy such Settling Employee's obligation to its attorney which, unless the Bankruptcy Court orders otherwise, shall be payable directly to such counsel on behalf of the Settling Employee[3] and (ii) if the Settling Employee is not represented by an attorney in accordance with a valid and binding engagement agreement dated and actually executed on or before August 3, 2017, that entitles such attorney to a portion of the Settling Employee's Distribution, the WARN ACT Fees allocated to such Settling Employee shall become part of the WARN Act Substantial Contribution Reserve. With respect to subsection (ii) in the preceding sentence, if an attorney maintains that it is entitled to a Claim against the Debtors pursuant to Sections 503(b)(3) and 503(b)(4) of the Bankruptcy Code on account of a substantial contribution that it made for the benefit of Settling Employees, the attorney

---

[1]    The WARN Act Fees represents 28.4% of the total amount attributable to a Settling Employee.

[2]    The Settling Employee shall be required to submit a valid and binding engagement agreement as described herein to the Plan Administrator prior to receiving its Distribution.

[3]    The Plan Proponents are informed that the law firms of Fishman Haygood L.L.P. and Bruno and Bruno LLP have agreed to reduce the contingency fee owing by their clients from 33% to 28.4% to facilitate the Employee Settlement.

shall be required to assert such a claim as provided in Section 5.1.  The WARN Act Substantial Contribution Reserve shall be the sole source available to satisfy any and all Allowed Claims seeking substantial contribution Claims for legal fees and expenses in connection with each Settling Employee Claim against the Debtors pursuant to Sections 503(b)(3) and 503(b)(4) of the Bankruptcy Code.  If a Settling Employee has executed an engagement agreement that would entitle its attorney to receive a contingency fee in excess of 28.4%, such attorney shall not be entitled to recover more than 28.4% from the Debtors, their Estates or the WARN Act Substantial Contribution Reserve; such excess (if any) shall be solely the responsibility of the Settling Employee.   The total amount payable to the Settling Employees, including the Employee Settlement Amount and amounts that are allocated to attorneys retained by the each Settling Employee or that may be awarded as an Administrative Expense Claim for making a substantial contribution, shall be no more than $3,800,000.00.[4]  Any amounts in the WARN Act Substantial Contribution Reserve not allowed and awarded by the Bankruptcy Court in a Final Order in respect of a timely motion for allowance shall revert to the Post-Effective Debtors and their Estates for further administration consistent with the Plan and to the extent (if any) required further orders from the Bankruptcy Court.

Although the Plan Proponents vigorously dispute that the Debtors are liable for any amount under the WARN Act and will likely dispute the total amount allegedly owing to Employees on an unsecured basis, the Plan Proponents recognize that resolving the Uncertified WARN Class Actions and the Employee Claims in general will likely require years to litigate and will result in significant expense and risk and additionally could result in substantial delay to the Distribution of amounts to all Holders of all other Claims.  Accordingly, the Plan Proponents believe that the Employee Settlement adequately takes into account the costs and delays associated with litigation, the risks associated with litigation (such as the possibility that the Holders of Employee Claims would not be able to establish their entitlement to a Claim under the WARN Act and the chance that they could), and the delay that the Holders of Employee Claims will experience waiting for potential Distributions.

Each Employee who timely opts out of the Employee Settlement on the Employee's timely submitted Ballot will not be entitled to receive a Distribution of the Employee Settlement Amount and will, instead, retain such Employee's Claims and the Plan establishes Classes for such Holder of an Employee Claim to ensure that such Employee Claim – provided it is allowed by Final Order – is properly classified and treated in the appropriate fashion in accordance with the Plan after such judicial determination.  **If the Holder of an Employee Claim timely opts out of the Employment Settlement set forth in Section 6.1 of the Plan, it will <u>NOT</u> be deemed to waive, discharge, and release the Employee Released Parties from any Employee Claims. If the Holder of an Employee Claim opts out of the Employment Settlement, the offer of**

---

[4]     $3,800,000 represents the gross aggregate amount payable in connection with the Employee Settlement if each and every Employee is a Settling Employee.  If an Employee opts out of the Employee Settlement, the gross aggregate amount payable to Settling Employees shall reflect a dollar-for dollar reduction of the Employee Settlement Amount and Warn Act Fees allocated to such Employee on the Employee Settlement Worksheet.

- 14 -

**the Employee Settlement to such Holder shall automatically terminate upon the occurrence of the Effective Date.**

2.1    Unclassified Claims.  The following Claims are Unimpaired under this Plan.

    (a)    Administrative Expense Claims.

    (b)    Priority Tax Claims.

2.2    Classes of Claims and Interests.

    (a)    *Class 1:  Priority Non-Tax Claims*.  Class 1 consists of all Priority Non-Tax Claims against the Debtors other than WARN Act Claims and Priority Employee Claims.  Claims in Class 1 are Unimpaired.  Holders of Claims in Class 1 will be deemed to accept the Plan and are not entitled to vote to accept or reject the Plan.

    (b)    *Class 2 –Priority Employee Claims (Sub Classes of Priority Employee Claims)*.  If a Holder of a Priority Employee Claim opts out of the Employee Settlement, and chooses to litigate the validity and extent of such Holder's Priority Employee Claim, such Holder's Class 2 Priority Employee Claim shall be classified in a separate sub-Class of Class 2.  Claims in Class 2 are Unimpaired.  Holders of Claims in Class 2 will be deemed to accept the Plan and are not entitled to vote to accept or reject the Plan.  While Claims in Class 2 are designated as Unimpaired, such designation assumes that the Holder of a Priority Employee Claim in such sub-Class first timely opts out of the Employee Settlement set forth in Section 6.1 of the Plan and thereafter establishes in a Final Order, which will be opposed by the Debtors and the Plan Administrator, such Holder's entitlement to an Allowed Priority Employee Claim.

    (c)    *Class 3:  Secured Claims*.  Class 3 consists of Holders of Secured Claims against the Debtors.  Claims in Class 3 are Unimpaired.  Holders of Claims in Class 3 will be deemed to accept the Plan and shall not be entitled to vote to accept or reject the Plan.

    (d)    *Class 4:  Secured Claim of CMS.*  Class 4 consists of the Secured Claim of CMS against the Debtors.  The Claims in Class 4 is Unimpaired.  The Holder of the Claim in Class 4 will be deemed to accept the Plan and shall not be entitled to accept or reject the Plan.

    (e)    *Class 5:  CCG Unsecured Claim*.  Class 5 consists of the CCG Unsecured Claim against the Debtors.  The Claim in Class 5 is Impaired.  The Holder of the Claim in Class 5 shall be entitled to accept or reject the Plan.

- 15 -

(f)     *Class 6:  Unsecured Employee Claims (Sub Classes of Unsecured Employee Claims).*  If a Holder of an Unsecured Employee Claim timely opts out of the Employee Settlement, such Holder's Class 6 Unsecured Employee Claim shall be classified in a separate sub-Class of Class 6.  Claims in Class 6 are Impaired.  Holders of Claims in Class 6 shall be entitled to accept or reject the Plan.

(g)     *Class 7:  General Unsecured Claims.*  Class 7 consists of all General Unsecured Claims against the Debtors, other than Unsecured Employee Claims and the CCG Unsecured Claim.  Claims in Class 7 are Impaired.  Holders of Claims in Class 7 shall be entitled to accept or reject the Plan.

(h)     *Class 8:  Interests.*  Class 8 consists of all Interests in the Debtors and all Claims arising out of or relating thereto.  Interests in Class 8 are Impaired and shall be deemed to reject the Plan.  Accordingly, Holders of Interests in Class 8 shall not be entitled to vote to accept or reject the Plan.

## ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS

3.1     Unclassified Claims.

(a)     *Non-Professional Administrative Expense Claims.*  Unless otherwise agreed by the Holder of a Non-Professional Administrative Expense Claim, in full satisfaction, settlement, and release of and in exchange for each Non-Professional Administrative Expense Claim, each Holder of an Allowed Non-Professional Administrative Expense Claim shall receive payment in full, in Cash, of any unpaid portion of such Allowed Non-Professional Administrative Expense Claim on the later to occur of: (x) the Effective Date or (y) pursuant to Section 6.2 of the Plan following the Allowance of such Administrative Expense Claim.

(b)     *Professional Administrative Expense Claims.*  Unless otherwise agreed by such Holder, the Professionals who hold Professional Administrative Expense Claims shall receive payment in full, in Cash, of any unpaid portion of such Allowed Professional Administrative Expense Claims subject to the provisions of Sections 328, 330, 331 and 503(b) of the Bankruptcy Code, the Interim Compensation Order and Sections 6.2 and 11.2 of this Plan, as soon as practicable after Bankruptcy Court approval thereof.

(c)     *WARN Act Administrative Expense Claim.*  If the Holder of a WARN Act Administrative Expense Claim timely opts out of the Employee Settlement set forth in Section 6.1 of the Plan and seeks Allowance of its

- 16 -

Administrative Expense Claim, which will be opposed by the Debtors and the Plan Administrator, and obtains a Final Order that such Holder's WARN Act Claim is an Allowed WARN Act Administrative Expense Claim, such Holder shall be paid in full pursuant to Section 6.2 of the Plan following Allowance by a Final Order of such WARN Act Administrative Expense Claim.

(d) *Priority Tax Claims*. Unless otherwise agreed by the Holder of a Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive in full satisfaction, release, discharge of and in exchange for such Priority Tax Claim, Cash equal to the amount of such Allowed Priority Tax Claim on the Effective Date; provided, however, that any Priority Tax Claim not due and owing or Allowed on the Effective Date will be paid pursuant to Section 6.2 of the Plan when such Claim becomes due and owing or Allowed (as applicable).

3.2 <u>Classes of Claims and Interests</u>. Unless the Holder of a Claim or Interest and the Debtors or the Plan Administrator agree to a different treatment, each Holder of a Claim or Interest shall receive as follows:

(a) *Class 1: Priority Non-Tax Claims*. In full satisfaction, release, and discharge of and in exchange for each Allowed Priority Non-Tax Claim, the Holder thereof shall receive payment in full, in Cash, on the later to occur of: (x) the Effective Date; or (y) pursuant to Section 6.4 of the Plan after Allowance of such Class 1 Claim.

(b) *Class 2 –Priority Employee Claims (Sub Classes of Priority Employee Claims).* If the Holder of a Priority Employee Claim timely opts out of the Employee Settlement set forth in Section 6.1 of the Plan and thereafter establishes that such Holder's Employee Claim is an Allowed Priority Employee Claim by a Final Order (which will be opposed by the Debtors and the Plan Administrator), then in full satisfaction, release, discharge of and in exchange for each Allowed Priority Employee Claim, the Holder thereof shall receive payment in full, in Cash, on the later to occur of: (x) the Effective Date; or (y) pursuant to Section 6.6 of the Plan after Allowance of such Class 2 Claim by Final Order.

(c) *Class 3: Secured Claims*. In full satisfaction, release, discharge of and in exchange for each Allowed Secured Claim, each Holder of an Allowed Secured Claim shall receive, at the discretion of the Plan Administrator, (a) the return of the property securing such Holder's Secured Claim or (b) payment in full, in Cash, on the on the later to occur of: (x) the Effective Date; or (y) pursuant to Section 6.4 of the Plan after Allowance of such Class 3 Claim.

- 17 -

(d)     *Class 4: Secured Claim of CMS.*  In full satisfaction, release, discharge of and in exchange for the Allowed Claim of CMS, if any, CMS shall have its Allowed Secured Claim of CMS satisfied in full, in Cash, on the later to occur of (x) the Effective Date; or (y) pursuant to Section 6.4 of the Plan after Allowance of such Class 4 Claim.

(e)     *Class 5: CCG Unsecured Claim*.  In full satisfaction, release, discharge of and in exchange for the CCG Unsecured Claim, the Holder of the Allowed CCG Unsecured Claim, as of the Effective Date, shall receive a Pro Rata Unsecured Distribution based on a compromise and settlement wherein CCG and the Plan Proponents agree that, for purposes of this Plan, CCG holds an Allowed Claim in the amount of $175,592,443.00 (the "CCG Unsecured Claim").  Notwithstanding the foregoing, the Plan Proponents recognize that various objections to the CCG Unsecured Claim have been asserted by the Creditors Committee.  Although CCG vigorously disputes the Creditors Committee's objections, CCG recognizes that resolving the objections involves certain risk and will likely require much time and could result in a substantial delay of any Distribution to CCG and other Holders of Claims.  Accordingly, pursuant to the Plan, CCG and the Plan Proponents have agreed to a compromise and settlement in respect of the distribution to the Holders of Allowed General Unsecured Claims, including CCG, that is being implemented by this Plan.  The compromise and settlement provides for CCG to receive a Distribution equal to its Pro Rata Unsecured Distribution.  CCG and the Plan Proponents believe that this compromise and settlement adequately takes into account the costs and delays associated with litigation, the risks associated with litigation and the delay that the Holders of General Unsecured Claims will experience waiting for potential Distributions.

In consideration of the above-described compromise and settlement of the Allowed CCG Unsecured Claim, the Debtors, on behalf of the Debtors and their estates, and the Creditors Committee (the "Releasing Parties") shall release and agree not to sue (i) the Debtors' Released Parties, (ii) present and former members of the Debtors' Board of Directors (iii) Debtors' members, or managers, (iv) the present and former officers and employees of the Debtors, (v) CCG, (vi) MedCare, and (vii) any attorneys, financial advisors, investment bankers, accountants, consultants, insurers, Affiliates or other professionals of the Persons and parties described in clauses (i) through (vii) in respect of any Claim held by or through the Debtors.  The limited releases in favor of Persons and parties provided for in clauses (i) through (vii) are an integral component of the Plan.

(f)     *Class 6: Employee Unsecured Claims (Sub Classes of Employee Unsecured Claims)*.  If the Holder of an Employee Unsecured Claim opts out of the

- 18 -

Employee Settlement set forth in Section 6.1 of the Plan and thereafter establishes by Final Order that such Holder's Employee Claim is an Allowed Employee Unsecured Claim (which will be opposed by the Debtors and the Plan Administrator), then in full satisfaction, release, discharge of and in exchange for each Employee Unsecured Claim, each Holder of an Allowed Employee Unsecured Claim, shall receive a Pro Rata Unsecured Distribution on the later to occur of (x) the Effective Date or (y) pursuant to Section 6.6 of the Plan after Allowance of such Class 6 Claim in a Final Order.

(g)     *Class 7: General Unsecured Claims*.  In full satisfaction, release, discharge of and in exchange for each General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive a Pro Rata Unsecured Distribution on the later to occur of (x) the Effective Date or (y) the Allowance of such Class 7 General Unsecured Claim pursuant to Section 6.5 of the Plan.

Notwithstanding any provision in the Plan to the contrary, to the extent and only to the extent a General Unsecured Claim is subordinated under applicable law, including but not limited to, Sections 510(a), (b) or (c) of the Bankruptcy Code or recharacterized under applicable law, including but not limited to, Section 105 of the Bankruptcy Code, any distributions on account of such General Unsecured Claim shall be made as provided in the Order of the Bankruptcy Court governing such Claim.

(h)     *Class 8:  Interests*.  No property will be distributed to or retained by the Holders of Allowed Class 8 Interests.  Holders of Class 8 Interests will be deemed to have rejected the Plan and are not entitled to vote pursuant to 11 U.S.C. § 1126(g).

# ARTICLE IV

## ACCEPTANCE OR REJECTION OF THE PLAN

4.1     Acceptance by an Impaired Class.  In accordance with Section 1126(c) of the Bankruptcy Code and except as provided in Section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted this Plan if this Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Claims of such Class that have timely and properly voted to accept or reject this Plan.

4.2     Presumed Acceptances or Rejections by Various Classes. Classes 1, 2, 3, and 4 are Unimpaired by this Plan.  Under Section 1126(f) of the Bankruptcy Code, Holders of such Claims are conclusively presumed to accept this Plan, and thus the votes of the Holders of such Claims will not be solicited.  Classes 5, 6, and 7 are Impaired under the Plan.  Therefore, such Holders are entitled to vote on this Plan.    Class 8, Holders of Interests, under Section 1126(g) of the

Bankruptcy Code are deemed to reject this Plan.  Accordingly, the votes of the Holders of such Interests will not be solicited.

4.4     Confirmation Pursuant to Section 1129(a) of the Bankruptcy Code.  If all Classes have either accepted the Plan, been deemed to have accepted the Plan or are not entitled to vote, the Debtors shall request the Bankruptcy Court to confirm the Plan under Section 1129(a) of the Bankruptcy Code.

4.5     Non-Consensual Confirmation.  In the event that it is determined that one or more Impaired Classes of Claims exist, and if any Impaired Class fails to accept this Plan by the requisite statutory majorities, the Proponents reserve the right (i) to confirm this Plan by a "cram-down" of such non-accepting Class pursuant to Section 1129(b) of the Bankruptcy Code and/or (ii) to propose any modifications to this Plan and to confirm this Plan as modified, without re-solicitation, to the extent permitted by the Bankruptcy Code.  The filing of this Plan shall constitute a motion for the entry of an Order granting the relief set forth in subparagraphs (a) and (b) above, as applicable, at the Confirmation Hearing.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1     Bar Date for Administrative Expense Claims.  Subject to limited exceptions, Administrative Expense Claims that first arose between January 30, 2017 and June 30, 2017 were subject to the July 28, 2017 Administrative Expense Claim bar date (the "**Initial Administrative Expense Claim Bar Date**").  [Doc. No. 415].  Holders of Administrative Expense Claims arising prior to July 1, 2017 that were required, but failed, to File and serve a request for payment of such Administrative Expense Claim by the Initial Administrative Expense Claim Bar Date will not be permitted to receive payment or participate in any distribution under the Plan on account of such Administrative Expense Claim.

Any Holder of an unpaid Administrative Expense Claim that first arose between July 1, 2017 and the Effective Date (a "**Supplemental Administrative Expense Claim**"), other than Professional Administrative Expense Claims,  shall be required to file a motion or other pleading seeking allowance of such Supplemental Administrative Expense Claim on or before the thirtieth (30th) day following the Effective Date.  Any Supplemental Administrative Expense Claim arising between July 1, 2017 and the Effective Date for which a request for payment is not timely filed as set forth herein will be forever barred and Disallowed by operation of confirmation of this Plan without the need for any party to file an objection or other pleading, and Holders of such Supplemental Administrative Expense Claims shall be prohibited from asserting such Supplemental Administrative Expense Claims in any manner against the Debtors, the Post-Effective Date Debtors or the Plan Administrator.  Expenses incurred by or on behalf of the Plan Administrator or the Post-Effective Date Debtors after the Effective Date shall not be subject to this Section 5.1.

Any attorney seeking payment of Warn Act Fees from the WARN Act Substantial Contribution Reserve pursuant to Sections 503(b)(3) and 503(b)(4) of the Bankruptcy Code for any substantial contribution Claims for legal fees and expenses arising between July 1, 2017 and the Effective Date shall file a Motion seeking Allowance of such Claim in the Bankruptcy Cases within thirty (30) days of the Effective Date, in accordance with and subject to Sections 6.1 and 10.18 of this Plan.

5.2     <u>Cancellation of Claims and Interests</u>.  Except as otherwise set forth in this Plan, and except for purposes of evidencing a right to a Distribution to the extent provided by the Plan, on the Effective Date, (a) all agreements and other documents evidencing the Claims or rights of any Holders of such Claims against the Debtors, including, but not limited to, all contracts, notes, guarantees, and mortgages, and (b) all Interests, shall be canceled.  Thereafter, the sole membership interest (as applicable) in each of the Debtors shall be issued to the Plan Administrator.

5.3     <u>Revesting of Estate Assets</u>.  Notwithstanding Section 1141(b) of the Bankruptcy Code, except as otherwise provided for in this Plan, the Estate Assets, including Causes of Action, shall not revest in the Debtors or the Post-Effective Date Debtors, but shall remain property of the Estates subject to the jurisdiction of the Bankruptcy Court under the exclusive control of the Plan Administrator, until liquidated and distributed to Holders of Allowed Claims in accordance with the provisions of this Plan (including the process set forth therein) and the Confirmation Order.

5.4     <u>Preservation and Retention of Causes of Action, Defenses of the Debtors, and Rights to Object to Claims</u>.  Other than those Causes of Action expressly released under this Plan, confirmation of this Plan will have no impact upon, and will not render *res judicata*: (i) Causes of Action ; (ii) any defenses the Debtors may have (including rights of setoff) in any action brought against it; or (iii) any party's right to object to any Claim against the Debtors, subject to any limitation expressly set forth in this Plan. The Debtors do not waive, relinquish, or abandon (nor shall the Plan Administrator  be estopped or otherwise precluded from asserting) any right, claim, Cause of Action, defense, or counterclaim that constitutes property of the Estates:  (a) whether or not such right, claim, Cause of Action, defense, or counterclaim has been listed or referred to in the Plan, the Schedules, the Plan Supplement, or any other document filed with the Bankruptcy Court; (b) whether or not such right, claim, Cause of Action, defense, or counterclaim is currently known to the Debtors; and (c) whether or not a party in any litigation relating to such right, claim, cause of action, defense or counterclaim filed a proof of Claim in the  Bankruptcy Cases, filed a notice of appearance or any other pleading or notice in the Bankruptcy Cases, voted for or against the Plan, or received or retained any consideration under the Plan.  Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principle of law or equity including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, THE FAILURE TO LIST, DISCLOSE, DESCRIBE, IDENTIFY, OR REFER TO A RIGHT, CLAIM, CAUSE OF ACTION, DEFENSE, OR COUNTERCLAIM, OR POTENTIAL RIGHT, CLAIM, CAUSE OF ACTION, DEFENSE, OR COUNTERCLAIM, IN THE PLAN, THE SCHEDULES, THE PLAN SUPPLEMENT OR ANY OTHER DOCUMENT FILED WITH THE BANKRUPTCY COURT SHALL IN NO MANNER

WAIVE, ELIMINATE, MODIFY, RELEASE, OR ALTER ANY RIGHT OF THE PLAN ADMINISTRATOR TO COMMENCE, PROSECUTE, DEFEND AGAINST, SETTLE, AND REALIZE UPON ANY RIGHTS, CLAIMS, CAUSES OF ACTION, DEFENSES, OR COUNTERCLAIMS THAT THE DEBTORS OR THEIR ESTATES HAVE, OR MAY HAVE, AS OF THE EFFECTIVE DATE. In addition, the Debtors expressly reserve and as of the Effective Date the Plan Administrator shall have the right to pursue or adopt any Claim or Causes of Action alleged in any lawsuit in which the Debtors are a party.

Except as is otherwise expressly provided herein or in the Confirmation Order, nothing in this Plan or the Confirmation Order shall preclude or estop (i) the Plan Administrator from bringing a subsequent action in any court or adjudicative body of competent jurisdiction, to enforce any or all of its or their respective rights in connection with the Causes of Action or assets of the Estates. Moreover, the failure to commence any of the Causes of Action prior to the Effective Date shall not constitute res judicata, judicial or collateral estoppel with respect to any Cause of Action.

5.5     Effective Date.   The Plan shall be effective on the date selected by the Plan Proponents that is no earlier than the: (x) day on which each condition set forth in Article VIII of the Plan has been satisfied or waived or (y) the fifteenth day following the entry of the Confirmation Order.

5.6     The Plan Administrator.  The Plan Administrator will be designated in a notice filed no later than five (5) days before the deadline for filing objections to the Plan. On or about the Confirmation Date, the Plan Administrator shall enter into the Plan Administrator Agreement in a form reasonably acceptable to the Debtors and approved by the Creditors Committee. The Plan Administrator's appointment will be effective on the Effective Date. The attorney-client privilege, the attorney work product doctrine and  any similar privilege against disclosure, and all other similar immunities, including all documents and confidential documents, including but not limited to confidential and/or privileged internal communications of the Board of Directors, Officers or Managers of the Debtors and any Professionals or committees or committee members  of the Debtors that concern or relate in any way  to the Bankruptcy Cases, any Claims, any actions or matters prior to the filing of or during the  Bankruptcy Cases, or any matters or Claims or actions dealt with or related to any releases or exculpations set forth in this Plan, or relating to property of the Debtors or the Estates under section 541(a) of the Bankruptcy Code,  shall remain in  the Estates and shall be subject to the sole control of the Plan Administrator. Any dispute over whether such privileges, immunities or documents are subject to the sole control of the Plan Administrator shall be determined by the Bankruptcy Court. As set forth in the Plan Administrator Agreement, the Plan Administrator shall be responsible for, among other things, implementing and administering the Employee Settlement; including, without limitation, the withholding of taxes and the issuance of such paperwork that may be required.

5.7.     Limitations on Liability.  Subject to and as set forth in Section 5.14 of this Plan, the Plan Administrator and the members of the Plan Committee will not incur liability to any person by reason of discharge of the Plan Administrator's duties and the Plan Committee's duties as set forth in this Plan, in the Plan Administrator Agreement, and in the Plan Committee Agreement,

except in the event of willful misconduct or intentional fraud by the Plan Administrator or such member of the Plan Committee.  For purposes of clarity, the Plan Administrator and each member of the Plan Committee shall only be liable, if at all, for their own individual acts or omissions and shall not be liable for the acts or omissions of any other member or Plan Administrator.  The Plan Administrator is specifically authorized to make distributions after a judicial determination provided for the Allowance or Disallowance of such Claim, and the Plan Administrator shall have no duty or obligation to reserve for any such Claim pending an appeal absent a timely stay pending appeal obtained by a party with respect to such Claim Allowance or Disallowance.

5.8    <u>Rights, Powers, and Duties of the Post-Effective Date Debtors and the Plan Administrator</u>.  The Post-Effective Date Debtors will retain and have all of the rights, powers, and duties necessary to carry out their responsibilities under this Plan, under the exclusive control and direction of the Plan Administrator.  Additionally, the Plan Administrator may bring or otherwise pursue all Claims and Causes of Action, in his name or in the name of the Debtors, the Post-Effective Date Debtors, or the Estates, on behalf of the Debtors, the Post-Effective Date Debtors, and the Estates that could otherwise be brought by a trustee or an examiner appointed under the Bankruptcy Code, that are not otherwise expressly released by this Plan or the Confirmation Order.  Without limiting the generality of the foregoing, and except as otherwise set forth in this Article V, the Plan Administrator's rights, powers, and duties include, but are not limited to:

(a)    liquidation of the Estate Assets, including Causes of Action, and any assets of the Post-Effective Date Debtors;

(b)    investment of Cash of the Estates in various reserve accounts and maintenance of the same;

(c)    calculating and paying Distributions in accordance with the terms of this Plan or as otherwise provided for in an Order by the Bankruptcy Court to Holders of Allowed Claims;

(d)    employing, supervising, and compensating professionals retained to represent the interests of the Plan Administrator, the Post-Effective Date Debtors and the Estates;

(e)    making and filing tax returns for the Debtors, the Post-Effective Date Debtors and/or the Estates, as may be required;

(f)    subject to the terms of this Plan, objecting to or seeking the subordination or recharacterization of Claims filed against the Debtors or the Estate or as set forth in the Schedules, except for Claims that have been previously Allowed by Final Order or pursuant to terms of the Plan;

(g)    seeking the estimation of contingent or unliquidated Claims filed against the Debtors, the Post-Effective Date Debtors, or the Estate pursuant to Section 502(c) of the Bankruptcy Code;

- 23 -

(h)   seeking determination of tax liability for the Debtors, the Post-Effective Date Debtors, or the Estates (as applicable) under Section 505 of the Bankruptcy Code;

(i)   filing, prosecuting, settling or otherwise resolving the remaining Causes of Action on behalf of the Debtors, the Estates, and the Post-Effective Date Debtors; provided, however, the Plan Administrator shall not be authorized to settle any WARN Act Claim by an Employee who is not a Settling Employee within the first twelve months after the Effective Date if the proposed settlement with such Employee exceeds the Settlement Amount attributable to such Employee on the Employee Settlement Worksheet or is otherwise approved unanimously by the Plan Committee and the Bankruptcy Court for administrative convenience;

(j)   seeking permission to destroy the Debtors' books and records and/or abandonment of any remaining assets that have *de minimis* value to the Estates;

(k)   closing the Bankruptcy Case;

(l)   implementing and administering the Employee Settlement; including, without limitation, the withholding of taxes and the issuance of such paperwork that may be required;

(m)   dissolving and winding up the Estates and the Post-Effective Date Debtors; and

(n)   exercising all powers and rights, and taking all actions contemplated by or provided for in this Plan or in the Plan Administrator Agreement.

5.9   <u>Compensation of the Plan Administrator</u>.  The Plan Administrator Agreement shall provide that the Plan Administrator will be compensated pursuant to the terms of a compensation agreement attached to the Plan Administrator Agreement, which provides for compensation to the Plan Administrator on an hourly basis and at his standard rate or pursuant to a fixed monthly fee, and, in each case, approved by the Bankruptcy Court.  Any compensation to be paid to the Plan Administrator or his or her professionals will require notice to the Plan Committee and a ten (10) day period to object to such payment, and if no objections are received, such compensation may be paid.

5.10   <u>Successor Plan Administrator</u>.  Should the Plan Administrator initially appointed pursuant to the terms of the Plan be removed or become unable or unwilling to continue in such role, then the Plan Committee shall select a successor subject to approval of the Bankruptcy Court. Alternatively, any party in interest may move the Bankruptcy Court to appoint a successor for cause.  Once approved by the Bankruptcy Court, any such successor shall become the Plan

- 24 -

Administrator for all purposes, and shall have all the rights and powers of the Plan Administrator as set forth in this Plan.

5.11    Continued Existence.  The Debtors shall continue in existence as the Post-Effective Date Debtors pursuant to the terms of their operating agreements, by-laws, and other limited liability company governance documents, as if the same were in effect prior to the Effective Date, provided that, as of the Effective Date, the operating agreements of the Post-Effective Date Debtors are deemed to be modified to: (i) authorize the issuance of one new membership interest in LMCHH PCP, LLC  to be held by the Plan Administrator in accordance with the terms of this Plan; (ii) authorize the issuance of one new membership Interest in Louisiana Medical Center and Heart Hospital, LLC to be held by the Plan Administrator in accordance with the terms of this Plan; (iii) prohibit the issuance of non-voting equity securities, and (iii) limit the activities of the Post-Effective Date Debtors to matters related to the implementation of this Plan and to matters reasonably incidental thereto.

5.12    Directors, Members, and Managers of the Debtors.  On the Effective Date, the Plan Administrator will succeed to all of the rights and powers of the directors, members, managers of the Debtors or their properly selected appointees and such directors, managers or appointees will be deemed to have resigned on the Effective Date with such members being replaced by the Plan Administrator.

5.13    Intentionally Omitted.

5.14    Plan Committee.

(a)    The Plan Committee will be appointed on the Effective Date, shall be deemed to be an extension of the Creditors Committee appointed in the Bankruptcy Cases, and shall consist of those Persons set forth in the Plan Committee Agreement and any successors thereto.  The Plan Committee shall be governed by the Plan Committee Agreement.  The Plan Committee's rights, powers and duties are limited to those set forth in the Plan Committee Agreement.

(b)    The members of the Plan Committee shall not incur liability to any person by reason of discharge of the Plan Committee's duties as set forth in this Plan, in the Plan Administrator Agreement, and the Plan Committee Agreement, except in the event of willful misconduct or intentional fraud by such member of the Plan Committee.

(c)    To the maximum extent permitted by law, the Estate shall indemnify any person who is or was a party or is threatened to be made a party to any threatened, pending or completed action, suit, proceeding or Claim, whether civil, criminal, administrative or investigative, by reason of the fact that he or she is or was or has agreed to be a member of the Plan Committee, against any and all expenses (including attorneys' fees and expenses), judgments,

- 25 -

fines, penalties, and amounts paid in settlement or incurred in connection with the investigation, preparation to defend or defense of such action, suit, proceeding or Claim.

## ARTICLE VI

## COMPROMISE AND SETTLEMENTS WITH HOLDERS OF EMPLOYEE CLAIMS,

## AND PROVISIONS GOVERNING DISTRIBUTIONS

6.1     Compromise and Settlement with Employees

As of the Petition Date, Employees held various Employee Claims (as defined in this Plan, the Disclosure Statement, and further explained below, including Claims arising out of the WARN Act) against the Debtors and the Employee Released Parties.  Although the Debtors dispute their liability for many of the Employee Claims, the Debtors understand that these Employee Claims include potential Claims for paid days off, Claims relating to their medical plan, Claims under various employee agreements/programs, Claims under the Louisiana Wage Payment law, and Claims under the WARN Act.  The Plan proposes to resolve all Employee Claims against the Debtors and the Employee Released Parties.  In order to avoid what is anticipated to be expensive and protracted litigation associated with the Employee Claims, especially the Uncertified WARN Class Actions, and to avoid the cost, delay, and risks to the Employees and the Debtors with respect to litigating the Employee Claims, Section 6.1 of the Plan proposes the Employee Settlement.  The Employee Settlement proposes a compromise and settlement of each and every Claim that an Employee may have against the Debtors and the Employee Released Parties in exchange for the payment to the Employee of the Employee Settlement Amount.  The total Employee Settlement Amount is the product of lengthy arms'-length negotiations between Debtors and other Plan Proponents and counsel in the King Litigation.  The Employee Settlement Amount, set forth on the Employee Settlement Worksheet and on each Employee's Ballot, will provide each Settling Employee with an expedited Distribution of the Employee Settlement Amount.

The Employee Settlement Amount payable to each Settling Employee has been calculated by the Debtors, based on their reasonable independent analysis of the Employee Claims and the potential liability therefor, to be 50% of the Employee's estimated Priority WARN Act Claim plus 100% of the Employee's Priority PDO Claim plus 10% of the estimated Employee's Remaining Employee Unsecured Claim (to provide Employees with a Distribution on account of claims that they may have had in Class 7 of the Plan).  The Employee Settlement Amount payable to each Settling Employee is expressly set forth on the Employee Settlement Worksheet and on each Employee's Ballot.  In addition to the Employee Settlement Amount payable to each Settling Employee, each Settling Employee has been allocated a Pro Rata share of the aggregate WARN

- 26 -

Act Fees on the Employee Settlement Worksheet.[5]

The WARN Act Fee set forth on the Employee Settlement Worksheet shall be available to satisfy legal fees of each Settling Employee as follows: (i) if the Settling Employee is represented by an attorney pursuant to a valid and binding engagement agreement dated and actually executed on or before August 3, 2017, that entitles such attorney to a portion of the Settling Employee's Distribution,[6] the Settling Employee shall be entitled to receive the WARN Act Fee allocated to such Settling Employee on the Employee Settlement Worksheet to satisfy such Settling Employee's obligation to its attorney which, unless the Bankruptcy Court orders otherwise, shall be payable directly to such counsel on behalf of the Settling Employee[7] and (ii) if the Settling Employee is not represented by an attorney in accordance with a valid and binding engagement agreement dated and actually executed on or before August 3, 2017, that entitles such attorney to a portion of the Settling Employee's Distribution, the WARN ACT Fees allocated to such Settling Employee shall become part of the WARN Act Substantial Contribution Reserve.  With respect to subsection (ii) in the preceding sentence, if an attorney maintains that it is entitled to a Claim against the Debtors pursuant to Sections 503(b)(3) and 503(b)(4) of the Bankruptcy Code on account of a substantial contribution that it made for the benefit of Settling Employees, the attorney shall be required to assert such a claim as provided in Section 5.1.  The WARN Act Substantial Contribution Reserve shall be the sole source available to satisfy any and all Allowed Claims seeking substantial contribution Claims for legal fees and expenses in connection with each Settling Employee Claim against the Debtors pursuant to Sections 503(b)(3) and 503(b)(4) of the Bankruptcy Code.  If a Settling Employee has executed an engagement agreement that would entitle its attorney to receive a contingency fee in excess of 28.4%, such attorney shall not be entitled to recover more than 28.4% from the Debtors, their Estates or the WARN Act Substantial Contribution Reserve; such excess (if any) shall be solely the responsibility of the Settling Employee.   The total amount payable to the Settling Employees, including the Employee Settlement Amount and amounts that are allocated to attorneys retained by the each Settling Employee or that may be awarded as an Administrative Expense Claim for making a substantial contribution, shall be no more than $3,800,000.00.[8]  Any amounts in the WARN Act Substantial

---

[5]      The WARN Act Fees represents 28.4% of the total amount attributable to a Settling Employee.

[6]      The Settling Employee shall be required to submit a valid and binding engagement agreement as described herein to the Plan Administrator prior to receiving its Distribution.

[7]      The Plan Proponents are informed that the law firms of Fishman Haygood L.L.P. and Bruno and Bruno LLP have agreed to reduce the contingency fee owing by their clients from 33% to 28.4% to facilitate the Employee Settlement.

[8]      $3,800,000 represents the gross aggregate amount payable in connection with the Employee Settlement if each and every Employee is a Settling Employee.  If an Employee opts out of the Employee Settlement, the gross aggregate amount payable to Settling Employees shall reflect a dollar-for dollar reduction of the Employee Settlement Amount and Warn Act Fees allocated to such Employee on the Employee Settlement Worksheet.

Contribution Reserve not allowed and awarded by the Bankruptcy Court in a Final Order in respect of a timely motion for allowance shall revert to the Post-Effective Debtors and their Estates for further administration consistent with the Plan and to the extent (if any) required further orders from the Bankruptcy Court.

Although the Plan Proponents vigorously dispute that the Debtors are liable for any amount under the WARN Act and will likely dispute the total amount allegedly owing to Employees on an unsecured basis, the Plan Proponents recognize that resolving the Uncertified WARN Class Actions and the Employee Claims in general will likely require years to litigate and will result in significant expense and risk and additionally could result in substantial delay to the Distribution of amounts to all Holders of all other Claims.  Accordingly, the Plan Proponents believe that the Employee Settlement adequately takes into account the costs and delays associated with litigation, the risks associated with litigation (such as the possibility that the Holders of Employee Claims would not be able to establish their entitlement to a Claim under the WARN Act and the chance that they could), and the delay that the Holders of Employee Claims will experience waiting for potential Distributions.

Each Employee who timely opts out of the Employee Settlement on the Employee's timely submitted Ballot will retain such Employee's Claims and the Plan establishes Classes for such Holder of an Employee Claim to ensure that such Employee Claim – provided it is allowed by Final Order– is properly classified and treated in the appropriate fashion in accordance with the Plan after such judicial determination.

**Any Employee who fails to timely opt out of the Employee Settlement on the Employee's timely submitted Class 6 Ballot shall be deemed to have accepted the compromise and settlement proposal detailed in Section 6.1 of the Plan and shall be deemed to be a Settling Employee and, in addition, shall be deemed to waive, discharge, and release the Employee Released Parties from all Employee Claims, including those arising out of or related to the WARN Act or any similar state or federal law, including, without limitation, all Employee Claims that are identified in, or could have been identified in, the Uncertified WARN Class Actions**.  The Debtors or the Plan Administrator will Distribute the applicable Employee Settlement Amount to Settling Employees within 30 days of the Effective Date.

In the event an Employee affirmatively decides not to participate in the Employee Settlement by timely opting out of the Employee Settlement on its Class 6 Ballot, such Employee will not be a Settling Employee and will not be paid (i) the Employee Settlement Amount or (ii) the related WARN Act Fees potentially payable on behalf of each such non-Settling Employee and such amounts shall remain in the Estate for administration in accordance with the Plan. Instead, the Employee who timely opts out of the Employee Settlement will retain his Employee Claims and the ability to establish the validity and amount of such against the Debtors, their Estates, and the Employee Released Parties on an individual basis.  The Plan establishes Classes for each such Holder of an Employee Claim to ensure that such Employee Claim is classified and treated in the appropriate fashion in accordance with

- 28 -

the Plan after it is allowed by a Final Order.  If the Holder of an Employee Claim opts out of the Employee Settlement, the Plan provides that the Plan Administrator may object to such Holder's Claim, which is anticipated.  If an objection is filed to an Employee Claim, the Holder of such Claim shall be required to obtain a Final Order Allowing such Employee Claim and, among other things, establishing the validity, priority and amount of such Employee Claim.  **If the Holder of an Employee Claim timely opts out of the Employment Settlement set forth in Section 6.1 of the Plan, it will <u>NOT</u> be deemed to waive, discharge, and release the Employee Released Parties from any Employee Claims.  If the Holder of an Employee Claim opts out of the Employment Settlement, the offer of the Employee Settlement to such Holder shall automatically terminate upon the occurrence of the Effective Date.**

6.2     <u>Payment of Administrative Expenses</u>.  The Plan Administrator shall pay Allowed Administrative Expense Claims and Supplemental Administrative Expense Claims in full, without interest, in Cash, on or as soon as practicable after the later of: (v) the date on which such Allowed Administrative Expense Claim or Supplemental Administrative Expense Claim becomes due in the ordinary course of business and in accordance with the terms and conditions of the particular agreement(s) governing such obligation, (w) the Effective Date, (x) the date that the Administrative Expense Claim or Supplemental Administrative Expense Claim becomes an Allowed Claim; (y) with respect to WARN Act Administrative Expense Claims, following Allowance in a Final Order of such WARN Act Administrative Expense Claim; or (z) at such other time and in such other manner as may be agreed upon in writing between the Holder of the Allowed Administrative Expense Claim or Supplemental Administrative Expense Claim and the Plan Administrator.

6.3     <u>Payment of Allowed Priority Tax Claims</u>.  The Plan Administrator shall pay Allowed Priority Tax Claims in full, in Cash, on or as soon as practicable after the later of: (x) the Effective Date, (y) the date that the Claim becomes an Allowed Priority Tax Claim, or at such other time and in such other manner as may be agreed upon in writing between the Holder of the Allowed Priority Tax Claim and the Plan Administrator; provided, however, that any Priority Tax Claim not due and owing on the Effective Date will be paid when such Claim becomes due and owing.

6.4     <u>Distribution to Holders of Class 1, 3, and 4 Claims</u>.   Unless agreed to in writing between the Holder of the Allowed Claim and the Plan Administrator, the Plan Administrator shall pay Allowed Class 1 Claims, Allowed Class 3 Claims, and Allowed Class 4 Claims in full, without interest, in Cash, on or as soon as practicable after the later to occur of: (x) the Effective Date, or (y) the date that the Claim becomes an Allowed Claim.

6.5     <u>Distribution to the Holders of the Class 5, 6, and 7 Claims</u>.  The Plan Administrator shall make one or more Distributions to the Holders of Allowed Claims in Classes 5, 6, and 7 as of the Distribution Record Date, pursuant to and in accordance with the terms of this Section. Unless agreed to in writing between the Holder of the Allowed Claim and the Plan Administrator, the Plan Administrator shall pay Allowed Class 5 Claims, Allowed Class 6 Claims, and Allowed Class 7 Claims their Pro Rata Unsecured Distribution on or as soon as practicable after the later to

- 29 -

occur of: (x) the Effective Date, or (y) the date that the Claim becomes an Allowed Claim pursuant to the terms of this Plan.  If a Distribution to a Holder of an Allowed Claim in Classes 5, 6, and 7 would be less than $100, such Distribution may be held until the Final Distribution. Notwithstanding any other provision of this Plan, the Plan Administrator shall not be required to, but may in its sole discretion, make any Distribution of less than $25.00 to the Holder of any Allowed Claim. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down to the nearest whole cent. Notwithstanding anything to the contrary, prior to making any Distributions to the Holder of Allowed Claims in Classes 5, 6, and 7, the Plan Administrator shall first reserve (i) a sufficient sum for the payment of all present and future expenses of the Plan Administrator, the Estates and the Post-Effective Date Debtors, and (ii) for amounts due, or which may be due, the payments required to be made to other classes of Claims under this Plan that may have a prior or equal right of payment to that of the Holder of Allowed Claims Holders of Claims in Classes 5, 6, and 7, except that after Disallowance of such Claim after objection thereto, the Plan Administrator shall have no duty or obligation to reserve for the Claim pending an appeal absent a timely stay pending appeal obtained by a party with respect to such Claim Disallowance.

6.6     Distribution to the Holders of the Class 2 Claims.  The Plan Administrator shall make one or more Distributions to the Holders of Allowed Claims in Class 2 as of the Distribution Record Date, pursuant to and in accordance with the terms of this Section.  Unless agreed to in writing between the Holder and the Plan Administrator, the Plan Administrator shall pay Allowed Class 2 Claims in full, without interest, in Cash, on or as soon as practicable after the later to occur of: (x) the Effective Date, or (y) the date that the Claim becomes an Allowed Claim pursuant to a Final Order.  Notwithstanding anything to the contrary, prior to making any Distributions to the Holder of Allowed Claims in Class 2, the Plan Administrator shall first reserve for amounts due, or which may be due, the payments required to be made to other classes of Claims under this Plan that may have a prior or equal right of payment to that of the Holder of Allowed Claims Holders of Claims in Class 2, except that after Disallowance of such Claim after objection thereto, the Plan Administrator shall have no duty or obligation to reserve for the Claim pending an appeal absent a timely stay pending appeal obtained by a party with respect to such Claim Disallowance.

6.7     Establishment of Reserve Account.  On the Effective Date, or as shortly after the Effective Date as practicable, which shall not exceed thirty (30) days after the Effective Date, the Plan Administrator shall deposit into the Reserve Account an amount equal to the Required Reserve Amount.  Such funds shall remain in the Reserve Account until the Disputed Claims become Allowed or Disallowed in full or in part, either by (i) agreement between the Plan Administrator and the Holder of the Disputed Claim or (ii) by Order of the Bankruptcy Court.  The Plan Administrator shall also deposit into the Reserve Account a sufficient amount for the payment of contingent and unliquidated Claims as contemplated by the Plan.

6.8     Final Distribution.  Upon the completion of the liquidation of the Debtors', the Post-Effective Date Debtors' and the Estates' assets, including the resolution of any Causes of Action, and resolution of all objections to Claims, the Plan Administrator shall make the Final Distribution by distributing the Cash remaining in the Estate, including any funds remaining the Reserve

- 30 -

Account, to the Holders of Allowed Claims as provided in this Plan.  If after making the Final Distribution, and after payment of all fees and expenses, including all outstanding U.S. Trustee fees, the Estate has any remaining Cash, and the amount of such Cash is less than $50,000, fifty percent (50%) of such Cash shall be donated to a charity of the Plan Administrator's choosing while CCG shall be entitled to receive of the other fifty percent (50%) of such cash its distribution unless such sum is less than $1,000.00 in which case it will be donated to a charity of the Plan Administrator's choosing.

6.9     Delivery of Distributions.  The Distributions shall be made to Holders of Allowed Claims as of the Distribution Record Date: (i) at the address set forth on the Proof of Claim Filed by a Holder of an Allowed Claim, (ii) at the address set forth in any written notices of address change Filed by such Holder, (iii) at the addresses reflected in the Schedules if neither a Proof of Claim or interest nor a written notice of address change has been Filed, or (iv) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtors' books and records.

6.10    Distributions by Disbursing Agent.  Other than as specifically set forth in this Plan, the Disbursing Agent, if appointed, shall make all Distributions required to be made under this Plan.

6.11    Undeliverable and Unclaimed Distributions.

(a)     Holding and Investment of Undeliverable and Unclaimed Distributions.  If the Distribution to any Holder of a Claim is returned to the Post-Effective Date Debtors, the Plan Administrator or the Disbursing Agent as undeliverable or is otherwise unclaimed (including by the failure to timely negotiate a check issued to such Holder), no further Distributions shall be made to such Holder unless and until the Plan Administrator or the Disbursing Agent is notified in writing of such Holder's then current address.

(b)     Failure to Claim Undeliverable Distributions.  Any Holder of a Claim that does not assert a Claim pursuant to this Plan for an undeliverable or unclaimed Distribution within the later of (x) one (1) year after the Effective Date and (y) six months after the Allowance of such Claim shall be deemed to have forfeited its Claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such Claim for an undeliverable or unclaimed Distribution against the Debtors, the Post-Effective Date Debtors, or the Estate or their property.  In such cases, any Cash for Distribution on account of such Claims for undeliverable or unclaimed Distributions shall become the property of the Estates free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary.  Nothing contained in this Plan shall require any Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

- 31 -

(c)     Notwithstanding any other provision of this Plan, (i) each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution, and (ii) no Distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Plan Administrator for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon any disbursing agent in connection with such distribution. Any property to be distributed pursuant to this Plan shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution under this Plan.

6.12    <u>Objections to Claims</u>.   Objections to Claims after the Effective Date may be made only by the Plan Administrator.  Except as provided in this Plan, any objection to the allowance of a Claim, other than Claims allowed by the terms of this Plan, must be Filed by the Plan Administrator within one hundred twenty (120) days after the Effective Date (or, within one hundred twenty (120) days after the Filing of such Claim, whichever is later).   The Plan Administrator shall be authorized to seek an extension of such deadline by *ex parte* motion.  Any objection not filed by such deadline shall be deemed waived, and the Claim shall be an Allowed Claim in the amount set forth on the Proof of Claim Filed by the Holder of such Claim.

6.13    <u>Distributions Pending Appeal of Disallowance</u>.   Notwithstanding any other provision in this Plan, payments or Distributions may be made by the Plan Administrator to Holders of Allowed Claims without reserve for payment of the amount, if any, of Disallowed Claims unless the Holder of such disallowed Claim obtains a timely stay pending appeal with respect to any portion of such Claim that has been disallowed.  Further, no funds may be recovered from any Holder of a Claim receiving such a Distribution or from anyone else in the event of reversal of any Order disallowing a Claim.

6.14    <u>Contingent and Unliquidated Claims</u>.   As soon as is practicable, the Plan Administrator shall take action seeking the estimation for purposes of distribution of contingent or unliquidated Claims filed against the Debtors, the Post-Effective Date Debtors, or the Estates pursuant to Section 502(c) of the Bankruptcy Code.  Upon determination of the estimated amount of such contingent or unliquidated Claim, the Plan Administrator shall maintain Cash in an amount equal to the amount payable under the Plan of such estimated Claim in the Reserve Account until such Claims are resolved in full or in part, either by (i) agreement between counsel to the Debtors or the Plan Administrator and the Holder of the Claim or (ii) by Order of the Bankruptcy Court.

## ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1     Rejection of Remaining Executory Contracts.    All executory contracts and unexpired leases of the Debtors that are not assumed and assigned or rejected prior to the Confirmation Date shall be deemed rejected as of the entry of the Confirmation Order.

7.2     Rejection Claims.   Any party asserting a Claim for monetary damages as a result of the rejection of an executory contract or unexpired lease pursuant to Section 7.1 of this Plan shall submit a Proof of Claim, substantially in the form of the Proof of Claim Form attached to the Debtors' Motion for Entry of an Order Establishing Bar Date [Doc. No. 359] as Exhibit 3, to Garden City Group, the claims agent for the Debtors within thirty (30) days of the Effective Date. If no Claim for rejection damages is timely filed by a counterparty to a rejected executory contract or unexpired Lease pursuant to this Section 7.2 of the Plan, then such Claim shall be forever barred and Disallowed.

## ARTICLE VIII

## CONFIRMATION AND CONSUMMATION OF THE PLAN

8.1     Conditions to Confirmation.    The following shall be the only condition to confirmation:  the Confirmation Order is entered by the Bankruptcy Court and is in form and substance reasonably satisfactory to the Plan Proponents.

8.2     Conditions to the Effective Date.   The Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions has been satisfied (or will be satisfied by the occurrence of the Effective Date):  (i) the Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably satisfactory to the Plan Proponents, (ii) the Plan Administrator shall have been duly appointed, and entered into the Plan Administrator Agreement, and (iii) no stay of the Confirmation Order is in effect.

8.3     Notice of the Effective Date.   Promptly following the occurrence of the Effective Date, the Plan Proponents shall file a Notice of Occurrence of Effective Date stating that the Effective Date has occurred and the date thereof on the docket in the Bankruptcy Cases.

## ARTICLE IX

## EFFECT OF PLAN CONFIRMATION

9.1     Binding Effect.   Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan shall bind any Holder of a Claim against or Interest in the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under this Plan and whether or not such Holder has accepted this Plan.

9.2     **Exculpation.**  From and after the Effective Date, the Debtors' Released Parties shall neither have nor incur any liability to, or be subject to any right of action by, any Holder of a Claim or Interest, or any other party in interest, or any of their respective employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Bankruptcy Case, formulating, negotiating or implementing this Plan, the solicitation of acceptances of this Plan, the pursuit of approval of the Disclosure Statement and confirmation of this Plan, the confirmation of this Plan, the Plan Documents, the consummation of this Plan or the administration of this Plan or the property to be distributed under this Plan; provided, however, that the foregoing provision shall not apply to an act or omission that is determined by a Final Order of the Bankruptcy Court to have constituted willful misconduct or gross negligence.  Any of the Debtors' Released Parties shall be entitled to rely, in all respects, upon the advice of counsel with respect to their duties and responsibilities under the Plan.

9.3     **Injunction Related to Exculpation.**  All Persons that have held, hold or may hold any Claims exculpated pursuant to Section 9.2 will be permanently enjoined from taking any of the following actions against the Debtors' Released parties or any of their property on account of such exculpated liabilities:  (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or Order; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien; (iv) except as provided herein, asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due any of the Debtors' Released Parties; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan.

9.4     **Intentionally Omitted.**]

9.5     **Intentionally Omitted.**

9.6     **Satisfaction of Claims and Termination of Interests.**  Except as otherwise provided herein or in the Confirmation Order, all consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, and release of, all Claims and Interests of any nature whatsoever against the Debtors or their Estates and Assets, and regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests.

9.7     **Injunction.**  Except as otherwise provided in this Plan or the Confirmation Order, from and after the Effective Date all Persons who have held, hold or may hold Claims against or Interests in the Debtors, are (i) permanently enjoined from taking any of the following actions against the Estates or property thereof on account of any such Claims or Interests and (ii) permanently enjoined from taking any of the following actions against any of the Debtors, the Post-Effective Date Debtors, the Plan Administrator or their property on

- 34 -

**account of such Claims or Interests: (A) commencing or continuing, in any manner or in any place, any action, or other proceeding; (B) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or Order; (C) creating, perfecting or enforcing any lien or encumbrance; (D) asserting any right of setoff, subrogation or recoupment of any kind; and (E) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of this Plan.**

9.8     <u>Term of Bankruptcy Injunction or Stays</u>.  All injunctions or stays provided for in the Bankruptcy Case under Section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

10.1     <u>Retention of Jurisdiction</u>.  Following the Confirmation Date and the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over the Bankruptcy Case and the provisions of this Plan and the Confirmation Order, to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)     hear and determine motions, applications, adversary proceedings, and contested matters pending before or commenced after the Effective Date;

(b)     hear and determine objections (whether filed before or after the Effective Date) to, or requests for estimation of any Claim, and to enter any Order requiring the filing of Proof of any Claim before a particular date;

(c)     estimate any Claim at any time, including, without limitation, during litigation concerning any objection to such Claim, including any pending appeal;

(d)     ensure that Distributions to Holders of Allowed Claims are accomplished as provided in this Plan;

(e)     enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(f)     issue or construe such Orders or take any action as may be necessary for the implementation, execution, enforcement and consummation of this Plan and the Confirmation Order, and hear and determine disputes arising in connection with the foregoing;

(g)     hear and determine any applications to modify this Plan, to cure any defect or omission or to reconcile any inconsistency in this Plan, the Disclosure Statement or in any Order of the Bankruptcy Court including, without limitation, the Confirmation Order;

(h)     hear and determine all applications for Professional Administrative Expense Claims, and all applications or requests for payment of (i) the WARN Act Fees or (ii) any other claims for fees allowed by the Bankruptcy Court pursuant to Sections 503(b)(3) and 503(b)(4) of the Bankruptcy Code for any substantial contribution claims for legal fees and expenses;

(i)     hear and determine other issues related to the implementation of the Employee Settlement;

(j)     hear and determine other issues presented or arising under this Plan, including disputes among Holders of Claims and arising under agreements, and the documents or instruments executed in connection with this Plan;

(k)     hear and determine any action concerning the recovery and liquidation of Estate Assets, wherever located, including without limitation, litigation to liquidate and recover Estate Assets that consist of, among other things, the Causes of Action, or other actions seeking relief of any sort with respect to issues relating to or affecting Estate Assets;

(l)     hear and determine any action concerning the determination of taxes, tax refunds, tax attributes, and tax benefits and similar or related matters with respect to the Debtors, the Post-Effective Date Debtors, or the Estates including, without limitation, matters concerning federal, state and local taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(m)     hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code; and

(n)     enter the Final Decree closing the Bankruptcy Cases upon a request for such Final Decree by the Plan Administrator.

10.2    <u>Governing Law</u>.  Except as otherwise mandated by the Bankruptcy Code, the Bankruptcy Rules or the Local Rules, as applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Louisiana.

10.3    <u>Headings</u>.  The headings of articles, paragraphs, and subparagraphs of the Plan are inserted for convenience only and shall not affect the interpretation of any provision of the Plan.

- 36 -

10.4    Time.  Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day that is not a Business Day, then the time for the next occurrence or happening of said event shall be extended to the next day which is a Business Day.

10.5    Severability.  Should any provision of the Plan be determined to be unenforceable after the Effective Date such determination shall in no way limit or affect the enforceability and operative effect of any and all of the other provisions of the Plan.

10.6    Modification.  The Debtors, with the consent of the Creditors Committee may alter, amend or modify this Plan under Section 1127 of the Bankruptcy Code or as otherwise permitted by applicable law at any time prior to the Confirmation Date.  After the Confirmation Date and prior to the substantial consummation of this Plan, any party in interest in the Bankruptcy Case may, so long as the treatment of Holders of Claims or Interests under this Plan are not materially adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and any other matters as may be necessary to carry out the purposes and intents of this Plan; provided, however, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or Order of the Bankruptcy Court.

10.7    Revocation.  The Plan Proponents reserve the right to revoke and withdraw this Plan prior to the entry of the Confirmation Order.  If the Plan Proponents revoke or withdraw the Plan, the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute an admission or a waiver or release of any Claims by or against the Debtors, any other Person, or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtors.

10.8    Plan Controls.  In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, or any other agreement to be executed by any Person pursuant to the Plan, the provisions of the Plan shall control and take precedence. In the event of any inconsistency between any provision of any of the foregoing documents, and any provision of the Confirmation Order, the Confirmation Order shall control and take precedence.

10.9    Statutory Fees.  The Debtors, or the Plan Administrator on behalf of the Debtors, shall pay all fees payable pursuant to 28 U.S.C. § 1930.

10.10   Dissolution of the Creditors Committee.  On the Effective Date, the Creditors Committee shall be dissolved and its members shall be deemed released of any continuing duties, responsibilities and obligations in connection with this Bankruptcy Case or the Plan and its implementation, and the retention and employment of the Creditors Committee's attorneys, accountants and other agents shall terminate, except with respect to:  (i) the Final Fee Hearing; or (ii) any appeals of the Confirmation Order through the date such appeals are finally decided, settled, withdrawn or otherwise resolved.

- 37 -

10.11   Claims Agent.  Unless previously relieved, the request for Final Decree shall provide that Garden City Group, in its capacity as the claims, noticing and balloting agent shall be relieved of such duties on the date of the entry of the Final Decree or upon written notice by the Debtors.

10.12   Dissolution of Post-Effective Date Debtors.  As soon as practicable after the Plan Administrator liquidates or otherwise disposes of the Estate Assets and makes the Final Distribution, the Plan Administrator shall, at the expense of the Estates:  (i) provide for the retention of books and records delivered to or created by the Plan Administrator until the time that such books and records are no longer required to be retained under applicable law including as provided by Section 351 of the Bankruptcy Code and the May 17, 2017 Order of the Bankruptcy Court, and file a certificate with the Bankruptcy Court stating the location at which such books and records are being stored; (ii) file a certificate with the Bankruptcy Court stating that the Plan Administrator has liquidated or otherwise disposed of the Estate Assets and made a Final Distribution under this Plan; (iii) file any necessary paperwork with the Office of the Secretary of State for the States of Delaware and North Carolina to effectuate the dissolution of the Post-Effective Date Debtors in accordance with applicable law; (iv) take any other action the Plan Administrator deems necessary or appropriate to complete and finalize the liquidation of the Estates and the dissolution of the Post-Effective Date Debtors, and (v) resign as the sole officer, director, member, and manager of the Post-Effective Date Debtors.

10.13   Effectuating Documents.  The officers and directors of the Debtors and the Plan Administrator are authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such other actions as either the Plan Proponents or the Plan Administrator determine are necessary or appropriate to effectuate and implement the provisions of the Plan.  All such actions shall be deemed, without further action or formality of any kind, to be authorized, approved and ratified in all respects without the need for any corporate formalities, approvals, meetings, consents or authorizations, and all such actions shall be deemed to have occurred as of the Effective Date in accordance with applicable law.

10.14   Operating Reports and U.S. Trustee Fees.   After the Effective Date, the Plan Administrator shall continue to file such operating reports as are required by the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and shall continue paying such U.S. Trustee fees as are owed, until such time as the Bankruptcy Case is closed.

10.16   Final Decree.  Subsequent to or in conjunction with the Final Distribution, the Plan Administrator shall cause to be Filed a certification of counsel requesting the entry of the Final Decree.

10.17   Post-Confirmation Notice.  Pursuant to Bankruptcy Rule 2002 and any applicable Local Rule, notice of all post-Confirmation matters for which notice is required to be given shall be deemed sufficient if served upon counsel for the U.S. Trustee's office, counsel to the Debtors, counsel for the Plan Administrator, and all persons on the Bankruptcy Rule 2002 service list.  With the exception of the Post-Effective Date Debtors and the U.S. Trustee, any Person desiring to remain on the Debtors' Bankruptcy Rule 2002 service list shall be required to file a request for

- 38 -

continued service and to serve such request upon counsel to the Plan Administrator within thirty (30) days subsequent to the Effective Date.  Persons who do not timely file a request for continued service shall be removed from the Debtors' Bankruptcy Rule 2002 service list.

10.18   Deadline and Hearing for Substantial Contribution Claims.   To the extent any Person seeks payment or reimbursement of compensation for services rendered or reimbursement of expenses incurred in connection with or during the Chapter 11 Cases under section 503(b)(3)(D) of the Bankruptcy Code, **such Person shall file its application or request for such payment on or before the deadline established by the Bankruptcy Court for the filing of the objections to the confirmation of the Plan.  If such application or request for compensation or reimbursement of expenses under section 503(b)(3)(D) of the Bankruptcy Code is not filed in accordance with the foregoing, (a) such application or request shall be forever barred from assertion against the Debtors, their respective Estates, and the Reorganized Debtors, and (b) the holders of any such Claims are barred from recovering any distributions under the Plan on account thereof; *provided however* that any asserted Supplemental Administrative Expense Claim arising between July 1, 2017 and the Effective Date shall be governed by Section 5.1 of this Plan.** Any such application or request shall be heard and determined at the Confirmation Hearing or as otherwise provided by order of the Bankruptcy Court.

10.19   Section 1146 Exemption.  Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer or exchange of any security, or the execution, delivery or recording of an instrument of transfer on or after the Confirmation Date shall be deemed to be made pursuant to and under this Plan, including, without limitation, any such acts by the Debtors, if on the Effective Date, and the Plan Administrator, if after the Effective Date, and shall not be taxed under any law imposing a stamp tax, transfer tax or similar tax or fee.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order and the Plan, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

## ARTICLE XI

## FINAL FEE HEARING

11.1   The Professional Administrative Expense Claim Bar Date.  Any and all applications for the final allowance of Professional Administrative Expense Claims shall be Filed and served upon counsel to the Debtors, counsel to the Creditors Committee, the United States Trustee, and all parties entitled to notice pursuant to Bankruptcy Rule 2002 within forty-five (45) days of the Effective Date.

11.2   Final Fee Hearing.  A hearing on final allowance of Professional Administrative Expense Claims shall be held as soon as practicable after the Professional Administrative Expense Claim Bar Date.  Any notice of such hearing shall be served upon counsel for the Creditors

Committee, all Professionals, the United States Trustee and all parties entitled to notice pursuant to Bankruptcy Rule 2002.

## ARTICLE XII

## REQUEST FOR CONFIRMATION

12.1    <u>Request for Confirmation</u>.  The Plan Proponents requests confirmation of this Plan in accordance with Section 1129(a) and/or Section 1129(b) of the Bankruptcy Code.

Respectfully submitted this 1st day of August 2017.


<u>*For the Debtors:*</u>                                 <u>*For the Creditors Committee:*</u>

<u>/s/   Neil Luria          </u>                      <u>/s/   Travis Lawrence            </u>
Chief Restructuring Officer                  *Chairman*

- 40 -

## Exhibit A

**EMPLOYEE SETTLEMENT WORKSHEET**

**LOUISIANA HEART HOSPITAL, LLC ("LHH") AND LOUISIANNA HEART MEDICAL GROUP ("LHMG")**
WARN Act - Potential Claims
Date:      8/1/2017

| | | Total Estimated WARN Act Claims | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | **[A]** Estimated Priority Pre-Petition PDO Accrued | **[B]** Remaining Estimated Priority WARN Claim | **[C]** Potential Estimated Unsecured WARN Claim | **[D]** Potential Estimated Unsecured PDO Claim | Net Settlement Amount | WARN Act Legal Fees | Total Settlement Amount |
| Total | $ 321,402.63 | $ 4,204,212.80 | $ 1,697,184.10 | $ 1,373,091.36 | | | |
| Proposed Settlement Methodology | Allowed at **100.0%** 100%*[A] | Allowed at **50.0%** 50%*[B] | Allowed at **10.0%** 10%*[C] | Allowed at **10.0%** 10%*[D] | **[E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D]** | | |
| Settlement Amount (Aggregate) | $ 321,402.63 | $ 2,102,106.40 | $ 169,718.41 | $ 137,309.14 | $ 2,730,536.58 | $ 1,069,463.42 | $ 3,800,000.00 |

| | | | **[A]** | **[B]** | **[C]** | **[D]** | **[E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D]** | **[F]** | **[G] = [E] + [F]** |
|---|---|---|---|---|---|---|---|---|---|
| **#** | **ID** | **Benefits Waived** | **Prty. Pre-Petition PDO Accr'd Claims** | **Employee Remaining Priority WARN Claim** | **Potential Est. Unsecured WARN Claim** | **Potential Est. Unsecured PDO Claim** | **Employee Net Settlement Amount** | **Employee WARN Act Legal Fees** | **Employee Total Settlement Amount** |
| 1 | 112491 | No | $ 6,493.84 | $ - | $ 34,164.38 | $ 29,198.47 | $ 12,830.12 | $ 5,025.15 | 17,855.27 |
| 2 | 112283 | No | $ 6,057.69 | $ 1,860.80 | $ 15,399.47 | $ 15,576.92 | $ 10,085.73 | $ 3,950.26 | 14,035.99 |
| 3 | 112459 | No | $ 1,276.92 | $ 9,972.60 | $ - | $ 258.42 | $ 6,289.06 | $ 2,463.22 | 8,752.28 |
| 4 | 110505 | No | $ - | $ 10,915.38 | $ - | $ 4,202.86 | $ 5,877.98 | $ 2,302.22 | 8,180.19 |
| 5 | 110117 | No | $ 1,875.51 | $ 9,334.07 | $ - | $ 886.93 | $ 6,631.24 | $ 2,597.24 | 9,228.48 |
| 6 | 111628 | No | $ 1,506.17 | $ 9,662.03 | $ - | $ 2,000.12 | $ 6,537.20 | $ 2,560.41 | 9,097.60 |
| 7 | 111657 | No | $ - | $ 11,065.83 | $ - | $ 4,533.96 | $ 5,986.31 | $ 2,344.65 | 8,330.95 |
| 8 | 110982 | No | $ 923.79 | $ 10,131.37 | $ - | $ 1,223.59 | $ 6,111.83 | $ 2,393.81 | 8,505.64 |
| 9 | 112093 | No | $ - | $ 10,898.63 | $ - | $ - | $ 5,449.32 | $ 2,134.32 | 7,583.64 |
| 10 | 111940 | No | $ 1,677.64 | $ 8,765.86 | $ - | $ 5,629.00 | $ 6,623.47 | $ 2,594.20 | 9,217.67 |
| 11 | 112561 | No | $ 995.31 | $ 10,021.04 | $ - | $ - | $ 6,005.83 | $ 2,352.29 | 8,358.12 |
| 12 | 112198 | No | $ - | $ 10,969.86 | $ - | $ - | $ 5,484.93 | $ 2,148.27 | 7,633.20 |
| 13 | 112070 | No | $ - | $ 10,969.86 | $ - | $ - | $ 5,484.93 | $ 2,148.27 | 7,633.20 |
| 14 | 111862 | No | $ - | $ 10,969.86 | $ - | $ - | $ 5,484.93 | $ 2,148.27 | 7,633.20 |
| 15 | 112422 | No | $ - | $ 10,969.86 | $ - | $ - | $ 5,484.93 | $ 2,148.27 | 7,633.20 |
| 16 | 111394 | PDO | $ 121.09 | $ 10,677.87 | $ - | $ 1,489.45 | $ 5,608.97 | $ 2,196.85 | 7,805.82 |
| 17 | 112326 | PDO | $ 1,225.59 | $ 9,704.77 | $ - | $ 2,106.04 | $ 6,288.58 | $ 2,463.03 | 8,751.61 |
| 18 | 111721 | No | $ - | $ 10,746.08 | $ - | $ 920.33 | $ 5,465.07 | $ 2,140.49 | 7,605.56 |
| 19 | 111267 | No | $ 608.89 | $ 10,131.37 | $ - | $ 2,864.91 | $ 5,961.06 | $ 2,334.76 | 8,295.82 |
| 20 | 112092 | PDO | $ 734.42 | $ 9,972.60 | $ - | $ 96.83 | $ 5,730.40 | $ 2,244.41 | 7,974.82 |
| 21 | 110122 | PDO | $ 978.12 | $ 9,731.27 | $ - | $ 1,515.98 | $ 5,995.35 | $ 2,348.19 | 8,343.54 |
| 22 | 111125 | No | $ - | $ 10,499.16 | $ - | $ 442.96 | $ 5,293.87 | $ 2,073.44 | 7,367.31 |
| 23 | 112517 | No | $ - | $ 10,585.21 | $ - | $ - | $ 5,292.60 | $ 2,072.94 | 7,365.55 |
| 24 | 112162 | PDO | $ 1,427.31 | $ 9,271.23 | $ - | $ 3,663.46 | $ 6,429.27 | $ 2,518.14 | 8,947.41 |
| 25 | 111224 | PDO | $ - | $ 10,582.36 | $ - | $ 1,962.85 | $ 5,487.46 | $ 2,149.26 | 7,636.73 |
| 26 | 111401 | PDO | $ 1,056.19 | $ 9,624.99 | $ - | $ 492.06 | $ 5,917.89 | $ 2,317.85 | 8,235.73 |
| 27 | 110906 | PDO | $ - | $ 10,462.68 | $ - | $ 415.65 | $ 5,272.91 | $ 2,065.23 | 7,338.14 |
| 28 | 111592 | No | $ 571.67 | $ 9,972.60 | $ - | $ 676.67 | $ 5,625.63 | $ 2,203.38 | 7,829.02 |
| 29 | 111247 | No | $ 66.85 | $ 10,370.71 | $ - | $ 5,257.17 | $ 5,777.92 | $ 2,263.03 | 8,040.95 |
| 30 | 112582 | No | $ - | $ 10,483.03 | $ - | $ - | $ 5,241.51 | $ 2,052.93 | 7,294.45 |

1 of 17

| | | | [A] | [B] | [C] | [D] | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] | [F] | [G] = [E] + [F] |
|---|---|---|---|---|---|---|---|---|---|
| | | | Employee | | | | | | |
| # | ID | Benefits Waived | Prty. Pre-Petition PDO Accr'd Claims | Remaining Priority WARN Claim | Potential Est. Unsecured WARN Claim | Potential Est. Unsecured PDO Claim | Employee Net Settlement Amount | Employee WARN Act Legal Fees | Employee Total Settlement Amount |
| 31 | 111035 | No | $ 693.60 | $ 9,881.42 | $ - | $ 3,075.30 | $ 5,941.84 | $ 2,327.23 | $ 8,269.07 |
| 32 | 112085 | No | $ 1,345.03 | $ 7,671.23 | $ - | $ 8,034.29 | $ 5,984.08 | $ 2,343.77 | $ 8,327.85 |
| 33 | 111173 | No | $ - | $ 10,367.92 | $ - | $ 993.23 | $ 5,283.28 | $ 2,069.29 | $ 7,352.57 |
| 34 | 110918 | No | $ 1,646.92 | $ 8,911.75 | $ - | $ 2,404.95 | $ 6,343.29 | $ 2,484.46 | $ 8,827.75 |
| 35 | 111741 | No | $ 445.08 | $ 9,972.60 | $ - | $ 3,738.00 | $ 5,805.18 | $ 2,273.70 | $ 8,078.89 |
| 36 | 110459 | No | $ - | $ 10,247.39 | $ - | $ 2,539.83 | $ 5,377.68 | $ 2,106.26 | $ 7,483.94 |
| 37 | 111780 | PDO | $ - | $ 10,297.42 | $ - | $ 4,455.46 | $ 5,594.26 | $ 2,191.09 | $ 7,785.35 |
| 38 | 111102 | No | $ 1,012.39 | $ 9,334.07 | $ - | $ 1,229.62 | $ 5,802.39 | $ 2,272.61 | $ 8,075.00 |
| 39 | 112241 | No | $ 1,575.84 | $ 8,054.79 | $ - | $ 372.72 | $ 5,640.51 | $ 2,209.21 | $ 7,849.72 |
| 40 | 111788 | No | $ - | $ 9,933.85 | $ - | $ 1,877.57 | $ 5,154.68 | $ 2,018.92 | $ 7,173.61 |
| 41 | 111883 | No | $ - | $ 10,274.63 | $ - | $ 1,648.54 | $ 5,302.17 | $ 2,076.69 | $ 7,378.86 |
| 42 | 111740 | PDO | $ - | $ 10,271.78 | $ - | $ 964.34 | $ 5,232.32 | $ 2,049.33 | $ 7,281.66 |
| 43 | 112578 | No | $ - | $ 10,257.53 | $ - | $ - | $ 5,128.77 | $ 2,008.77 | $ 7,137.54 |
| 44 | 111880 | No | $ 1,942.50 | $ 8,547.95 | $ - | $ 1,605.50 | $ 6,377.02 | $ 2,497.67 | $ 8,874.70 |
| 45 | 110212 | No | $ - | $ 10,159.06 | $ - | $ 3,498.59 | $ 5,429.39 | $ 2,126.52 | $ 7,555.91 |
| 46 | 111050 | PDO | $ - | $ 10,159.06 | $ - | $ 2,914.25 | $ 5,370.96 | $ 2,103.63 | $ 7,474.59 |
| 47 | 111181 | No | $ 343.68 | $ 9,860.91 | $ - | $ 164.03 | $ 5,290.53 | $ 2,072.13 | $ 7,362.67 |
| 48 | 111468 | No | $ - | $ 10,343.01 | $ - | $ - | $ 5,171.51 | $ 2,025.51 | $ 7,197.02 |
| 49 | 111159 | No | $ - | $ 10,343.01 | $ - | $ - | $ 5,171.51 | $ 2,025.51 | $ 7,197.02 |
| 50 | 112218 | No | $ - | $ 10,343.01 | $ - | $ - | $ 5,171.51 | $ 2,025.51 | $ 7,197.02 |
| 51 | 110583 | No | $ - | $ 10,343.01 | $ - | $ - | $ 5,171.51 | $ 2,025.51 | $ 7,197.02 |
| 52 | 110574 | No | $ - | $ 10,206.25 | $ - | $ 331.33 | $ 5,136.26 | $ 2,011.71 | $ 7,147.96 |
| 53 | 112163 | No | $ - | $ 9,205.48 | $ - | $ 921.15 | $ 4,694.86 | $ 1,838.82 | $ 6,533.68 |
| 54 | 111755 | No | $ - | $ 10,265.91 | $ - | $ 568.20 | $ 5,189.78 | $ 2,032.67 | $ 7,222.44 |
| 55 | 112406 | PDO | $ 690.61 | $ 9,611.14 | $ - | $ 487.23 | $ 5,544.90 | $ 2,171.76 | $ 7,716.66 |
| 56 | 111435 | No | $ - | $ 10,202.49 | $ - | $ - | $ 5,101.24 | $ 1,997.99 | $ 7,099.24 |
| 57 | 110241 | No | $ 266.20 | $ 9,966.90 | $ - | $ 1,190.20 | $ 5,368.67 | $ 2,102.74 | $ 7,471.41 |
| 58 | 111112 | No | $ - | $ 10,131.37 | $ - | $ 2,638.90 | $ 5,329.57 | $ 2,087.42 | $ 7,417.00 |
| 59 | 110313 | No | $ - | $ 10,131.37 | $ - | $ 2,287.98 | $ 5,294.48 | $ 2,073.68 | $ 7,368.16 |
| 60 | 110273 | PDO | $ 1,365.33 | $ 8,878.47 | $ - | $ 1,725.23 | $ 5,977.08 | $ 2,341.03 | $ 8,318.11 |
| 61 | 112225 | No | $ 156.20 | $ 9,966.90 | $ - | $ 3,033.25 | $ 5,442.98 | $ 2,131.84 | $ 7,574.82 |
| 62 | 110150 | PDO | $ - | $ 10,051.47 | $ - | $ 29.40 | $ 5,028.68 | $ 1,969.57 | $ 6,998.25 |
| 63 | 112381 | No | $ 1,729.68 | $ 7,888.73 | $ - | $ 1,277.61 | $ 5,801.80 | $ 2,272.38 | $ 8,074.18 |
| 64 | 112563 | No | $ 1,368.87 | $ 8,804.38 | $ - | $ - | $ 5,771.06 | $ 2,260.34 | $ 8,031.40 |
| 65 | 112535 | No | $ 1,636.77 | $ 8,565.04 | $ - | $ - | $ 5,919.29 | $ 2,318.39 | $ 8,237.68 |
| 66 | 111682 | No | $ - | $ 9,972.60 | $ - | $ 312.08 | $ 5,017.51 | $ 1,965.20 | $ 6,982.71 |
| 67 | 111884 | No | $ - | $ 9,972.60 | $ - | $ 3,281.25 | $ 5,314.43 | $ 2,081.49 | $ 7,395.92 |
| 68 | 111921 | No | $ - | $ 9,972.60 | $ - | $ - | $ 4,986.30 | $ 1,952.97 | $ 6,939.28 |
| 69 | 112295 | No | $ 1,442.38 | $ 8,736.34 | $ - | $ 360.22 | $ 5,846.57 | $ 2,289.91 | $ 8,136.49 |
| 70 | 112565 | No | $ - | $ 9,955.51 | $ - | $ - | $ 4,977.75 | $ 1,949.63 | $ 6,927.38 |
| 71 | 110474 | No | $ - | $ 9,944.11 | $ - | $ 2,829.81 | $ 5,255.04 | $ 2,058.23 | $ 7,313.26 |
| 72 | 119281 | No | $ 821.93 | $ 9,157.93 | $ - | $ 3,307.82 | $ 5,731.68 | $ 2,244.91 | $ 7,976.59 |
| 73 | 112335 | No | $ 148.51 | $ 9,858.17 | $ - | $ 125.12 | $ 5,090.11 | $ 1,993.63 | $ 7,083.74 |
| 74 | 111982 | No | $ - | $ 10,029.59 | $ - | $ - | $ 5,014.79 | $ 1,964.13 | $ 6,978.93 |
| 75 | 111955 | No | $ 1,310.61 | $ 7,901.37 | $ - | $ 6,460.61 | $ 5,907.35 | $ 2,313.72 | $ 8,221.08 |
| 76 | 110666 | No | $ 939.75 | $ 9,066.52 | $ - | $ - | $ 5,473.01 | $ 2,143.60 | $ 7,616.61 |
| 77 | 112553 | No | $ 903.65 | $ 9,082.19 | $ - | $ - | $ 5,444.74 | $ 2,132.53 | $ 7,577.27 |
| 78 | 110245 | No | $ - | $ 9,867.24 | $ - | $ 2,811.80 | $ 5,214.80 | $ 2,042.47 | $ 7,257.27 |

| # | ID | Benefits Waived | [A] Prty. Pre-Petition PDO Accr'd Claims | [B] Remaining Priority WARN Claim | [C] Potential Est. Unsecured WARN Claim | [D] Potential Est. Unsecured PDO Claim | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] Employee Net Settlement Amount | [F] Employee WARN Act Legal Fees | [G] = [E] + [F] Employee Total Settlement Amount |
|---|---|---|---|---|---|---|---|---|---|
| 79 | 111516 | No | $ - | $ 8,821.92 | $ - | $ 8,846.16 | $ 5,295.58 | $ 2,074.11 | $ 7,369.69 |
| 80 | 110000 | No | $ - | $ 9,843.47 | $ - | $ 2,123.33 | $ 5,134.07 | $ 2,010.85 | $ 7,144.92 |
| 81 | 111448 | No | $ - | $ 9,731.27 | $ - | $ 3,095.84 | $ 5,175.22 | $ 2,026.97 | $ 7,202.18 |
| 82 | 110328 | PDO | $ - | $ 9,666.19 | $ - | $ 3,938.62 | $ 5,226.96 | $ 2,047.23 | $ 7,274.19 |
| 83 | 111500 | No | $ - | $ 9,655.47 | $ - | $ 853.18 | $ 4,913.06 | $ 1,924.29 | $ 6,837.34 |
| 84 | 112444 | No | $ 2,443.52 | $ 7,610.52 | $ - | $ 394.42 | $ 6,288.22 | $ 2,462.89 | $ 8,751.12 |
| 85 | 112595 | No | $ 674.69 | $ 9,199.75 | $ - | $ - | $ 5,274.57 | $ 2,065.88 | $ 7,340.44 |
| 86 | 111762 | No | $ - | $ 9,707.62 | $ - | $ 0.00 | $ 4,853.81 | $ 1,901.08 | $ 6,754.89 |
| 87 | 112536 | No | $ 1,882.53 | $ 8,072.11 | $ - | $ - | $ 5,918.58 | $ 2,318.12 | $ 8,236.70 |
| 88 | 111833 | No | $ 438.58 | $ 9,239.99 | $ - | $ 1,257.18 | $ 5,184.29 | $ 2,030.52 | $ 7,214.81 |
| 89 | 112076 | No | $ - | $ 9,573.70 | $ - | $ - | $ 4,786.85 | $ 1,874.86 | $ 6,661.70 |
| 90 | 110491 | No | $ - | $ 9,640.20 | $ - | $ - | $ 4,820.10 | $ 1,887.88 | $ 6,707.98 |
| 91 | 111366 | No | $ 506.24 | $ 9,195.54 | $ - | $ 2,773.77 | $ 5,381.39 | $ 2,107.72 | $ 7,489.10 |
| 92 | 111313 | PDO | $ - | $ 9,365.47 | $ - | $ 3,034.67 | $ 4,986.20 | $ 1,952.94 | $ 6,939.14 |
| 93 | 110035 | No | $ 547.36 | $ 9,037.57 | $ - | $ 672.36 | $ 5,133.38 | $ 2,010.58 | $ 7,143.97 |
| 94 | 111070 | No | $ - | $ 9,392.37 | $ - | $ 16.12 | $ 4,697.80 | $ 1,839.98 | $ 6,537.77 |
| 95 | 110268 | PDO | $ 2,769.78 | $ 7,025.27 | $ - | $ 395.75 | $ 6,321.99 | $ 2,476.12 | $ 8,798.11 |
| 96 | 112525 | No | $ 1,006.41 | $ 8,668.19 | $ - | $ - | $ 5,340.51 | $ 2,091.70 | $ 7,432.21 |
| 97 | 111654 | PDO | $ - | $ 9,376.92 | $ - | $ 242.74 | $ 4,712.74 | $ 1,845.83 | $ 6,558.56 |
| 98 | 111316 | No | $ 1,269.14 | $ 8,169.67 | $ - | $ 2,020.96 | $ 5,556.07 | $ 2,176.14 | $ 7,732.21 |
| 99 | 111201 | No | $ - | $ 9,402.74 | $ - | $ - | $ 4,701.37 | $ 1,841.38 | $ 6,542.75 |
| 100 | 112075 | No | $ - | $ 9,402.74 | $ - | $ 3,255.45 | $ 5,026.91 | $ 1,968.88 | $ 6,995.80 |
| 101 | 111591 | No | $ - | $ 9,402.74 | $ - | $ - | $ 4,701.37 | $ 1,841.38 | $ 6,542.75 |
| 102 | 112023 | No | $ - | $ 9,402.74 | $ - | $ - | $ 4,701.37 | $ 1,841.38 | $ 6,542.75 |
| 103 | 111852 | No | $ - | $ 9,402.74 | $ - | $ - | $ 4,701.37 | $ 1,841.38 | $ 6,542.75 |
| 104 | 112072 | No | $ - | $ 9,402.74 | $ - | $ - | $ 4,701.37 | $ 1,841.38 | $ 6,542.75 |
| 105 | 112531 | No | $ 118.05 | $ 9,314.70 | $ - | $ - | $ 4,775.40 | $ 1,870.37 | $ 6,645.77 |
| 106 | 111630 | No | $ 284.82 | $ 9,063.56 | $ - | $ 912.55 | $ 4,907.85 | $ 1,922.25 | $ 6,830.10 |
| 107 | 112008 | No | $ - | $ 9,438.36 | $ - | $ 812.50 | $ 4,800.43 | $ 1,880.17 | $ 6,680.60 |
| 108 | 110968 | No | $ 447.98 | $ 8,911.75 | $ - | $ 3,777.65 | $ 5,281.61 | $ 2,068.64 | $ 7,350.25 |
| 109 | 112071 | No | $ - | $ 9,340.05 | $ - | $ 1,787.60 | $ 4,848.79 | $ 1,899.11 | $ 6,747.90 |
| 110 | 111486 | No | $ 40.83 | $ 9,174.79 | $ - | $ 3,828.42 | $ 5,011.07 | $ 1,962.68 | $ 6,973.75 |
| 111 | 111983 | No | $ - | $ 9,380.97 | $ - | $ 183.25 | $ 4,708.81 | $ 1,844.29 | $ 6,553.10 |
| 112 | 111690 | No | $ - | $ 9,174.79 | $ - | $ 3,704.17 | $ 4,957.81 | $ 1,941.82 | $ 6,899.63 |
| 113 | 112532 | No | $ - | $ 9,402.74 | $ - | $ - | $ 4,701.37 | $ 1,841.38 | $ 6,542.75 |
| 114 | 111882 | No | $ - | $ 9,402.74 | $ - | $ - | $ 4,701.37 | $ 1,841.38 | $ 6,542.75 |
| 115 | 112510 | No | $ - | $ 9,402.74 | $ - | $ - | $ 4,701.37 | $ 1,841.38 | $ 6,542.75 |
| 116 | 112383 | No | $ - | $ 9,402.74 | $ - | $ - | $ 4,701.37 | $ 1,841.38 | $ 6,542.75 |
| 117 | 112374 | No | $ - | $ 9,402.74 | $ - | $ - | $ 4,701.37 | $ 1,841.38 | $ 6,542.75 |
| 118 | 112197 | No | $ - | $ 9,300.16 | $ - | $ - | $ 4,650.08 | $ 1,821.29 | $ 6,471.37 |
| 119 | 110862 | No | $ 1,458.91 | $ 8,009.42 | $ - | $ - | $ 5,463.62 | $ 2,139.92 | $ 7,603.55 |
| 120 | 110400 | No | $ - | $ 9,135.47 | $ - | $ 2,018.40 | $ 4,769.58 | $ 1,868.09 | $ 6,637.67 |
| 121 | 112471 | No | $ - | $ 9,217.48 | $ - | $ - | $ 4,608.74 | $ 1,805.09 | $ 6,413.83 |
| 122 | 110090 | No | $ - | $ 9,183.97 | $ - | $ 463.20 | $ 4,638.30 | $ 1,816.67 | $ 6,454.98 |
| 123 | 110520 | No | $ - | $ 9,175.59 | $ - | $ 1,050.97 | $ 4,692.89 | $ 1,838.06 | $ 6,530.95 |
| 124 | 111578 | No | $ - | $ 9,232.98 | $ - | $ 1,974.31 | $ 4,813.92 | $ 1,885.46 | $ 6,699.38 |
| 125 | 112468 | PDO | $ 2,245.55 | $ 7,220.16 | $ - | $ - | $ 5,855.63 | $ 2,293.46 | $ 8,149.09 |
| 126 | 112182 | No | $ 253.97 | $ 9,006.46 | $ - | $ - | $ 4,757.20 | $ 1,863.24 | $ 6,620.44 |

| | | | [A] | [B] | [C] | [D] | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] | [F] | [G] = [E] + [F] |
|---|---|---|---|---|---|---|---|---|---|
| | | | Employee | | | | | | |
| # | ID | Benefits Waived | Prty. Pre-Petition PDO Accr'd Claims | Remaining Priority WARN Claim | Potential Est. Unsecured WARN Claim | Potential Est. Unsecured PDO Claim | Employee Net Settlement Amount | Employee WARN Act Legal Fees | Employee Total Settlement Amount |
| 127 | 110359 | No | $ 1,216.15 | $ 8,072.62 | $ - | $ 1,998.64 | $ 5,452.32 | $ 2,135.50 | $ 7,587.82 |
| 128 | 111472 | No | $ 1,073.28 | $ 8,115.76 | $ - | $ 2,558.84 | $ 5,387.05 | $ 2,109.93 | $ 7,496.98 |
| 129 | 112456 | No | $ - | $ 9,132.05 | $ - | $ - | $ 4,566.03 | $ 1,788.37 | $ 6,354.39 |
| 130 | 111616 | No | $ 936.94 | $ 7,506.30 | $ - | $ 4,951.30 | $ 5,185.22 | $ 2,030.89 | $ 7,216.11 |
| 131 | 111718 | No | $ 521.03 | $ 8,483.32 | $ - | $ 3,559.51 | $ 5,118.64 | $ 2,004.81 | $ 7,123.45 |
| 132 | 111966 | No | $ 2,464.00 | $ 6,355.91 | $ - | $ 2,299.91 | $ 5,871.95 | $ 2,299.85 | $ 8,171.80 |
| 133 | 110730 | PDO | $ 97.18 | $ 9,029.48 | $ - | $ 1,732.39 | $ 4,785.16 | $ 1,874.19 | $ 6,659.36 |
| 134 | 112139 | No | $ 615.73 | $ 8,565.04 | $ - | $ 2,163.32 | $ 5,114.58 | $ 2,003.22 | $ 7,117.80 |
| 135 | 111562 | No | $ 319.90 | $ 8,750.25 | $ - | $ 1,656.80 | $ 4,860.70 | $ 1,903.78 | $ 6,764.48 |
| 136 | 112320 | No | $ 792.59 | $ 8,249.34 | $ - | $ 1,947.07 | $ 5,111.96 | $ 2,002.19 | $ 7,114.15 |
| 137 | 111688 | No | $ - | $ 9,060.82 | $ - | $ - | $ 4,530.41 | $ 1,774.42 | $ 6,304.83 |
| 138 | 110258 | No | $ - | $ 7,889.75 | $ - | $ 5,996.73 | $ 4,544.55 | $ 1,779.95 | $ 6,324.50 |
| 139 | 112613 | PDO | $ 212.64 | $ 8,862.51 | $ - | $ - | $ 4,643.89 | $ 1,818.86 | $ 6,462.76 |
| 140 | 111213 | No | $ - | $ 8,831.40 | $ - | $ 2,819.85 | $ 4,697.68 | $ 1,839.93 | $ 6,537.61 |
| 141 | 110999 | No | $ - | $ 8,797.32 | $ - | $ 2,703.26 | $ 4,668.98 | $ 1,828.69 | $ 6,497.68 |
| 142 | 110823 | No | $ - | $ 8,547.60 | $ - | $ 3,219.10 | $ 4,595.71 | $ 1,799.99 | $ 6,395.70 |
| 143 | 111094 | No | $ 1,314.14 | $ 7,697.25 | $ - | $ 2,794.30 | $ 5,442.20 | $ 2,131.53 | $ 7,573.73 |
| 144 | 110308 | No | $ 150.38 | $ 8,717.65 | $ - | $ 1,662.99 | $ 4,675.50 | $ 1,831.24 | $ 6,506.74 |
| 145 | 111931 | No | $ - | $ 8,960.15 | $ - | $ 3,047.13 | $ 4,784.79 | $ 1,874.05 | $ 6,658.84 |
| 146 | 111655 | No | $ 1,205.95 | $ 7,824.22 | $ - | $ 1,463.16 | $ 5,264.38 | $ 2,061.89 | $ 7,326.26 |
| 147 | 111014 | No | $ - | $ 8,889.86 | $ - | $ - | $ 4,444.93 | $ 1,740.94 | $ 6,185.87 |
| 148 | 112336 | No | $ - | $ 8,889.86 | $ - | $ - | $ 4,444.93 | $ 1,740.94 | $ 6,185.87 |
| 149 | 111929 | No | $ - | $ 8,889.86 | $ - | $ - | $ 4,444.93 | $ 1,740.94 | $ 6,185.87 |
| 150 | 111431 | No | $ - | $ 8,790.25 | $ - | $ 2,411.37 | $ 4,636.26 | $ 1,815.87 | $ 6,452.14 |
| 151 | 110836 | No | $ 100.73 | $ 8,739.25 | $ - | $ 3,381.37 | $ 4,808.50 | $ 1,883.33 | $ 6,691.83 |
| 152 | 112329 | No | $ - | $ 8,723.01 | $ - | $ 235.45 | $ 4,385.05 | $ 1,717.48 | $ 6,102.53 |
| 153 | 112089 | No | $ - | $ 7,901.37 | $ - | $ 1,978.29 | $ 4,148.51 | $ 1,624.84 | $ 5,773.35 |
| 154 | 110507 | No | $ - | $ 8,651.89 | $ - | $ 1,365.36 | $ 4,462.48 | $ 1,747.81 | $ 6,210.29 |
| 155 | 112037 | No | $ - | $ 8,718.90 | $ - | $ - | $ 4,359.45 | $ 1,707.46 | $ 6,066.91 |
| 156 | 112304 | No | $ - | $ 8,718.90 | $ - | $ - | $ 4,359.45 | $ 1,707.46 | $ 6,066.91 |
| 157 | 111797 | No | $ - | $ 8,718.90 | $ - | $ - | $ 4,359.45 | $ 1,707.46 | $ 6,066.91 |
| 158 | 112260 | No | $ - | $ 8,718.90 | $ - | $ - | $ 4,359.45 | $ 1,707.46 | $ 6,066.91 |
| 159 | 112551 | No | $ - | $ 8,718.90 | $ - | $ - | $ 4,359.45 | $ 1,707.46 | $ 6,066.91 |
| 160 | 112315 | No | $ - | $ 8,718.90 | $ - | $ - | $ 4,359.45 | $ 1,707.46 | $ 6,066.91 |
| 161 | 111925 | No | $ - | $ 8,718.90 | $ - | $ - | $ 4,359.45 | $ 1,707.46 | $ 6,066.91 |
| 162 | 111464 | No | $ - | $ 8,718.90 | $ - | $ - | $ 4,359.45 | $ 1,707.46 | $ 6,066.91 |
| 163 | 111474 | No | $ - | $ 8,718.90 | $ - | $ - | $ 4,359.45 | $ 1,707.46 | $ 6,066.91 |
| 164 | 112457 | No | $ - | $ 8,718.90 | $ - | $ - | $ 4,359.45 | $ 1,707.46 | $ 6,066.91 |
| 165 | 112292 | No | $ - | $ 8,718.90 | $ - | $ - | $ 4,359.45 | $ 1,707.46 | $ 6,066.91 |
| 166 | 110284 | No | $ - | $ 7,844.05 | $ - | $ 3,873.81 | $ 4,309.41 | $ 1,687.86 | $ 5,997.26 |
| 167 | 112485 | No | $ 212.64 | $ 8,534.27 | $ - | $ - | $ 4,479.77 | $ 1,754.58 | $ 6,234.36 |
| 168 | 110058 | No | $ 891.78 | $ 7,774.98 | $ - | $ 968.40 | $ 4,876.11 | $ 1,909.82 | $ 6,785.92 |
| 169 | 110306 | No | $ - | $ 8,539.74 | $ - | $ 955.85 | $ 4,365.45 | $ 1,709.81 | $ 6,075.26 |
| 170 | 111941 | No | $ 917.72 | $ 7,203.07 | $ - | $ 4,309.45 | $ 4,950.20 | $ 1,938.83 | $ 6,889.03 |
| 171 | 112233 | No | $ - | $ 8,547.95 | $ - | $ - | $ 4,273.97 | $ 1,673.98 | $ 5,947.95 |
| 172 | 111647 | No | $ - | $ 8,547.95 | $ - | $ 1,605.00 | $ 4,434.47 | $ 1,736.84 | $ 6,171.31 |
| 173 | 112528 | No | $ - | $ 8,547.95 | $ - | $ - | $ 4,273.97 | $ 1,673.98 | $ 5,947.95 |
| 174 | 111746 | No | $ - | $ 8,547.95 | $ - | $ - | $ 4,273.97 | $ 1,673.98 | $ 5,947.95 |

| | | | [A] | [B] | [C] | [D] | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] | [F] | [G] = [E] + [F] |
|---|---|---|---|---|---|---|---|---|---|
| | | | Employee | | | | | | |
| # | ID | Benefits Waived | Prty. Pre-Petition PDO Accr'd Claims | Remaining Priority WARN Claim | Potential Est. Unsecured WARN Claim | Potential Est. Unsecured PDO Claim | Employee Net Settlement Amount | Employee WARN Act Legal Fees | Employee Total Settlement Amount |
| 175 | 110470 | No | $ - | $ 8,547.95 | $ - | $ - | $ 4,273.97 | $ 1,673.98 | $ 5,947.95 |
| 176 | 112113 | No | $ - | $ 8,547.95 | $ - | $ - | $ 4,273.97 | $ 1,673.98 | $ 5,947.95 |
| 177 | 110895 | No | $ - | $ 8,547.95 | $ - | $ - | $ 4,273.97 | $ 1,673.98 | $ 5,947.95 |
| 178 | 111903 | No | $ - | $ 8,547.95 | $ - | $ - | $ 4,273.97 | $ 1,673.98 | $ 5,947.95 |
| 179 | 112494 | No | $ 405.70 | $ 8,251.39 | $ - | $ - | $ 4,531.40 | $ 1,774.80 | $ 6,306.20 |
| 180 | 111706 | No | $ 1,836.71 | $ 6,317.07 | $ - | $ 2,429.20 | $ 5,238.17 | $ 2,051.62 | $ 7,289.79 |
| 181 | 110436 | No | $ 869.62 | $ 7,675.37 | $ - | $ 1,761.19 | $ 4,883.42 | $ 1,912.68 | $ 6,796.10 |
| 182 | 112438 | No | $ 1,509.78 | $ 7,171.73 | $ - | $ 371.68 | $ 5,132.81 | $ 2,010.36 | $ 7,143.17 |
| 183 | 119270 | No | $ - | $ 8,359.55 | $ - | $ 1,883.64 | $ 4,368.14 | $ 1,710.86 | $ 6,079.00 |
| 184 | 111863 | No | $ 1,122.08 | $ 7,550.68 | $ - | $ 413.33 | $ 4,938.76 | $ 1,934.35 | $ 6,873.11 |
| 185 | 111454 | No | $ - | $ 8,442.81 | $ - | $ 3,194.53 | $ 4,540.86 | $ 1,778.51 | $ 6,319.36 |
| 186 | 110228 | No | $ 1,181.87 | $ 7,333.45 | $ - | $ 2,278.85 | $ 5,076.49 | $ 1,988.30 | $ 7,064.78 |
| 187 | 111836 | No | $ 783.52 | $ 7,701.70 | $ - | $ 2,990.53 | $ 4,933.42 | $ 1,932.26 | $ 6,865.68 |
| 188 | 110651 | No | $ - | $ 8,183.92 | $ - | $ 4,322.93 | $ 4,524.25 | $ 1,772.00 | $ 6,296.26 |
| 189 | 112487 | No | $ 1,752.06 | $ 6,761.42 | $ - | $ - | $ 5,132.78 | $ 2,010.34 | $ 7,143.12 |
| 190 | 112569 | PDO | $ 963.52 | $ 7,436.71 | $ - | $ - | $ 4,681.88 | $ 1,833.74 | $ 6,515.62 |
| 191 | 110933 | No | $ - | $ 8,206.03 | $ - | $ - | $ 4,103.01 | $ 1,607.02 | $ 5,710.03 |
| 192 | 112574 | No | $ 804.49 | $ 7,013.70 | $ - | $ - | $ 4,311.34 | $ 1,688.61 | $ 5,999.95 |
| 193 | 111709 | No | $ 288.60 | $ 7,814.36 | $ - | $ 1,972.40 | $ 4,393.02 | $ 1,720.61 | $ 6,113.63 |
| 194 | 110540 | No | $ 238.30 | $ 7,981.73 | $ - | $ 125.47 | $ 4,241.72 | $ 1,661.34 | $ 5,903.06 |
| 195 | 111588 | No | $ 236.85 | $ 8,017.97 | $ - | $ 834.82 | $ 4,329.31 | $ 1,695.65 | $ 6,024.97 |
| 196 | 112103 | No | $ 491.53 | $ 7,646.99 | $ - | $ 3,079.41 | $ 4,622.97 | $ 1,810.67 | $ 6,433.64 |
| 197 | 111290 | No | $ - | $ 8,251.39 | $ - | $ 1,266.28 | $ 4,252.32 | $ 1,665.50 | $ 5,917.82 |
| 198 | 111996 | No | $ 995.45 | $ 6,794.52 | $ - | $ 1,880.99 | $ 4,580.81 | $ 1,794.16 | $ 6,374.97 |
| 199 | 110116 | No | $ - | $ 8,239.31 | $ - | $ 36.83 | $ 4,123.34 | $ 1,614.98 | $ 5,738.31 |
| 200 | 110073 | No | $ 214.45 | $ 7,927.02 | $ - | $ 2,367.67 | $ 4,414.73 | $ 1,729.11 | $ 6,143.84 |
| 201 | 112243 | No | $ 1,350.51 | $ 6,909.93 | $ - | $ 1,391.37 | $ 4,944.61 | $ 1,936.65 | $ 6,881.26 |
| 202 | 112542 | No | $ 1,053.64 | $ 7,284.90 | $ - | $ - | $ 4,696.09 | $ 1,839.31 | $ 6,535.40 |
| 203 | 111049 | No | $ 195.62 | $ 7,907.88 | $ - | $ 6.75 | $ 4,150.24 | $ 1,625.51 | $ 5,775.75 |
| 204 | 111415 | No | $ - | $ 7,324.56 | $ - | $ 5,199.42 | $ 4,182.22 | $ 1,638.04 | $ 5,820.27 |
| 205 | 112284 | No | $ 50.99 | $ 8,072.11 | $ - | $ 2,379.25 | $ 4,324.97 | $ 1,693.95 | $ 6,018.93 |
| 206 | 111573 | No | $ - | $ 7,870.72 | $ - | $ 2,058.36 | $ 4,141.20 | $ 1,621.97 | $ 5,763.17 |
| 207 | 110355 | No | $ - | $ 8,149.04 | $ - | $ - | $ 4,074.52 | $ 1,595.86 | $ 5,670.38 |
| 208 | 112500 | No | $ 1,701.12 | $ 6,564.82 | $ - | $ - | $ 4,983.53 | $ 1,951.89 | $ 6,935.42 |
| 209 | 112274 | No | $ 216.53 | $ 7,818.52 | $ - | $ 1,183.00 | $ 4,244.09 | $ 1,662.28 | $ 5,906.37 |
| 210 | 111928 | No | $ - | $ 7,219.10 | $ - | $ 4,010.82 | $ 4,010.63 | $ 1,570.84 | $ 5,581.47 |
| 211 | 110054 | No | $ - | $ 7,927.02 | $ - | $ 677.65 | $ 4,031.28 | $ 1,578.92 | $ 5,610.20 |
| 212 | 111046 | No | $ - | $ 7,927.02 | $ - | $ 3,295.03 | $ 4,293.01 | $ 1,681.44 | $ 5,974.45 |
| 213 | 112222 | No | $ - | $ 7,767.80 | $ - | $ - | $ 3,883.90 | $ 1,521.20 | $ 5,405.10 |
| 214 | 112433 | No | $ 582.79 | $ 7,477.74 | $ - | $ 358.83 | $ 4,357.55 | $ 1,706.71 | $ 6,064.26 |
| 215 | 112445 | No | $ 192.70 | $ 7,777.21 | $ - | $ 190.12 | $ 4,100.31 | $ 1,605.96 | $ 5,706.27 |
| 216 | 111568 | No | $ - | $ 7,849.24 | $ - | $ 495.67 | $ 3,974.19 | $ 1,556.56 | $ 5,530.75 |
| 217 | 112282 | No | $ - | $ 7,890.61 | $ - | $ 1,367.00 | $ 4,082.00 | $ 1,598.79 | $ 5,680.79 |
| 218 | 112591 | PDO | $ 295.15 | $ 7,610.52 | $ - | $ - | $ 4,100.41 | $ 1,606.00 | $ 5,706.40 |
| 219 | 111622 | No | $ - | $ 7,838.47 | $ - | $ 1,792.74 | $ 4,098.51 | $ 1,605.25 | $ 5,703.76 |
| 220 | 111911 | No | $ - | $ 7,749.23 | $ - | $ - | $ 3,874.61 | $ 1,517.56 | $ 5,392.17 |
| 221 | 110585 | No | $ - | $ 7,729.17 | $ - | $ 2,824.28 | $ 4,147.01 | $ 1,624.25 | $ 5,771.26 |
| 222 | 110995 | PDO | $ - | $ 7,697.25 | $ - | $ 3,330.37 | $ 4,181.66 | $ 1,637.82 | $ 5,819.49 |

| | | | | [A] | [B] | [C] | [D] | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] | [F] | [G] = [E] + [F] |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | **Employee** | | | | | | |
| # | ID | Benefits Waived | | Prty. Pre-Petition PDO Accr'd Claims | Remaining Priority WARN Claim | Potential Est. Unsecured WARN Claim | Potential Est. Unsecured PDO Claim | Employee Net Settlement Amount | Employee WARN Act Legal Fees | Employee Total Settlement Amount |
| 223 | 111824 | No | $ | - | $ 7,835.62 | $ - | $ - | $ 3,917.81 | $ 1,534.48 | 5,452.29 |
| 224 | 111779 | No | $ | - | $ 7,835.62 | $ - | $ - | $ 3,917.81 | $ 1,534.48 | 5,452.29 |
| 225 | 112545 | No | $ | 1,064.74 | $ 6,136.99 | $ - | $ - | $ 4,133.24 | $ 1,618.86 | 5,752.09 |
| 226 | 112095 | No | $ | 255.83 | $ 7,550.68 | $ - | $ 907.50 | $ 4,121.93 | $ 1,614.43 | 5,736.35 |
| 227 | 112230 | No | $ | 603.66 | $ 7,171.73 | $ - | $ 325.11 | $ 4,222.03 | $ 1,653.64 | 5,875.67 |
| 228 | 111450 | No | $ | - | $ 7,614.57 | $ - | $ 3,307.36 | $ 4,138.02 | $ 1,620.73 | 5,758.75 |
| 229 | 111436 | No | $ | 1,682.33 | $ 5,584.66 | $ - | $ 3,346.00 | $ 4,809.26 | $ 1,883.63 | 6,692.90 |
| 230 | 110905 | PDO | $ | - | $ 7,486.63 | $ - | $ 2,575.64 | $ 4,000.88 | $ 1,567.02 | 5,567.90 |
| 231 | 110443 | No | $ | - | $ 7,486.63 | $ - | $ 3,259.17 | $ 4,069.23 | $ 1,593.79 | 5,663.02 |
| 232 | 111691 | No | $ | - | $ 7,556.38 | $ - | $ 599.35 | $ 3,838.13 | $ 1,503.27 | 5,341.40 |
| 233 | 111778 | No | $ | 364.79 | $ 7,190.25 | $ - | $ 98.71 | $ 3,969.79 | $ 1,554.84 | 5,524.62 |
| 234 | 112240 | No | $ | - | $ 7,368.16 | $ - | $ 351.21 | $ 3,719.20 | $ 1,456.69 | 5,175.89 |
| 235 | 111178 | No | $ | - | $ 7,385.42 | $ - | $ - | $ 3,692.71 | $ 1,446.32 | 5,139.03 |
| 236 | 111689 | No | $ | - | $ 7,385.42 | $ - | $ - | $ 3,692.71 | $ 1,446.32 | 5,139.03 |
| 237 | 112278 | PDO | $ | 631.09 | $ 6,841.06 | $ - | $ 150.06 | $ 4,066.64 | $ 1,592.77 | 5,659.41 |
| 238 | 110948 | PDO | $ | - | $ 7,360.58 | $ - | $ 1,938.78 | $ 3,874.17 | $ 1,517.39 | 5,391.55 |
| 239 | 112324 | PDO | $ | - | $ 7,411.18 | $ - | $ 492.70 | $ 3,754.86 | $ 1,470.66 | 5,225.52 |
| 240 | 110044 | No | $ | 347.83 | $ 6,978.09 | $ - | $ 2,101.21 | $ 4,047.00 | $ 1,585.08 | 5,632.08 |
| 241 | 110461 | No | $ | - | $ 7,271.95 | $ - | $ 1,054.81 | $ 3,741.46 | $ 1,465.41 | 5,206.86 |
| 242 | 110653 | No | $ | 958.79 | $ 6,449.48 | $ - | $ 1,502.59 | $ 4,333.79 | $ 1,697.40 | 6,031.19 |
| 243 | 112306 | No | $ | - | $ 7,328.44 | $ - | $ 618.14 | $ 3,726.03 | $ 1,459.37 | 5,185.40 |
| 244 | 112594 | No | $ | 509.01 | $ 6,940.59 | $ - | $ - | $ 3,979.30 | $ 1,558.56 | 5,537.87 |
| 245 | 112606 | No | $ | 334.02 | $ 7,089.67 | $ - | $ - | $ 3,878.85 | $ 1,519.22 | 5,398.08 |
| 246 | 111043 | No | $ | - | $ 7,286.72 | $ - | $ - | $ 3,643.36 | $ 1,426.99 | 5,070.35 |
| 247 | 111895 | No | $ | - | $ 7,077.70 | $ - | $ - | $ 3,538.85 | $ 1,386.05 | 4,924.90 |
| 248 | 112143 | No | $ | - | $ 7,123.29 | $ - | $ - | $ 3,561.64 | $ 1,394.98 | 4,956.63 |
| 249 | 112522 | No | $ | - | $ 7,123.29 | $ - | $ - | $ 3,561.64 | $ 1,394.98 | 4,956.63 |
| 250 | 110167 | No | $ | - | $ 7,123.29 | $ - | $ - | $ 3,561.64 | $ 1,394.98 | 4,956.63 |
| 251 | 111252 | No | $ | - | $ 7,123.29 | $ - | $ - | $ 3,561.64 | $ 1,394.98 | 4,956.63 |
| 252 | 112611 | No | $ | - | $ 7,123.29 | $ - | $ - | $ 3,561.64 | $ 1,394.98 | 4,956.63 |
| 253 | 112355 | No | $ | - | $ 7,123.29 | $ - | $ - | $ 3,561.64 | $ 1,394.98 | 4,956.63 |
| 254 | 111145 | No | $ | - | $ 7,123.29 | $ - | $ - | $ 3,561.64 | $ 1,394.98 | 4,956.63 |
| 255 | 112109 | No | $ | - | $ 7,123.29 | $ - | $ - | $ 3,561.64 | $ 1,394.98 | 4,956.63 |
| 256 | 111360 | No | $ | - | $ 7,123.29 | $ - | $ - | $ 3,561.64 | $ 1,394.98 | 4,956.63 |
| 257 | 111696 | No | $ | - | $ 7,060.15 | $ - | $ - | $ 3,530.07 | $ 1,382.62 | 4,912.69 |
| 258 | 112081 | No | $ | 451.73 | $ 6,685.18 | $ - | $ 248.07 | $ 3,819.13 | $ 1,495.83 | 5,314.96 |
| 259 | 112001 | No | $ | 784.53 | $ 6,486.86 | $ - | $ 2,017.36 | $ 4,229.70 | $ 1,656.64 | 5,886.33 |
| 260 | 112600 | No | $ | 350.41 | $ 6,761.42 | $ - | $ - | $ 3,731.13 | $ 1,461.36 | 5,192.49 |
| 261 | 110043 | PDO | $ | - | $ 6,978.09 | $ - | $ 1,154.42 | $ 3,604.49 | $ 1,411.76 | 5,016.25 |
| 262 | 110065 | No | $ | - | $ 6,978.09 | $ - | $ 2,702.82 | $ 3,759.33 | $ 1,472.41 | 5,231.73 |
| 263 | 111256 | PDO | $ | 425.50 | $ 6,593.43 | $ - | $ 1,746.43 | $ 3,896.85 | $ 1,526.27 | 5,423.13 |
| 264 | 110349 | No | $ | - | $ 6,894.20 | $ - | $ 2,654.55 | $ 3,712.56 | $ 1,454.09 | 5,166.64 |
| 265 | 111865 | No | $ | - | $ 6,963.73 | $ - | $ 2,221.19 | $ 3,703.98 | $ 1,450.73 | 5,154.71 |
| 266 | 111697 | PDO | $ | 636.34 | $ 6,349.76 | $ - | $ 18.57 | $ 3,813.08 | $ 1,493.46 | 5,306.54 |
| 267 | 112287 | No | $ | - | $ 6,940.02 | $ - | $ - | $ 3,470.01 | $ 1,359.09 | 4,829.10 |
| 268 | 112415 | No | $ | 4,934.78 | $ - | $ - | $ 9,065.22 | $ 5,841.30 | $ 2,287.85 | 8,129.15 |
| 269 | 111942 | No | $ | - | $ 6,340.52 | $ - | $ 4,505.61 | $ 3,620.82 | $ 1,418.16 | 5,038.98 |
| 270 | 111565 | No | $ | - | $ 6,708.09 | $ - | $ 1,719.65 | $ 3,526.01 | $ 1,381.02 | 4,907.03 |

| | | | [A] | [B] | [C] | [D] | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] | [F] | [G] = [E] + [F] |
|---|---|---|---|---|---|---|---|---|---|
| | | | Employee | | | | | | |
| # | ID | Benefits Waived | Prty. Pre-Petition PDO Accr'd Claims | Remaining Priority WARN Claim | Potential Est. Unsecured WARN Claim | Potential Est. Unsecured PDO Claim | Employee Net Settlement Amount | Employee WARN Act Legal Fees | Employee Total Settlement Amount |
| 271 | 110824 | No | $ - | $ 6,725.35 | $ - | $ 1,051.27 | $ 3,467.80 | $ 1,358.23 | $ 4,826.03 |
| 272 | 112193 | No | $ - | $ 6,761.42 | $ - | $ 990.73 | $ 3,479.79 | $ 1,362.92 | $ 4,842.71 |
| 273 | 112502 | No | $ - | $ 6,761.42 | $ - | $ - | $ 3,380.71 | $ 1,324.12 | $ 4,704.83 |
| 274 | 112550 | PDO | $ 411.70 | $ 6,448.28 | $ - | $ - | $ 3,635.84 | $ 1,424.04 | $ 5,059.88 |
| 275 | 111713 | No | $ - | $ 6,663.52 | $ - | $ 2,423.37 | $ 3,574.10 | $ 1,399.86 | $ 4,973.96 |
| 276 | 112124 | No | $ - | $ 6,685.18 | $ - | $ 180.45 | $ 3,360.63 | $ 1,316.25 | $ 4,676.89 |
| 277 | 112185 | Insurance | $ - | $ 6,564.82 | $ - | $ - | $ 3,282.41 | $ 1,285.61 | $ 4,568.03 |
| 278 | 112590 | PDO | $ 308.62 | $ 6,312.37 | $ - | $ - | $ 3,464.81 | $ 1,357.05 | $ 4,821.86 |
| 279 | 112169 | No | $ - | $ 6,396.14 | $ - | $ 989.83 | $ 3,297.05 | $ 1,291.35 | $ 4,588.40 |
| 280 | 112418 | No | $ - | $ 6,422.36 | $ - | $ - | $ 3,211.18 | $ 1,257.72 | $ 4,468.89 |
| 281 | 111442 | No | $ 282.33 | $ 5,584.66 | $ - | $ 2,241.17 | $ 3,298.78 | $ 1,292.03 | $ 4,590.80 |
| 282 | 111521 | No | $ 433.53 | $ 5,805.02 | $ - | $ 954.31 | $ 3,431.47 | $ 1,344.00 | $ 4,775.47 |
| 283 | 112188 | No | $ 214.32 | $ 6,163.75 | $ - | $ 36.39 | $ 3,299.84 | $ 1,292.44 | $ 4,592.28 |
| 284 | 112370 | No | $ 383.29 | $ 5,413.93 | $ - | $ 3,729.73 | $ 3,463.23 | $ 1,356.44 | $ 4,819.66 |
| 285 | 112400 | No | $ - | $ 6,160.22 | $ - | $ - | $ 3,080.11 | $ 1,206.38 | $ 4,286.49 |
| 286 | 112186 | No | $ - | $ 4,931.51 | $ - | $ 3,000.80 | $ 2,765.83 | $ 1,083.29 | $ 3,849.12 |
| 287 | 111539 | No | $ - | $ 5,653.04 | $ - | $ 4,350.85 | $ 3,261.61 | $ 1,277.47 | $ 4,539.07 |
| 288 | 112244 | No | $ - | $ 6,048.18 | $ - | $ - | $ 3,024.09 | $ 1,184.44 | $ 4,208.53 |
| 289 | 112256 | No | $ 238.64 | $ 5,270.15 | $ - | $ 1,586.53 | $ 3,032.37 | $ 1,187.68 | $ 4,220.05 |
| 290 | 111867 | No | $ 613.70 | $ 5,347.59 | $ - | $ - | $ 3,287.50 | $ 1,287.61 | $ 4,575.10 |
| 291 | 111320 | No | $ 613.36 | $ 5,347.59 | $ - | $ 1,535.10 | $ 3,440.67 | $ 1,347.60 | $ 4,788.27 |
| 292 | 111965 | PDO | $ 1,026.12 | $ 4,546.31 | $ - | $ 1,089.40 | $ 3,408.22 | $ 1,334.89 | $ 4,743.11 |
| 293 | 111703 | No | $ - | $ 5,319.32 | $ - | $ 4,141.46 | $ 3,073.80 | $ 1,203.91 | $ 4,277.71 |
| 294 | 110099 | No | $ - | $ 5,539.07 | $ - | $ - | $ 2,769.53 | $ 1,084.74 | $ 3,854.27 |
| 295 | 112398 | No | $ 172.90 | $ 5,624.55 | $ - | $ 549.50 | $ 3,040.12 | $ 1,190.72 | $ 4,230.84 |
| 296 | 112340 | No | $ 510.93 | $ 5,422.25 | $ - | $ - | $ 3,222.05 | $ 1,261.97 | $ 4,484.02 |
| 297 | 110504 | No | $ 207.45 | $ 5,534.40 | $ - | $ - | $ 2,974.65 | $ 1,165.07 | $ 4,139.72 |
| 298 | 112599 | No | $ 470.91 | $ 4,543.23 | $ - | $ - | $ 2,742.53 | $ 1,074.16 | $ 3,816.68 |
| 299 | 112446 | No | $ 535.51 | $ 4,980.72 | $ - | $ 307.29 | $ 3,056.60 | $ 1,197.17 | $ 4,253.77 |
| 300 | 112434 | No | $ - | $ 5,463.85 | $ - | $ 301.24 | $ 2,762.05 | $ 1,081.81 | $ 3,843.85 |
| 301 | 110133 | No | $ - | $ 5,464.59 | $ - | $ 2,013.75 | $ 2,933.67 | $ 1,149.02 | $ 4,082.69 |
| 302 | 112363 | No | $ 1,872.72 | $ 3,475.42 | $ - | $ 563.95 | $ 3,666.83 | $ 1,436.18 | $ 5,103.01 |
| 303 | 112361 | No | $ 1,246.00 | $ 3,966.25 | $ - | $ 1,270.80 | $ 3,356.20 | $ 1,314.52 | $ 4,670.72 |
| 304 | 110967 | PDO | $ - | $ 5,350.22 | $ - | $ 987.84 | $ 2,773.89 | $ 1,086.44 | $ 3,860.34 |
| 305 | 112332 | No | $ 221.17 | $ 5,156.12 | $ - | $ 1,144.20 | $ 2,913.65 | $ 1,141.18 | $ 4,054.84 |
| 306 | 112194 | No | $ - | $ 4,876.50 | $ - | $ - | $ 2,438.25 | $ 954.98 | $ 3,393.23 |
| 307 | 112534 | No | $ 145.45 | $ 5,164.10 | $ - | $ - | $ 2,727.50 | $ 1,068.27 | $ 3,795.78 |
| 308 | 111749 | No | $ - | $ 5,107.23 | $ - | $ 1,544.64 | $ 2,708.08 | $ 1,060.67 | $ 3,768.74 |
| 309 | 111874 | PDO | $ - | $ 5,126.49 | $ - | $ 965.63 | $ 2,659.81 | $ 1,041.76 | $ 3,701.57 |
| 310 | 112414 | No | $ 231.32 | $ 4,880.99 | $ - | $ 415.73 | $ 2,713.39 | $ 1,062.75 | $ 3,776.13 |
| 311 | 111939 | PDO | $ 799.81 | $ 3,999.30 | $ - | $ 912.34 | $ 2,890.69 | $ 1,132.19 | $ 4,022.88 |
| 312 | 111064 | No | $ - | $ 4,914.78 | $ - | $ 2,573.59 | $ 2,714.75 | $ 1,063.28 | $ 3,778.03 |
| 313 | 112463 | PDO | $ 793.16 | $ 4,265.42 | $ - | $ 110.53 | $ 2,936.93 | $ 1,150.30 | $ 4,087.22 |
| 314 | 112575 | No | $ 486.41 | $ 4,190.54 | $ - | $ - | $ 2,581.68 | $ 1,011.16 | $ 3,592.84 |
| 315 | 112477 | No | $ 834.09 | $ 3,830.73 | $ - | $ - | $ 2,749.46 | $ 1,076.88 | $ 3,826.34 |
| 316 | 112248 | PDO | $ 1,063.91 | $ 3,958.61 | $ - | $ 436.50 | $ 3,086.87 | $ 1,209.03 | $ 4,295.90 |
| 317 | 111399 | No | $ 1,066.04 | $ 3,966.25 | $ - | $ - | $ 3,049.16 | $ 1,194.26 | $ 4,243.42 |
| 318 | 112235 | No | $ - | $ 4,830.73 | $ - | $ 785.71 | $ 2,493.94 | $ 976.79 | $ 3,470.73 |

| # | ID | Benefits Waived | [A] Prty. Pre-Petition PDO Accr'd Claims | [B] Remaining Priority WARN Claim | [C] Potential Est. Unsecured WARN Claim | [D] Potential Est. Unsecured PDO Claim | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] Employee Net Settlement Amount | [F] Employee WARN Act Legal Fees | [G] = [E] + [F] Employee Total Settlement Amount |
|---|---|---|---|---|---|---|---|---|---|
| 319 | 112497 | No | $ 195.18 | $ 4,616.23 | $ - | $ 198.85 | $ 2,503.29 | $ 980.46 | $ 3,483.75 |
| 320 | 111916 | No | $ 347.36 | $ 4,124.90 | $ - | $ - | $ 2,429.69 | $ 951.63 | $ 3,381.33 |
| 321 | 111315 | No | $ 623.67 | $ 4,151.00 | $ - | $ 511.59 | $ 2,750.33 | $ 1,077.22 | $ 3,827.55 |
| 322 | 111823 | No | $ - | $ 4,751.80 | $ - | $ - | $ 2,375.90 | $ 930.56 | $ 3,306.47 |
| 323 | 111693 | No | $ - | $ 4,789.13 | $ - | $ 333.87 | $ 2,427.95 | $ 950.95 | $ 3,378.90 |
| 324 | 110165 | No | $ - | $ 4,657.66 | $ - | $ 1,741.32 | $ 2,502.96 | $ 980.33 | $ 3,483.29 |
| 325 | 112387 | No | $ 427.10 | $ 3,924.93 | $ - | $ 292.13 | $ 2,418.78 | $ 947.36 | $ 3,366.14 |
| 326 | 112544 | No | $ 210.57 | $ 4,469.44 | $ - | $ - | $ 2,445.29 | $ 957.74 | $ 3,403.03 |
| 327 | 112369 | No | $ - | $ 4,131.51 | $ - | $ - | $ 2,065.75 | $ 809.09 | $ 2,874.84 |
| 328 | 112254 | No | $ - | $ 4,536.74 | $ - | $ - | $ 2,268.37 | $ 888.45 | $ 3,156.82 |
| 329 | 112470 | No | $ 835.65 | $ 3,453.94 | $ - | $ - | $ 2,562.62 | $ 1,003.70 | $ 3,566.32 |
| 330 | 112543 | No | $ 743.76 | $ 3,505.17 | $ - | $ - | $ 2,496.35 | $ 977.74 | $ 3,474.09 |
| 331 | 111944 | No | $ - | $ 4,063.75 | $ - | $ 1,816.38 | $ 2,213.51 | $ 866.96 | $ 3,080.48 |
| 332 | 110235 | No | $ 170.40 | $ 4,355.24 | $ - | $ 1,536.93 | $ 2,501.71 | $ 979.84 | $ 3,481.55 |
| 333 | 112511 | No | $ 812.07 | $ 3,488.47 | $ - | $ - | $ 2,556.31 | $ 1,001.22 | $ 3,557.53 |
| 334 | 110660 | No | $ - | $ 4,403.90 | $ - | $ 743.96 | $ 2,276.35 | $ 891.57 | $ 3,167.92 |
| 335 | 112557 | No | $ 395.71 | $ 3,811.24 | $ - | $ - | $ 2,301.33 | $ 901.36 | $ 3,202.68 |
| 336 | 111404 | No | $ - | $ 4,439.23 | $ - | $ - | $ 2,219.62 | $ 869.35 | $ 3,088.97 |
| 337 | 111331 | No | $ - | $ 4,436.78 | $ - | $ 1,751.05 | $ 2,393.50 | $ 937.46 | $ 3,330.95 |
| 338 | 112180 | PDO | $ - | $ 4,308.16 | $ - | $ 174.72 | $ 2,171.55 | $ 850.53 | $ 3,022.08 |
| 339 | 111801 | No | $ 387.74 | $ 4,059.25 | $ - | $ 1,594.66 | $ 2,576.83 | $ 1,009.26 | $ 3,586.10 |
| 340 | 110553 | No | $ 37.01 | $ 4,355.24 | $ - | $ 1,874.12 | $ 2,402.04 | $ 940.80 | $ 3,342.84 |
| 341 | 111759 | No | $ - | $ 3,923.62 | $ - | $ 1,339.34 | $ 2,095.74 | $ 820.84 | $ 2,916.58 |
| 342 | 112191 | No | $ - | $ 4,316.37 | $ - | $ 545.20 | $ 2,212.71 | $ 866.65 | $ 3,079.35 |
| 343 | 112597 | No | $ - | $ 4,387.95 | $ - | $ - | $ 2,193.97 | $ 859.31 | $ 3,053.28 |
| 344 | 111420 | No | $ - | $ 4,225.05 | $ - | $ 1,668.76 | $ 2,279.40 | $ 892.77 | $ 3,172.17 |
| 345 | 111259 | No | $ 197.11 | $ 4,138.23 | $ - | $ 1,185.60 | $ 2,384.78 | $ 934.04 | $ 3,318.82 |
| 346 | 111004 | PDO | $ - | $ 4,254.31 | $ - | $ 935.40 | $ 2,220.70 | $ 869.78 | $ 3,090.47 |
| 347 | 112367 | No | $ 342.26 | $ 3,637.38 | $ - | $ 716.79 | $ 2,232.62 | $ 874.45 | $ 3,107.07 |
| 348 | 111104 | No | $ 1,374.57 | $ 3,066.72 | $ - | $ 10.11 | $ 2,908.94 | $ 1,139.34 | $ 4,048.28 |
| 349 | 111785 | No | $ 756.46 | $ 3,275.46 | $ - | $ 1,584.94 | $ 2,552.69 | $ 999.81 | $ 3,552.49 |
| 350 | 112300 | No | $ 9.24 | $ 4,152.25 | $ - | $ 117.48 | $ 2,097.11 | $ 821.37 | $ 2,918.48 |
| 351 | 112416 | No | $ 841.40 | $ 3,161.43 | $ - | $ 423.73 | $ 2,464.49 | $ 965.26 | $ 3,429.75 |
| 352 | 112362 | PDO | $ 915.00 | $ 3,098.63 | $ - | $ 238.44 | $ 2,488.16 | $ 974.53 | $ 3,462.69 |
| 353 | 111136 | No | $ - | $ 4,185.64 | $ - | $ 1,795.12 | $ 2,272.33 | $ 890.00 | $ 3,162.33 |
| 354 | 110778 | No | $ - | $ 4,190.89 | $ - | $ 1,541.98 | $ 2,249.64 | $ 881.11 | $ 3,130.75 |
| 355 | 111169 | No | $ - | $ 4,231.23 | $ - | $ - | $ 2,115.62 | $ 828.62 | $ 2,944.24 |
| 356 | 111787 | No | $ - | $ 3,797.68 | $ - | $ 1,805.85 | $ 2,079.43 | $ 814.44 | $ 2,893.87 |
| 357 | 112376 | No | $ 286.65 | $ 3,923.51 | $ - | $ 91.35 | $ 2,257.54 | $ 884.21 | $ 3,141.74 |
| 358 | 111653 | No | $ - | $ 4,167.64 | $ - | $ 1,987.29 | $ 2,282.55 | $ 894.00 | $ 3,176.55 |
| 359 | 111216 | No | $ 340.90 | $ 3,829.48 | $ - | $ 1,787.80 | $ 2,434.42 | $ 953.48 | $ 3,387.90 |
| 360 | 112290 | No | $ 1,142.20 | $ 3,119.43 | $ - | $ 175.72 | $ 2,719.49 | $ 1,065.14 | $ 3,784.63 |
| 361 | 112490 | No | $ 646.69 | $ 3,494.29 | $ - | $ - | $ 2,393.83 | $ 937.59 | $ 3,331.42 |
| 362 | 111093 | No | $ 417.31 | $ 3,752.89 | $ - | $ 682.30 | $ 2,361.99 | $ 925.11 | $ 3,287.10 |
| 363 | 111319 | No | $ - | $ 3,825.83 | $ - | $ 438.83 | $ 1,956.80 | $ 766.42 | $ 2,723.21 |
| 364 | 112588 | No | $ 290.90 | $ 3,592.42 | $ - | $ - | $ 2,087.11 | $ 817.45 | $ 2,904.57 |
| 365 | 111855 | PDO | $ 39.47 | $ 4,110.59 | $ - | $ 81.89 | $ 2,102.95 | $ 823.66 | $ 2,926.61 |
| 366 | 111095 | No | $ 140.70 | $ 3,989.04 | $ - | $ 1,053.73 | $ 2,240.59 | $ 877.57 | $ 3,118.16 |

| # | ID | Benefits Waived | [A] Prty. Pre-Petition PDO Accr'd Claims | [B] Remaining Priority WARN Claim | [C] Potential Est. Unsecured WARN Claim | [D] Potential Est. Unsecured PDO Claim | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] Employee Net Settlement Amount | [F] Employee WARN Act Legal Fees | [G] = [E] + [F] Employee Total Settlement Amount |
|---|---|---|---|---|---|---|---|---|---|
| 367 | 112272 | PDO | $ - | $ 4,042.84 | $ - | $ 188.69 | $ 2,040.29 | $ 799.11 | $ 2,839.40 |
| 368 | 111980 | No | $ 580.46 | $ 3,523.12 | $ - | $ 1,426.67 | $ 2,484.69 | $ 973.17 | $ 3,457.86 |
| 369 | 110276 | No | $ - | $ 4,068.31 | $ - | $ 140.99 | $ 2,048.25 | $ 802.23 | $ 2,850.49 |
| 370 | 111984 | No | $ - | $ 3,998.79 | $ - | $ 1,609.45 | $ 2,160.34 | $ 846.14 | $ 3,006.47 |
| 371 | 112482 | PDO | $ 238.80 | $ 3,477.08 | $ - | $ - | $ 1,977.34 | $ 774.46 | $ 2,751.80 |
| 372 | 112105 | No | $ - | $ 3,844.87 | $ - | $ 611.84 | $ 1,983.62 | $ 776.92 | $ 2,760.54 |
| 373 | 112538 | No | $ 93.34 | $ 3,826.69 | $ - | $ - | $ 2,006.68 | $ 785.95 | $ 2,792.63 |
| 374 | 111932 | PDO | $ 95.60 | $ 3,690.66 | $ - | $ 641.99 | $ 2,005.13 | $ 785.35 | $ 2,790.48 |
| 375 | 112593 | No | $ 292.68 | $ 3,275.46 | $ - | $ - | $ 1,930.40 | $ 756.08 | $ 2,686.48 |
| 376 | 111985 | No | $ - | $ 3,846.58 | $ - | $ - | $ 1,923.29 | $ 753.29 | $ 2,676.58 |
| 377 | 111605 | No | $ - | $ 3,846.58 | $ - | $ - | $ 1,923.29 | $ 753.29 | $ 2,676.58 |
| 378 | 111255 | No | $ - | $ 3,846.58 | $ - | $ - | $ 1,923.29 | $ 753.29 | $ 2,676.58 |
| 379 | 112028 | No | $ - | $ 3,846.58 | $ - | $ - | $ 1,923.29 | $ 753.29 | $ 2,676.58 |
| 380 | 112140 | No | $ - | $ 3,800.99 | $ - | $ - | $ 1,900.49 | $ 744.36 | $ 2,644.86 |
| 381 | 111483 | No | $ 0.00 | $ 3,829.48 | $ - | $ 2,150.40 | $ 2,129.78 | $ 834.17 | $ 2,963.95 |
| 382 | 111531 | No | $ - | $ 3,780.02 | $ - | $ 204.04 | $ 1,910.41 | $ 748.25 | $ 2,658.66 |
| 383 | 111579 | PDO | $ 51.25 | $ 3,785.03 | $ - | $ 755.22 | $ 2,019.29 | $ 790.89 | $ 2,810.18 |
| 384 | 112098 | No | $ 95.19 | $ 3,706.96 | $ - | $ 1,137.72 | $ 2,062.44 | $ 807.79 | $ 2,870.23 |
| 385 | 111198 | Both | $ - | $ 3,738.07 | $ - | $ 1,281.26 | $ 1,997.16 | $ 782.22 | $ 2,779.39 |
| 386 | 111999 | No | $ 104.55 | $ 3,714.94 | $ - | $ - | $ 1,962.02 | $ 768.46 | $ 2,730.48 |
| 387 | 111439 | No | $ 75.02 | $ 3,706.96 | $ - | $ 1,272.81 | $ 2,055.79 | $ 805.18 | $ 2,860.97 |
| 388 | 112313 | No | $ 575.70 | $ 2,974.68 | $ - | $ 348.30 | $ 2,097.87 | $ 821.67 | $ 2,919.54 |
| 389 | 110218 | No | $ 459.67 | $ 3,766.79 | $ - | $ 1,782.72 | $ 2,061.67 | $ 807.49 | $ 2,869.16 |
| 390 | 112527 | No | $ 459.67 | $ 3,209.24 | $ - | $ - | $ 2,064.29 | $ 808.52 | $ 2,872.81 |
| 391 | 112097 | No | $ - | $ 2,671.23 | $ - | $ 2,150.24 | $ 1,550.64 | $ 607.34 | $ 2,157.98 |
| 392 | 112350 | No | $ 399.54 | $ 3,400.83 | $ - | $ 581.95 | $ 2,158.15 | $ 845.28 | $ 3,003.43 |
| 393 | 112513 | No | $ - | $ 3,761.10 | $ - | $ - | $ 1,880.55 | $ 736.55 | $ 2,617.10 |
| 394 | 110514 | No | $ - | $ 3,712.66 | $ - | $ 81.44 | $ 1,864.47 | $ 730.25 | $ 2,594.73 |
| 395 | 112577 | No | $ 361.86 | $ 3,154.76 | $ - | $ - | $ 1,939.24 | $ 759.54 | $ 2,698.78 |
| 396 | 111893 | No | $ 0.00 | $ 3,706.96 | $ - | $ 2,081.60 | $ 2,061.64 | $ 807.48 | $ 2,869.12 |
| 397 | 110385 | No | $ 359.25 | $ 3,355.35 | $ - | $ 523.95 | $ 2,089.32 | $ 818.32 | $ 2,907.65 |
| 398 | 111930 | No | $ 408.13 | $ 3,094.58 | $ - | $ 1,515.99 | $ 2,107.02 | $ 825.25 | $ 2,932.27 |
| 399 | 112005 | No | $ 452.44 | $ 1,260.27 | $ - | $ 7,008.73 | $ 1,783.45 | $ 698.52 | $ 2,481.98 |
| 400 | 112583 | No | $ 208.06 | $ 3,391.37 | $ - | $ - | $ 1,903.75 | $ 745.64 | $ 2,649.38 |
| 401 | 112033 | Both | $ - | $ 3,305.21 | $ - | $ 420.00 | $ 1,694.60 | $ 663.72 | $ 2,358.32 |
| 402 | 111610 | No | $ - | $ 3,305.21 | $ - | $ 1,818.00 | $ 1,834.40 | $ 718.48 | $ 2,552.88 |
| 403 | 112345 | No | $ 758.44 | $ 2,984.77 | $ - | $ 75.83 | $ 2,258.41 | $ 884.55 | $ 3,142.95 |
| 404 | 112131 | No | $ 230.66 | $ 3,443.11 | $ - | $ - | $ 1,952.22 | $ 764.62 | $ 2,716.84 |
| 405 | 112080 | PDO | $ 790.92 | $ 2,892.62 | $ - | $ 358.74 | $ 2,273.11 | $ 890.30 | $ 3,163.41 |
| 406 | 111860 | No | $ - | $ 3,624.33 | $ - | $ - | $ 1,812.16 | $ 709.77 | $ 2,521.93 |
| 407 | 111409 | PDO | $ 70.04 | $ 3,521.75 | $ - | $ 1,218.08 | $ 1,952.72 | $ 764.82 | $ 2,717.54 |
| 408 | 112014 | No | $ 215.77 | $ 3,393.53 | $ - | $ - | $ 1,912.54 | $ 749.08 | $ 2,661.62 |
| 409 | 111421 | No | $ - | $ 3,248.01 | $ - | $ 2,655.89 | $ 1,889.59 | $ 740.09 | $ 2,629.68 |
| 410 | 111545 | No | $ 546.10 | $ 2,814.38 | $ - | $ 1,124.26 | $ 2,065.71 | $ 809.07 | $ 2,874.79 |
| 411 | 112297 | No | $ 619.72 | $ 3,005.12 | $ - | $ 497.05 | $ 2,171.98 | $ 850.69 | $ 3,022.68 |
| 412 | 112421 | No | $ 634.62 | $ 3,014.58 | $ - | $ 312.46 | $ 2,173.16 | $ 851.16 | $ 3,024.31 |
| 413 | 112307 | No | $ 75.60 | $ 3,493.26 | $ - | $ 105.44 | $ 1,832.78 | $ 717.84 | $ 2,550.62 |
| 414 | 110382 | No | $ - | $ 3,536.80 | $ - | $ 1,147.32 | $ 1,883.13 | $ 737.56 | $ 2,620.69 |

| | | | [A] | [B] | [C] | [D] | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] | [F] | [G] = [E] + [F] |
|---|---|---|---|---|---|---|---|---|---|
| | | | **Employee** | | | | | | |
| **#** | **ID** | **Benefits Waived** | **Prty. Pre-Petition PDO Accr'd Claims** | **Remaining Priority WARN Claim** | **Potential Est. Unsecured WARN Claim** | **Potential Est. Unsecured PDO Claim** | **Employee Net Settlement Amount** | **Employee WARN Act Legal Fees** | **Employee Total Settlement Amount** |
| 415 | 111795 | No | $ 619.05 | $ 2,804.64 | $ - | $ - | $ 2,021.36 | $ 791.70 | $ 2,813.07 |
| 416 | 110903 | No | $ 219.23 | $ 3,345.21 | $ - | $ 407.92 | $ 1,932.63 | $ 756.95 | $ 2,689.58 |
| 417 | 112566 | No | $ - | $ 3,555.95 | $ - | $ - | $ 1,777.97 | $ 696.37 | $ 2,474.35 |
| 418 | 112514 | No | $ 706.21 | $ 2,647.47 | $ - | $ - | $ 2,029.95 | $ 795.07 | $ 2,825.02 |
| 419 | 112184 | No | $ 622.60 | $ 1,150.68 | $ - | $ 4,906.73 | $ 1,688.61 | $ 661.37 | $ 2,349.99 |
| 420 | 112067 | No | $ 1,051.44 | $ 2,356.61 | $ - | $ 16.16 | $ 2,231.36 | $ 873.95 | $ 3,105.31 |
| 421 | 111376 | No | $ - | $ 3,493.26 | $ - | $ 585.82 | $ 1,805.21 | $ 707.04 | $ 2,512.26 |
| 422 | 112263 | No | $ - | $ 3,487.56 | $ - | $ - | $ 1,743.78 | $ 682.98 | $ 2,426.76 |
| 423 | 112301 | No | $ - | $ 3,487.56 | $ - | $ - | $ 1,743.78 | $ 682.98 | $ 2,426.76 |
| 424 | 112549 | No | $ - | $ 3,487.56 | $ - | $ - | $ 1,743.78 | $ 682.98 | $ 2,426.76 |
| 425 | 112442 | No | $ - | $ 3,487.56 | $ - | $ - | $ 1,743.78 | $ 682.98 | $ 2,426.76 |
| 426 | 112419 | No | $ - | $ 3,487.56 | $ - | $ - | $ 1,743.78 | $ 682.98 | $ 2,426.76 |
| 427 | 112586 | No | $ - | $ 3,487.56 | $ - | $ - | $ 1,743.78 | $ 682.98 | $ 2,426.76 |
| 428 | 112607 | No | $ - | $ 3,487.56 | $ - | $ - | $ 1,743.78 | $ 682.98 | $ 2,426.76 |
| 429 | 112592 | No | $ - | $ 3,487.56 | $ - | $ - | $ 1,743.78 | $ 682.98 | $ 2,426.76 |
| 430 | 112308 | PDO | $ 245.27 | $ 3,028.94 | $ - | $ 245.27 | $ 1,784.27 | $ 698.84 | $ 2,483.11 |
| 431 | 112572 | PDO | $ 404.98 | $ 3,125.70 | $ - | $ - | $ 1,967.83 | $ 770.73 | $ 2,738.56 |
| 432 | 112148 | No | $ - | $ 3,508.08 | $ - | $ 170.24 | $ 1,771.06 | $ 693.67 | $ 2,464.73 |
| 433 | 112344 | No | $ 517.14 | $ 3,015.72 | $ - | $ - | $ 2,025.00 | $ 793.13 | $ 2,818.12 |
| 434 | 111504 | No | $ - | $ 3,218.59 | $ - | $ 91.19 | $ 1,618.41 | $ 633.88 | $ 2,252.29 |
| 435 | 112342 | No | $ - | $ 3,139.95 | $ - | $ 658.98 | $ 1,635.87 | $ 640.72 | $ 2,276.59 |
| 436 | 111919 | PDO | $ 509.82 | $ 2,725.14 | $ - | $ 260.27 | $ 1,898.41 | $ 743.55 | $ 2,641.96 |
| 437 | 112526 | No | $ 177.29 | $ 2,979.64 | $ - | $ - | $ 1,667.12 | $ 652.96 | $ 2,320.07 |
| 438 | 111898 | No | $ - | $ 3,419.18 | $ - | $ - | $ 1,709.59 | $ 669.59 | $ 2,379.18 |
| 439 | 112027 | No | $ - | $ 3,419.18 | $ - | $ - | $ 1,709.59 | $ 669.59 | $ 2,379.18 |
| 440 | 112208 | No | $ - | $ 3,419.18 | $ - | $ - | $ 1,709.59 | $ 669.59 | $ 2,379.18 |
| 441 | 111620 | No | $ - | $ 3,419.18 | $ - | $ - | $ 1,709.59 | $ 669.59 | $ 2,379.18 |
| 442 | 112420 | No | $ 759.72 | $ 2,758.14 | $ - | $ 142.94 | $ 2,153.08 | $ 843.29 | $ 2,996.37 |
| 443 | 111053 | No | $ - | $ 3,407.78 | $ - | $ 811.29 | $ 1,785.02 | $ 699.13 | $ 2,484.15 |
| 444 | 112156 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 445 | 110123 | No | $ - | $ 3,355.35 | $ - | $ 448.00 | $ 1,722.48 | $ 674.64 | $ 2,397.12 |
| 446 | 111226 | PDO | $ 106.24 | $ 3,302.36 | $ - | $ 254.01 | $ 1,782.82 | $ 698.27 | $ 2,481.09 |
| 447 | 112518 | No | $ 636.56 | $ 2,633.22 | $ - | $ - | $ 1,953.17 | $ 765.00 | $ 2,718.17 |
| 448 | 111763 | No | $ 825.09 | $ 2,427.67 | $ - | $ 1,359.07 | $ 2,174.83 | $ 851.81 | $ 3,026.64 |
| 449 | 112231 | PDO | $ - | $ 3,063.93 | $ - | $ 137.50 | $ 1,545.71 | $ 605.41 | $ 2,151.12 |
| 450 | 111790 | No | $ 193.69 | $ 2,963.91 | $ - | $ 1,590.12 | $ 1,834.65 | $ 718.57 | $ 2,553.23 |
| 451 | 110352 | No | $ - | $ 3,336.83 | $ - | $ 155.15 | $ 1,683.93 | $ 659.54 | $ 2,343.47 |
| 452 | 112516 | No | $ 535.92 | $ 2,617.72 | $ - | $ - | $ 1,844.78 | $ 722.54 | $ 2,567.32 |
| 453 | 112172 | No | $ - | $ 3,322.87 | $ - | $ 867.11 | $ 1,748.15 | $ 684.69 | $ 2,432.84 |
| 454 | 111674 | PDO | $ 34.77 | $ 2,997.82 | $ - | $ 577.76 | $ 1,591.45 | $ 623.32 | $ 2,214.78 |
| 455 | 112424 | No | $ 555.66 | $ 2,840.77 | $ - | $ 147.22 | $ 1,990.77 | $ 779.72 | $ 2,770.49 |
| 456 | 111527 | No | $ 521.53 | $ 2,607.81 | $ - | $ 1,069.10 | $ 1,932.34 | $ 756.84 | $ 2,689.18 |
| 457 | 110233 | No | $ 229.24 | $ 2,725.37 | $ - | $ 2,252.56 | $ 1,817.18 | $ 711.73 | $ 2,528.91 |
| 458 | 111731 | No | $ - | $ 3,322.30 | $ - | $ - | $ 1,661.15 | $ 650.62 | $ 2,311.77 |
| 459 | 111811 | No | $ 323.00 | $ 2,782.76 | $ - | $ 146.24 | $ 1,729.01 | $ 677.20 | $ 2,406.20 |
| 460 | 112610 | No | $ 82.84 | $ 3,196.93 | $ - | $ - | $ 1,681.31 | $ 658.51 | $ 2,339.82 |
| 461 | 112495 | No | $ 536.18 | $ 2,600.40 | $ - | $ - | $ 1,836.38 | $ 719.25 | $ 2,555.62 |
| 462 | 111107 | No | $ 23.37 | $ 3,115.90 | $ - | $ 356.11 | $ 1,616.93 | $ 633.30 | $ 2,250.22 |

| # | ID | Benefits Waived | [A] Prty. Pre-Petition PDO Accr'd Claims | [B] Remaining Priority WARN Claim | [C] Potential Est. Unsecured WARN Claim | [D] Potential Est. Unsecured PDO Claim | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] Employee Net Settlement Amount | [F] Employee WARN Act Legal Fees | [G] = [E] + [F] Employee Total Settlement Amount |
|---|---|---|---|---|---|---|---|---|---|
| 463 | 111286 | No | $ 356.39 | $ 2,922.09 | $ - | $ 937.35 | $ 1,911.17 | $ 748.54 | $ 2,659.72 |
| 464 | 111612 | No | $ 27.84 | $ 2,936.68 | $ - | $ 371.99 | $ 1,533.38 | $ 600.57 | $ 2,133.95 |
| 465 | 112412 | No | $ 138.60 | $ 3,134.25 | $ - | $ 324.87 | $ 1,738.21 | $ 680.80 | $ 2,419.01 |
| 466 | 111412 | PDO | $ - | $ 3,213.80 | $ - | $ 143.85 | $ 1,621.28 | $ 635.01 | $ 2,256.29 |
| 467 | 111719 | No | $ - | $ 3,127.01 | $ - | $ 138.59 | $ 1,577.36 | $ 617.80 | $ 2,195.17 |
| 468 | 150003 | PDO | $ - | $ 3,008.88 | $ - | $ 936.10 | $ 1,598.05 | $ 625.90 | $ 2,223.95 |
| 469 | 112462 | No | $ 343.87 | $ 2,926.25 | $ - | $ - | $ 1,807.00 | $ 707.74 | $ 2,514.74 |
| 470 | 112407 | PDO | $ 315.20 | $ 2,946.19 | $ - | $ 305.37 | $ 1,818.83 | $ 712.38 | $ 2,531.21 |
| 471 | 112273 | No | $ 120.98 | $ 2,877.58 | $ - | $ 220.92 | $ 1,581.86 | $ 619.56 | $ 2,201.43 |
| 472 | 110934 | PDO | $ - | $ 3,157.78 | $ - | $ 1,447.42 | $ 1,723.63 | $ 675.09 | $ 2,398.72 |
| 473 | 112083 | No | $ 1,089.78 | $ 2,032.70 | $ - | $ 363.26 | $ 2,142.46 | $ 839.13 | $ 2,981.59 |
| 474 | 111854 | No | $ - | $ 3,104.67 | $ - | $ 570.15 | $ 1,609.35 | $ 630.33 | $ 2,239.68 |
| 475 | 112111 | No | $ - | $ 3,135.16 | $ - | $ - | $ 1,567.58 | $ 613.97 | $ 2,181.55 |
| 476 | 110955 | No | $ - | $ 3,106.89 | $ - | $ 1,107.22 | $ 1,664.17 | $ 651.80 | $ 2,315.97 |
| 477 | 111589 | No | $ - | $ 3,105.07 | $ - | $ 603.07 | $ 1,612.84 | $ 631.70 | $ 2,244.54 |
| 478 | 112318 | No | $ 303.92 | $ 2,840.77 | $ - | $ 570.45 | $ 1,781.35 | $ 697.70 | $ 2,479.04 |
| 479 | 111375 | No | $ 483.50 | $ 2,677.84 | $ - | $ 406.62 | $ 1,863.08 | $ 729.71 | $ 2,592.79 |
| 480 | 112276 | No | $ 578.91 | $ 2,363.22 | $ - | $ 103.68 | $ 1,770.89 | $ 693.60 | $ 2,464.49 |
| 481 | 112452 | No | $ 79.74 | $ 3,015.72 | $ - | $ - | $ 1,587.60 | $ 621.81 | $ 2,209.41 |
| 482 | 111297 | No | $ - | $ 3,101.82 | $ - | $ - | $ 1,550.91 | $ 607.44 | $ 2,158.35 |
| 483 | 112356 | No | $ 496.28 | $ 2,176.88 | $ - | $ 629.03 | $ 1,647.62 | $ 645.32 | $ 2,292.94 |
| 484 | 112082 | No | $ 299.56 | $ 2,517.88 | $ - | $ 1,365.50 | $ 1,695.05 | $ 663.90 | $ 2,358.94 |
| 485 | 111414 | No | $ - | $ 2,768.11 | $ - | $ 281.40 | $ 1,412.19 | $ 553.11 | $ 1,965.31 |
| 486 | 111465 | PDO | $ - | $ 3,015.72 | $ - | $ 1.44 | $ 1,508.00 | $ 590.64 | $ 2,098.64 |
| 487 | 112211 | No | $ 6.31 | $ 2,900.32 | $ - | $ 1,320.44 | $ 1,588.51 | $ 622.17 | $ 2,210.68 |
| 488 | 111899 | No | $ - | $ 3,014.58 | $ - | $ - | $ 1,507.29 | $ 590.36 | $ 2,097.64 |
| 489 | 112368 | No | $ 223.46 | $ 2,561.53 | $ - | $ 406.10 | $ 1,544.84 | $ 605.06 | $ 2,149.90 |
| 490 | 112447 | No | $ 300.28 | $ 2,644.73 | $ - | $ 87.86 | $ 1,631.43 | $ 638.98 | $ 2,270.41 |
| 491 | 111570 | No | $ - | $ 2,978.33 | $ - | $ 1,095.32 | $ 1,598.70 | $ 626.16 | $ 2,224.86 |
| 492 | 111949 | PDO | $ - | $ 2,702.97 | $ - | $ 824.13 | $ 1,433.90 | $ 561.61 | $ 1,995.51 |
| 493 | 111634 | PDO | $ 31.28 | $ 2,697.05 | $ - | $ 1,383.12 | $ 1,518.12 | $ 594.60 | $ 2,112.71 |
| 494 | 112609 | No | $ 150.32 | $ 2,842.59 | $ - | $ - | $ 1,571.62 | $ 615.55 | $ 2,187.17 |
| 495 | 111624 | No | $ 63.00 | $ 2,658.38 | $ - | $ 1,597.61 | $ 1,551.95 | $ 607.85 | $ 2,159.80 |
| 496 | 112294 | No | $ 288.50 | $ 2,478.90 | $ - | $ 984.00 | $ 1,626.35 | $ 636.99 | $ 2,263.34 |
| 497 | 112168 | No | $ 12.00 | $ 2,735.34 | $ - | $ 98.75 | $ 1,389.55 | $ 544.24 | $ 1,933.79 |
| 498 | 112529 | No | $ 381.94 | $ 2,386.36 | $ - | $ - | $ 1,575.12 | $ 616.92 | $ 2,192.04 |
| 499 | 112483 | PDO | $ 115.84 | $ 2,592.93 | $ - | $ - | $ 1,412.31 | $ 553.16 | $ 1,965.47 |
| 500 | 112135 | No | $ - | $ 2,588.60 | $ - | $ 1,484.79 | $ 1,442.78 | $ 565.09 | $ 2,007.87 |
| 501 | 112521 | No | $ 232.54 | $ 2,495.43 | $ - | $ - | $ 1,480.26 | $ 579.77 | $ 2,060.02 |
| 502 | 112480 | No | $ - | $ 2,726.22 | $ - | $ - | $ 1,363.11 | $ 533.89 | $ 1,897.00 |
| 503 | 112403 | No | $ 207.37 | $ 2,495.43 | $ - | $ 557.44 | $ 1,510.83 | $ 591.74 | $ 2,102.58 |
| 504 | 111812 | No | $ - | $ 2,711.64 | $ - | $ 1,151.68 | $ 1,470.99 | $ 576.14 | $ 2,047.12 |
| 505 | 112122 | No | $ - | $ 2,892.62 | $ - | $ 1,109.88 | $ 1,557.30 | $ 609.94 | $ 2,167.24 |
| 506 | 112587 | No | $ 277.61 | $ 2,678.36 | $ - | $ - | $ 1,616.79 | $ 633.25 | $ 2,250.04 |
| 507 | 112219 | PDO | $ 202.65 | $ 2,483.86 | $ - | $ 58.37 | $ 1,450.42 | $ 568.08 | $ 2,018.51 |
| 508 | 112373 | No | $ 408.82 | $ 2,573.27 | $ - | $ 377.44 | $ 1,733.20 | $ 678.84 | $ 2,412.04 |
| 509 | 112293 | No | $ - | $ 2,840.03 | $ - | $ 364.70 | $ 1,456.48 | $ 570.46 | $ 2,026.94 |
| 510 | 111873 | No | $ 446.34 | $ 2,287.20 | $ - | $ 1,694.02 | $ 1,759.34 | $ 689.08 | $ 2,448.42 |

| | | | [A] | [B] | [C] | [D] | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] | [F] | [G] = [E] + [F] |
|---|---|---|---|---|---|---|---|---|---|
| | | | Employee | | | | | | |
| # | ID | Benefits Waived | Prty. Pre-Petition PDO Accr'd Claims | Remaining Priority WARN Claim | Potential Est. Unsecured WARN Claim | Potential Est. Unsecured PDO Claim | Employee Net Settlement Amount | Employee WARN Act Legal Fees | Employee Total Settlement Amount |
| 511 | 111419 | No | $ 564.64 | $ 2,193.00 | $ - | $ 626.34 | $ 1,723.77 | $ 675.15 | $ 2,398.92 |
| 512 | 112533 | No | $ - | $ 2,887.27 | $ - | $ - | $ 1,443.63 | $ 565.43 | $ 2,009.06 |
| 513 | 111720 | No | $ 381.41 | $ 2,372.45 | $ - | $ 1,096.31 | $ 1,677.27 | $ 656.93 | $ 2,334.20 |
| 514 | 112259 | No | $ - | $ 2,607.81 | $ - | $ 587.54 | $ 1,362.66 | $ 533.71 | $ 1,896.37 |
| 515 | 111707 | No | $ 200.11 | $ 2,437.59 | $ - | $ 1,251.29 | $ 1,544.03 | $ 604.75 | $ 2,148.78 |
| 516 | 111543 | No | $ 133.50 | $ 2,478.90 | $ - | $ 401.25 | $ 1,413.08 | $ 553.46 | $ 1,966.53 |
| 517 | 112079 | No | $ 92.73 | $ 2,653.62 | $ - | $ - | $ 1,419.55 | $ 555.99 | $ 1,975.54 |
| 518 | 112051 | No | $ 137.30 | $ 2,457.42 | $ - | $ 765.06 | $ 1,442.52 | $ 564.99 | $ 2,007.50 |
| 519 | 112392 | No | $ - | $ 2,561.53 | $ - | $ 260.14 | $ 1,306.78 | $ 511.82 | $ 1,818.61 |
| 520 | 111518 | No | $ - | $ 2,561.53 | $ - | $ 162.23 | $ 1,296.99 | $ 507.99 | $ 1,804.98 |
| 521 | 112399 | No | $ 150.88 | $ 2,677.84 | $ - | $ 354.03 | $ 1,525.21 | $ 597.37 | $ 2,122.58 |
| 522 | 112015 | Both | $ - | $ 2,556.58 | $ - | $ 1,137.30 | $ 1,392.02 | $ 545.21 | $ 1,937.23 |
| 523 | 111355 | No | $ 461.60 | $ 2,184.74 | $ - | $ 692.07 | $ 1,623.18 | $ 635.75 | $ 2,258.92 |
| 524 | 112469 | PDO | $ 11.93 | $ 2,775.57 | $ - | $ - | $ 1,399.72 | $ 548.22 | $ 1,947.94 |
| 525 | 111915 | No | $ 9.45 | $ 2,531.79 | $ - | $ 263.76 | $ 1,301.72 | $ 509.84 | $ 1,811.56 |
| 526 | 111525 | No | $ - | $ 2,531.79 | $ - | $ 2,212.21 | $ 1,487.11 | $ 582.45 | $ 2,069.57 |
| 527 | 111993 | No | $ 211.38 | $ 2,354.96 | $ - | $ 350.55 | $ 1,423.91 | $ 557.70 | $ 1,981.61 |
| 528 | 111380 | No | $ - | $ 2,436.16 | $ - | $ 270.75 | $ 1,245.16 | $ 487.69 | $ 1,732.85 |
| 529 | 112499 | No | $ - | $ 2,666.96 | $ - | $ - | $ 1,333.48 | $ 522.28 | $ 1,855.76 |
| 530 | 112090 | PDO | $ - | $ 2,676.08 | $ - | $ 180.60 | $ 1,356.10 | $ 531.14 | $ 1,887.24 |
| 531 | 112405 | No | $ 340.02 | $ 2,249.19 | $ - | $ 401.95 | $ 1,504.81 | $ 589.39 | $ 2,094.20 |
| 532 | 112190 | No | $ - | $ 2,726.57 | $ - | $ - | $ 1,363.28 | $ 533.95 | $ 1,897.24 |
| 533 | 112540 | No | $ 34.06 | $ 2,670.32 | $ - | $ - | $ 1,369.22 | $ 536.28 | $ 1,905.51 |
| 534 | 112476 | No | $ 390.92 | $ 2,348.35 | $ - | $ - | $ 1,565.10 | $ 613.00 | $ 2,178.10 |
| 535 | 112209 | No | $ 110.28 | $ 2,356.61 | $ - | $ - | $ 1,288.58 | $ 504.70 | $ 1,793.28 |
| 536 | 112568 | No | $ 326.09 | $ 2,184.74 | $ - | $ - | $ 1,418.46 | $ 555.57 | $ 1,974.03 |
| 537 | 112581 | No | $ 166.64 | $ 2,524.27 | $ - | $ - | $ 1,428.77 | $ 559.60 | $ 1,988.37 |
| 538 | 112351 | No | $ 329.65 | $ 2,204.69 | $ - | $ 89.06 | $ 1,440.90 | $ 564.36 | $ 2,005.26 |
| 539 | 112238 | PDO | $ 291.50 | $ 2,181.44 | $ - | $ - | $ 1,382.22 | $ 541.37 | $ 1,923.59 |
| 540 | 112127 | PDO | $ 255.89 | $ 2,250.64 | $ - | $ 140.29 | $ 1,395.24 | $ 546.47 | $ 1,941.71 |
| 541 | 112025 | PDO | $ - | $ 2,394.62 | $ - | $ 376.26 | $ 1,234.94 | $ 483.68 | $ 1,718.62 |
| 542 | 111333 | No | $ - | $ 2,613.62 | $ - | $ - | $ 1,306.81 | $ 511.84 | $ 1,818.65 |
| 543 | 112601 | No | $ - | $ 2,613.62 | $ - | $ - | $ 1,306.81 | $ 511.84 | $ 1,818.65 |
| 544 | 112570 | No | $ - | $ 2,613.62 | $ - | $ - | $ 1,306.81 | $ 511.84 | $ 1,818.65 |
| 545 | 112605 | No | $ - | $ 2,613.62 | $ - | $ - | $ 1,306.81 | $ 511.84 | $ 1,818.65 |
| 546 | 110010 | No | $ - | $ - | $ - | $ 6,847.11 | $ 684.71 | $ 268.18 | $ 952.89 |
| 547 | 111991 | No | $ - | $ 2,351.65 | $ - | $ 184.04 | $ 1,194.23 | $ 467.74 | $ 1,661.97 |
| 548 | 112364 | PDO | $ 362.29 | $ 2,065.75 | $ - | $ - | $ 1,395.17 | $ 546.44 | $ 1,941.61 |
| 549 | 112192 | No | $ 188.94 | $ 2,390.69 | $ - | $ 1,152.01 | $ 1,499.48 | $ 587.30 | $ 2,086.78 |
| 550 | 112467 | No | $ 322.87 | $ 2,093.85 | $ - | $ - | $ 1,369.80 | $ 536.51 | $ 1,906.30 |
| 551 | 112181 | No | $ 192.49 | $ 2,191.35 | $ - | $ - | $ 1,288.17 | $ 504.53 | $ 1,792.70 |
| 552 | 112432 | No | $ - | $ 2,379.75 | $ - | $ 192.70 | $ 1,209.14 | $ 473.58 | $ 1,682.73 |
| 553 | 112030 | PDO | $ - | $ 2,372.45 | $ - | $ 192.11 | $ 1,205.44 | $ 472.13 | $ 1,677.57 |
| 554 | 112057 | PDO | $ - | $ 2,372.45 | $ - | $ 96.06 | $ 1,195.83 | $ 468.37 | $ 1,664.20 |
| 555 | 112152 | PDO | $ 256.39 | $ 2,120.29 | $ - | $ - | $ 1,316.53 | $ 515.64 | $ 1,832.17 |
| 556 | 111963 | No | $ - | $ 2,313.64 | $ - | $ 71.63 | $ 1,163.99 | $ 455.90 | $ 1,619.88 |
| 557 | 111317 | No | $ - | $ 2,313.64 | $ - | $ 1,806.70 | $ 1,337.49 | $ 523.85 | $ 1,861.34 |
| 558 | 119213 | No | $ - | $ 2,219.62 | $ - | $ 1,606.56 | $ 1,270.46 | $ 497.60 | $ 1,768.06 |

| # | ID | Benefits Waived | [A] Prty. Pre-Petition PDO Accr'd Claims | [B] Remaining Priority WARN Claim | [C] Potential Est. Unsecured WARN Claim | [D] Potential Est. Unsecured PDO Claim | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] Employee Net Settlement Amount | [F] Employee WARN Act Legal Fees | [G] = [E] + [F] Employee Total Settlement Amount |
|---|---|---|---|---|---|---|---|---|---|
| 559 | 111970 | No | $ - | $ 2,287.20 | $ - | $ 356.61 | $ 1,179.26 | $ 461.88 | $ 1,641.14 |
| 560 | 111597 | No | $ - | $ 2,493.55 | $ - | $ 308.47 | $ 1,277.62 | $ 500.40 | $ 1,778.03 |
| 561 | 112360 | No | $ - | $ 2,272.33 | $ - | $ 245.21 | $ 1,160.69 | $ 454.60 | $ 1,615.29 |
| 562 | 111813 | No | $ 101.68 | $ 2,233.86 | $ - | $ 1,259.30 | $ 1,344.54 | $ 526.61 | $ 1,871.15 |
| 563 | 112375 | PDO | $ - | $ 2,310.45 | $ - | $ 142.96 | $ 1,169.52 | $ 458.06 | $ 1,627.59 |
| 564 | 112309 | No | $ 450.65 | $ 1,910.41 | $ - | $ 469.34 | $ 1,452.79 | $ 569.01 | $ 2,021.79 |
| 565 | 112562 | No | $ 166.32 | $ 2,140.86 | $ - | $ - | $ 1,236.75 | $ 484.39 | $ 1,721.14 |
| 566 | 111614 | No | $ - | $ 2,212.84 | $ - | $ 1,093.96 | $ 1,215.81 | $ 476.20 | $ 1,692.01 |
| 567 | 111938 | No | $ 261.43 | $ 2,046.04 | $ - | $ 1,042.90 | $ 1,388.73 | $ 543.92 | $ 1,932.66 |
| 568 | 112552 | No | $ 339.68 | $ 1,940.16 | $ - | $ - | $ 1,309.76 | $ 512.99 | $ 1,822.74 |
| 569 | 112311 | PDO | $ 268.00 | $ 1,983.12 | $ - | $ - | $ 1,259.56 | $ 493.33 | $ 1,752.89 |
| 570 | 112524 | No | $ 200.90 | $ 2,032.70 | $ - | $ - | $ 1,217.25 | $ 476.76 | $ 1,694.01 |
| 571 | 111959 | No | $ 110.49 | $ 2,098.81 | $ - | $ 136.31 | $ 1,173.52 | $ 459.63 | $ 1,633.16 |
| 572 | 112395 | No | $ 79.97 | $ 2,120.29 | $ - | $ 368.01 | $ 1,176.92 | $ 460.96 | $ 1,637.88 |
| 573 | 112086 | No | $ 160.47 | $ 2,242.24 | $ - | $ 545.10 | $ 1,336.10 | $ 523.31 | $ 1,859.40 |
| 574 | 112401 | No | $ 131.04 | $ 2,065.75 | $ - | $ 213.13 | $ 1,185.23 | $ 464.22 | $ 1,649.45 |
| 575 | 112498 | No | $ 354.35 | $ 1,883.97 | $ - | $ - | $ 1,296.33 | $ 507.73 | $ 1,804.07 |
| 576 | 112096 | No | $ - | $ 2,204.69 | $ - | $ 49.97 | $ 1,107.34 | $ 433.71 | $ 1,541.05 |
| 577 | 112296 | No | $ - | $ 2,150.04 | $ - | $ - | $ 1,075.02 | $ 421.05 | $ 1,496.07 |
| 578 | 112427 | PDO | $ - | $ 2,133.51 | $ - | $ 105.43 | $ 1,077.30 | $ 421.94 | $ 1,499.24 |
| 579 | 119669 | No | $ - | $ 2,171.86 | $ - | $ 916.28 | $ 1,177.56 | $ 461.21 | $ 1,638.77 |
| 580 | 111962 | No | $ 407.21 | $ - | $ - | $ 6,483.41 | $ 1,055.55 | $ 413.43 | $ 1,468.98 |
| 581 | 112429 | No | $ - | $ 2,120.29 | $ - | $ 94.73 | $ 1,069.62 | $ 418.93 | $ 1,488.55 |
| 582 | 111530 | No | $ - | $ 2,107.07 | $ - | $ 22.31 | $ 1,055.77 | $ 413.51 | $ 1,469.27 |
| 583 | 111769 | PDO | $ - | $ 2,107.07 | $ - | $ 154.06 | $ 1,068.94 | $ 418.67 | $ 1,487.61 |
| 584 | 111549 | No | $ - | $ 2,087.24 | $ - | $ 1,243.00 | $ 1,167.92 | $ 457.44 | $ 1,625.36 |
| 585 | 112604 | PDO | $ 115.18 | $ 2,178.02 | $ - | $ - | $ 1,204.19 | $ 471.64 | $ 1,675.83 |
| 586 | 111629 | No | $ 17.51 | $ 2,042.62 | $ - | $ 473.80 | $ 1,086.20 | $ 425.43 | $ 1,511.63 |
| 587 | 112234 | No | $ 216.41 | $ 1,883.97 | $ - | $ 91.39 | $ 1,167.53 | $ 457.28 | $ 1,624.82 |
| 588 | 111789 | No | $ 137.05 | $ 1,973.09 | $ - | $ 530.18 | $ 1,176.62 | $ 460.84 | $ 1,637.46 |
| 589 | 111971 | No | $ 115.44 | $ 1,940.16 | $ - | $ 661.55 | $ 1,151.68 | $ 451.07 | $ 1,602.75 |
| 590 | 111736 | No | $ 35.26 | $ 1,998.00 | $ - | $ 533.77 | $ 1,087.64 | $ 425.99 | $ 1,513.63 |
| 591 | 112598 | No | $ 162.64 | $ 1,883.97 | $ - | $ - | $ 1,104.62 | $ 432.65 | $ 1,537.27 |
| 592 | 111958 | No | $ 227.88 | $ 1,831.08 | $ - | $ 1,308.55 | $ 1,274.28 | $ 499.09 | $ 1,773.37 |
| 593 | 111960 | No | $ - | $ 1,998.00 | $ - | $ 567.02 | $ 1,055.70 | $ 413.48 | $ 1,469.18 |
| 594 | 111967 | No | $ - | $ 1,956.23 | $ - | $ 851.05 | $ 1,063.22 | $ 416.43 | $ 1,479.65 |
| 595 | 111596 | No | $ - | $ 1,968.25 | $ - | $ 0.00 | $ 984.12 | $ 385.45 | $ 1,369.58 |
| 596 | 112130 | No | $ 866.59 | $ - | $ - | $ 4,569.71 | $ 1,323.56 | $ 518.39 | $ 1,841.95 |
| 597 | 111937 | No | $ - | $ 1,987.68 | $ - | $ - | $ 993.84 | $ 389.26 | $ 1,383.10 |
| 598 | 112228 | No | $ - | $ 1,940.16 | $ - | $ 86.48 | $ 978.73 | $ 383.34 | $ 1,362.06 |
| 599 | 111954 | No | $ - | $ 1,915.37 | $ - | $ 310.03 | $ 988.69 | $ 387.24 | $ 1,375.92 |
| 600 | 112334 | No | $ 999.48 | $ - | $ - | $ 1,557.29 | $ 1,155.21 | $ 452.46 | $ 1,607.67 |
| 601 | 111973 | PDO | $ 115.68 | $ 1,806.29 | $ - | $ 12.21 | $ 1,020.04 | $ 399.52 | $ 1,419.56 |
| 602 | 112379 | No | $ 2.66 | $ 1,883.97 | $ - | $ 245.48 | $ 969.19 | $ 379.60 | $ 1,348.79 |
| 603 | 111943 | No | $ - | $ 1,883.97 | $ - | $ 1,150.83 | $ 1,057.07 | $ 414.02 | $ 1,471.09 |
| 604 | 112317 | No | $ - | $ 1,883.97 | $ - | $ 64.03 | $ 948.39 | $ 371.45 | $ 1,319.84 |
| 605 | 111969 | No | $ - | $ 1,883.97 | $ - | $ 130.53 | $ 955.04 | $ 374.06 | $ 1,329.09 |
| 606 | 112391 | No | $ - | $ 1,883.97 | $ - | $ 168.34 | $ 958.82 | $ 375.54 | $ 1,334.36 |

| # | ID | Benefits Waived | [A] Prty. Pre-Petition PDO Accr'd Claims | [B] Remaining Priority WARN Claim | [C] Potential Est. Unsecured WARN Claim | [D] Potential Est. Unsecured PDO Claim | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] Employee Net Settlement Amount | [F] Employee WARN Act Legal Fees | [G] = [E] + [F] Employee Total Settlement Amount |
|---|---|---|---|---|---|---|---|---|---|
| 607 | 111717 | No | $ - | $ 1,882.31 | $ - | $ 123.39 | $ 953.50 | $ 373.45 | $ 1,326.95 |
| 608 | 112393 | No | $ - | $ 1,860.83 | $ - | $ 233.83 | $ 953.80 | $ 373.57 | $ 1,327.37 |
| 609 | 111511 | No | $ 679.33 | $ 1,322.08 | $ - | $ 640.00 | $ 1,404.37 | $ 550.05 | $ 1,954.42 |
| 610 | 112221 | No | $ - | $ 1,878.27 | $ - | $ 80.00 | $ 947.13 | $ 370.96 | $ 1,318.10 |
| 611 | 112390 | No | $ - | $ 1,819.00 | $ - | $ 0.19 | $ 909.52 | $ 356.23 | $ 1,265.75 |
| 612 | 112365 | PDO | $ - | $ 1,817.86 | $ - | $ 162.43 | $ 925.17 | $ 362.36 | $ 1,287.54 |
| 613 | 111964 | No | $ - | $ 1,784.81 | $ - | $ 106.38 | $ 903.04 | $ 353.69 | $ 1,256.74 |
| 614 | 112559 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 615 | 112286 | No | $ 111.16 | $ 1,599.72 | $ - | $ 430.60 | $ 954.08 | $ 373.68 | $ 1,327.76 |
| 616 | 112288 | No | $ - | $ 1,652.60 | $ - | $ 626.00 | $ 888.90 | $ 348.15 | $ 1,237.06 |
| 617 | 111520 | No | $ - | $ 1,584.85 | $ - | $ 3.84 | $ 792.81 | $ 310.52 | $ 1,103.32 |
| 618 | 111974 | No | $ - | $ 1,531.96 | $ - | $ 492.70 | $ 815.25 | $ 319.31 | $ 1,134.56 |
| 619 | 112136 | No | $ - | $ 907.11 | $ - | $ 948.64 | $ 548.42 | $ 214.80 | $ 763.22 |
| 620 | 111692 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 621 | 112580 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 622 | 112426 | No | $ 596.57 | $ - | $ - | $ 356.17 | $ 632.19 | $ 247.61 | $ 879.79 |
| 623 | 112584 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 624 | 112359 | No | $ 892.70 | $ - | $ - | $ 590.15 | $ 951.72 | $ 372.76 | $ 1,324.47 |
| 625 | 112108 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 626 | 112428 | No | $ 494.06 | $ - | $ - | $ 304.19 | $ 524.48 | $ 205.42 | $ 729.90 |
| 627 | 112165 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 628 | 112312 | No | $ - | $ - | $ - | $ 952.97 | $ 95.30 | $ 37.32 | $ 132.62 |
| 629 | 112205 | No | $ - | $ - | $ - | $ 1,305.94 | $ 130.59 | $ 51.15 | $ 181.74 |
| 630 | 112389 | No | $ - | $ 387.51 | $ - | $ - | $ 193.75 | $ 75.89 | $ 269.64 |
| 631 | 111535 | No | $ - | $ - | $ - | $ 2,165.72 | $ 216.57 | $ 84.82 | $ 301.40 |
| 632 | 110964 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 633 | 112394 | No | $ 280.22 | $ - | $ - | $ 366.07 | $ 316.82 | $ 124.09 | $ 440.91 |
| 634 | 112417 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 635 | 111649 | No | $ - | $ 341.92 | $ - | $ 833.25 | $ 254.28 | $ 99.59 | $ 353.88 |
| 636 | 111712 | No | $ - | $ - | $ - | $ 1,916.20 | $ 191.62 | $ 75.05 | $ 266.67 |
| 637 | 111881 | No | $ - | $ - | $ - | $ 1,665.00 | $ 166.50 | $ 65.21 | $ 231.71 |
| 638 | 112506 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 639 | 111423 | No | $ - | $ 321.63 | $ - | $ 911.04 | $ 251.92 | $ 98.67 | $ 350.50 |
| 640 | 111952 | No | $ 203.23 | $ - | $ - | $ 948.75 | $ 298.10 | $ 116.76 | $ 414.86 |
| 641 | 112226 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 642 | 112048 | No | $ - | $ - | $ - | $ 154.31 | $ 15.43 | $ 6.04 | $ 21.48 |
| 643 | 111402 | No | $ - | $ - | $ - | $ 1,842.11 | $ 184.21 | $ 72.15 | $ 256.36 |
| 644 | 112425 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 645 | 112325 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 646 | 111455 | No | $ 8.70 | $ - | $ - | $ 1,492.70 | $ 157.97 | $ 61.87 | $ 219.84 |
| 647 | 112366 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 648 | 112357 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 649 | 112402 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 650 | 111751 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 651 | 111774 | PDO | $ - | $ - | $ - | $ 1,048.58 | $ 104.86 | $ 41.07 | $ 145.93 |
| 652 | 110064 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 653 | 112343 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 654 | 112603 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

| # | ID | Benefits Waived | [A] Prty. Pre-Petition PDO Accr'd Claims | [B] Remaining Priority WARN Claim | [C] Potential Est. Unsecured WARN Claim | [D] Potential Est. Unsecured PDO Claim | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] Employee Net Settlement Amount | [F] Employee WARN Act Legal Fees | [G] = [E] + [F] Employee Total Settlement Amount |
|---|---|---|---|---|---|---|---|---|---|
| 655 | 112585 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 656 | 112537 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 657 | 111956 | PDO | $ - | $ - | $ - | $ 1,160.47 | $ 116.05 | $ 45.45 | $ 161.50 |
| 658 | 111676 | PDO | $ - | $ - | $ - | $ 251.15 | $ 25.11 | $ 9.84 | $ 34.95 |
| 659 | 112281 | No | $ 576.32 | $ - | $ - | $ 1,131.01 | $ 689.42 | $ 270.02 | $ 959.45 |
| 660 | 112323 | No | $ 287.86 | $ - | $ - | $ 620.79 | $ 349.94 | $ 137.06 | $ 487.00 |
| 661 | 112078 | No | $ 124.23 | $ - | $ - | $ 2.45 | $ 124.47 | $ 48.75 | $ 173.22 |
| 662 | 110046 | No | $ - | $ - | $ - | $ 2,136.30 | $ 213.63 | $ 83.67 | $ 297.30 |
| 663 | 110096 | No | $ - | $ 11,000.45 | $ 96.83 | $ 1,104.86 | $ 5,620.40 | $ 2,201.33 | $ 7,821.72 |
| 664 | 110595 | PDO | $ 5,442.67 | $ 5,583.77 | $ 5,813.49 | $ 578.00 | $ 8,873.70 | $ 3,475.54 | $ 12,349.25 |
| 665 | 110055 | No | $ 3,563.03 | $ 7,534.07 | $ 3,421.55 | $ 3,231.08 | $ 7,995.33 | $ 3,131.51 | $ 11,126.84 |
| 666 | 111040 | No | $ 3,108.83 | $ 7,720.81 | $ 5,664.11 | $ 3,981.87 | $ 7,933.83 | $ 3,107.43 | $ 11,041.26 |
| 667 | 111440 | No | $ 3,100.30 | $ 7,777.52 | $ 4,548.62 | $ 2,072.87 | $ 7,651.21 | $ 2,996.73 | $ 10,647.94 |
| 668 | 110509 | PDO | $ 2,954.17 | $ 8,046.28 | $ 3,513.39 | $ - | $ 7,328.65 | $ 2,870.40 | $ 10,199.05 |
| 669 | 111515 | No | $ 2,480.85 | $ 8,258.42 | $ 3,878.26 | $ (456.05) | $ 6,952.29 | $ 2,722.99 | $ 9,675.27 |
| 670 | 110180 | No | $ 3,254.16 | $ 7,988.82 | $ 2,255.89 | $ 1,946.97 | $ 7,668.86 | $ 3,003.65 | $ 10,672.51 |
| 671 | 112380 | No | $ 3,755.11 | $ 6,574.27 | $ 2,247.89 | $ 3,489.72 | $ 7,616.01 | $ 2,982.95 | $ 10,598.95 |
| 672 | 111626 | No | $ 2,025.58 | $ 8,792.64 | $ 3,905.97 | $ 5,008.62 | $ 7,313.36 | $ 2,864.41 | $ 10,177.77 |
| 673 | 112314 | No | $ 1,751.31 | $ 9,126.51 | $ 3,199.63 | $ 478.74 | $ 6,682.40 | $ 2,617.28 | $ 9,299.68 |
| 674 | 111449 | PDO | $ 3,429.25 | $ 7,916.31 | $ 1,674.48 | $ 882.75 | $ 7,643.13 | $ 2,993.57 | $ 10,636.70 |
| 675 | 111020 | PDO | $ 2,788.80 | $ 8,471.97 | $ 1,659.40 | $ 2,081.14 | $ 7,398.84 | $ 2,897.89 | $ 10,296.72 |
| 676 | 111469 | No | $ 1,610.58 | $ 8,609.29 | $ 6,514.00 | $ 52.88 | $ 6,571.91 | $ 2,574.01 | $ 9,145.91 |
| 677 | 112455 | No | $ 3,289.42 | $ 7,964.97 | $ 1,608.73 | $ 258.42 | $ 7,458.61 | $ 2,921.30 | $ 10,379.91 |
| 678 | 112377 | No | $ 1,596.49 | $ 9,421.75 | $ 2,713.71 | $ 1,779.97 | $ 6,756.73 | $ 2,646.39 | $ 9,403.12 |
| 679 | 110199 | No | $ 4,034.13 | $ 7,357.02 | $ 1,578.43 | $ 1,589.33 | $ 8,029.42 | $ 3,144.87 | $ 11,174.28 |
| 680 | 111118 | PDO | $ 1,455.32 | $ 9,496.35 | $ 2,368.19 | $ 4,694.91 | $ 6,909.81 | $ 2,706.35 | $ 9,616.15 |
| 681 | 110151 | No | $ 1,443.30 | $ 9,556.70 | $ 2,699.57 | $ 1,071.31 | $ 6,598.73 | $ 2,584.51 | $ 9,183.25 |
| 682 | 110533 | PDO | $ 1,299.59 | $ 9,700.86 | $ 1,396.42 | $ 1,297.56 | $ 6,419.42 | $ 2,514.28 | $ 8,933.70 |
| 683 | 111270 | PDO | $ 2,117.60 | $ 9,104.41 | $ 1,070.49 | $ 1,770.62 | $ 6,953.92 | $ 2,723.63 | $ 9,677.55 |
| 684 | 111646 | No | $ 1,422.85 | $ 9,621.12 | $ 989.29 | $ 3,507.28 | $ 6,683.07 | $ 2,617.54 | $ 9,300.61 |
| 685 | 112000 | No | $ 899.84 | $ 9,758.38 | $ 2,844.36 | $ 2,427.08 | $ 6,306.17 | $ 2,469.93 | $ 8,776.10 |
| 686 | 110002 | No | $ 851.92 | $ 9,367.94 | $ 6,084.12 | $ - | $ 6,144.30 | $ 2,406.53 | $ 8,550.83 |
| 687 | 110149 | No | $ 847.51 | $ 10,168.44 | $ 1,065.10 | $ 1,984.68 | $ 6,236.71 | $ 2,442.72 | $ 8,679.43 |
| 688 | 112560 | PDO | $ 637.36 | $ 10,240.45 | $ 1,099.59 | $ - | $ 5,867.55 | $ 2,298.13 | $ 8,165.68 |
| 689 | 110478 | PDO | $ 975.03 | $ 10,025.42 | $ 609.48 | $ 2,634.35 | $ 6,312.12 | $ 2,472.26 | $ 8,784.38 |
| 690 | 112216 | Both | $ 1,154.36 | $ 9,940.46 | $ 590.60 | $ 516.54 | $ 6,235.30 | $ 2,442.17 | $ 8,677.47 |
| 691 | 112478 | No | $ 1,819.42 | $ 9,434.97 | $ 537.64 | $ - | $ 6,590.66 | $ 2,581.35 | $ 9,172.01 |
| 692 | 111239 | PDO | $ 2,500.85 | $ 8,179.56 | $ 498.77 | $ 1,994.02 | $ 6,839.91 | $ 2,678.97 | $ 9,518.89 |
| 693 | 112474 | PDO | $ 502.75 | $ 10,692.36 | $ 478.09 | $ - | $ 5,896.75 | $ 2,309.57 | $ 8,206.31 |
| 694 | 112479 | No | $ 454.81 | $ 9,984.23 | $ 5,084.26 | $ - | $ 5,955.35 | $ 2,332.52 | $ 8,287.87 |
| 695 | 111904 | PDO | $ 2,523.50 | $ 8,730.88 | $ 443.91 | $ 1,895.25 | $ 7,122.86 | $ 2,789.79 | $ 9,912.65 |
| 696 | 112302 | PDO | $ 310.10 | $ 10,625.16 | $ 1,341.96 | $ 620.20 | $ 5,818.90 | $ 2,279.07 | $ 8,097.97 |
| 697 | 112337 | PDO | $ 263.26 | $ 10,563.95 | $ 2,837.00 | $ 81.34 | $ 5,837.07 | $ 2,286.19 | $ 8,123.27 |
| 698 | 111946 | No | $ 2,924.94 | $ 7,667.53 | $ 233.84 | $ 4,998.14 | $ 7,281.90 | $ 2,852.09 | $ 10,133.98 |
| 699 | 111617 | No | $ 1,493.33 | $ 9,761.05 | $ 211.55 | $ 624.17 | $ 6,457.43 | $ 2,529.17 | $ 8,986.60 |
| 700 | 111190 | No | $ 294.63 | $ 10,335.18 | $ 2,430.88 | $ 5,544.49 | $ 6,259.76 | $ 2,451.75 | $ 8,711.51 |
| 701 | 112486 | PDO | $ 156.05 | $ 9,885.66 | $ 6,613.01 | $ - | $ 5,760.19 | $ 2,256.08 | $ 8,016.26 |
| 702 | 112275 | No | $ 499.36 | $ 10,597.22 | $ 142.51 | $ 1,798.08 | $ 5,992.03 | $ 2,346.88 | $ 8,338.91 |

| # | ID | Benefits Waived | [A] Prty. Pre-Petition PDO Accr'd Claims | [B] Remaining Priority WARN Claim | [C] Potential Est. Unsecured WARN Claim | [D] Potential Est. Unsecured PDO Claim | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] Employee Net Settlement Amount | [F] Employee WARN Act Legal Fees | [G] = [E] + [F] Employee Total Settlement Amount |
|---|---|---|---|---|---|---|---|---|---|
| 703 | 112396 | PDO | $ 923.36 | $ 10,171.46 | $ 140.21 | $ 284.26 | $ 6,051.54 | $ 2,370.19 | $ 8,421.73 |
| 704 | 110389 | PDO | $ 117.51 | $ 10,936.73 | $ 286.72 | $ - | $ 5,614.55 | $ 2,199.04 | $ 7,813.59 |
| 705 | 111187 | No | $ 1,578.99 | $ 9,627.53 | $ 27.95 | $ 3,529.90 | $ 6,748.54 | $ 2,643.19 | $ 9,391.72 |
| 706 | 111920 | PDO | $ 1,309.58 | $ 9,944.80 | $ 27.80 | $ 2,167.08 | $ 6,501.47 | $ 2,546.42 | $ 9,047.89 |
| 707 | 112546 | No | $ 8,466.44 | $ - | $ 15,342.47 | $ 8,456.64 | $ 10,846.35 | $ 4,248.17 | $ 15,094.51 |
| 708 | 112492 | No | $ 8,028.08 | $ - | $ 16,876.71 | $ 5,510.38 | $ 10,266.79 | $ 4,021.17 | $ 14,287.96 |
| 709 | 112437 | No | $ 8,795.21 | $ - | $ - | $ 13,974.03 | $ 10,192.61 | $ 3,992.12 | $ 14,184.72 |
| 710 | 111945 | No | $ 8,466.44 | $ - | $ 15,342.47 | $ 10,764.33 | $ 11,077.12 | $ 4,338.55 | $ 15,415.67 |
| 711 | 111947 | No | $ 7,459.69 | $ - | $ 18,866.10 | $ 16,187.72 | $ 10,965.07 | $ 4,294.66 | $ 15,259.73 |
| 712 | 111858 | No | $ 8,576.03 | $ - | $ - | $ 16,173.97 | $ 10,193.42 | $ 3,992.44 | $ 14,185.86 |
| 713 | 111725 | No | $ - | $ - | $ 46,028.78 | $ 32,308.66 | $ 7,833.74 | $ 3,068.23 | $ 10,901.97 |
| 714 | 111727 | No | $ - | $ - | $ 47,198.41 | $ 35,496.06 | $ 8,269.45 | $ 3,238.88 | $ 11,508.32 |
| 715 | 111426 | No | $ - | $ - | $ 47,826.91 | $ - | $ 4,782.69 | $ 1,873.23 | $ 6,655.92 |
| 716 | 111427 | No | $ - | $ - | $ 49,876.59 | $ 62,517.02 | $ 11,239.36 | $ 4,402.10 | $ 15,641.46 |
| 717 | 111953 | No | $ - | $ - | $ 54,657.53 | $ 57,548.08 | $ 11,220.56 | $ 4,394.73 | $ 15,615.29 |
| 718 | 111961 | No | $ - | $ - | $ 54,657.53 | $ 19,182.69 | $ 7,384.02 | $ 2,892.08 | $ 10,276.11 |
| 719 | 111497 | No | $ - | $ - | $ 54,969.91 | $ 57,876.97 | $ 11,284.69 | $ 4,419.85 | $ 15,704.54 |
| 720 | 112382 | No | $ - | $ - | $ 55,616.44 | $ - | $ 5,561.64 | $ 2,178.32 | $ 7,739.96 |
| 721 | 111445 | No | $ - | $ - | $ 65,725.59 | $ - | $ 6,572.56 | $ 2,574.26 | $ 9,146.82 |
| 722 | 111923 | No | $ - | $ - | $ 67,410.97 | $ - | $ 6,741.10 | $ 2,640.27 | $ 9,381.37 |
| 723 | 111924 | No | $ - | $ - | $ 67,410.97 | $ - | $ 6,741.10 | $ 2,640.27 | $ 9,381.37 |
| 724 | 112385 | No | $ - | $ - | $ 84,383.56 | $ - | $ 8,438.36 | $ 3,305.03 | $ 11,743.39 |
| 725 | 111498 | No | $ - | $ - | $ 93,039.55 | $ 79,300.88 | $ 17,234.04 | $ 6,750.02 | $ 23,984.06 |
| 726 | 112384 | No | $ - | $ - | $ 98,805.48 | $ - | $ 9,880.55 | $ 3,869.89 | $ 13,750.44 |
| 727 | 112386 | No | $ 992.47 | $ - | $ 40,508.90 | $ - | $ 4,547.12 | $ 1,780.96 | $ 6,328.09 |
| 728 | 112530 | No | $ 8,621.37 | $ 1,653.28 | $ 12,189.18 | $ - | $ 10,666.93 | $ 4,177.90 | $ 14,844.83 |
| 729 | 112175 | No | $ - | $ 2,986.99 | $ 31,533.56 | $ 34,615.39 | $ 8,108.39 | $ 3,175.79 | $ 11,284.18 |
| 730 | 112174 | No | $ - | $ 2,986.99 | $ 31,533.56 | $ - | $ 4,646.85 | $ 1,820.02 | $ 6,466.87 |
| 731 | 112493 | No | $ - | $ 3,534.93 | $ 29,067.81 | $ - | $ 4,674.25 | $ 1,830.75 | $ 6,505.00 |
| 732 | 112176 | No | $ - | $ 4,082.88 | $ 26,602.05 | $ - | $ 4,701.64 | $ 1,841.48 | $ 6,543.13 |
| 733 | 111496 | No | $ - | $ 4,154.11 | $ 26,281.51 | $ 38,149.04 | $ 8,520.11 | $ 3,337.05 | $ 11,857.16 |
| 734 | 111680 | No | $ - | $ 4,188.08 | $ 52,114.38 | $ - | $ 7,305.48 | $ 2,861.32 | $ 10,166.80 |
| 735 | 111619 | No | $ - | $ 4,323.21 | $ 25,520.58 | $ - | $ 4,713.66 | $ 1,846.19 | $ 6,559.85 |
| 736 | 112251 | No | $ - | $ 4,630.82 | $ 24,136.30 | $ - | $ 4,729.04 | $ 1,852.21 | $ 6,581.25 |
| 737 | 111975 | No | $ - | $ 4,714.57 | $ 23,759.44 | $ 19,986.56 | $ 6,731.88 | $ 2,636.66 | $ 9,368.55 |
| 738 | 111726 | No | $ - | $ 4,742.77 | $ 23,632.55 | $ - | $ 4,734.64 | $ 1,854.41 | $ 6,589.04 |
| 739 | 111522 | No | $ - | $ 4,850.00 | $ 23,150.00 | $ 33,692.30 | $ 8,109.23 | $ 3,176.12 | $ 11,285.36 |
| 740 | 111679 | No | $ - | $ 4,871.92 | $ 41,002.05 | $ - | $ 6,536.16 | $ 2,560.01 | $ 9,096.17 |
| 741 | 111820 | No | $ - | $ 5,327.81 | $ 45,446.99 | $ - | $ 7,208.60 | $ 2,823.38 | $ 10,031.98 |
| 742 | 111487 | No | $ - | $ 6,274.66 | $ 16,739.04 | $ 28,846.15 | $ 7,695.85 | $ 3,014.22 | $ 10,710.06 |
| 743 | 111559 | No | $ - | $ 7,480.14 | $ 11,314.38 | $ 23,557.69 | $ 7,227.28 | $ 2,830.69 | $ 10,057.97 |
| 744 | 111384 | No | $ - | $ 8,028.08 | $ 8,848.63 | $ - | $ 4,898.90 | $ 1,918.74 | $ 6,817.65 |
| 745 | 112164 | No | $ - | $ 8,028.08 | $ 8,848.63 | $ - | $ 4,898.90 | $ 1,918.74 | $ 6,817.65 |
| 746 | 112289 | No | $ - | $ 8,028.08 | $ 8,848.63 | $ 18,615.38 | $ 6,760.44 | $ 2,647.85 | $ 9,408.29 |
| 747 | 112173 | No | $ - | $ 8,466.44 | $ 6,876.03 | $ - | $ 4,920.82 | $ 1,927.33 | $ 6,848.15 |
| 748 | 111810 | No | $ - | $ 8,576.03 | $ 6,382.88 | $ 937.50 | $ 5,020.01 | $ 1,966.19 | $ 6,986.24 |
| 749 | 112321 | No | $ - | $ 8,795.21 | $ 5,396.58 | $ - | $ 4,937.26 | $ 1,933.77 | $ 6,871.03 |
| 750 | 111994 | No | $ - | $ 8,950.38 | $ 4,698.27 | $ - | $ 4,945.02 | $ 1,936.81 | $ 6,881.82 |

| # | ID | Benefits Waived | [A] Employee Prty. Pre-Petition PDO Accr'd Claims | [B] Employee Remaining Priority WARN Claim | [C] Potential Est. Unsecured WARN Claim | [D] Potential Est. Unsecured PDO Claim | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] Employee Net Settlement Amount | [F] Employee WARN Act Legal Fees | [G] = [E] + [F] Employee Total Settlement Amount |
|---|---|---|---|---|---|---|---|---|---|
| 751 | 150001 | No | $ - | $ 9,781.51 | $ 958.22 | $ - | $ 4,986.58 | $ 1,953.08 | $ 6,939.66 |
| 752 | 111085 | PDO | $ - | $ 9,928.80 | $ 6,868.12 | $ 4,812.17 | $ 6,132.43 | $ 2,401.87 | $ 8,534.30 |
| 753 | 110633 | No | $ 0.00 | $ 10,000.68 | $ 6,739.04 | $ 10,000.00 | $ 6,674.25 | $ 2,614.09 | $ 9,288.33 |
| 754 | 112204 | No | $ - | $ 10,114.66 | $ 826.71 | $ - | $ 5,140.00 | $ 2,013.17 | $ 7,153.17 |
| 755 | 110256 | No | $ - | $ 10,114.66 | $ 8,690.82 | $ - | $ 5,926.41 | $ 2,321.18 | $ 8,247.60 |
| 756 | 112347 | No | $ - | $ 10,422.84 | $ 4,746.91 | $ - | $ 5,686.11 | $ 2,227.07 | $ 7,913.18 |
| 757 | 112142 | No | $ - | $ 10,450.65 | $ 3,945.46 | $ - | $ 5,619.87 | $ 2,201.12 | $ 7,820.99 |
| 758 | 111742 | No | $ - | $ 10,450.65 | $ 3,945.46 | $ - | $ 5,619.87 | $ 2,201.12 | $ 7,820.99 |
| 759 | 112031 | No | $ - | $ 10,450.65 | $ 3,045.70 | $ - | $ 5,529.89 | $ 2,165.88 | $ 7,695.78 |
| 760 | 111230 | No | $ - | $ 10,463.87 | $ 3,554.65 | $ 5,192.13 | $ 6,106.61 | $ 2,391.76 | $ 8,498.38 |
| 761 | 110463 | PDO | $ - | $ 10,603.37 | $ 2,314.74 | $ 4,054.10 | $ 5,938.57 | $ 2,325.95 | $ 8,264.52 |
| 762 | 110223 | No | $ - | $ 10,608.84 | $ 3,398.39 | $ 6,597.27 | $ 6,303.99 | $ 2,469.07 | $ 8,773.06 |
| 763 | 110177 | No | $ - | $ 10,628.45 | $ 2,700.88 | $ 4,934.72 | $ 6,077.78 | $ 2,380.47 | $ 8,458.26 |
| 764 | 111572 | No | $ - | $ 10,664.46 | $ 1,902.39 | $ 5,728.83 | $ 6,095.35 | $ 2,387.35 | $ 8,482.71 |
| 765 | 112141 | No | $ - | $ 10,664.46 | $ 1,902.39 | $ 2,361.84 | $ 5,758.65 | $ 2,255.48 | $ 8,014.13 |
| 766 | 112322 | No | $ - | $ 10,877.40 | $ 2,437.67 | $ 2,102.16 | $ 5,892.68 | $ 2,307.97 | $ 8,200.66 |
| 767 | 110190 | No | $ - | $ 10,877.82 | $ 1,448.32 | $ 5,658.41 | $ 6,149.58 | $ 2,408.59 | $ 8,558.18 |
| 768 | 112310 | No | $ - | $ 10,934.80 | $ 1,035.17 | $ - | $ 5,570.92 | $ 2,181.95 | $ 7,752.87 |
| 769 | 110984 | No | $ - | $ 11,000.00 | $ 562.52 | $ 5,056.27 | $ 6,061.88 | $ 2,374.24 | $ 8,436.12 |
| 770 | 110890 | PDO | $ - | $ 11,000.45 | $ 328.03 | $ 2,890.61 | $ 5,822.09 | $ 2,280.33 | $ 8,102.42 |
| 771 | 111433 | No | $ - | $ 11,018.23 | $ 430.32 | $ 889.99 | $ 5,641.15 | $ 2,209.46 | $ 7,850.60 |
| 772 | 119309 | No | $ - | $ 11,026.44 | $ 826.71 | $ - | $ 5,595.89 | $ 2,191.73 | $ 7,787.62 |
| 773 | 110346 | No | $ - | $ 6,746.04 | $ - | $ - | $ 3,373.02 | $ 1,321.10 | $ 4,694.12 |
| 774 | 112423 | No | $ - | $ 11,206.06 | $ 96.03 | $ 532.49 | $ 5,665.88 | $ 2,219.14 | $ 7,885.03 |
| **Total** | | | **$ 321,402.63** | **$ 4,204,212.80** | **$ 1,697,184.10** | **$ 1,373,091.36** | **$ 2,730,536.58** | **$ 1,069,463.42** | **$ 3,800,000.00** |

## **EXHIBIT C**

**EMPLOYEE SETTLEMENT WORKSHEET**

**LOUISIANA HEART HOSPITAL, LLC ("LHH") AND LOUISIANNA HEART MEDICAL GROUP ("LHMG")**

WARN Act - Potential Claims
Date:     8/1/2017

| | Total Estimated WARN Act Claims | | | | | | |
|---|---|---|---|---|---|---|---|
| | **[A]** Estimated Priority Pre-Petition PDO Accrued | **[B]** Remaining Estimated Priority WARN Claim | **[C]** Potential Estimated Unsecured WARN Claim | **[D]** Potential Estimated Unsecured PDO Claim | Net Settlement Amount | WARN Act Legal Fees | Total Settlement Amount |
| Total | $ 321,402.63 | $ 4,204,212.80 | $ 1,697,184.10 | $ 1,373,091.36 | | | |
| | Allowed at | Allowed at | Allowed at | Allowed at | **[E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D]** | | |
| Proposed Settlement Methodology | 100.0% | 50.0% | 10.0% | 10.0% | Net Settlement Amount | WARN Act Legal Fees | Total Settlement Amount |
| | 100%*[A] | 50%*[B] | 10%*[C] | 10%*[D] | | | |
| Settlement Amount (Aggregate) | $ 321,402.63 | $ 2,102,106.40 | $ 169,718.41 | $ 137,309.14 | $ 2,730,536.58 | $ 1,069,463.42 | $ 3,800,000.00 |

| # | ID | Benefits Waived | [A] Prty. Pre-Petition PDO Accr'd Claims | [B] Remaining Priority WARN Claim | [C] Potential Est. Unsecured WARN Claim | [D] Potential Est. Unsecured PDO Claim | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] Employee Net Settlement Amount | [F] Employee WARN Act Legal Fees | [G] = [E] + [F] Employee Total Settlement Amount |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 112491 | No | $ 6,493.84 | $ - | $ 34,164.38 | $ 29,198.47 | $ 12,830.12 | $ 5,025.15 | $ 17,855.27 |
| 2 | 112283 | No | $ 6,057.69 | $ 1,860.80 | $ 15,399.47 | $ 15,576.92 | $ 10,085.73 | $ 3,950.26 | $ 14,035.99 |
| 3 | 112459 | No | $ 1,276.92 | $ 9,972.60 | $ - | $ 258.42 | $ 6,289.06 | $ 2,463.22 | $ 8,752.28 |
| 4 | 110505 | No | $ - | $ 10,915.38 | $ - | $ 4,202.86 | $ 5,877.98 | $ 2,302.22 | $ 8,180.19 |
| 5 | 110117 | No | $ 1,875.51 | $ 9,334.07 | $ - | $ 886.93 | $ 6,631.24 | $ 2,597.24 | $ 9,228.48 |
| 6 | 111628 | No | $ 1,506.17 | $ 9,662.03 | $ - | $ 2,000.12 | $ 6,537.20 | $ 2,560.41 | $ 9,097.60 |
| 7 | 111657 | No | $ - | $ 11,065.83 | $ - | $ 4,533.96 | $ 5,986.31 | $ 2,344.65 | $ 8,330.95 |
| 8 | 110982 | No | $ 923.79 | $ 10,131.37 | $ - | $ 1,223.59 | $ 6,111.83 | $ 2,393.81 | $ 8,505.64 |
| 9 | 112093 | No | $ - | $ 10,898.63 | $ - | $ - | $ 5,449.32 | $ 2,134.32 | $ 7,583.64 |
| 10 | 111940 | No | $ 1,677.64 | $ 8,765.86 | $ - | $ 5,629.00 | $ 6,623.47 | $ 2,594.20 | $ 9,217.67 |
| 11 | 112561 | No | $ 995.31 | $ 10,021.04 | $ - | $ - | $ 6,005.83 | $ 2,352.29 | $ 8,358.12 |
| 12 | 112198 | No | $ - | $ 10,969.86 | $ - | $ - | $ 5,484.93 | $ 2,148.27 | $ 7,633.20 |
| 13 | 112070 | No | $ - | $ 10,969.86 | $ - | $ - | $ 5,484.93 | $ 2,148.27 | $ 7,633.20 |
| 14 | 111862 | No | $ - | $ 10,969.86 | $ - | $ - | $ 5,484.93 | $ 2,148.27 | $ 7,633.20 |
| 15 | 112422 | No | $ - | $ 10,969.86 | $ - | $ - | $ 5,484.93 | $ 2,148.27 | $ 7,633.20 |
| 16 | 111394 | PDO | $ 121.09 | $ 10,677.87 | $ - | $ 1,489.45 | $ 5,608.97 | $ 2,196.85 | $ 7,805.82 |
| 17 | 112326 | PDO | $ 1,225.59 | $ 9,704.77 | $ - | $ 2,106.04 | $ 6,288.58 | $ 2,463.03 | $ 8,751.61 |
| 18 | 111721 | No | $ - | $ 10,746.08 | $ - | $ 920.33 | $ 5,465.07 | $ 2,140.49 | $ 7,605.56 |
| 19 | 111267 | No | $ 608.89 | $ 10,131.37 | $ - | $ 2,864.91 | $ 5,961.06 | $ 2,334.76 | $ 8,295.82 |
| 20 | 112092 | PDO | $ 734.42 | $ 9,972.60 | $ - | $ 96.83 | $ 5,730.40 | $ 2,244.41 | $ 7,974.82 |
| 21 | 110122 | PDO | $ 978.12 | $ 9,731.27 | $ - | $ 1,515.98 | $ 5,995.35 | $ 2,348.19 | $ 8,343.54 |
| 22 | 111125 | No | $ - | $ 10,499.16 | $ - | $ 442.96 | $ 5,293.87 | $ 2,073.44 | $ 7,367.31 |
| 23 | 112517 | No | $ - | $ 10,585.21 | $ - | $ - | $ 5,292.60 | $ 2,072.94 | $ 7,365.55 |
| 24 | 112162 | PDO | $ 1,427.31 | $ 9,271.23 | $ - | $ 3,663.46 | $ 6,429.27 | $ 2,518.14 | $ 8,947.41 |
| 25 | 111224 | PDO | $ - | $ 10,582.36 | $ - | $ 1,962.85 | $ 5,487.46 | $ 2,149.26 | $ 7,636.73 |
| 26 | 111401 | PDO | $ 1,056.19 | $ 9,624.99 | $ - | $ 492.06 | $ 5,917.89 | $ 2,317.85 | $ 8,235.73 |
| 27 | 110906 | PDO | $ - | $ 10,462.68 | $ - | $ 415.65 | $ 5,272.91 | $ 2,065.23 | $ 7,338.14 |
| 28 | 111592 | No | $ 571.67 | $ 9,972.60 | $ - | $ 676.67 | $ 5,625.63 | $ 2,203.38 | $ 7,829.02 |
| 29 | 111247 | No | $ 66.85 | $ 10,370.71 | $ - | $ 5,257.17 | $ 5,777.92 | $ 2,263.03 | $ 8,040.95 |
| 30 | 112582 | No | $ - | $ 10,483.03 | $ - | $ - | $ 5,241.51 | $ 2,052.93 | $ 7,294.45 |

| # | ID | Benefits Waived | [A] Prty. Pre-Petition PDO Accr'd Claims | [B] Remaining Priority WARN Claim | [C] Potential Est. Unsecured WARN Claim | [D] Potential Est. Unsecured PDO Claim | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] Employee Net Settlement Amount | [F] Employee WARN Act Legal Fees | [G] = [E] + [F] Employee Total Settlement Amount |
|---|----|----|----|----|----|----|----|----|----|
| 31 | 111035 | No | $ 693.60 | $ 9,881.42 | $ - | $ 3,075.30 | $ 5,941.84 | $ 2,327.23 | $ 8,269.07 |
| 32 | 112085 | No | $ 1,345.03 | $ 7,671.23 | $ - | $ 8,034.29 | $ 5,984.08 | $ 2,343.77 | $ 8,327.85 |
| 33 | 111173 | No | $ - | $ 10,367.92 | $ - | $ 993.23 | $ 5,283.28 | $ 2,069.29 | $ 7,352.57 |
| 34 | 110918 | No | $ 1,646.92 | $ 8,911.75 | $ - | $ 2,404.95 | $ 6,343.29 | $ 2,484.46 | $ 8,827.75 |
| 35 | 111741 | No | $ 445.08 | $ 9,972.60 | $ - | $ 3,738.00 | $ 5,805.18 | $ 2,273.70 | $ 8,078.89 |
| 36 | 110459 | No | $ - | $ 10,247.39 | $ - | $ 2,539.83 | $ 5,377.68 | $ 2,106.26 | $ 7,483.94 |
| 37 | 111780 | PDO | $ - | $ 10,297.42 | $ - | $ 4,455.46 | $ 5,594.26 | $ 2,191.09 | $ 7,785.35 |
| 38 | 111102 | No | $ 1,012.39 | $ 9,334.07 | $ - | $ 1,229.62 | $ 5,802.39 | $ 2,272.61 | $ 8,075.00 |
| 39 | 112241 | No | $ 1,575.84 | $ 8,054.79 | $ - | $ 372.72 | $ 5,640.51 | $ 2,209.21 | $ 7,849.72 |
| 40 | 111788 | No | $ - | $ 9,933.85 | $ - | $ 1,877.57 | $ 5,154.68 | $ 2,018.92 | $ 7,173.61 |
| 41 | 111883 | No | $ - | $ 10,274.63 | $ - | $ 1,648.54 | $ 5,302.17 | $ 2,076.69 | $ 7,378.86 |
| 42 | 111740 | PDO | $ - | $ 10,271.78 | $ - | $ 964.34 | $ 5,232.32 | $ 2,049.33 | $ 7,281.66 |
| 43 | 112578 | No | $ - | $ 10,257.53 | $ - | $ - | $ 5,128.77 | $ 2,008.77 | $ 7,137.54 |
| 44 | 111880 | No | $ 1,942.50 | $ 8,547.95 | $ - | $ 1,605.50 | $ 6,377.02 | $ 2,497.67 | $ 8,874.70 |
| 45 | 110212 | No | $ - | $ 10,159.06 | $ - | $ 3,498.59 | $ 5,429.39 | $ 2,126.52 | $ 7,555.91 |
| 46 | 111050 | PDO | $ - | $ 10,159.06 | $ - | $ 2,914.25 | $ 5,370.96 | $ 2,103.63 | $ 7,474.59 |
| 47 | 111181 | No | $ 343.68 | $ 9,860.91 | $ - | $ 164.03 | $ 5,290.53 | $ 2,072.13 | $ 7,362.67 |
| 48 | 111468 | No | $ - | $ 10,343.01 | $ - | $ - | $ 5,171.51 | $ 2,025.51 | $ 7,197.02 |
| 49 | 111159 | No | $ - | $ 10,343.01 | $ - | $ - | $ 5,171.51 | $ 2,025.51 | $ 7,197.02 |
| 50 | 112218 | No | $ - | $ 10,343.01 | $ - | $ - | $ 5,171.51 | $ 2,025.51 | $ 7,197.02 |
| 51 | 110583 | No | $ - | $ 10,343.01 | $ - | $ - | $ 5,171.51 | $ 2,025.51 | $ 7,197.02 |
| 52 | 110574 | No | $ - | $ 10,206.25 | $ - | $ 331.33 | $ 5,136.26 | $ 2,011.71 | $ 7,147.96 |
| 53 | 112163 | No | $ - | $ 9,205.48 | $ - | $ 921.15 | $ 4,694.86 | $ 1,838.82 | $ 6,533.68 |
| 54 | 111755 | No | $ - | $ 10,265.91 | $ - | $ 568.20 | $ 5,189.78 | $ 2,032.67 | $ 7,222.44 |
| 55 | 112406 | PDO | $ 690.61 | $ 9,611.14 | $ - | $ 487.23 | $ 5,544.90 | $ 2,171.76 | $ 7,716.66 |
| 56 | 111435 | No | $ - | $ 10,202.49 | $ - | $ - | $ 5,101.24 | $ 1,997.99 | $ 7,099.24 |
| 57 | 110241 | No | $ 266.20 | $ 9,966.90 | $ - | $ 1,190.20 | $ 5,368.67 | $ 2,102.74 | $ 7,471.41 |
| 58 | 111112 | No | $ - | $ 10,131.37 | $ - | $ 2,638.90 | $ 5,329.57 | $ 2,087.42 | $ 7,417.00 |
| 59 | 110313 | No | $ - | $ 10,131.37 | $ - | $ 2,287.98 | $ 5,294.48 | $ 2,073.68 | $ 7,368.16 |
| 60 | 110273 | PDO | $ 1,365.33 | $ 8,878.47 | $ - | $ 1,725.23 | $ 5,977.08 | $ 2,341.03 | $ 8,318.11 |
| 61 | 112225 | No | $ 156.20 | $ 9,966.90 | $ - | $ 3,033.25 | $ 5,442.98 | $ 2,131.84 | $ 7,574.82 |
| 62 | 110150 | PDO | $ - | $ 10,051.47 | $ - | $ 29.40 | $ 5,028.68 | $ 1,969.57 | $ 6,998.25 |
| 63 | 112381 | No | $ 1,729.68 | $ 7,888.73 | $ - | $ 1,277.61 | $ 5,801.80 | $ 2,272.38 | $ 8,074.18 |
| 64 | 112563 | No | $ 1,368.87 | $ 8,804.38 | $ - | $ - | $ 5,771.06 | $ 2,260.34 | $ 8,031.40 |
| 65 | 112535 | No | $ 1,636.77 | $ 8,565.04 | $ - | $ - | $ 5,919.29 | $ 2,318.39 | $ 8,237.68 |
| 66 | 111682 | No | $ - | $ 9,972.60 | $ - | $ 312.08 | $ 5,017.51 | $ 1,965.20 | $ 6,982.71 |
| 67 | 111884 | No | $ - | $ 9,972.60 | $ - | $ 3,281.25 | $ 5,314.43 | $ 2,081.49 | $ 7,395.92 |
| 68 | 111921 | No | $ - | $ 9,972.60 | $ - | $ - | $ 4,986.30 | $ 1,952.97 | $ 6,939.28 |
| 69 | 112295 | No | $ 1,442.38 | $ 8,736.34 | $ - | $ 360.22 | $ 5,846.57 | $ 2,289.91 | $ 8,136.49 |
| 70 | 112565 | No | $ - | $ 9,955.51 | $ - | $ - | $ 4,977.75 | $ 1,949.63 | $ 6,927.38 |
| 71 | 110474 | No | $ - | $ 9,944.11 | $ - | $ 2,829.81 | $ 5,255.04 | $ 2,058.23 | $ 7,313.26 |
| 72 | 119281 | No | $ 821.93 | $ 9,157.93 | $ - | $ 3,307.82 | $ 5,731.68 | $ 2,244.91 | $ 7,976.59 |
| 73 | 112335 | No | $ 148.51 | $ 9,858.17 | $ - | $ 125.12 | $ 5,090.11 | $ 1,993.63 | $ 7,083.74 |
| 74 | 111982 | No | $ - | $ 10,029.59 | $ - | $ - | $ 5,014.79 | $ 1,964.13 | $ 6,978.93 |
| 75 | 111955 | No | $ 1,310.61 | $ 7,901.37 | $ - | $ 6,460.61 | $ 5,907.35 | $ 2,313.72 | $ 8,221.08 |
| 76 | 110666 | No | $ 939.75 | $ 9,066.52 | $ - | $ - | $ 5,473.01 | $ 2,143.60 | $ 7,616.61 |
| 77 | 112553 | No | $ 903.65 | $ 9,082.19 | $ - | $ - | $ 5,444.74 | $ 2,132.53 | $ 7,577.27 |
| 78 | 110245 | No | $ - | $ 9,867.24 | $ - | $ 2,811.80 | $ 5,214.80 | $ 2,042.47 | $ 7,257.27 |

| | | | [A] | [B] | [C] | [D] | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] | [F] | [G] = [E] + [F] |
|---|---|---|---|---|---|---|---|---|---|
| | | | | **Employee** | | | | | |
| # | ID | Benefits Waived | Prty. Pre-Petition PDO Accr'd Claims | Remaining Priority WARN Claim | Potential Est. Unsecured WARN Claim | Potential Est. Unsecured PDO Claim | Employee Net Settlement Amount | Employee WARN Act Legal Fees | Employee Total Settlement Amount |
| 79 | 111516 | No | $ - | $ 8,821.92 | $ - | $ 8,846.16 | $ 5,295.58 | $ 2,074.11 | $ 7,369.69 |
| 80 | 110000 | No | $ - | $ 9,843.47 | $ - | $ 2,123.33 | $ 5,134.07 | $ 2,010.85 | $ 7,144.92 |
| 81 | 111448 | No | $ - | $ 9,731.27 | $ - | $ 3,095.84 | $ 5,175.22 | $ 2,026.97 | $ 7,202.18 |
| 82 | 110328 | PDO | $ - | $ 9,666.19 | $ - | $ 3,938.62 | $ 5,226.96 | $ 2,047.23 | $ 7,274.19 |
| 83 | 111500 | No | $ - | $ 9,655.47 | $ - | $ 853.18 | $ 4,913.06 | $ 1,924.29 | $ 6,837.34 |
| 84 | 112444 | No | $ 2,443.52 | $ 7,610.52 | $ - | $ 394.42 | $ 6,288.22 | $ 2,462.89 | $ 8,751.12 |
| 85 | 112595 | No | $ 674.69 | $ 9,199.75 | $ - | $ - | $ 5,274.57 | $ 2,065.88 | $ 7,340.44 |
| 86 | 111762 | No | $ - | $ 9,707.62 | $ - | $ 0.00 | $ 4,853.81 | $ 1,901.08 | $ 6,754.89 |
| 87 | 112536 | No | $ 1,882.53 | $ 8,072.11 | $ - | $ - | $ 5,918.58 | $ 2,318.12 | $ 8,236.70 |
| 88 | 111833 | No | $ 438.58 | $ 9,239.99 | $ - | $ 1,257.18 | $ 5,184.29 | $ 2,030.52 | $ 7,214.81 |
| 89 | 112076 | No | $ - | $ 9,573.70 | $ - | $ - | $ 4,786.85 | $ 1,874.86 | $ 6,661.70 |
| 90 | 110491 | No | $ - | $ 9,640.20 | $ - | $ - | $ 4,820.10 | $ 1,887.88 | $ 6,707.98 |
| 91 | 111366 | No | $ 506.24 | $ 9,195.54 | $ - | $ 2,773.77 | $ 5,381.39 | $ 2,107.72 | $ 7,489.10 |
| 92 | 111313 | PDO | $ - | $ 9,365.47 | $ - | $ 3,034.67 | $ 4,986.20 | $ 1,952.94 | $ 6,939.14 |
| 93 | 110035 | No | $ 547.36 | $ 9,037.57 | $ - | $ 672.36 | $ 5,133.38 | $ 2,010.58 | $ 7,143.97 |
| 94 | 111070 | No | $ - | $ 9,392.37 | $ - | $ 16.12 | $ 4,697.80 | $ 1,839.98 | $ 6,537.77 |
| 95 | 110268 | PDO | $ 2,769.78 | $ 7,025.27 | $ - | $ 395.75 | $ 6,321.99 | $ 2,476.12 | $ 8,798.11 |
| 96 | 112525 | No | $ 1,006.41 | $ 8,668.19 | $ - | $ - | $ 5,340.51 | $ 2,091.70 | $ 7,432.21 |
| 97 | 111654 | PDO | $ - | $ 9,376.92 | $ - | $ 242.74 | $ 4,712.74 | $ 1,845.83 | $ 6,558.56 |
| 98 | 111316 | No | $ 1,269.14 | $ 8,169.67 | $ - | $ 2,020.96 | $ 5,556.07 | $ 2,176.14 | $ 7,732.21 |
| 99 | 111201 | No | $ - | $ 9,402.74 | $ - | $ - | $ 4,701.37 | $ 1,841.38 | $ 6,542.75 |
| 100 | 112075 | No | $ - | $ 9,402.74 | $ - | $ 3,255.45 | $ 5,026.91 | $ 1,968.88 | $ 6,995.80 |
| 101 | 111591 | No | $ - | $ 9,402.74 | $ - | $ - | $ 4,701.37 | $ 1,841.38 | $ 6,542.75 |
| 102 | 112023 | No | $ - | $ 9,402.74 | $ - | $ - | $ 4,701.37 | $ 1,841.38 | $ 6,542.75 |
| 103 | 111852 | No | $ - | $ 9,402.74 | $ - | $ - | $ 4,701.37 | $ 1,841.38 | $ 6,542.75 |
| 104 | 112072 | No | $ - | $ 9,402.74 | $ - | $ - | $ 4,701.37 | $ 1,841.38 | $ 6,542.75 |
| 105 | 112531 | No | $ 118.05 | $ 9,314.70 | $ - | $ - | $ 4,775.40 | $ 1,870.37 | $ 6,645.77 |
| 106 | 111630 | No | $ 284.82 | $ 9,063.56 | $ - | $ 912.55 | $ 4,907.85 | $ 1,922.25 | $ 6,830.10 |
| 107 | 112008 | No | $ - | $ 9,438.36 | $ - | $ 812.50 | $ 4,800.43 | $ 1,880.17 | $ 6,680.60 |
| 108 | 110968 | No | $ 447.98 | $ 8,911.75 | $ - | $ 3,777.65 | $ 5,281.61 | $ 2,068.64 | $ 7,350.25 |
| 109 | 112071 | No | $ - | $ 9,340.05 | $ - | $ 1,787.60 | $ 4,848.79 | $ 1,899.11 | $ 6,747.90 |
| 110 | 111486 | No | $ 40.83 | $ 9,174.79 | $ - | $ 3,828.42 | $ 5,011.07 | $ 1,962.68 | $ 6,973.75 |
| 111 | 111983 | No | $ - | $ 9,380.97 | $ - | $ 183.25 | $ 4,708.81 | $ 1,844.29 | $ 6,553.10 |
| 112 | 111690 | No | $ - | $ 9,174.79 | $ - | $ 3,704.17 | $ 4,957.81 | $ 1,941.82 | $ 6,899.63 |
| 113 | 112532 | No | $ - | $ 9,402.74 | $ - | $ - | $ 4,701.37 | $ 1,841.38 | $ 6,542.75 |
| 114 | 111882 | No | $ - | $ 9,402.74 | $ - | $ - | $ 4,701.37 | $ 1,841.38 | $ 6,542.75 |
| 115 | 112510 | No | $ - | $ 9,402.74 | $ - | $ - | $ 4,701.37 | $ 1,841.38 | $ 6,542.75 |
| 116 | 112383 | No | $ - | $ 9,402.74 | $ - | $ - | $ 4,701.37 | $ 1,841.38 | $ 6,542.75 |
| 117 | 112374 | No | $ - | $ 9,402.74 | $ - | $ - | $ 4,701.37 | $ 1,841.38 | $ 6,542.75 |
| 118 | 112197 | No | $ - | $ 9,300.16 | $ - | $ - | $ 4,650.08 | $ 1,821.29 | $ 6,471.37 |
| 119 | 110862 | No | $ 1,458.91 | $ 8,009.42 | $ - | $ - | $ 5,463.62 | $ 2,139.92 | $ 7,603.55 |
| 120 | 110400 | No | $ - | $ 9,135.47 | $ - | $ 2,018.40 | $ 4,769.58 | $ 1,868.09 | $ 6,637.67 |
| 121 | 112471 | No | $ - | $ 9,217.48 | $ - | $ - | $ 4,608.74 | $ 1,805.09 | $ 6,413.83 |
| 122 | 110090 | No | $ - | $ 9,183.97 | $ - | $ 463.20 | $ 4,638.30 | $ 1,816.67 | $ 6,454.98 |
| 123 | 110520 | No | $ - | $ 9,175.59 | $ - | $ 1,050.97 | $ 4,692.89 | $ 1,838.06 | $ 6,530.95 |
| 124 | 111578 | No | $ - | $ 9,232.98 | $ - | $ 1,974.31 | $ 4,813.92 | $ 1,885.46 | $ 6,699.38 |
| 125 | 112468 | PDO | $ 2,245.55 | $ 7,220.16 | $ - | $ - | $ 5,855.63 | $ 2,293.46 | $ 8,149.09 |
| 126 | 112182 | No | $ 253.97 | $ 9,006.46 | $ - | $ - | $ 4,757.20 | $ 1,863.24 | $ 6,620.44 |

| # | ID | Benefits Waived | [A] Prty. Pre-Petition PDO Accr'd Claims | [B] Remaining Priority WARN Claim | [C] Potential Est. Unsecured WARN Claim | [D] Potential Est. Unsecured PDO Claim | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] Employee Net Settlement Amount | [F] Employee WARN Act Legal Fees | [G] = [E] + [F] Employee Total Settlement Amount |
|---|---|---|---|---|---|---|---|---|---|
| 127 | 110359 | No | $ 1,216.15 | $ 8,072.62 | $ - | $ 1,998.64 | $ 5,452.32 | $ 2,135.50 | $ 7,587.82 |
| 128 | 111472 | No | $ 1,073.28 | $ 8,115.76 | $ - | $ 2,558.84 | $ 5,387.05 | $ 2,109.93 | $ 7,496.98 |
| 129 | 112456 | No | $ - | $ 9,132.05 | $ - | $ - | $ 4,566.03 | $ 1,788.37 | $ 6,354.39 |
| 130 | 111616 | No | $ 936.94 | $ 7,506.30 | $ - | $ 4,951.30 | $ 5,185.22 | $ 2,030.89 | $ 7,216.11 |
| 131 | 111718 | No | $ 521.03 | $ 8,483.32 | $ - | $ 3,559.51 | $ 5,118.64 | $ 2,004.81 | $ 7,123.45 |
| 132 | 111966 | No | $ 2,464.00 | $ 6,355.91 | $ - | $ 2,299.91 | $ 5,871.95 | $ 2,299.85 | $ 8,171.80 |
| 133 | 110730 | PDO | $ 97.18 | $ 9,029.48 | $ - | $ 1,732.39 | $ 4,785.16 | $ 1,874.19 | $ 6,659.36 |
| 134 | 112139 | No | $ 615.73 | $ 8,565.04 | $ - | $ 2,163.32 | $ 5,114.58 | $ 2,003.22 | $ 7,117.80 |
| 135 | 111562 | No | $ 319.90 | $ 8,750.25 | $ - | $ 1,656.80 | $ 4,860.70 | $ 1,903.78 | $ 6,764.48 |
| 136 | 112320 | No | $ 792.59 | $ 8,249.34 | $ - | $ 1,947.07 | $ 5,111.96 | $ 2,002.19 | $ 7,114.15 |
| 137 | 111688 | No | $ - | $ 9,060.82 | $ - | $ - | $ 4,530.41 | $ 1,774.42 | $ 6,304.83 |
| 138 | 110258 | No | $ - | $ 7,889.75 | $ - | $ 5,996.73 | $ 4,544.55 | $ 1,779.95 | $ 6,324.50 |
| 139 | 112613 | PDO | $ 212.64 | $ 8,862.51 | $ - | $ - | $ 4,643.89 | $ 1,818.86 | $ 6,462.76 |
| 140 | 111213 | No | $ - | $ 8,831.40 | $ - | $ 2,819.85 | $ 4,697.68 | $ 1,839.93 | $ 6,537.61 |
| 141 | 110999 | No | $ - | $ 8,797.32 | $ - | $ 2,703.26 | $ 4,668.98 | $ 1,828.69 | $ 6,497.68 |
| 142 | 110823 | No | $ - | $ 8,547.60 | $ - | $ 3,219.10 | $ 4,595.71 | $ 1,799.99 | $ 6,395.70 |
| 143 | 111094 | No | $ 1,314.14 | $ 7,697.25 | $ - | $ 2,794.30 | $ 5,442.20 | $ 2,131.53 | $ 7,573.73 |
| 144 | 110308 | No | $ 150.38 | $ 8,717.65 | $ - | $ 1,662.99 | $ 4,675.50 | $ 1,831.24 | $ 6,506.74 |
| 145 | 111931 | No | $ - | $ 8,960.15 | $ - | $ 3,047.13 | $ 4,784.79 | $ 1,874.05 | $ 6,658.84 |
| 146 | 111655 | No | $ 1,205.95 | $ 7,824.22 | $ - | $ 1,463.16 | $ 5,264.38 | $ 2,061.89 | $ 7,326.26 |
| 147 | 111014 | No | $ - | $ 8,889.86 | $ - | $ - | $ 4,444.93 | $ 1,740.94 | $ 6,185.87 |
| 148 | 112336 | No | $ - | $ 8,889.86 | $ - | $ - | $ 4,444.93 | $ 1,740.94 | $ 6,185.87 |
| 149 | 111929 | No | $ - | $ 8,889.86 | $ - | $ - | $ 4,444.93 | $ 1,740.94 | $ 6,185.87 |
| 150 | 111431 | No | $ - | $ 8,790.25 | $ - | $ 2,411.37 | $ 4,636.26 | $ 1,815.87 | $ 6,452.14 |
| 151 | 110836 | No | $ 100.73 | $ 8,739.25 | $ - | $ 3,381.37 | $ 4,808.50 | $ 1,883.33 | $ 6,691.83 |
| 152 | 112329 | No | $ - | $ 8,723.01 | $ - | $ 235.45 | $ 4,385.05 | $ 1,717.48 | $ 6,102.53 |
| 153 | 112089 | No | $ - | $ 7,901.37 | $ - | $ 1,978.29 | $ 4,148.51 | $ 1,624.84 | $ 5,773.35 |
| 154 | 110507 | No | $ - | $ 8,651.89 | $ - | $ 1,365.36 | $ 4,462.48 | $ 1,747.81 | $ 6,210.29 |
| 155 | 112037 | No | $ - | $ 8,718.90 | $ - | $ - | $ 4,359.45 | $ 1,707.46 | $ 6,066.91 |
| 156 | 112304 | No | $ - | $ 8,718.90 | $ - | $ - | $ 4,359.45 | $ 1,707.46 | $ 6,066.91 |
| 157 | 111797 | No | $ - | $ 8,718.90 | $ - | $ - | $ 4,359.45 | $ 1,707.46 | $ 6,066.91 |
| 158 | 112260 | No | $ - | $ 8,718.90 | $ - | $ - | $ 4,359.45 | $ 1,707.46 | $ 6,066.91 |
| 159 | 112551 | No | $ - | $ 8,718.90 | $ - | $ - | $ 4,359.45 | $ 1,707.46 | $ 6,066.91 |
| 160 | 112315 | No | $ - | $ 8,718.90 | $ - | $ - | $ 4,359.45 | $ 1,707.46 | $ 6,066.91 |
| 161 | 111925 | No | $ - | $ 8,718.90 | $ - | $ - | $ 4,359.45 | $ 1,707.46 | $ 6,066.91 |
| 162 | 111464 | No | $ - | $ 8,718.90 | $ - | $ - | $ 4,359.45 | $ 1,707.46 | $ 6,066.91 |
| 163 | 111474 | No | $ - | $ 8,718.90 | $ - | $ - | $ 4,359.45 | $ 1,707.46 | $ 6,066.91 |
| 164 | 112457 | No | $ - | $ 8,718.90 | $ - | $ - | $ 4,359.45 | $ 1,707.46 | $ 6,066.91 |
| 165 | 112292 | No | $ - | $ 8,718.90 | $ - | $ - | $ 4,359.45 | $ 1,707.46 | $ 6,066.91 |
| 166 | 110284 | No | $ - | $ 7,844.05 | $ - | $ 3,873.81 | $ 4,309.41 | $ 1,687.86 | $ 5,997.26 |
| 167 | 112485 | No | $ 212.64 | $ 8,534.27 | $ - | $ - | $ 4,479.77 | $ 1,754.58 | $ 6,234.36 |
| 168 | 110058 | No | $ 891.78 | $ 7,774.98 | $ - | $ 968.40 | $ 4,876.11 | $ 1,909.82 | $ 6,785.92 |
| 169 | 110306 | No | $ - | $ 8,539.74 | $ - | $ 955.85 | $ 4,365.45 | $ 1,709.81 | $ 6,075.26 |
| 170 | 111941 | No | $ 917.32 | $ 7,203.07 | $ - | $ 4,309.45 | $ 4,950.20 | $ 1,938.83 | $ 6,889.03 |
| 171 | 112233 | No | $ - | $ 8,547.95 | $ - | $ - | $ 4,273.97 | $ 1,673.98 | $ 5,947.95 |
| 172 | 111647 | No | $ - | $ 8,547.95 | $ - | $ 1,605.00 | $ 4,434.47 | $ 1,736.84 | $ 6,171.31 |
| 173 | 112528 | No | $ - | $ 8,547.95 | $ - | $ - | $ 4,273.97 | $ 1,673.98 | $ 5,947.95 |
| 174 | 111746 | No | $ - | $ 8,547.95 | $ - | $ - | $ 4,273.97 | $ 1,673.98 | $ 5,947.95 |

| | | | [A] | [B] | [C] | [D] | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] | [F] | [G] = [E] + [F] |
|---|---|---|---|---|---|---|---|---|---|
| | | | Employee | | | | | | |
| # | ID | Benefits Waived | Prty. Pre-Petition PDO Accr'd Claims | Remaining Priority WARN Claim | Potential Est. Unsecured WARN Claim | Potential Est. Unsecured PDO Claim | Employee Net Settlement Amount | Employee WARN Act Legal Fees | Employee Total Settlement Amount |
| 175 | 110470 | No | $ - | $ 8,547.95 | $ - | $ - | $ 4,273.97 | $ 1,673.98 | $ 5,947.95 |
| 176 | 112113 | No | $ - | $ 8,547.95 | $ - | $ - | $ 4,273.97 | $ 1,673.98 | $ 5,947.95 |
| 177 | 110895 | No | $ - | $ 8,547.95 | $ - | $ - | $ 4,273.97 | $ 1,673.98 | $ 5,947.95 |
| 178 | 111903 | No | $ - | $ 8,547.95 | $ - | $ - | $ 4,273.97 | $ 1,673.98 | $ 5,947.95 |
| 179 | 112494 | No | $ 405.70 | $ 8,251.39 | $ - | $ - | $ 4,531.40 | $ 1,774.80 | $ 6,306.20 |
| 180 | 111706 | No | $ 1,836.71 | $ 6,317.07 | $ - | $ 2,429.20 | $ 5,238.17 | $ 2,051.62 | $ 7,289.79 |
| 181 | 110436 | No | $ 869.62 | $ 7,675.37 | $ - | $ 1,761.19 | $ 4,883.42 | $ 1,912.68 | $ 6,796.10 |
| 182 | 112438 | No | $ 1,509.78 | $ 7,171.73 | $ - | $ 371.68 | $ 5,132.81 | $ 2,010.36 | $ 7,143.17 |
| 183 | 119270 | No | $ - | $ 8,359.55 | $ - | $ 1,883.64 | $ 4,368.14 | $ 1,710.86 | $ 6,079.00 |
| 184 | 111863 | No | $ 1,122.08 | $ 7,550.68 | $ - | $ 413.33 | $ 4,938.76 | $ 1,934.35 | $ 6,873.11 |
| 185 | 111454 | No | $ - | $ 8,442.81 | $ - | $ 3,194.53 | $ 4,540.86 | $ 1,778.51 | $ 6,319.36 |
| 186 | 110228 | No | $ 1,181.87 | $ 7,333.45 | $ - | $ 2,278.85 | $ 5,076.49 | $ 1,988.30 | $ 7,064.78 |
| 187 | 111836 | No | $ 783.52 | $ 7,701.70 | $ - | $ 2,990.53 | $ 4,933.42 | $ 1,932.26 | $ 6,865.68 |
| 188 | 110651 | No | $ - | $ 8,183.92 | $ - | $ 4,322.93 | $ 4,524.25 | $ 1,772.00 | $ 6,296.26 |
| 189 | 112487 | No | $ 1,752.06 | $ 6,761.42 | $ - | $ - | $ 5,132.78 | $ 2,010.34 | $ 7,143.12 |
| 190 | 112569 | PDO | $ 963.52 | $ 7,436.71 | $ - | $ - | $ 4,681.88 | $ 1,833.74 | $ 6,515.62 |
| 191 | 110933 | No | $ - | $ 8,206.03 | $ - | $ - | $ 4,103.01 | $ 1,607.02 | $ 5,710.03 |
| 192 | 112574 | No | $ 804.49 | $ 7,013.70 | $ - | $ - | $ 4,311.34 | $ 1,688.61 | $ 5,999.95 |
| 193 | 111709 | No | $ 288.60 | $ 7,814.36 | $ - | $ 1,972.40 | $ 4,393.02 | $ 1,720.61 | $ 6,113.63 |
| 194 | 110540 | No | $ 238.30 | $ 7,981.73 | $ - | $ 125.47 | $ 4,241.72 | $ 1,661.34 | $ 5,903.06 |
| 195 | 111588 | No | $ 236.85 | $ 8,017.97 | $ - | $ 834.82 | $ 4,329.31 | $ 1,695.65 | $ 6,024.97 |
| 196 | 112103 | No | $ 491.53 | $ 7,646.99 | $ - | $ 3,079.41 | $ 4,622.97 | $ 1,810.67 | $ 6,433.64 |
| 197 | 111290 | No | $ - | $ 8,251.39 | $ - | $ 1,266.28 | $ 4,252.32 | $ 1,665.50 | $ 5,917.82 |
| 198 | 111996 | No | $ 995.45 | $ 6,794.52 | $ - | $ 1,880.99 | $ 4,580.81 | $ 1,794.16 | $ 6,374.97 |
| 199 | 110116 | No | $ - | $ 8,239.31 | $ - | $ 36.83 | $ 4,123.34 | $ 1,614.98 | $ 5,738.31 |
| 200 | 110073 | No | $ 214.45 | $ 7,927.02 | $ - | $ 2,367.67 | $ 4,414.73 | $ 1,729.11 | $ 6,143.84 |
| 201 | 112243 | No | $ 1,350.51 | $ 6,909.93 | $ - | $ 1,391.37 | $ 4,944.61 | $ 1,936.65 | $ 6,881.26 |
| 202 | 112542 | No | $ 1,053.64 | $ 7,284.90 | $ - | $ - | $ 4,696.09 | $ 1,839.31 | $ 6,535.40 |
| 203 | 111049 | No | $ 195.62 | $ 7,907.88 | $ - | $ 6.75 | $ 4,150.24 | $ 1,625.51 | $ 5,775.75 |
| 204 | 111415 | No | $ - | $ 7,324.56 | $ - | $ 5,199.42 | $ 4,182.22 | $ 1,638.04 | $ 5,820.27 |
| 205 | 112284 | No | $ 50.99 | $ 8,072.11 | $ - | $ 2,379.25 | $ 4,324.97 | $ 1,693.95 | $ 6,018.93 |
| 206 | 111573 | No | $ - | $ 7,870.72 | $ - | $ 2,058.36 | $ 4,141.20 | $ 1,621.97 | $ 5,763.17 |
| 207 | 110355 | No | $ - | $ 8,149.04 | $ - | $ - | $ 4,074.52 | $ 1,595.86 | $ 5,670.38 |
| 208 | 112500 | No | $ 1,701.12 | $ 6,564.82 | $ - | $ - | $ 4,983.53 | $ 1,951.89 | $ 6,935.42 |
| 209 | 112274 | No | $ 216.53 | $ 7,818.52 | $ - | $ 1,183.00 | $ 4,244.09 | $ 1,662.28 | $ 5,906.37 |
| 210 | 111928 | No | $ - | $ 7,219.10 | $ - | $ 4,010.82 | $ 4,010.63 | $ 1,570.84 | $ 5,581.47 |
| 211 | 110054 | No | $ - | $ 7,927.02 | $ - | $ 677.65 | $ 4,031.28 | $ 1,578.92 | $ 5,610.20 |
| 212 | 111046 | No | $ - | $ 7,927.02 | $ - | $ 3,295.03 | $ 4,293.01 | $ 1,681.44 | $ 5,974.45 |
| 213 | 112222 | No | $ - | $ 7,767.80 | $ - | $ - | $ 3,883.90 | $ 1,521.20 | $ 5,405.10 |
| 214 | 112433 | No | $ 582.79 | $ 7,477.74 | $ - | $ 358.83 | $ 4,357.55 | $ 1,706.71 | $ 6,064.26 |
| 215 | 112445 | No | $ 192.70 | $ 7,777.21 | $ - | $ 190.12 | $ 4,100.31 | $ 1,605.96 | $ 5,706.27 |
| 216 | 111568 | No | $ - | $ 7,849.24 | $ - | $ 495.67 | $ 3,974.19 | $ 1,556.56 | $ 5,530.75 |
| 217 | 112282 | No | $ - | $ 7,890.61 | $ - | $ 1,367.00 | $ 4,082.00 | $ 1,598.79 | $ 5,680.79 |
| 218 | 112591 | PDO | $ 295.15 | $ 7,610.52 | $ - | $ - | $ 4,100.41 | $ 1,606.00 | $ 5,706.40 |
| 219 | 111622 | No | $ - | $ 7,838.47 | $ - | $ 1,792.74 | $ 4,098.51 | $ 1,605.25 | $ 5,703.76 |
| 220 | 111911 | No | $ - | $ 7,749.23 | $ - | $ - | $ 3,874.61 | $ 1,517.56 | $ 5,392.17 |
| 221 | 110585 | No | $ - | $ 7,729.17 | $ - | $ 2,824.28 | $ 4,147.01 | $ 1,624.25 | $ 5,771.26 |
| 222 | 110995 | PDO | $ - | $ 7,697.25 | $ - | $ 3,330.37 | $ 4,181.66 | $ 1,637.82 | $ 5,819.49 |

| # | ID | Benefits Waived | [A] Prty. Pre-Petition PDO Accr'd Claims | [B] Remaining Priority WARN Claim | [C] Potential Est. Unsecured WARN Claim | [D] Potential Est. Unsecured PDO Claim | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] Employee Net Settlement Amount | [F] Employee WARN Act Legal Fees | [G] = [E] + [F] Employee Total Settlement Amount |
|---|---|---|---|---|---|---|---|---|---|
| 223 | 111824 | No | $ - | $ 7,835.62 | $ - | $ - | $ 3,917.81 | $ 1,534.48 | 5,452.29 |
| 224 | 111779 | No | $ - | $ 7,835.62 | $ - | $ - | $ 3,917.81 | $ 1,534.48 | 5,452.29 |
| 225 | 112545 | No | $ 1,064.74 | $ 6,136.99 | $ - | $ - | $ 4,133.24 | $ 1,618.86 | 5,752.09 |
| 226 | 112095 | No | $ 255.83 | $ 7,550.68 | $ - | $ 907.50 | $ 4,121.93 | $ 1,614.43 | 5,736.35 |
| 227 | 112230 | No | $ 603.66 | $ 7,171.73 | $ - | $ 325.11 | $ 4,222.03 | $ 1,653.64 | 5,875.67 |
| 228 | 111450 | No | $ - | $ 7,614.57 | $ - | $ 3,307.36 | $ 4,138.02 | $ 1,620.73 | 5,758.75 |
| 229 | 111436 | No | $ 1,682.33 | $ 5,584.66 | $ - | $ 3,346.00 | $ 4,809.26 | $ 1,883.63 | 6,692.90 |
| 230 | 110905 | PDO | $ - | $ 7,486.63 | $ - | $ 2,575.64 | $ 4,000.88 | $ 1,567.02 | 5,567.90 |
| 231 | 110443 | No | $ - | $ 7,486.63 | $ - | $ 3,259.17 | $ 4,069.23 | $ 1,593.79 | 5,663.02 |
| 232 | 111691 | No | $ - | $ 7,556.38 | $ - | $ 599.35 | $ 3,838.13 | $ 1,503.27 | 5,341.40 |
| 233 | 111778 | No | $ 364.79 | $ 7,190.25 | $ - | $ 98.71 | $ 3,969.79 | $ 1,554.84 | 5,524.62 |
| 234 | 112240 | No | $ - | $ 7,368.16 | $ - | $ 351.21 | $ 3,719.20 | $ 1,456.69 | 5,175.89 |
| 235 | 111178 | No | $ - | $ 7,385.42 | $ - | $ - | $ 3,692.71 | $ 1,446.32 | 5,139.03 |
| 236 | 111689 | No | $ - | $ 7,385.42 | $ - | $ - | $ 3,692.71 | $ 1,446.32 | 5,139.03 |
| 237 | 112278 | PDO | $ 631.09 | $ 6,841.09 | $ - | $ 150.06 | $ 4,066.64 | $ 1,592.77 | 5,659.41 |
| 238 | 110948 | PDO | $ - | $ 7,360.58 | $ - | $ 1,938.78 | $ 3,874.17 | $ 1,517.39 | 5,391.55 |
| 239 | 112324 | PDO | $ - | $ 7,411.18 | $ - | $ 492.70 | $ 3,754.86 | $ 1,470.66 | 5,225.52 |
| 240 | 110044 | No | $ 347.83 | $ 6,978.09 | $ - | $ 2,101.21 | $ 4,047.00 | $ 1,585.08 | 5,632.08 |
| 241 | 110461 | No | $ - | $ 7,271.95 | $ - | $ 1,054.81 | $ 3,741.46 | $ 1,465.41 | 5,206.86 |
| 242 | 110653 | No | $ 958.79 | $ 6,449.48 | $ - | $ 1,502.59 | $ 4,333.79 | $ 1,697.40 | 6,031.19 |
| 243 | 112306 | No | $ - | $ 7,328.44 | $ - | $ 618.14 | $ 3,726.03 | $ 1,459.37 | 5,185.40 |
| 244 | 112594 | No | $ 509.01 | $ 6,940.59 | $ - | $ - | $ 3,979.30 | $ 1,558.56 | 5,537.87 |
| 245 | 112606 | No | $ 334.02 | $ 7,089.67 | $ - | $ - | $ 3,878.85 | $ 1,519.22 | 5,398.08 |
| 246 | 111043 | No | $ - | $ 7,286.72 | $ - | $ - | $ 3,643.36 | $ 1,426.99 | 5,070.35 |
| 247 | 111895 | No | $ - | $ 7,077.70 | $ - | $ - | $ 3,538.85 | $ 1,386.05 | 4,924.90 |
| 248 | 112143 | No | $ - | $ 7,123.29 | $ - | $ - | $ 3,561.64 | $ 1,394.98 | 4,956.63 |
| 249 | 112522 | No | $ - | $ 7,123.29 | $ - | $ - | $ 3,561.64 | $ 1,394.98 | 4,956.63 |
| 250 | 110167 | No | $ - | $ 7,123.29 | $ - | $ - | $ 3,561.64 | $ 1,394.98 | 4,956.63 |
| 251 | 111252 | No | $ - | $ 7,123.29 | $ - | $ - | $ 3,561.64 | $ 1,394.98 | 4,956.63 |
| 252 | 112611 | No | $ - | $ 7,123.29 | $ - | $ - | $ 3,561.64 | $ 1,394.98 | 4,956.63 |
| 253 | 112355 | No | $ - | $ 7,123.29 | $ - | $ - | $ 3,561.64 | $ 1,394.98 | 4,956.63 |
| 254 | 111145 | No | $ - | $ 7,123.29 | $ - | $ - | $ 3,561.64 | $ 1,394.98 | 4,956.63 |
| 255 | 112109 | No | $ - | $ 7,123.29 | $ - | $ - | $ 3,561.64 | $ 1,394.98 | 4,956.63 |
| 256 | 111360 | No | $ - | $ 7,123.29 | $ - | $ - | $ 3,561.64 | $ 1,394.98 | 4,956.63 |
| 257 | 111696 | No | $ - | $ 7,060.15 | $ - | $ - | $ 3,530.07 | $ 1,382.62 | 4,912.69 |
| 258 | 112081 | No | $ 451.73 | $ 6,685.18 | $ - | $ 248.07 | $ 3,819.13 | $ 1,495.83 | 5,314.96 |
| 259 | 112001 | No | $ 784.53 | $ 6,486.86 | $ - | $ 2,017.36 | $ 4,229.70 | $ 1,656.64 | 5,886.33 |
| 260 | 112600 | No | $ 350.41 | $ 6,761.42 | $ - | $ - | $ 3,731.13 | $ 1,461.36 | 5,192.49 |
| 261 | 110043 | PDO | $ - | $ 6,978.09 | $ - | $ 1,154.42 | $ 3,604.49 | $ 1,411.76 | 5,016.25 |
| 262 | 110065 | No | $ - | $ 6,978.09 | $ - | $ 2,702.82 | $ 3,759.33 | $ 1,472.41 | 5,231.73 |
| 263 | 111256 | PDO | $ 425.50 | $ 6,593.43 | $ - | $ 1,746.43 | $ 3,896.85 | $ 1,526.27 | 5,423.13 |
| 264 | 110349 | No | $ - | $ 6,894.20 | $ - | $ 2,654.55 | $ 3,712.56 | $ 1,454.09 | 5,166.64 |
| 265 | 111865 | No | $ - | $ 6,963.73 | $ - | $ 2,221.19 | $ 3,703.98 | $ 1,450.73 | 5,154.71 |
| 266 | 111697 | PDO | $ 636.34 | $ 6,349.76 | $ - | $ 18.57 | $ 3,813.08 | $ 1,493.46 | 5,306.54 |
| 267 | 112287 | No | $ - | $ 6,940.02 | $ - | $ - | $ 3,470.01 | $ 1,359.09 | 4,829.10 |
| 268 | 112415 | No | $ 4,934.78 | $ - | $ - | $ 9,065.22 | $ 5,841.30 | $ 2,287.85 | 8,129.15 |
| 269 | 111942 | No | $ - | $ 6,340.52 | $ - | $ 4,505.61 | $ 3,620.82 | $ 1,418.16 | 5,038.98 |
| 270 | 111565 | No | $ - | $ 6,708.09 | $ - | $ 1,719.65 | $ 3,526.01 | $ 1,381.02 | 4,907.03 |

| # | ID | Benefits Waived | [A] Prty. Pre-Petition PDO Accr'd Claims | [B] Remaining Priority WARN Claim | [C] Potential Est. Unsecured WARN Claim | [D] Potential Est. Unsecured PDO Claim | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] Employee Net Settlement Amount | [F] Employee WARN Act Legal Fees | [G] = [E] + [F] Employee Total Settlement Amount |
|---|---|---|---|---|---|---|---|---|---|
| 271 | 110824 | No | $ - | $ 6,725.35 | $ - | $ 1,051.27 | $ 3,467.80 | $ 1,358.23 | $ 4,826.03 |
| 272 | 112193 | No | $ - | $ 6,761.42 | $ - | $ 990.73 | $ 3,479.79 | $ 1,362.92 | $ 4,842.71 |
| 273 | 112502 | No | $ - | $ 6,761.42 | $ - | $ - | $ 3,380.71 | $ 1,324.12 | $ 4,704.83 |
| 274 | 112550 | PDO | $ 411.70 | $ 6,448.28 | $ - | $ - | $ 3,635.84 | $ 1,424.04 | $ 5,059.88 |
| 275 | 111713 | No | $ - | $ 6,663.52 | $ - | $ 2,423.37 | $ 3,574.10 | $ 1,399.86 | $ 4,973.96 |
| 276 | 112124 | No | $ - | $ 6,685.18 | $ - | $ 180.45 | $ 3,360.63 | $ 1,316.25 | $ 4,676.89 |
| 277 | 112185 | Insurance | $ - | $ 6,564.82 | $ - | $ - | $ 3,282.41 | $ 1,285.61 | $ 4,568.03 |
| 278 | 112590 | PDO | $ 308.62 | $ 6,312.37 | $ - | $ - | $ 3,464.81 | $ 1,357.05 | $ 4,821.86 |
| 279 | 112169 | No | $ - | $ 6,396.14 | $ - | $ 989.83 | $ 3,297.05 | $ 1,291.35 | $ 4,588.40 |
| 280 | 112418 | No | $ - | $ 6,422.36 | $ - | $ - | $ 3,211.18 | $ 1,257.72 | $ 4,468.89 |
| 281 | 111442 | No | $ 282.33 | $ 5,584.66 | $ - | $ 2,241.17 | $ 3,298.78 | $ 1,292.03 | $ 4,590.80 |
| 282 | 111521 | No | $ 433.53 | $ 5,805.02 | $ - | $ 954.31 | $ 3,431.47 | $ 1,344.00 | $ 4,775.47 |
| 283 | 112188 | No | $ 214.32 | $ 6,163.75 | $ - | $ 36.39 | $ 3,299.84 | $ 1,292.44 | $ 4,592.28 |
| 284 | 112370 | No | $ 383.29 | $ 5,413.93 | $ - | $ 3,729.73 | $ 3,463.23 | $ 1,356.44 | $ 4,819.66 |
| 285 | 112400 | No | $ - | $ 6,160.22 | $ - | $ - | $ 3,080.11 | $ 1,206.38 | $ 4,286.49 |
| 286 | 112186 | No | $ - | $ 4,931.51 | $ - | $ 3,000.80 | $ 2,765.83 | $ 1,083.29 | $ 3,849.12 |
| 287 | 111539 | No | $ - | $ 5,653.04 | $ - | $ 4,350.85 | $ 3,261.61 | $ 1,277.47 | $ 4,539.07 |
| 288 | 112244 | No | $ - | $ 6,048.18 | $ - | $ - | $ 3,024.09 | $ 1,184.44 | $ 4,208.53 |
| 289 | 112256 | No | $ 238.64 | $ 5,270.15 | $ - | $ 1,586.53 | $ 3,032.37 | $ 1,187.68 | $ 4,220.05 |
| 290 | 111867 | No | $ 613.70 | $ 5,347.59 | $ - | $ - | $ 3,287.50 | $ 1,287.61 | $ 4,575.10 |
| 291 | 111320 | No | $ 613.36 | $ 5,347.59 | $ - | $ 1,535.10 | $ 3,440.67 | $ 1,347.60 | $ 4,788.27 |
| 292 | 111965 | PDO | $ 1,026.12 | $ 4,546.31 | $ - | $ 1,089.40 | $ 3,408.22 | $ 1,334.89 | $ 4,743.11 |
| 293 | 111703 | No | $ - | $ 5,319.32 | $ - | $ 4,141.46 | $ 3,073.80 | $ 1,203.91 | $ 4,277.71 |
| 294 | 110099 | No | $ - | $ 5,539.07 | $ - | $ - | $ 2,769.53 | $ 1,084.74 | $ 3,854.27 |
| 295 | 112398 | No | $ 172.90 | $ 5,624.55 | $ - | $ 549.50 | $ 3,040.12 | $ 1,190.72 | $ 4,230.84 |
| 296 | 112340 | No | $ 510.93 | $ 5,422.25 | $ - | $ - | $ 3,222.05 | $ 1,261.97 | $ 4,484.02 |
| 297 | 110504 | No | $ 207.45 | $ 5,534.40 | $ - | $ - | $ 2,974.65 | $ 1,165.07 | $ 4,139.72 |
| 298 | 112599 | No | $ 470.91 | $ 4,543.23 | $ - | $ - | $ 2,742.53 | $ 1,074.16 | $ 3,816.68 |
| 299 | 112446 | No | $ 535.51 | $ 4,980.72 | $ - | $ 307.29 | $ 3,056.60 | $ 1,197.17 | $ 4,253.77 |
| 300 | 112434 | No | $ - | $ 5,463.85 | $ - | $ 301.24 | $ 2,762.05 | $ 1,081.81 | $ 3,843.85 |
| 301 | 110133 | No | $ - | $ 5,464.59 | $ - | $ 2,013.75 | $ 2,933.67 | $ 1,149.02 | $ 4,082.69 |
| 302 | 112363 | No | $ 1,872.72 | $ 3,475.42 | $ - | $ 563.95 | $ 3,666.83 | $ 1,436.18 | $ 5,103.01 |
| 303 | 112361 | No | $ 1,246.00 | $ 3,966.25 | $ - | $ 1,270.80 | $ 3,356.20 | $ 1,314.52 | $ 4,670.72 |
| 304 | 110967 | PDO | $ - | $ 5,350.22 | $ - | $ 987.84 | $ 2,773.89 | $ 1,086.44 | $ 3,860.34 |
| 305 | 112332 | No | $ 221.17 | $ 5,156.12 | $ - | $ 1,144.20 | $ 2,913.65 | $ 1,141.18 | $ 4,054.84 |
| 306 | 112194 | No | $ - | $ 4,876.50 | $ - | $ - | $ 2,438.25 | $ 954.98 | $ 3,393.23 |
| 307 | 112534 | No | $ 145.45 | $ 5,164.10 | $ - | $ - | $ 2,727.50 | $ 1,068.27 | $ 3,795.78 |
| 308 | 111749 | No | $ - | $ 5,107.23 | $ - | $ 1,544.64 | $ 2,708.08 | $ 1,060.67 | $ 3,768.74 |
| 309 | 111874 | PDO | $ - | $ 5,126.49 | $ - | $ 965.63 | $ 2,659.81 | $ 1,041.76 | $ 3,701.57 |
| 310 | 112414 | No | $ 231.32 | $ 4,880.99 | $ - | $ 415.73 | $ 2,713.39 | $ 1,062.75 | $ 3,776.13 |
| 311 | 111939 | PDO | $ 799.81 | $ 3,999.30 | $ - | $ 912.34 | $ 2,890.69 | $ 1,132.19 | $ 4,022.88 |
| 312 | 111064 | No | $ - | $ 4,914.78 | $ - | $ 2,573.59 | $ 2,714.75 | $ 1,063.28 | $ 3,778.03 |
| 313 | 112463 | PDO | $ 793.16 | $ 4,265.42 | $ - | $ 110.53 | $ 2,936.93 | $ 1,150.30 | $ 4,087.22 |
| 314 | 112575 | No | $ 486.41 | $ 4,190.54 | $ - | $ - | $ 2,581.68 | $ 1,011.16 | $ 3,592.84 |
| 315 | 112477 | No | $ 834.09 | $ 3,830.73 | $ - | $ - | $ 2,749.46 | $ 1,076.88 | $ 3,826.34 |
| 316 | 112248 | PDO | $ 1,063.91 | $ 3,958.61 | $ - | $ 436.50 | $ 3,086.87 | $ 1,209.03 | $ 4,295.90 |
| 317 | 111399 | No | $ 1,066.04 | $ 3,966.25 | $ - | $ - | $ 3,049.16 | $ 1,194.26 | $ 4,243.42 |
| 318 | 112235 | No | $ - | $ 4,830.73 | $ - | $ 785.71 | $ 2,493.94 | $ 976.79 | $ 3,470.73 |

| | | | [A] | [B] | [C] | [D] | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] | [F] | [G] = [E] + [F] |
|---|---|---|---|---|---|---|---|---|---|
| | | | Employee | | | | | | |
| # | ID | Benefits Waived | Prty. Pre-Petition PDO Accr'd Claims | Remaining Priority WARN Claim | Potential Est. Unsecured WARN Claim | Potential Est. Unsecured PDO Claim | Employee Net Settlement Amount | Employee WARN Act Legal Fees | Employee Total Settlement Amount |
| 319 | 112497 | No | $ 195.18 | $ 4,616.23 | $ - | $ 198.85 | $ 2,503.29 | $ 980.46 | $ 3,483.75 |
| 320 | 111916 | No | $ 347.36 | $ 4,124.90 | $ - | $ 198.85 | $ 2,429.69 | $ 951.63 | $ 3,381.33 |
| 321 | 111315 | No | $ 623.67 | $ 4,151.00 | $ - | $ 511.59 | $ 2,750.33 | $ 1,077.22 | $ 3,827.55 |
| 322 | 111823 | No | $ - | $ 4,751.80 | $ - | $ - | $ 2,375.90 | $ 930.56 | $ 3,306.47 |
| 323 | 111693 | No | $ - | $ 4,789.13 | $ - | $ 333.87 | $ 2,427.95 | $ 950.95 | $ 3,378.90 |
| 324 | 110165 | No | $ - | $ 4,657.66 | $ - | $ 1,741.32 | $ 2,502.96 | $ 980.33 | $ 3,483.29 |
| 325 | 112387 | No | $ 427.10 | $ 3,924.93 | $ - | $ 292.13 | $ 2,418.78 | $ 947.36 | $ 3,366.14 |
| 326 | 112544 | No | $ 210.57 | $ 4,469.44 | $ - | $ - | $ 2,445.29 | $ 957.74 | $ 3,403.03 |
| 327 | 112369 | No | $ - | $ 4,131.51 | $ - | $ - | $ 2,065.75 | $ 809.09 | $ 2,874.84 |
| 328 | 112254 | No | $ - | $ 4,536.74 | $ - | $ - | $ 2,268.37 | $ 888.45 | $ 3,156.82 |
| 329 | 112470 | No | $ 835.65 | $ 3,453.94 | $ - | $ - | $ 2,562.62 | $ 1,003.70 | $ 3,566.32 |
| 330 | 112543 | No | $ 743.76 | $ 3,505.17 | $ - | $ - | $ 2,496.35 | $ 977.74 | $ 3,474.09 |
| 331 | 111944 | No | $ - | $ 4,063.75 | $ - | $ 1,816.38 | $ 2,213.51 | $ 866.96 | $ 3,080.48 |
| 332 | 110235 | No | $ 170.40 | $ 4,355.24 | $ - | $ 1,536.93 | $ 2,501.71 | $ 979.84 | $ 3,481.55 |
| 333 | 112511 | No | $ 812.07 | $ 3,488.47 | $ - | $ - | $ 2,556.31 | $ 1,001.22 | $ 3,557.53 |
| 334 | 110660 | No | $ - | $ 4,403.90 | $ - | $ 743.96 | $ 2,276.35 | $ 891.57 | $ 3,167.92 |
| 335 | 112557 | No | $ 395.71 | $ 3,811.24 | $ - | $ - | $ 2,301.33 | $ 901.36 | $ 3,202.68 |
| 336 | 111404 | No | $ - | $ 4,439.23 | $ - | $ - | $ 2,219.62 | $ 869.35 | $ 3,088.97 |
| 337 | 111331 | No | $ - | $ 4,436.78 | $ - | $ 1,751.05 | $ 2,393.50 | $ 937.46 | $ 3,330.95 |
| 338 | 112180 | PDO | $ - | $ 4,308.16 | $ - | $ 174.72 | $ 2,171.55 | $ 850.53 | $ 3,022.08 |
| 339 | 111801 | No | $ 387.74 | $ 4,059.25 | $ - | $ 1,594.66 | $ 2,576.83 | $ 1,009.26 | $ 3,586.10 |
| 340 | 110553 | No | $ 37.01 | $ 4,355.24 | $ - | $ 1,874.12 | $ 2,402.04 | $ 940.80 | $ 3,342.84 |
| 341 | 111759 | No | $ - | $ 3,923.62 | $ - | $ 1,339.34 | $ 2,095.74 | $ 820.84 | $ 2,916.58 |
| 342 | 112191 | No | $ - | $ 4,316.37 | $ - | $ 545.20 | $ 2,212.71 | $ 866.65 | $ 3,079.35 |
| 343 | 112597 | No | $ - | $ 4,387.95 | $ - | $ - | $ 2,193.97 | $ 859.31 | $ 3,053.28 |
| 344 | 111420 | No | $ - | $ 4,225.05 | $ - | $ 1,668.76 | $ 2,279.40 | $ 892.77 | $ 3,172.17 |
| 345 | 111259 | No | $ 197.11 | $ 4,138.23 | $ - | $ 1,185.60 | $ 2,384.78 | $ 934.04 | $ 3,318.82 |
| 346 | 111004 | PDO | $ - | $ 4,254.31 | $ - | $ 935.40 | $ 2,220.70 | $ 869.78 | $ 3,090.47 |
| 347 | 112367 | No | $ 342.26 | $ 3,637.38 | $ - | $ 716.79 | $ 2,232.62 | $ 874.45 | $ 3,107.07 |
| 348 | 111104 | No | $ 1,374.57 | $ 3,066.72 | $ - | $ 10.11 | $ 2,908.94 | $ 1,139.34 | $ 4,048.28 |
| 349 | 111785 | No | $ 756.46 | $ 3,275.46 | $ - | $ 1,584.94 | $ 2,552.69 | $ 999.81 | $ 3,552.49 |
| 350 | 112300 | No | $ 9.24 | $ 4,152.25 | $ - | $ 117.48 | $ 2,097.11 | $ 821.37 | $ 2,918.48 |
| 351 | 112416 | No | $ 841.40 | $ 3,161.43 | $ - | $ 423.73 | $ 2,464.49 | $ 965.26 | $ 3,429.75 |
| 352 | 112362 | PDO | $ 915.00 | $ 3,098.63 | $ - | $ 238.44 | $ 2,488.16 | $ 974.53 | $ 3,462.69 |
| 353 | 111136 | No | $ - | $ 4,185.64 | $ - | $ 1,795.12 | $ 2,272.33 | $ 890.00 | $ 3,162.33 |
| 354 | 110778 | No | $ - | $ 4,190.89 | $ - | $ 1,541.98 | $ 2,249.64 | $ 881.11 | $ 3,130.75 |
| 355 | 111169 | No | $ - | $ 4,231.23 | $ - | $ - | $ 2,115.62 | $ 828.62 | $ 2,944.24 |
| 356 | 111787 | No | $ - | $ 3,797.68 | $ - | $ 1,805.85 | $ 2,079.43 | $ 814.44 | $ 2,893.87 |
| 357 | 112376 | No | $ 286.65 | $ 3,923.51 | $ - | $ 91.35 | $ 2,257.54 | $ 884.21 | $ 3,141.74 |
| 358 | 111653 | No | $ - | $ 4,167.64 | $ - | $ 1,987.29 | $ 2,282.55 | $ 894.00 | $ 3,176.55 |
| 359 | 111216 | No | $ 340.90 | $ 3,829.48 | $ - | $ 1,787.80 | $ 2,434.42 | $ 953.48 | $ 3,387.90 |
| 360 | 112290 | No | $ 1,142.20 | $ 3,119.43 | $ - | $ 175.72 | $ 2,719.49 | $ 1,065.14 | $ 3,784.63 |
| 361 | 112490 | No | $ 646.69 | $ 3,494.29 | $ - | $ - | $ 2,393.83 | $ 937.59 | $ 3,331.42 |
| 362 | 111093 | No | $ 417.31 | $ 3,752.89 | $ - | $ 682.30 | $ 2,361.99 | $ 925.11 | $ 3,287.10 |
| 363 | 111319 | No | $ - | $ 3,825.83 | $ - | $ 438.83 | $ 1,956.80 | $ 766.42 | $ 2,723.21 |
| 364 | 112588 | No | $ 290.90 | $ 3,592.42 | $ - | $ - | $ 2,087.11 | $ 817.45 | $ 2,904.57 |
| 365 | 111855 | PDO | $ 39.47 | $ 4,110.59 | $ - | $ 81.89 | $ 2,102.95 | $ 823.66 | $ 2,926.61 |
| 366 | 111095 | No | $ 140.70 | $ 3,989.04 | $ - | $ 1,053.73 | $ 2,240.59 | $ 877.57 | $ 3,118.16 |

| # | ID | Benefits Waived | [A] Prty. Pre-Petition PDO Accr'd Claims | [B] Remaining Priority WARN Claim | [C] Potential Est. Unsecured WARN Claim | [D] Potential Est. Unsecured PDO Claim | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] Employee Net Settlement Amount | [F] Employee WARN Act Legal Fees | [G] = [E] + [F] Employee Total Settlement Amount |
|---|---|---|---|---|---|---|---|---|---|
| 367 | 112272 | PDO | $ - | $ 4,042.84 | $ - | $ 188.69 | $ 2,040.29 | $ 799.11 | $ 2,839.40 |
| 368 | 111980 | No | $ 580.46 | $ 3,523.12 | $ - | $ 1,426.67 | $ 2,484.69 | $ 973.17 | $ 3,457.86 |
| 369 | 110276 | No | $ - | $ 4,068.31 | $ - | $ 140.99 | $ 2,048.25 | $ 802.23 | $ 2,850.49 |
| 370 | 111984 | No | $ - | $ 3,998.79 | $ - | $ 1,609.45 | $ 2,160.34 | $ 846.14 | $ 3,006.47 |
| 371 | 112482 | PDO | $ 238.80 | $ 3,477.08 | $ - | $ - | $ 1,977.34 | $ 774.46 | $ 2,751.80 |
| 372 | 112105 | No | $ - | $ 3,844.87 | $ - | $ 611.84 | $ 1,983.62 | $ 776.92 | $ 2,760.54 |
| 373 | 112538 | No | $ 93.34 | $ 3,826.69 | $ - | $ - | $ 2,006.68 | $ 785.95 | $ 2,792.63 |
| 374 | 111932 | PDO | $ 95.60 | $ 3,690.66 | $ - | $ 641.99 | $ 2,005.13 | $ 785.35 | $ 2,790.48 |
| 375 | 112593 | No | $ 292.68 | $ 3,275.46 | $ - | $ - | $ 1,930.40 | $ 756.08 | $ 2,686.48 |
| 376 | 111985 | No | $ - | $ 3,846.58 | $ - | $ - | $ 1,923.29 | $ 753.29 | $ 2,676.58 |
| 377 | 111605 | No | $ - | $ 3,846.58 | $ - | $ - | $ 1,923.29 | $ 753.29 | $ 2,676.58 |
| 378 | 111255 | No | $ - | $ 3,846.58 | $ - | $ - | $ 1,923.29 | $ 753.29 | $ 2,676.58 |
| 379 | 112028 | No | $ - | $ 3,846.58 | $ - | $ - | $ 1,923.29 | $ 753.29 | $ 2,676.58 |
| 380 | 112140 | No | $ - | $ 3,800.99 | $ - | $ - | $ 1,900.49 | $ 744.36 | $ 2,644.86 |
| 381 | 111483 | No | $ 0.00 | $ 3,829.48 | $ - | $ 2,150.40 | $ 2,129.78 | $ 834.17 | $ 2,963.95 |
| 382 | 111531 | No | $ - | $ 3,780.02 | $ - | $ 204.04 | $ 1,910.41 | $ 748.25 | $ 2,658.66 |
| 383 | 111579 | PDO | $ 51.25 | $ 3,785.03 | $ - | $ 755.22 | $ 2,019.29 | $ 790.89 | $ 2,810.18 |
| 384 | 112098 | No | $ 95.19 | $ 3,706.96 | $ - | $ 1,137.72 | $ 2,062.44 | $ 807.79 | $ 2,870.23 |
| 385 | 111198 | Both | $ - | $ 3,738.07 | $ - | $ 1,281.26 | $ 1,997.16 | $ 782.22 | $ 2,779.39 |
| 386 | 111999 | No | $ 104.55 | $ 3,714.94 | $ - | $ - | $ 1,962.02 | $ 768.46 | $ 2,730.48 |
| 387 | 111439 | No | $ 75.02 | $ 3,706.96 | $ - | $ 1,272.81 | $ 2,055.79 | $ 805.18 | $ 2,860.97 |
| 388 | 112313 | No | $ 575.70 | $ 2,974.68 | $ - | $ 348.30 | $ 2,097.87 | $ 821.67 | $ 2,919.54 |
| 389 | 110218 | No | $ - | $ 3,766.79 | $ - | $ 1,782.72 | $ 2,061.67 | $ 807.49 | $ 2,869.16 |
| 390 | 112527 | No | $ 459.67 | $ 3,209.24 | $ - | $ - | $ 2,064.29 | $ 808.52 | $ 2,872.81 |
| 391 | 112097 | No | $ - | $ 2,671.23 | $ - | $ 2,150.24 | $ 1,550.64 | $ 607.34 | $ 2,157.98 |
| 392 | 112350 | No | $ 399.54 | $ 3,400.83 | $ - | $ 581.95 | $ 2,158.15 | $ 845.28 | $ 3,003.43 |
| 393 | 112513 | No | $ - | $ 3,761.10 | $ - | $ - | $ 1,880.55 | $ 736.55 | $ 2,617.10 |
| 394 | 110514 | No | $ - | $ 3,712.66 | $ - | $ 81.44 | $ 1,864.47 | $ 730.25 | $ 2,594.73 |
| 395 | 112577 | No | $ 361.86 | $ 3,154.76 | $ - | $ - | $ 1,939.24 | $ 759.54 | $ 2,698.78 |
| 396 | 111893 | No | $ 0.00 | $ 3,706.96 | $ - | $ 2,081.60 | $ 2,061.64 | $ 807.48 | $ 2,869.12 |
| 397 | 110385 | No | $ 359.25 | $ 3,355.35 | $ - | $ 523.95 | $ 2,089.32 | $ 818.32 | $ 2,907.65 |
| 398 | 111930 | No | $ 408.13 | $ 3,094.58 | $ - | $ 1,515.99 | $ 2,107.02 | $ 825.25 | $ 2,932.27 |
| 399 | 112005 | No | $ 452.44 | $ 1,260.27 | $ - | $ 7,008.73 | $ 1,783.45 | $ 698.52 | $ 2,481.98 |
| 400 | 112583 | No | $ 208.06 | $ 3,391.37 | $ - | $ - | $ 1,903.75 | $ 745.64 | $ 2,649.38 |
| 401 | 112033 | Both | $ - | $ 3,305.21 | $ - | $ 420.00 | $ 1,694.60 | $ 663.72 | $ 2,358.32 |
| 402 | 111610 | No | $ - | $ 3,305.21 | $ - | $ 1,818.00 | $ 1,834.40 | $ 718.48 | $ 2,552.88 |
| 403 | 112345 | No | $ 758.44 | $ 2,984.77 | $ - | $ 75.83 | $ 2,258.41 | $ 884.55 | $ 3,142.95 |
| 404 | 112131 | No | $ 230.66 | $ 3,443.11 | $ - | $ - | $ 1,952.22 | $ 764.62 | $ 2,716.84 |
| 405 | 112080 | PDO | $ 790.92 | $ 2,892.62 | $ - | $ 358.74 | $ 2,273.11 | $ 890.30 | $ 3,163.41 |
| 406 | 111860 | No | $ - | $ 3,624.33 | $ - | $ - | $ 1,812.16 | $ 709.77 | $ 2,521.93 |
| 407 | 111409 | PDO | $ 70.04 | $ 3,521.75 | $ - | $ 1,218.08 | $ 1,952.72 | $ 764.82 | $ 2,717.54 |
| 408 | 112014 | No | $ 215.77 | $ 3,393.53 | $ - | $ - | $ 1,912.54 | $ 749.08 | $ 2,661.62 |
| 409 | 111421 | No | $ - | $ 3,248.01 | $ - | $ 2,655.89 | $ 1,889.59 | $ 740.09 | $ 2,629.68 |
| 410 | 111545 | No | $ 546.10 | $ 2,814.38 | $ - | $ 1,124.26 | $ 2,065.71 | $ 809.07 | $ 2,874.79 |
| 411 | 112297 | No | $ 619.72 | $ 3,005.12 | $ - | $ 497.05 | $ 2,171.98 | $ 850.69 | $ 3,022.68 |
| 412 | 112421 | No | $ 634.62 | $ 3,014.58 | $ - | $ 312.46 | $ 2,173.16 | $ 851.16 | $ 3,024.31 |
| 413 | 112307 | No | $ 75.60 | $ 3,493.26 | $ - | $ 105.44 | $ 1,832.78 | $ 717.84 | $ 2,550.62 |
| 414 | 110382 | No | $ - | $ 3,536.80 | $ - | $ 1,147.32 | $ 1,883.13 | $ 737.56 | $ 2,620.69 |

| # | ID | Benefits Waived | [A] Prty. Pre-Petition PDO Accr'd Claims | [B] Remaining Priority WARN Claim | [C] Potential Est. Unsecured WARN Claim | [D] Potential Est. Unsecured PDO Claim | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] Employee Net Settlement Amount | [F] Employee WARN Act Legal Fees | [G] = [E] + [F] Employee Total Settlement Amount |
|---|---|---|---|---|---|---|---|---|---|
| 415 | 111795 | No | $ 619.05 | $ 2,804.64 | $ - | $ - | $ 2,021.36 | $ 791.70 | $ 2,813.07 |
| 416 | 110903 | No | $ 219.23 | $ 3,345.21 | $ - | $ 407.92 | $ 1,932.63 | $ 756.95 | $ 2,689.58 |
| 417 | 112566 | No | $ - | $ 3,555.95 | $ - | $ - | $ 1,777.97 | $ 696.37 | $ 2,474.35 |
| 418 | 112514 | No | $ 706.21 | $ 2,647.47 | $ - | $ - | $ 2,029.95 | $ 795.07 | $ 2,825.02 |
| 419 | 112184 | No | $ 622.60 | $ 1,150.68 | $ - | $ 4,906.73 | $ 1,688.61 | $ 661.37 | $ 2,349.99 |
| 420 | 112067 | No | $ 1,051.44 | $ 2,356.61 | $ - | $ 16.16 | $ 2,231.36 | $ 873.95 | $ 3,105.31 |
| 421 | 111376 | No | $ - | $ 3,493.26 | $ - | $ 585.82 | $ 1,805.21 | $ 707.04 | $ 2,512.26 |
| 422 | 112263 | No | $ - | $ 3,487.56 | $ - | $ - | $ 1,743.78 | $ 682.98 | $ 2,426.76 |
| 423 | 112301 | No | $ - | $ 3,487.56 | $ - | $ - | $ 1,743.78 | $ 682.98 | $ 2,426.76 |
| 424 | 112549 | No | $ - | $ 3,487.56 | $ - | $ - | $ 1,743.78 | $ 682.98 | $ 2,426.76 |
| 425 | 112442 | No | $ - | $ 3,487.56 | $ - | $ - | $ 1,743.78 | $ 682.98 | $ 2,426.76 |
| 426 | 112419 | No | $ - | $ 3,487.56 | $ - | $ - | $ 1,743.78 | $ 682.98 | $ 2,426.76 |
| 427 | 112586 | No | $ - | $ 3,487.56 | $ - | $ - | $ 1,743.78 | $ 682.98 | $ 2,426.76 |
| 428 | 112607 | No | $ - | $ 3,487.56 | $ - | $ - | $ 1,743.78 | $ 682.98 | $ 2,426.76 |
| 429 | 112592 | No | $ - | $ 3,487.56 | $ - | $ - | $ 1,743.78 | $ 682.98 | $ 2,426.76 |
| 430 | 112308 | PDO | $ 245.27 | $ 3,028.94 | $ - | $ 245.27 | $ 1,784.27 | $ 698.84 | $ 2,483.11 |
| 431 | 112572 | PDO | $ 404.98 | $ 3,125.70 | $ - | $ - | $ 1,967.83 | $ 770.73 | $ 2,738.56 |
| 432 | 112148 | No | $ - | $ 3,508.08 | $ - | $ 170.24 | $ 1,771.06 | $ 693.67 | $ 2,464.73 |
| 433 | 112344 | No | $ 517.14 | $ 3,015.72 | $ - | $ - | $ 2,025.00 | $ 793.13 | $ 2,818.12 |
| 434 | 111504 | No | $ - | $ 3,218.59 | $ - | $ 91.19 | $ 1,618.41 | $ 633.88 | $ 2,252.29 |
| 435 | 112342 | No | $ - | $ 3,139.95 | $ - | $ 658.98 | $ 1,635.87 | $ 640.72 | $ 2,276.59 |
| 436 | 111919 | PDO | $ 509.82 | $ 2,725.14 | $ - | $ 260.27 | $ 1,898.41 | $ 743.55 | $ 2,641.96 |
| 437 | 112526 | No | $ 177.29 | $ 2,979.64 | $ - | $ - | $ 1,667.12 | $ 652.96 | $ 2,320.07 |
| 438 | 111898 | No | $ - | $ 3,419.18 | $ - | $ - | $ 1,709.59 | $ 669.59 | $ 2,379.18 |
| 439 | 112027 | No | $ - | $ 3,419.18 | $ - | $ - | $ 1,709.59 | $ 669.59 | $ 2,379.18 |
| 440 | 112208 | No | $ - | $ 3,419.18 | $ - | $ - | $ 1,709.59 | $ 669.59 | $ 2,379.18 |
| 441 | 111620 | No | $ - | $ 3,419.18 | $ - | $ - | $ 1,709.59 | $ 669.59 | $ 2,379.18 |
| 442 | 112420 | No | $ 759.72 | $ 2,758.14 | $ - | $ 142.94 | $ 2,153.08 | $ 843.29 | $ 2,996.37 |
| 443 | 111053 | No | $ - | $ 3,407.78 | $ - | $ 811.29 | $ 1,785.02 | $ 699.13 | $ 2,484.15 |
| 444 | 112156 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 445 | 110123 | No | $ - | $ 3,355.35 | $ - | $ 448.00 | $ 1,722.48 | $ 674.64 | $ 2,397.12 |
| 446 | 111226 | PDO | $ 106.24 | $ 3,302.36 | $ - | $ 254.01 | $ 1,782.82 | $ 698.27 | $ 2,481.09 |
| 447 | 112518 | No | $ 636.56 | $ 2,633.22 | $ - | $ - | $ 1,953.17 | $ 765.00 | $ 2,718.17 |
| 448 | 111763 | No | $ 825.09 | $ 2,427.67 | $ - | $ 1,359.07 | $ 2,174.83 | $ 851.81 | $ 3,026.64 |
| 449 | 112231 | PDO | $ - | $ 3,063.93 | $ - | $ 137.50 | $ 1,545.71 | $ 605.41 | $ 2,151.12 |
| 450 | 111790 | No | $ 193.69 | $ 2,963.91 | $ - | $ 1,590.12 | $ 1,834.65 | $ 718.57 | $ 2,553.23 |
| 451 | 110352 | No | $ - | $ 3,336.83 | $ - | $ 155.15 | $ 1,683.93 | $ 659.54 | $ 2,343.47 |
| 452 | 112516 | No | $ 535.92 | $ 2,617.72 | $ - | $ - | $ 1,844.78 | $ 722.54 | $ 2,567.32 |
| 453 | 112172 | No | $ - | $ 3,322.87 | $ - | $ 867.11 | $ 1,748.15 | $ 684.69 | $ 2,432.84 |
| 454 | 111674 | PDO | $ 34.77 | $ 2,997.82 | $ - | $ 577.76 | $ 1,591.45 | $ 623.32 | $ 2,214.78 |
| 455 | 112424 | No | $ 555.66 | $ 2,840.77 | $ - | $ 147.22 | $ 1,990.77 | $ 779.72 | $ 2,770.49 |
| 456 | 111527 | No | $ 521.53 | $ 2,607.81 | $ - | $ 1,069.10 | $ 1,932.34 | $ 756.84 | $ 2,689.18 |
| 457 | 110233 | No | $ 229.24 | $ 2,725.37 | $ - | $ 2,252.56 | $ 1,817.18 | $ 711.73 | $ 2,528.91 |
| 458 | 111731 | No | $ - | $ 3,322.30 | $ - | $ - | $ 1,661.15 | $ 650.62 | $ 2,311.77 |
| 459 | 111811 | No | $ 323.00 | $ 2,782.76 | $ - | $ 146.24 | $ 1,729.01 | $ 677.20 | $ 2,406.20 |
| 460 | 112610 | No | $ 82.84 | $ 3,196.93 | $ - | $ - | $ 1,681.31 | $ 658.51 | $ 2,339.82 |
| 461 | 112495 | No | $ 536.18 | $ 2,600.40 | $ - | $ - | $ 1,836.38 | $ 719.25 | $ 2,555.62 |
| 462 | 111107 | No | $ 23.37 | $ 3,115.90 | $ - | $ 356.11 | $ 1,616.93 | $ 633.30 | $ 2,250.22 |

| # | ID | Benefits Waived | [A] Prty. Pre-Petition PDO Accr'd Claims | [B] Remaining Priority WARN Claim | [C] Potential Est. Unsecured WARN Claim | [D] Potential Est. Unsecured PDO Claim | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] Employee Net Settlement Amount | [F] Employee WARN Act Legal Fees | [G] = [E] + [F] Employee Total Settlement Amount |
|---|---|---|---|---|---|---|---|---|---|
| 463 | 111286 | No | $ 356.39 | $ 2,922.09 | $ - | $ 937.35 | $ 1,911.17 | $ 748.54 | $ 2,659.72 |
| 464 | 111612 | No | $ 27.84 | $ 2,936.68 | $ - | $ 371.99 | $ 1,533.38 | $ 600.57 | $ 2,133.95 |
| 465 | 112412 | No | $ 138.60 | $ 3,134.25 | $ - | $ 324.87 | $ 1,738.21 | $ 680.80 | $ 2,419.01 |
| 466 | 111412 | PDO | $ - | $ 3,213.80 | $ - | $ 143.85 | $ 1,621.28 | $ 635.01 | $ 2,256.29 |
| 467 | 111719 | No | $ - | $ 3,127.01 | $ - | $ 138.59 | $ 1,577.36 | $ 617.80 | $ 2,195.17 |
| 468 | 150003 | PDO | $ - | $ 3,008.88 | $ - | $ 936.10 | $ 1,598.05 | $ 625.90 | $ 2,223.95 |
| 469 | 112462 | No | $ 343.87 | $ 2,926.25 | $ - | $ - | $ 1,807.00 | $ 707.74 | $ 2,514.74 |
| 470 | 112407 | PDO | $ 315.20 | $ 2,946.19 | $ - | $ 305.37 | $ 1,818.83 | $ 712.38 | $ 2,531.21 |
| 471 | 112273 | No | $ 120.98 | $ 2,877.58 | $ - | $ 220.92 | $ 1,581.86 | $ 619.56 | $ 2,201.43 |
| 472 | 110934 | PDO | $ - | $ 3,157.78 | $ - | $ 1,447.42 | $ 1,723.63 | $ 675.09 | $ 2,398.72 |
| 473 | 112083 | No | $ 1,089.78 | $ 2,032.70 | $ - | $ 363.26 | $ 2,142.46 | $ 839.13 | $ 2,981.59 |
| 474 | 111854 | No | $ - | $ 3,104.67 | $ - | $ 570.15 | $ 1,609.35 | $ 630.33 | $ 2,239.68 |
| 475 | 112111 | No | $ - | $ 3,135.16 | $ - | $ - | $ 1,567.58 | $ 613.97 | $ 2,181.55 |
| 476 | 110955 | No | $ - | $ 3,106.89 | $ - | $ 1,107.22 | $ 1,664.17 | $ 651.80 | $ 2,315.97 |
| 477 | 111589 | No | $ - | $ 3,105.07 | $ - | $ 603.07 | $ 1,612.84 | $ 631.70 | $ 2,244.54 |
| 478 | 112318 | No | $ 303.92 | $ 2,840.77 | $ - | $ 570.45 | $ 1,781.35 | $ 697.70 | $ 2,479.04 |
| 479 | 111375 | No | $ 483.50 | $ 2,677.84 | $ - | $ 406.62 | $ 1,863.08 | $ 729.71 | $ 2,592.79 |
| 480 | 112276 | No | $ 578.91 | $ 2,363.22 | $ - | $ 103.68 | $ 1,770.89 | $ 693.60 | $ 2,464.49 |
| 481 | 112452 | No | $ 79.74 | $ 3,015.72 | $ - | $ - | $ 1,587.60 | $ 621.81 | $ 2,209.41 |
| 482 | 111297 | No | $ - | $ 3,101.82 | $ - | $ - | $ 1,550.91 | $ 607.44 | $ 2,158.35 |
| 483 | 112356 | No | $ 496.28 | $ 2,176.88 | $ - | $ 629.03 | $ 1,647.62 | $ 645.32 | $ 2,292.94 |
| 484 | 112082 | No | $ 299.56 | $ 2,517.88 | $ - | $ 1,365.50 | $ 1,695.05 | $ 663.90 | $ 2,358.94 |
| 485 | 111414 | No | $ - | $ 2,768.11 | $ - | $ 281.40 | $ 1,412.19 | $ 553.11 | $ 1,965.31 |
| 486 | 111465 | PDO | $ - | $ 3,015.72 | $ - | $ 1.44 | $ 1,508.00 | $ 590.64 | $ 2,098.64 |
| 487 | 112211 | No | $ 6.31 | $ 2,900.32 | $ - | $ 1,320.44 | $ 1,588.51 | $ 622.17 | $ 2,210.68 |
| 488 | 111899 | No | $ - | $ 3,014.58 | $ - | $ - | $ 1,507.29 | $ 590.36 | $ 2,097.64 |
| 489 | 112368 | No | $ 223.46 | $ 2,561.53 | $ - | $ 406.10 | $ 1,544.84 | $ 605.06 | $ 2,149.90 |
| 490 | 112447 | No | $ 300.28 | $ 2,644.73 | $ - | $ 87.86 | $ 1,631.43 | $ 638.98 | $ 2,270.41 |
| 491 | 111570 | No | $ - | $ 2,978.33 | $ - | $ 1,095.32 | $ 1,598.70 | $ 626.16 | $ 2,224.86 |
| 492 | 111949 | PDO | $ - | $ 2,702.97 | $ - | $ 824.13 | $ 1,433.90 | $ 561.61 | $ 1,995.51 |
| 493 | 111634 | PDO | $ 31.28 | $ 2,697.05 | $ - | $ 1,383.12 | $ 1,518.12 | $ 594.60 | $ 2,112.71 |
| 494 | 112609 | No | $ 150.32 | $ 2,842.59 | $ - | $ - | $ 1,571.62 | $ 615.55 | $ 2,187.17 |
| 495 | 111624 | No | $ 63.00 | $ 2,658.38 | $ - | $ 1,597.61 | $ 1,551.95 | $ 607.85 | $ 2,159.80 |
| 496 | 112294 | No | $ 288.50 | $ 2,478.90 | $ - | $ 984.00 | $ 1,626.35 | $ 636.99 | $ 2,263.34 |
| 497 | 112168 | No | $ 12.00 | $ 2,735.34 | $ - | $ 98.75 | $ 1,389.55 | $ 544.24 | $ 1,933.79 |
| 498 | 112529 | No | $ 381.94 | $ 2,386.36 | $ - | $ - | $ 1,575.12 | $ 616.92 | $ 2,192.04 |
| 499 | 112483 | PDO | $ 115.84 | $ 2,592.93 | $ - | $ - | $ 1,412.31 | $ 553.16 | $ 1,965.47 |
| 500 | 112135 | No | $ - | $ 2,588.60 | $ - | $ 1,484.79 | $ 1,442.78 | $ 565.09 | $ 2,007.87 |
| 501 | 112521 | No | $ 232.54 | $ 2,495.43 | $ - | $ - | $ 1,480.26 | $ 579.77 | $ 2,060.02 |
| 502 | 112480 | No | $ - | $ 2,726.22 | $ - | $ - | $ 1,363.11 | $ 533.89 | $ 1,897.00 |
| 503 | 112403 | No | $ 207.37 | $ 2,495.43 | $ - | $ 557.44 | $ 1,510.83 | $ 591.74 | $ 2,102.58 |
| 504 | 111812 | No | $ - | $ 2,711.64 | $ - | $ 1,151.68 | $ 1,470.99 | $ 576.14 | $ 2,047.12 |
| 505 | 112122 | No | $ - | $ 2,892.62 | $ - | $ 1,109.88 | $ 1,557.30 | $ 609.94 | $ 2,167.24 |
| 506 | 112587 | No | $ 277.61 | $ 2,678.36 | $ - | $ - | $ 1,616.79 | $ 633.25 | $ 2,250.04 |
| 507 | 112219 | PDO | $ 202.65 | $ 2,483.86 | $ - | $ 58.37 | $ 1,450.42 | $ 568.08 | $ 2,018.51 |
| 508 | 112373 | No | $ 408.82 | $ 2,573.27 | $ - | $ 377.44 | $ 1,733.20 | $ 678.84 | $ 2,412.04 |
| 509 | 112293 | No | $ - | $ 2,840.03 | $ - | $ 364.70 | $ 1,456.48 | $ 570.46 | $ 2,026.94 |
| 510 | 111873 | No | $ 446.34 | $ 2,287.20 | $ - | $ 1,694.02 | $ 1,759.34 | $ 689.08 | $ 2,448.42 |

| # | ID | Benefits Waived | [A] Prty. Pre-Petition PDO Accr'd Claims | [B] Remaining Priority WARN Claim | [C] Potential Est. Unsecured WARN Claim | [D] Potential Est. Unsecured PDO Claim | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] Employee Net Settlement Amount | [F] Employee WARN Act Legal Fees | [G] = [E] + [F] Employee Total Settlement Amount |
|---|---|---|---|---|---|---|---|---|---|
| 511 | 111419 | No | $ 564.64 | $ 2,193.00 | $ - | $ 626.34 | $ 1,723.77 | $ 675.15 | $ 2,398.92 |
| 512 | 112533 | No | $ - | $ 2,887.27 | $ - | $ - | $ 1,443.63 | $ 565.43 | $ 2,009.06 |
| 513 | 111720 | No | $ 381.41 | $ 2,372.45 | $ - | $ 1,096.31 | $ 1,677.27 | $ 656.93 | $ 2,334.20 |
| 514 | 112259 | No | $ - | $ 2,607.81 | $ - | $ 587.54 | $ 1,362.66 | $ 533.71 | $ 1,896.37 |
| 515 | 111707 | No | $ 200.11 | $ 2,437.59 | $ - | $ 1,251.29 | $ 1,544.03 | $ 604.75 | $ 2,148.78 |
| 516 | 111543 | No | $ 133.50 | $ 2,478.90 | $ - | $ 401.25 | $ 1,413.08 | $ 553.46 | $ 1,966.53 |
| 517 | 112079 | No | $ 92.73 | $ 2,653.62 | $ - | $ - | $ 1,419.55 | $ 555.99 | $ 1,975.54 |
| 518 | 112051 | No | $ 137.30 | $ 2,457.42 | $ - | $ 765.06 | $ 1,442.52 | $ 564.99 | $ 2,007.50 |
| 519 | 112392 | No | $ - | $ 2,561.53 | $ - | $ 260.14 | $ 1,306.78 | $ 511.82 | $ 1,818.61 |
| 520 | 111518 | No | $ - | $ 2,561.53 | $ - | $ 162.23 | $ 1,296.99 | $ 507.99 | $ 1,804.98 |
| 521 | 112399 | No | $ 150.88 | $ 2,677.84 | $ - | $ 354.03 | $ 1,525.21 | $ 597.37 | $ 2,122.58 |
| 522 | 112015 | Both | $ - | $ 2,556.58 | $ - | $ 1,137.30 | $ 1,392.02 | $ 545.21 | $ 1,937.23 |
| 523 | 111355 | No | $ 461.60 | $ 2,184.74 | $ - | $ 692.07 | $ 1,623.18 | $ 635.75 | $ 2,258.92 |
| 524 | 112469 | PDO | $ 11.93 | $ 2,775.57 | $ - | $ - | $ 1,399.72 | $ 548.22 | $ 1,947.94 |
| 525 | 111915 | No | $ 9.45 | $ 2,531.79 | $ - | $ 263.76 | $ 1,301.72 | $ 509.84 | $ 1,811.56 |
| 526 | 111525 | No | $ - | $ 2,531.79 | $ - | $ 2,212.21 | $ 1,487.11 | $ 582.45 | $ 2,069.57 |
| 527 | 111993 | No | $ 211.38 | $ 2,354.96 | $ - | $ 350.55 | $ 1,423.91 | $ 557.70 | $ 1,981.61 |
| 528 | 111380 | No | $ - | $ 2,436.16 | $ - | $ 270.75 | $ 1,245.16 | $ 487.69 | $ 1,732.85 |
| 529 | 112499 | No | $ - | $ 2,666.96 | $ - | $ - | $ 1,333.48 | $ 522.28 | $ 1,855.76 |
| 530 | 112090 | PDO | $ - | $ 2,676.08 | $ - | $ 180.60 | $ 1,356.10 | $ 531.14 | $ 1,887.24 |
| 531 | 112405 | No | $ 340.02 | $ 2,249.19 | $ - | $ 401.95 | $ 1,504.81 | $ 589.39 | $ 2,094.20 |
| 532 | 112190 | No | $ - | $ 2,726.57 | $ - | $ - | $ 1,363.28 | $ 533.95 | $ 1,897.24 |
| 533 | 112540 | No | $ 34.06 | $ 2,670.32 | $ - | $ - | $ 1,369.22 | $ 536.28 | $ 1,905.51 |
| 534 | 112476 | No | $ 390.92 | $ 2,348.35 | $ - | $ - | $ 1,565.10 | $ 613.00 | $ 2,178.10 |
| 535 | 112209 | No | $ 110.28 | $ 2,356.61 | $ - | $ - | $ 1,288.58 | $ 504.70 | $ 1,793.28 |
| 536 | 112568 | No | $ 326.09 | $ 2,184.74 | $ - | $ - | $ 1,418.46 | $ 555.57 | $ 1,974.03 |
| 537 | 112581 | No | $ 166.64 | $ 2,524.27 | $ - | $ - | $ 1,428.77 | $ 559.60 | $ 1,988.37 |
| 538 | 112351 | No | $ 329.65 | $ 2,204.69 | $ - | $ 89.06 | $ 1,440.90 | $ 564.36 | $ 2,005.26 |
| 539 | 112238 | PDO | $ 291.50 | $ 2,181.44 | $ - | $ - | $ 1,382.22 | $ 541.37 | $ 1,923.59 |
| 540 | 112127 | PDO | $ 255.89 | $ 2,250.64 | $ - | $ 140.29 | $ 1,395.24 | $ 546.47 | $ 1,941.71 |
| 541 | 112025 | PDO | $ - | $ 2,394.62 | $ - | $ 376.26 | $ 1,234.94 | $ 483.68 | $ 1,718.62 |
| 542 | 111333 | No | $ - | $ 2,613.62 | $ - | $ - | $ 1,306.81 | $ 511.84 | $ 1,818.65 |
| 543 | 112601 | No | $ - | $ 2,613.62 | $ - | $ - | $ 1,306.81 | $ 511.84 | $ 1,818.65 |
| 544 | 112570 | No | $ - | $ 2,613.62 | $ - | $ - | $ 1,306.81 | $ 511.84 | $ 1,818.65 |
| 545 | 112605 | No | $ - | $ 2,613.62 | $ - | $ - | $ 1,306.81 | $ 511.84 | $ 1,818.65 |
| 546 | 110010 | No | $ - | $ - | $ - | $ 6,847.11 | $ 684.71 | $ 268.18 | $ 952.89 |
| 547 | 111991 | No | $ - | $ 2,351.65 | $ - | $ 184.04 | $ 1,194.23 | $ 467.74 | $ 1,661.97 |
| 548 | 112364 | PDO | $ 362.29 | $ 2,065.75 | $ - | $ - | $ 1,395.17 | $ 546.44 | $ 1,941.61 |
| 549 | 112192 | No | $ 188.94 | $ 2,390.69 | $ - | $ 1,152.01 | $ 1,499.48 | $ 587.30 | $ 2,086.78 |
| 550 | 112467 | No | $ 322.87 | $ 2,093.85 | $ - | $ - | $ 1,369.80 | $ 536.51 | $ 1,906.30 |
| 551 | 112181 | No | $ 192.49 | $ 2,191.35 | $ - | $ - | $ 1,288.17 | $ 504.53 | $ 1,792.70 |
| 552 | 112432 | No | $ - | $ 2,379.75 | $ - | $ 192.70 | $ 1,209.14 | $ 473.58 | $ 1,682.73 |
| 553 | 112030 | PDO | $ - | $ 2,372.45 | $ - | $ 192.11 | $ 1,205.44 | $ 472.13 | $ 1,677.57 |
| 554 | 112057 | PDO | $ - | $ 2,372.45 | $ - | $ 96.06 | $ 1,195.83 | $ 468.37 | $ 1,664.20 |
| 555 | 112152 | PDO | $ 256.39 | $ 2,120.29 | $ - | $ - | $ 1,316.53 | $ 515.64 | $ 1,832.17 |
| 556 | 111963 | No | $ - | $ 2,313.64 | $ - | $ 71.63 | $ 1,163.99 | $ 455.90 | $ 1,619.88 |
| 557 | 111317 | No | $ - | $ 2,313.64 | $ - | $ 1,806.70 | $ 1,337.49 | $ 523.85 | $ 1,861.34 |
| 558 | 119213 | No | $ - | $ 2,219.62 | $ - | $ 1,606.56 | $ 1,270.46 | $ 497.60 | $ 1,768.06 |

| # | ID | Benefits Waived | [A] Prty. Pre-Petition PDO Accr'd Claims | [B] Remaining Priority WARN Claim | [C] Potential Est. Unsecured WARN Claim | [D] Potential Est. Unsecured PDO Claim | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] Employee Net Settlement Amount | [F] Employee WARN Act Legal Fees | [G] = [E] + [F] Employee Total Settlement Amount |
|---|---|---|---|---|---|---|---|---|---|
| 559 | 111970 | No | $ - | $ 2,287.20 | $ - | $ 356.61 | $ 1,179.26 | $ 461.88 | $ 1,641.14 |
| 560 | 111597 | No | $ - | $ 2,493.55 | $ - | $ 308.47 | $ 1,277.62 | $ 500.40 | $ 1,778.03 |
| 561 | 112360 | No | $ - | $ 2,272.33 | $ - | $ 245.21 | $ 1,160.69 | $ 454.60 | $ 1,615.29 |
| 562 | 111813 | No | $ 101.68 | $ 2,233.86 | $ - | $ 1,259.30 | $ 1,344.54 | $ 526.61 | $ 1,871.15 |
| 563 | 112375 | PDO | $ - | $ 2,310.45 | $ - | $ 142.96 | $ 1,169.52 | $ 458.06 | $ 1,627.59 |
| 564 | 112309 | No | $ 450.65 | $ 1,910.41 | $ - | $ 469.34 | $ 1,452.79 | $ 569.01 | $ 2,021.79 |
| 565 | 112562 | No | $ 166.32 | $ 2,140.86 | $ - | $ - | $ 1,236.75 | $ 484.39 | $ 1,721.14 |
| 566 | 111614 | No | $ - | $ 2,212.84 | $ - | $ 1,093.96 | $ 1,215.81 | $ 476.20 | $ 1,692.01 |
| 567 | 111938 | No | $ 261.43 | $ 2,046.04 | $ - | $ 1,042.90 | $ 1,388.73 | $ 543.92 | $ 1,932.66 |
| 568 | 112552 | No | $ 339.68 | $ 1,940.16 | $ - | $ - | $ 1,309.76 | $ 512.99 | $ 1,822.74 |
| 569 | 112311 | PDO | $ 268.00 | $ 1,983.12 | $ - | $ - | $ 1,259.56 | $ 493.33 | $ 1,752.89 |
| 570 | 111524 | No | $ 200.90 | $ 2,032.70 | $ - | $ - | $ 1,217.25 | $ 476.76 | $ 1,694.01 |
| 571 | 111959 | No | $ 110.49 | $ 2,098.81 | $ - | $ 136.31 | $ 1,173.52 | $ 459.63 | $ 1,633.16 |
| 572 | 112395 | No | $ 79.97 | $ 2,120.29 | $ - | $ 368.01 | $ 1,176.92 | $ 460.96 | $ 1,637.88 |
| 573 | 112086 | No | $ 160.47 | $ 2,242.24 | $ - | $ 545.10 | $ 1,336.10 | $ 523.31 | $ 1,859.40 |
| 574 | 112401 | No | $ 131.04 | $ 2,065.75 | $ - | $ 213.13 | $ 1,185.23 | $ 464.22 | $ 1,649.45 |
| 575 | 112498 | No | $ 354.35 | $ 1,883.97 | $ - | $ - | $ 1,296.33 | $ 507.73 | $ 1,804.07 |
| 576 | 112096 | No | $ - | $ 2,204.69 | $ - | $ 49.97 | $ 1,107.34 | $ 433.71 | $ 1,541.05 |
| 577 | 112296 | No | $ - | $ 2,150.04 | $ - | $ - | $ 1,075.02 | $ 421.05 | $ 1,496.07 |
| 578 | 112427 | PDO | $ - | $ 2,133.51 | $ - | $ 105.43 | $ 1,077.30 | $ 421.94 | $ 1,499.24 |
| 579 | 119669 | No | $ - | $ 2,171.86 | $ - | $ 916.28 | $ 1,177.56 | $ 461.21 | $ 1,638.77 |
| 580 | 111962 | No | $ 407.21 | $ - | $ - | $ 6,483.41 | $ 1,055.55 | $ 413.43 | $ 1,468.98 |
| 581 | 112429 | No | $ - | $ 2,120.29 | $ - | $ 94.73 | $ 1,069.62 | $ 418.93 | $ 1,488.55 |
| 582 | 111530 | No | $ - | $ 2,107.07 | $ - | $ 22.31 | $ 1,055.77 | $ 413.51 | $ 1,469.27 |
| 583 | 111769 | PDO | $ - | $ 2,107.07 | $ - | $ 154.06 | $ 1,068.94 | $ 418.67 | $ 1,487.61 |
| 584 | 111549 | No | $ - | $ 2,087.24 | $ - | $ 1,243.00 | $ 1,167.92 | $ 457.44 | $ 1,625.36 |
| 585 | 112604 | PDO | $ 115.18 | $ 2,178.02 | $ - | $ - | $ 1,204.19 | $ 471.64 | $ 1,675.83 |
| 586 | 111629 | No | $ 17.51 | $ 2,042.62 | $ - | $ 473.80 | $ 1,086.20 | $ 425.43 | $ 1,511.63 |
| 587 | 112234 | No | $ 216.41 | $ 1,883.97 | $ - | $ 91.39 | $ 1,167.53 | $ 457.28 | $ 1,624.82 |
| 588 | 111789 | No | $ 137.05 | $ 1,973.09 | $ - | $ 530.18 | $ 1,176.62 | $ 460.84 | $ 1,637.46 |
| 589 | 111971 | No | $ 115.44 | $ 1,940.16 | $ - | $ 661.55 | $ 1,151.68 | $ 451.07 | $ 1,602.75 |
| 590 | 111736 | No | $ 35.26 | $ 1,998.00 | $ - | $ 533.77 | $ 1,087.64 | $ 425.99 | $ 1,513.63 |
| 591 | 112598 | No | $ 162.64 | $ 1,883.97 | $ - | $ - | $ 1,104.62 | $ 432.65 | $ 1,537.27 |
| 592 | 111958 | No | $ 227.88 | $ 1,831.08 | $ - | $ 1,308.55 | $ 1,274.28 | $ 499.09 | $ 1,773.37 |
| 593 | 111960 | No | $ - | $ 1,998.00 | $ - | $ 567.02 | $ 1,055.70 | $ 413.48 | $ 1,469.18 |
| 594 | 111967 | No | $ - | $ 1,956.23 | $ - | $ 851.05 | $ 1,063.22 | $ 416.43 | $ 1,479.65 |
| 595 | 111596 | No | $ - | $ 1,968.25 | $ - | $ 0.00 | $ 984.12 | $ 385.45 | $ 1,369.58 |
| 596 | 112130 | No | $ 866.59 | $ - | $ - | $ 4,569.71 | $ 1,323.56 | $ 518.39 | $ 1,841.95 |
| 597 | 111937 | No | $ - | $ 1,987.68 | $ - | $ - | $ 993.84 | $ 389.26 | $ 1,383.10 |
| 598 | 112228 | No | $ - | $ 1,940.16 | $ - | $ 86.48 | $ 978.73 | $ 383.34 | $ 1,362.06 |
| 599 | 111954 | No | $ - | $ 1,915.37 | $ - | $ 310.03 | $ 988.69 | $ 387.24 | $ 1,375.92 |
| 600 | 112334 | No | $ 999.48 | $ - | $ - | $ 1,557.29 | $ 1,155.21 | $ 452.46 | $ 1,607.67 |
| 601 | 111973 | PDO | $ 115.68 | $ 1,806.29 | $ - | $ 12.21 | $ 1,020.04 | $ 399.52 | $ 1,419.56 |
| 602 | 112379 | No | $ 2.66 | $ 1,883.97 | $ - | $ 245.48 | $ 969.19 | $ 379.60 | $ 1,348.79 |
| 603 | 111943 | No | $ - | $ 1,883.97 | $ - | $ 1,150.83 | $ 1,057.07 | $ 414.02 | $ 1,471.09 |
| 604 | 112317 | No | $ - | $ 1,883.97 | $ - | $ 64.03 | $ 948.39 | $ 371.45 | $ 1,319.84 |
| 605 | 111969 | No | $ - | $ 1,883.97 | $ - | $ 130.53 | $ 955.04 | $ 374.06 | $ 1,329.09 |
| 606 | 112391 | No | $ - | $ 1,883.97 | $ - | $ 168.34 | $ 958.82 | $ 375.54 | $ 1,334.36 |

| # | ID | Benefits Waived | [A] Prty. Pre-Petition PDO Accr'd Claims | [B] Remaining Priority WARN Claim | [C] Potential Est. Unsecured WARN Claim | [D] Potential Est. Unsecured PDO Claim | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] Employee Net Settlement Amount | [F] Employee WARN Act Legal Fees | [G] = [E] + [F] Employee Total Settlement Amount |
|---|---|---|---|---|---|---|---|---|---|
| 607 | 111717 | No | $ - | $ 1,882.31 | $ - | $ 123.39 | $ 953.50 | $ 373.45 | $ 1,326.95 |
| 608 | 112393 | No | $ - | $ 1,860.83 | $ - | $ 233.83 | $ 953.80 | $ 373.57 | $ 1,327.37 |
| 609 | 111511 | No | $ 679.33 | $ 1,322.08 | $ - | $ 640.00 | $ 1,404.37 | $ 550.05 | $ 1,954.42 |
| 610 | 112221 | No | $ - | $ 1,878.27 | $ - | $ 80.00 | $ 947.13 | $ 370.96 | $ 1,318.10 |
| 611 | 112390 | No | $ - | $ 1,819.00 | $ - | $ 0.19 | $ 909.52 | $ 356.23 | $ 1,265.75 |
| 612 | 112365 | PDO | $ - | $ 1,817.86 | $ - | $ 162.43 | $ 925.17 | $ 362.36 | $ 1,287.54 |
| 613 | 111964 | No | $ - | $ 1,784.81 | $ - | $ 106.38 | $ 903.04 | $ 353.69 | $ 1,256.74 |
| 614 | 112559 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 615 | 112286 | No | $ 111.16 | $ 1,599.72 | $ - | $ 430.60 | $ 954.08 | $ 373.68 | $ 1,327.76 |
| 616 | 112288 | No | $ - | $ 1,652.60 | $ - | $ 626.00 | $ 888.90 | $ 348.15 | $ 1,237.06 |
| 617 | 111520 | No | $ - | $ 1,584.85 | $ - | $ 3.84 | $ 792.81 | $ 310.52 | $ 1,103.32 |
| 618 | 111974 | No | $ - | $ 1,531.96 | $ - | $ 492.70 | $ 815.25 | $ 319.31 | $ 1,134.56 |
| 619 | 112136 | No | $ - | $ 907.11 | $ - | $ 948.64 | $ 548.42 | $ 214.80 | $ 763.22 |
| 620 | 111692 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 621 | 112580 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 622 | 112426 | No | $ 596.57 | $ - | $ - | $ 356.17 | $ 632.19 | $ 247.61 | $ 879.79 |
| 623 | 112584 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 624 | 112359 | No | $ 892.70 | $ - | $ - | $ 590.15 | $ 951.72 | $ 372.76 | $ 1,324.47 |
| 625 | 112108 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 626 | 112428 | No | $ 494.06 | $ - | $ - | $ 304.19 | $ 524.48 | $ 205.42 | $ 729.90 |
| 627 | 112165 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 628 | 112312 | No | $ - | $ - | $ - | $ 952.97 | $ 95.30 | $ 37.32 | $ 132.62 |
| 629 | 112205 | No | $ - | $ - | $ - | $ 1,305.94 | $ 130.59 | $ 51.15 | $ 181.74 |
| 630 | 112389 | No | $ - | $ 387.51 | $ - | $ - | $ 193.75 | $ 75.89 | $ 269.64 |
| 631 | 111535 | No | $ - | $ - | $ - | $ 2,165.72 | $ 216.57 | $ 84.82 | $ 301.40 |
| 632 | 110964 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 633 | 112394 | No | $ 280.22 | $ - | $ - | $ 366.07 | $ 316.82 | $ 124.09 | $ 440.91 |
| 634 | 112417 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 635 | 111649 | No | $ - | $ 341.92 | $ - | $ 833.25 | $ 254.28 | $ 99.59 | $ 353.88 |
| 636 | 111712 | No | $ - | $ - | $ - | $ 1,916.20 | $ 191.62 | $ 75.05 | $ 266.67 |
| 637 | 111881 | No | $ - | $ - | $ - | $ 1,665.00 | $ 166.50 | $ 65.21 | $ 231.71 |
| 638 | 112506 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 639 | 111423 | No | $ - | $ 321.63 | $ - | $ 911.04 | $ 251.92 | $ 98.67 | $ 350.59 |
| 640 | 111952 | No | $ 203.23 | $ - | $ - | $ 948.75 | $ 298.10 | $ 116.76 | $ 414.86 |
| 641 | 112226 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 642 | 112048 | No | $ - | $ - | $ - | $ 154.31 | $ 15.43 | $ 6.04 | $ 21.48 |
| 643 | 111402 | No | $ - | $ - | $ - | $ 1,842.11 | $ 184.21 | $ 72.15 | $ 256.36 |
| 644 | 112425 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 645 | 112325 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 646 | 111455 | No | $ 8.70 | $ - | $ - | $ 1,492.70 | $ 157.97 | $ 61.87 | $ 219.84 |
| 647 | 112366 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 648 | 112357 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 649 | 112402 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 650 | 111751 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 651 | 111774 | PDO | $ - | $ - | $ - | $ 1,048.58 | $ 104.86 | $ 41.07 | $ 145.93 |
| 652 | 110064 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 653 | 112343 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 654 | 112603 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

| # | ID | Benefits Waived | [A] Prty. Pre-Petition PDO Accr'd Claims | [B] Remaining Priority WARN Claim | [C] Potential Est. Unsecured WARN Claim | [D] Potential Est. Unsecured PDO Claim | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] Employee Net Settlement Amount | [F] Employee WARN Act Legal Fees | [G] = [E] + [F] Employee Total Settlement Amount |
|---|---|---|---|---|---|---|---|---|---|
| 655 | 112585 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 656 | 112537 | No | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 657 | 111956 | PDO | $ - | $ - | $ - | $ 1,160.47 | $ 116.05 | $ 45.45 | $ 161.50 |
| 658 | 111676 | PDO | $ - | $ - | $ - | $ 251.15 | $ 25.11 | $ 9.84 | $ 34.95 |
| 659 | 112281 | No | $ 576.32 | $ - | $ - | $ 1,131.01 | $ 689.42 | $ 270.02 | $ 959.45 |
| 660 | 112323 | No | $ 287.86 | $ - | $ - | $ 620.79 | $ 349.94 | $ 137.06 | $ 487.00 |
| 661 | 112078 | No | $ 124.23 | $ - | $ - | $ 2.45 | $ 124.47 | $ 48.75 | $ 173.22 |
| 662 | 110046 | No | $ - | $ - | $ - | $ 2,136.30 | $ 213.63 | $ 83.67 | $ 297.30 |
| 663 | 110096 | No | $ - | $ 11,000.45 | $ 96.83 | $ 1,104.86 | $ 5,620.40 | $ 2,201.33 | $ 7,821.72 |
| 664 | 110595 | PDO | $ 5,442.67 | $ 5,583.77 | $ 5,813.49 | $ 578.00 | $ 8,873.70 | $ 3,475.54 | $ 12,349.25 |
| 665 | 110055 | No | $ 3,563.03 | $ 7,534.07 | $ 3,421.55 | $ 3,231.08 | $ 7,995.33 | $ 3,131.51 | $ 11,126.84 |
| 666 | 111040 | No | $ 3,108.83 | $ 7,720.81 | $ 5,664.11 | $ 3,981.87 | $ 7,933.83 | $ 3,107.43 | $ 11,041.26 |
| 667 | 111440 | No | $ 3,100.30 | $ 7,777.52 | $ 4,548.62 | $ 2,072.87 | $ 7,651.21 | $ 2,996.73 | $ 10,647.94 |
| 668 | 110509 | PDO | $ 2,954.17 | $ 8,046.28 | $ 3,513.39 | $ - | $ 7,328.65 | $ 2,870.40 | $ 10,199.05 |
| 669 | 111515 | No | $ 2,480.85 | $ 8,258.42 | $ 3,878.26 | $ (456.05) | $ 6,952.29 | $ 2,722.99 | $ 9,675.27 |
| 670 | 110180 | No | $ 3,254.16 | $ 7,988.82 | $ 2,255.89 | $ 1,946.97 | $ 7,668.86 | $ 3,003.65 | $ 10,672.51 |
| 671 | 112380 | No | $ 3,755.11 | $ 6,574.27 | $ 2,247.89 | $ 3,489.72 | $ 7,616.01 | $ 2,982.95 | $ 10,598.95 |
| 672 | 111626 | No | $ 2,025.58 | $ 8,792.64 | $ 3,905.97 | $ 5,008.62 | $ 7,313.36 | $ 2,864.41 | $ 10,177.77 |
| 673 | 112314 | No | $ 1,751.31 | $ 9,126.51 | $ 3,199.63 | $ 478.74 | $ 6,682.40 | $ 2,617.28 | $ 9,299.68 |
| 674 | 111449 | PDO | $ 3,429.25 | $ 7,916.31 | $ 1,674.48 | $ 882.75 | $ 7,643.13 | $ 2,993.57 | $ 10,636.70 |
| 675 | 111020 | PDO | $ 2,788.80 | $ 8,471.97 | $ 1,659.40 | $ 2,081.14 | $ 7,398.84 | $ 2,897.89 | $ 10,296.72 |
| 676 | 111469 | No | $ 1,610.58 | $ 8,609.29 | $ 6,514.00 | $ 52.88 | $ 6,571.91 | $ 2,574.01 | $ 9,145.91 |
| 677 | 112455 | No | $ 3,289.42 | $ 7,964.97 | $ 1,608.73 | $ 258.42 | $ 7,458.61 | $ 2,921.30 | $ 10,379.91 |
| 678 | 112377 | No | $ 1,596.49 | $ 9,421.75 | $ 2,713.71 | $ 1,779.97 | $ 6,756.73 | $ 2,646.39 | $ 9,403.12 |
| 679 | 110199 | No | $ 4,034.13 | $ 7,357.02 | $ 1,578.43 | $ 1,589.33 | $ 8,029.42 | $ 3,144.87 | $ 11,174.28 |
| 680 | 111118 | PDO | $ 1,455.32 | $ 9,496.35 | $ 2,368.19 | $ 4,694.91 | $ 6,909.81 | $ 2,706.35 | $ 9,616.15 |
| 681 | 110151 | No | $ 1,443.30 | $ 9,556.70 | $ 2,699.57 | $ 1,071.31 | $ 6,598.73 | $ 2,584.51 | $ 9,183.25 |
| 682 | 110533 | PDO | $ 1,299.59 | $ 9,700.86 | $ 1,396.42 | $ 1,297.56 | $ 6,419.42 | $ 2,514.28 | $ 8,933.70 |
| 683 | 111270 | PDO | $ 2,117.60 | $ 9,104.41 | $ 1,070.49 | $ 1,770.62 | $ 6,953.92 | $ 2,723.63 | $ 9,677.55 |
| 684 | 111646 | No | $ 1,422.85 | $ 9,621.12 | $ 989.29 | $ 3,507.28 | $ 6,683.07 | $ 2,617.54 | $ 9,300.61 |
| 685 | 112000 | No | $ 899.84 | $ 9,758.38 | $ 2,844.36 | $ 2,427.08 | $ 6,306.17 | $ 2,469.93 | $ 8,776.10 |
| 686 | 110002 | No | $ 851.92 | $ 9,367.94 | $ 6,084.12 | $ - | $ 6,144.30 | $ 2,406.53 | $ 8,550.83 |
| 687 | 110149 | No | $ 847.51 | $ 10,168.44 | $ 1,065.10 | $ 1,984.68 | $ 6,236.71 | $ 2,442.72 | $ 8,679.43 |
| 688 | 112560 | No | $ 637.36 | $ 10,240.45 | $ 1,099.59 | $ - | $ 5,867.55 | $ 2,298.13 | $ 8,165.68 |
| 689 | 110478 | PDO | $ 975.03 | $ 10,025.42 | $ 609.48 | $ 2,634.35 | $ 6,312.12 | $ 2,472.26 | $ 8,784.38 |
| 690 | 112216 | Both | $ 1,154.36 | $ 9,940.46 | $ 590.60 | $ 516.54 | $ 6,235.30 | $ 2,442.17 | $ 8,677.47 |
| 691 | 112478 | No | $ 1,819.42 | $ 9,434.97 | $ 537.64 | $ - | $ 6,590.66 | $ 2,581.35 | $ 9,172.01 |
| 692 | 111239 | PDO | $ 2,500.85 | $ 8,179.56 | $ 498.77 | $ 1,994.02 | $ 6,839.91 | $ 2,678.97 | $ 9,518.89 |
| 693 | 112474 | PDO | $ 502.75 | $ 10,692.36 | $ 478.09 | $ - | $ 5,896.75 | $ 2,309.57 | $ 8,206.31 |
| 694 | 112479 | No | $ 454.81 | $ 9,984.23 | $ 5,084.26 | $ - | $ 5,955.35 | $ 2,332.52 | $ 8,287.87 |
| 695 | 111904 | PDO | $ 2,523.50 | $ 8,730.88 | $ 443.91 | $ 1,895.25 | $ 7,122.86 | $ 2,789.79 | $ 9,912.65 |
| 696 | 112302 | PDO | $ 310.10 | $ 10,625.16 | $ 1,341.96 | $ 620.20 | $ 5,818.90 | $ 2,279.07 | $ 8,097.97 |
| 697 | 112337 | PDO | $ 263.26 | $ 10,563.95 | $ 2,837.00 | $ 81.34 | $ 5,837.07 | $ 2,286.19 | $ 8,123.27 |
| 698 | 111946 | No | $ 2,924.94 | $ 7,667.53 | $ 233.84 | $ 4,998.14 | $ 7,281.90 | $ 2,852.09 | $ 10,133.98 |
| 699 | 111617 | No | $ 1,493.33 | $ 9,761.05 | $ 211.55 | $ 624.17 | $ 6,457.43 | $ 2,529.17 | $ 8,986.60 |
| 700 | 111190 | No | $ 294.63 | $ 10,335.18 | $ 2,430.88 | $ 5,544.49 | $ 6,259.76 | $ 2,451.75 | $ 8,711.51 |
| 701 | 112486 | PDO | $ 156.05 | $ 9,885.66 | $ 6,613.01 | $ - | $ 5,760.19 | $ 2,256.08 | $ 8,016.26 |
| 702 | 112275 | No | $ 499.36 | $ 10,597.22 | $ 142.51 | $ 1,798.08 | $ 5,992.03 | $ 2,346.88 | $ 8,338.91 |

| # | ID | Benefits Waived | [A] Prty. Pre-Petition PDO Accr'd Claims | [B] Remaining Priority WARN Claim | [C] Potential Est. Unsecured WARN Claim | [D] Potential Est. Unsecured PDO Claim | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] Employee Net Settlement Amount | [F] Employee WARN Act Legal Fees | [G] = [E] + [F] Employee Total Settlement Amount |
|---|---|---|---|---|---|---|---|---|---|
| 703 | 112396 | PDO | $ 923.36 | $ 10,171.46 | $ 140.21 | $ 284.26 | $ 6,051.54 | $ 2,370.19 | $ 8,421.73 |
| 704 | 110389 | PDO | $ 117.51 | $ 10,936.73 | $ 286.72 | $ - | $ 5,614.55 | $ 2,199.04 | $ 7,813.59 |
| 705 | 111187 | No | $ 1,578.99 | $ 9,627.53 | $ 27.95 | $ 3,529.90 | $ 6,748.54 | $ 2,643.19 | $ 9,391.72 |
| 706 | 111920 | PDO | $ 1,309.58 | $ 9,944.80 | $ 27.80 | $ 2,167.08 | $ 6,501.47 | $ 2,546.42 | $ 9,047.89 |
| 707 | 112546 | No | $ 8,466.44 | $ - | $ 15,342.47 | $ 8,456.64 | $ 10,846.35 | $ 4,248.17 | $ 15,094.51 |
| 708 | 112492 | No | $ 8,028.08 | $ - | $ 16,876.71 | $ 5,510.38 | $ 10,266.79 | $ 4,021.17 | $ 14,287.96 |
| 709 | 112437 | No | $ 8,795.21 | $ - | $ - | $ 13,974.03 | $ 10,192.61 | $ 3,992.12 | $ 14,184.72 |
| 710 | 111945 | No | $ 8,466.44 | $ - | $ 15,342.47 | $ 10,764.33 | $ 11,077.12 | $ 4,338.55 | $ 15,415.67 |
| 711 | 111947 | No | $ 7,459.69 | $ - | $ 18,866.10 | $ 16,187.72 | $ 10,965.07 | $ 4,294.66 | $ 15,259.73 |
| 712 | 111858 | No | $ 8,576.03 | $ - | $ - | $ 16,173.97 | $ 10,193.42 | $ 3,992.44 | $ 14,185.86 |
| 713 | 111725 | No | $ - | $ - | $ 46,028.78 | $ 32,308.66 | $ 7,833.74 | $ 3,068.23 | $ 10,901.97 |
| 714 | 111727 | No | $ - | $ - | $ 47,198.41 | $ 35,496.06 | $ 8,269.45 | $ 3,238.88 | $ 11,508.32 |
| 715 | 111426 | No | $ - | $ - | $ 47,826.91 | $ - | $ 4,782.69 | $ 1,873.23 | $ 6,655.92 |
| 716 | 111427 | No | $ - | $ - | $ 49,876.59 | $ 62,517.02 | $ 11,239.36 | $ 4,402.10 | $ 15,641.46 |
| 717 | 111953 | No | $ - | $ - | $ 54,657.53 | $ 57,548.08 | $ 11,220.56 | $ 4,394.73 | $ 15,615.29 |
| 718 | 111961 | No | $ - | $ - | $ 54,657.53 | $ 19,182.69 | $ 7,384.02 | $ 2,892.08 | $ 10,276.11 |
| 719 | 111497 | No | $ - | $ - | $ 54,969.91 | $ 57,876.97 | $ 11,284.69 | $ 4,419.85 | $ 15,704.54 |
| 720 | 112382 | No | $ - | $ - | $ 55,616.44 | $ - | $ 5,561.64 | $ 2,178.32 | $ 7,739.96 |
| 721 | 111445 | No | $ - | $ - | $ 65,725.59 | $ - | $ 6,572.56 | $ 2,574.26 | $ 9,146.82 |
| 722 | 111923 | No | $ - | $ - | $ 67,410.97 | $ - | $ 6,741.10 | $ 2,640.27 | $ 9,381.37 |
| 723 | 111924 | No | $ - | $ - | $ 67,410.97 | $ - | $ 6,741.10 | $ 2,640.27 | $ 9,381.37 |
| 724 | 112385 | No | $ - | $ - | $ 84,383.56 | $ - | $ 8,438.36 | $ 3,305.03 | $ 11,743.39 |
| 725 | 111498 | No | $ - | $ - | $ 93,039.55 | $ 79,300.88 | $ 17,234.04 | $ 6,750.02 | $ 23,984.06 |
| 726 | 112384 | No | $ - | $ - | $ 98,805.48 | $ - | $ 9,880.55 | $ 3,869.89 | $ 13,750.44 |
| 727 | 112386 | No | $ 992.47 | $ - | $ 40,508.90 | $ - | $ 4,547.12 | $ 1,780.96 | $ 6,328.09 |
| 728 | 112530 | No | $ 8,621.37 | $ 1,653.28 | $ 12,189.18 | $ - | $ 10,666.93 | $ 4,177.90 | $ 14,844.83 |
| 729 | 112175 | No | $ - | $ 2,986.99 | $ 31,533.56 | $ 34,615.39 | $ 8,108.39 | $ 3,175.79 | $ 11,284.18 |
| 730 | 112174 | No | $ - | $ 2,986.99 | $ 31,533.56 | $ - | $ 4,646.85 | $ 1,820.02 | $ 6,466.87 |
| 731 | 112493 | No | $ - | $ 3,534.93 | $ 29,067.81 | $ - | $ 4,674.25 | $ 1,830.75 | $ 6,505.00 |
| 732 | 112176 | No | $ - | $ 4,082.88 | $ 26,602.05 | $ - | $ 4,701.64 | $ 1,841.48 | $ 6,543.13 |
| 733 | 111496 | No | $ - | $ 4,154.11 | $ 26,281.51 | $ 38,149.04 | $ 8,520.11 | $ 3,337.05 | $ 11,857.16 |
| 734 | 111680 | No | $ - | $ 4,188.08 | $ 52,114.38 | $ - | $ 7,305.48 | $ 2,861.32 | $ 10,166.80 |
| 735 | 111619 | No | $ - | $ 4,323.21 | $ 25,520.58 | $ - | $ 4,713.66 | $ 1,846.19 | $ 6,559.85 |
| 736 | 112251 | No | $ - | $ 4,630.82 | $ 24,136.30 | $ - | $ 4,729.04 | $ 1,852.21 | $ 6,581.25 |
| 737 | 111975 | No | $ - | $ 4,714.57 | $ 23,759.44 | $ 19,986.56 | $ 6,731.88 | $ 2,636.66 | $ 9,368.55 |
| 738 | 111726 | No | $ - | $ 4,742.77 | $ 23,632.55 | $ - | $ 4,734.64 | $ 1,854.41 | $ 6,589.04 |
| 739 | 111522 | No | $ - | $ 4,850.00 | $ 23,150.00 | $ 33,692.30 | $ 8,109.23 | $ 3,176.12 | $ 11,285.36 |
| 740 | 111679 | No | $ - | $ 4,871.92 | $ 41,002.05 | $ - | $ 6,536.16 | $ 2,560.01 | $ 9,096.17 |
| 741 | 111820 | No | $ - | $ 5,327.81 | $ 45,446.99 | $ - | $ 7,208.60 | $ 2,823.38 | $ 10,031.98 |
| 742 | 111487 | No | $ - | $ 6,274.66 | $ 16,739.04 | $ 28,846.15 | $ 7,695.85 | $ 3,014.22 | $ 10,710.06 |
| 743 | 111559 | No | $ - | $ 7,480.14 | $ 11,314.38 | $ 23,557.69 | $ 7,227.28 | $ 2,830.69 | $ 10,057.97 |
| 744 | 111384 | No | $ - | $ 8,028.08 | $ 8,848.63 | $ - | $ 4,898.90 | $ 1,918.74 | $ 6,817.65 |
| 745 | 112164 | No | $ - | $ 8,028.08 | $ 8,848.63 | $ - | $ 4,898.90 | $ 1,918.74 | $ 6,817.65 |
| 746 | 112289 | No | $ - | $ 8,028.08 | $ 8,848.63 | $ 18,615.38 | $ 6,760.44 | $ 2,647.85 | $ 9,408.29 |
| 747 | 112173 | No | $ - | $ 8,466.44 | $ 6,876.03 | $ - | $ 4,920.82 | $ 1,927.33 | $ 6,848.15 |
| 748 | 111810 | No | $ - | $ 8,576.03 | $ 6,382.88 | $ 937.50 | $ 5,020.05 | $ 1,966.19 | $ 6,986.24 |
| 749 | 112321 | No | $ - | $ 8,795.21 | $ 5,396.58 | $ - | $ 4,937.26 | $ 1,933.77 | $ 6,871.03 |
| 750 | 111994 | No | $ - | $ 8,950.38 | $ 4,698.27 | $ - | $ 4,945.02 | $ 1,936.81 | $ 6,881.82 |

| # | ID | Benefits Waived | [A] Prty. Pre-Petition PDO Accr'd Claims | [B] Remaining Priority WARN Claim | [C] Potential Est. Unsecured WARN Claim | [D] Potential Est. Unsecured PDO Claim | [E] = 100%*[A]+50%*[B]+10%*[C]+10%*[D] Employee Net Settlement Amount | [F] Employee WARN Act Legal Fees | [G] = [E] + [F] Employee Total Settlement Amount |
|---|---|---|---|---|---|---|---|---|---|
| 751 | 150001 | No | $ - | $ 9,781.51 | $ 958.22 | $ - | $ 4,986.58 | $ 1,953.08 | $ 6,939.66 |
| 752 | 111085 | PDO | $ - | $ 9,928.80 | $ 6,868.12 | $ 4,812.17 | $ 6,132.43 | $ 2,401.87 | $ 8,534.30 |
| 753 | 110633 | No | $ 0.00 | $ 10,000.68 | $ 6,739.04 | $ 10,000.00 | $ 6,674.25 | $ 2,614.09 | $ 9,288.33 |
| 754 | 112204 | No | $ - | $ 10,114.66 | $ 826.71 | $ - | $ 5,140.00 | $ 2,013.17 | $ 7,153.17 |
| 755 | 110256 | No | $ - | $ 10,114.66 | $ 8,690.82 | $ - | $ 5,926.41 | $ 2,321.18 | $ 8,247.60 |
| 756 | 112347 | No | $ - | $ 10,422.84 | $ 4,746.91 | $ - | $ 5,686.11 | $ 2,227.07 | $ 7,913.18 |
| 757 | 112142 | No | $ - | $ 10,450.65 | $ 3,945.46 | $ - | $ 5,619.87 | $ 2,201.12 | $ 7,820.99 |
| 758 | 111742 | No | $ - | $ 10,450.65 | $ 3,945.46 | $ - | $ 5,619.87 | $ 2,201.12 | $ 7,820.99 |
| 759 | 112031 | No | $ - | $ 10,450.65 | $ 3,045.70 | $ - | $ 5,529.89 | $ 2,165.88 | $ 7,695.78 |
| 760 | 111230 | No | $ - | $ 10,463.87 | $ 3,554.65 | $ 5,192.13 | $ 6,106.61 | $ 2,391.76 | $ 8,498.38 |
| 761 | 110463 | PDO | $ - | $ 10,603.37 | $ 2,314.74 | $ 4,054.10 | $ 5,938.57 | $ 2,325.95 | $ 8,264.52 |
| 762 | 110223 | No | $ - | $ 10,608.84 | $ 3,398.39 | $ 6,597.27 | $ 6,303.99 | $ 2,469.07 | $ 8,773.06 |
| 763 | 110177 | No | $ - | $ 10,628.45 | $ 2,700.88 | $ 4,934.72 | $ 6,077.78 | $ 2,380.47 | $ 8,458.26 |
| 764 | 111572 | No | $ - | $ 10,664.46 | $ 1,902.39 | $ 5,728.83 | $ 6,095.35 | $ 2,387.35 | $ 8,482.71 |
| 765 | 112141 | No | $ - | $ 10,664.46 | $ 1,902.39 | $ 2,361.84 | $ 5,758.65 | $ 2,255.48 | $ 8,014.13 |
| 766 | 112322 | No | $ - | $ 10,877.40 | $ 2,437.67 | $ 2,102.16 | $ 5,892.68 | $ 2,307.97 | $ 8,200.66 |
| 767 | 110190 | No | $ - | $ 10,877.82 | $ 1,448.32 | $ 5,658.41 | $ 6,149.58 | $ 2,408.59 | $ 8,558.18 |
| 768 | 112310 | No | $ - | $ 10,934.80 | $ 1,035.17 | $ - | $ 5,570.92 | $ 2,181.95 | $ 7,752.87 |
| 769 | 110984 | No | $ - | $ 11,000.00 | $ 562.52 | $ 5,056.27 | $ 6,061.88 | $ 2,374.24 | $ 8,436.12 |
| 770 | 110890 | PDO | $ - | $ 11,000.45 | $ 328.03 | $ 2,890.61 | $ 5,822.09 | $ 2,280.33 | $ 8,102.42 |
| 771 | 111433 | No | $ - | $ 11,018.23 | $ 430.32 | $ 889.99 | $ 5,641.15 | $ 2,209.46 | $ 7,850.60 |
| 772 | 119309 | No | $ - | $ 11,026.44 | $ 826.71 | $ - | $ 5,595.89 | $ 2,191.73 | $ 7,787.62 |
| 773 | 110346 | No | $ - | $ 6,746.04 | $ - | $ - | $ 3,373.02 | $ 1,321.10 | $ 4,694.12 |
| 774 | 112423 | No | $ - | $ 11,206.06 | $ 96.03 | $ 532.49 | $ 5,665.88 | $ 2,219.14 | $ 7,885.03 |
| **Total** | | | **$ 321,402.63** | **$ 4,204,212.80** | **$ 1,697,184.10** | **$ 1,373,091.36** | **$ 2,730,536.58** | **$ 1,069,463.42** | **$ 3,800,000.00** |

# **EXHIBIT D**

## **LIQUIDATION ANALYSIS**

**LOUISIANA HEART HOSPITAL, LLC ("LHH") & LOUISIANA HEART MEDICAL GROUP ("LHMG")**
**DRAFT - PRELIMINARY LIQUIDATION ANALYSIS**
Date:        8/1/2017

| Chapter 7 Liquidation Analysis | | | | | | |
|---|---|---|---|---|---|---|
| | Low | | High | | Midpoint | |
| | $ Amount | % Recovery | $ Amount | % Recovery | $ Amount | % Recovery |
| **Proceeds from Sale of LHH/LHMG Assets** | | | | | | |
| LHH Hospital/PP&E Sale Proceeds | $ 22,035,000 | 100.0% | $ 22,035,000 | 100.0% | $ 22,035,000 | 100.0% [1] |
| | | | | | | |
| LHMG Asset Sale Proceeds: | | | | | | |
| HCA Clinic Asset Purchase Agreement Proceeds | 821,877 | 100.0% | 821,877 | 100.0% | 821,877 | 100.0% [2] |
| Physician Asset Purchase Agreement Proceeds | 294,296 | 100.0% | 294,296 | 100.0% | 294,296 | 100.0% [2] |
| | | | | | | |
| Preliminary Estimate of Available Cash | 1,000,000 | 100.0% | 1,000,000 | 100.0% | 1,000,000 | 100.0% [3] |
| Subtotal | $ 24,151,173 | | $ 24,151,173 | | $ 24,151,173 | |

| | Estimated 7/30/2017 | | | | | | |
|---|---|---|---|---|---|---|---|
| Accounts Receivable Balances: | | | | | | | |
| LHH | $ 469,249 | $ 117,312 | 25.0% | $ 234,624 | 50.0% | $ 175,968 | 37.5% [4] |
| LHMG (Pre-2/28/17) | 148,083 | 37,021 | 25.0% | 74,041 | 50.0% | 55,531 | 37.5% [5] |
| LHMG (Post 2/28/17) | 100,046 | 10,005 | 10.0% | 25,012 | 25.0% | 17,508 | 17.5% [5] |
| Subtotal | $ 717,378 | $ 164,338 | | $ 333,677 | | $ 249,007 | 34.7% |
| CMS Meaningful Use Payments | $ 396,902 | $ 396,902 | 100.0% | $ 396,902 | 100.0% | $ 396,902 | 100.0% [6] |

| **Litigation and Other** | | | | | | |
|---|---|---|---|---|---|---|
| Weems Litigation | $ 350,000 | | $ 550,000 | | $ 450,000 | [7] |
| 2017 R.E./Property Taxes Escrow | TBD | | TBD | | - | [8] |
| Potential Causes of Action Recoveries | - | | TBD | | - | |
| Potential Avoidance Action Recoveries | - | | TBD | | - | |
| Subtotal | $ 350,000 | | $ 550,000 | | $ 450,000 | |
| **Total** | $ 25,062,413 | | $ 25,431,753 | | $ 25,247,083 | |

| **Adjustments to Proceeds from** | | | | | | |
|---|---|---|---|---|---|---|
| **LHH/LHMG Asset Sales and Liquidation of Other Assets** | | | | | | |
| MedCare - DIP Loan | $ (3,904,924) | | $ (3,904,924) | | $ (3,904,924) | [9] |
| MidCap - Revolving Line of Credit | (3,938,375) | | (3,938,375) | | (3,938,375) | [10] |
| St. Tammany Parish 2016 Tax Statement (Incl. Accr. Interest) | (801,966) | | (801,966) | | (801,966) | |
| Estimate - Wind Down/Doc. Retention/Malpractice Tail Insurance | (3,046,348) | | (2,246,348) | | (2,646,348) | [11] |
| Chapter 7 Trustee - Professional Fees | (300,000) | | (300,000) | | (300,000) | |
| Chapter 7 Trustee Fee | (775,122) | | (786,203) | | (780,662) | [12] |
| **Net Available for Distribution to Claims Holders** | $ 12,295,678 | | $ 13,453,938 | | $ 12,874,808 | |

**Notes:**

1.  Reflects proceeds from the sale of the hospital and PP&E to Stirling Properties; the sale was closed on May 26, 2017
2.  Reflects proceeds from the sale of LHMG clinics to Lakeview Cardiology Specialists LLC (:LCS" and affiliate of HCA) on May 12, 2017 and select clinic assets to various physician groups
3.  Preliminary estimate of available cash at 7/30/2017
4.  Estimated Net Patient A/R projected per Final DIP Budget as of 7/30/2017
5.  LHMG Post 2/28/17 - net estimated A/R balance resulting services provided by Physicians under ICA
    Per ICA as of 6/30/17 remaining A/R balances will become property of LHMG.  Assumes significant proportion of A/R collected by 7/30/17
6.  CMS Meaningful Use Payments ($397K) for 2016 program year for CMS EHR Incentive Program.
    As of 5/30/2017 (per CMS EHR website) payment has been sent to the payment contractor and is in process
7.  Litigation against Dr. Alan Weems, eClinical Works ("eCW"), Change Healthcare Holdings, Inc., Neurological Surgery of Covington, PLLC
    due to erroneous payments (18,000 payments totaling ~ $1.0MM) due to LHMG which were paid to Dr. Weems instead.
    The low estimate for litigation against Dr. Weems reflects an allocation of $200,000 to CCG for a substantial contribution claim.
8.  Per communications between CCG/CCG Legal Counsel and St. Tammany Parish there will likely be a reduction in 2017 real estate/property taxes
    the actual amount of such reduction in unclear at this time
9.  MedCare Debtor In Possession ("DIP") facility outstanding amounts, accrued interest and accrued expenses; paid at closing of the sale to Stirling on May 26, 2017
10. MidCap asserts a claim in the amount of $3,938,375, which includes amounts outstanding under
    the MidCap revolving credit facility plus accrued and unpaid per diem fees and expenses; paid by debtor on July 11, 2017
11. Estimate of wind down and document retention fees and expenses and malpractice tail insurance costs, subject to change based on continued review
    High scenario assumes no purchase of Malpractice Tail Insurance ($800K)
12. Chapter 7 Trustee Fee of up to 3% on actual cash disbursements per Section 326(a) of the United States Bankruptcy Code