## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| LMCHH PCP LLC, *et al.*,[1] | ) | Case No. 17-10353 |
| | ) | |
| | ) | Section "B" |
| Debtors. | ) | |
| | ) | Jointly Administered with |
| | ) | Case No. 17-10354 |
| | ) | |
| | ) | |

## FINDINGS OF FACT AND CONCLUSIONS
## OF LAW REGARDING THE CONFIRMATION OF THE
## PLAN PROPONENTS' AMENDED JOINT PLAN OF LIQUIDATION

This matter came before the Court on the confirmation of the Amended Joint Plan of

Liquidation, dated August 1, 2017 [P-470][2] (the "**Amended Joint Plan**"),[3] proposed by LMCHH

PCP LLC, a Delaware limited liability company, and Louisiana Medical Center and Heart

Hospital, LLC, a North Carolina limited liability company (together, the "**Debtors**") and the

Official Committee of Unsecured Creditors (the "**Creditors Committee**" and with the Debtors,

the "**Plan Proponents**"), a copy of which is attached as Exhibit A to the Confirmation Order (the

"**Confirmation Order**") that is separately filed and incorporates these *Findings of Fact and*

*Conclusions of Law Regarding the Confirmation of the Joint Plan Proponents' Amended Joint*

*Plan of Liquidation.*  The Court has considered the evidence presented and arguments made at

the confirmation hearing (the "**Confirmation Hearing**") held on September 25, 2017.  As set

---

[1]      The last four digits of the taxpayer identification numbers for each of the Debtors follow
in parenthesis: (i) LMCHH PCP LLC (8569); and (ii) Louisiana Medical Center and Heart
Hospital, LLC (7298).  The mailing address for both of the Debtors is 64030 Highway 434,
Lacombe, LA  70445.

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings given to
them in the Amended Joint Plan.

forth in the Memo to Record [P-557] on September 26, 2017, after considering the arguments of

counsel, the testimony of the witnesses and the tabulation of Ballots filed herein, the Court finds

that the Amended Joint Plan of Liquidation as of August 1, 2017, as immaterially modified per

P-527, complies with Section 1129 of the Bankruptcy Code and will confirm same as set forth in

the Confirmation Order.  In addition to the oral findings and reasons for this Court's ruling as

stated in open court at the conclusion of the Confirmation Hearing, the Court hereby makes the

following additional and supplemental findings of fact and conclusions of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and</u>

<u>1334(a))</u>.    On the Petition Date, the Debtors commenced the above captioned cases (the

"Bankruptcy Cases") by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy

Code.  The Debtors are qualified and were qualified to be debtors under Section 109 of the

Bankruptcy Code.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409,

and this Court has jurisdiction over these Bankruptcy Cases pursuant to 28 U.S.C. §§ 157 and

1334.  Confirmation of the Amended Joint Plan is a core proceeding pursuant to 28 U.S.C. §

157(b)(2)(L), and this Court has exclusive jurisdiction to determine whether the Amended Joint

Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

The Court has the power to authorize and direct each of the actions contemplated by the

Amended Joint Plan.

B.    On June 29, 2017, the Plan Proponents filed their Joint Plan of Liquidation [P-

416] and accompanying Disclosure Statement [P-417].

---

[3]    A Non-Material Modification to Amended Joint Plain was filed on September 15, 2017
[P-527].

C.       On August 1, 2017, the Plan Proponents filed an Amended Joint Plan of Liquidation [P-470] (as may be modified, amended or supplemented, the "**Amended Joint Plan**") and accompanying Disclosure Statement Describing Amended Joint Plan of Liquidation by LMCHH PCP LLC, Louisiana Medical Center and Heart Hospital, LLC, and the Official Committee of Unsecured Creditors, as of August 1, 2017 [P-468] (as may be modified, amended or supplemented, the "**Disclosure Statement**"). Capitalized terms which are not identified herein have the meanings used in the Amended Joint Plan or the Disclosure Statement.

D.       Two objections were filed to the Disclosure Statement, by the Kusnick/Delaney Plaintiffs [P-461] and Gifted Nurses [P-460].

E.       At the Hearing on the Disclosure Statement, the Kusnick/Delaney Plaintiffs stated on the record that, based on the Plan Proponents' agreement to include a letter from counsel to the Kusnick/Delaney Plaintiffs in the Disclosure Statement, they withdrew their Objection to the Disclosure Statement.  (Confirmation Hearing Exhibit 17, p. 7.)

F.       After hearing the argument of counsel, the Bankruptcy Court overruled the objection to the Disclosure Statement filed by Gifted Nurses and approved the Disclosure Statement.  (Confirmation Hearing Exhibit 17, p. 16.)

G.       On August 4, 2017, the Court issued an Order Approving the Disclosure Statement [P-485] (the "**Solicitation Procedures Order**"), holding, among other things, that "The Disclosure Statement is approved as containing adequate information within the meaning of Section 1125 of the Bankruptcy Code."  No party in interest appealed or otherwise sought reconsideration of the Solicitation Procedures Order.

H.       <u>Appropriateness of the Solicitation Procedures</u>.  The procedures set forth in the Solicitation Procedures Order were fair and appropriate under the circumstances, provided

adequate notice to all parties in interest and otherwise complied with Section 1125 and 1126 of the Bankruptcy Code.  The procedures set forth in the Solicitation Procedures Order fairly presented the Employee Settlement to Employees and conspicuously provided sufficient notice and disclosures with respect to the Employee Settlement, the releases provided for therein, and the requirements and procedures for Employees to opt out of the Employee Settlement.  The procedures set forth in the Solicitation Procedures Order comply with the requirements of the Bankruptcy Code and otherwise applicable law.  The procedures set forth in the Solicitation Procedures Order (and implemented by the Plan Proponents) do not differ, in any material respects, from the procedures that the Court would have implemented in the context of a Rule 23 of the Federal Rules of Civil Procedure (the "**Civil Rules**") class action settlement.

I.    The evidence presented at the Confirmation Hearing, including the Kusnick/Delaney Plaintiffs' cross-examination of Craig E. Johnson of the Garden City Group Garden City Group LLC ("**GCG**"),[4] , showed that the Ballots sent were clear on their face that the Ballots (a) needed to be signed to be valid, and (b) that both items 1 and 3 on the Ballot were to be completed.  The Ballots submitted in evidence by the Kusnick/Delaney Plaintiffs (Confirmation Hearing Exhibits 33, 38, 39, 40, and 41) were questioned either because they were unsigned, or because they rejected the Amended Joint Plan but did not opt out of the Employee Settlement.  Each of those Ballots were from clients of the Outten & Golden firm that also represented the Kusnick/Delaney Plaintiffs.  *See* the Bankruptcy Rule 2019 Statement filed by Outten & Golden, Confirmation Hearing Exhibit 2.  It is also reasonable that a person would, as

---

[4]    GCG is the court approved claims and voting agent in these Bankruptcy Cases.  *See* Order Authorizing Retention and Appointment of Garden City Group, LLC as Claims and Noticing Agent under 28 U.S.C. § 105(a) and [Delaware] Local Rule 202-1(f) [P-39]; Order Authorizing the Retention and Employment of Garden City Group, LLC as Administrative

did Misty Morley (Confirmation Hearing Exhibit 38) and Dr. Breaux (Confirmation Hearing

Exhibit 39), vote to reject the Amended Joint Plan but still want to receive the amounts set forth

on their Ballots, as part of the Employee Settlement, should the plan be confirmed.  Further, as

persons claimed to be clients of Outten & Golden, these persons purportedly had access to

counsel to assist them in filling out the Ballots, and could readily have been brought to the

Confirmation Hearing to testify.  There was no evidence presented that the clear, plain, and

conspicuous language in the Ballots, which the Court approved in the Solicitations Procedures

Order, was deficient in any way.  The almost 400 valid Ballots demonstrate that the Solicitation

Procedures were not difficult to follow.

J.      As evidenced by the Affidavit of Service of Emily Young (the "**Mailing

Affidavit**") [P-499], on August 11, 2017, GCG served the Solicitation Packages (as defined in

the Solicitations Procedures Order), the Non-Voting Parties Notices (as defined in the

Solicitations Procedures Order), and other materials in accordance with the requirements of the

Solicitations Procedures Order, including, but not limited to, the separate letters from Fishman

Haygood LLP and Bruno & Bruno, LLP and Outten & Golden LLP [P-499, at page 2; and P-

507].  The Court finds that the foregoing notice is sufficient and satisfies the requirements of the

Bankruptcy Code, the Bankruptcy Rules, and principles of due process.

K.      <u>Findings Regarding the Debtors</u>.  Each action, agreement and transaction

contemplated by the Amended Joint Plan and the Confirmation Order, and all related actions,

agreements and transactions necessary to implement, effectuate and confirm the Amended Joint

Plan are authorized and lawful.

---

Advisor for the Debtors and Debtors in Possession Pursuant to 11 U.S.C. §§ 327(a) and 330,
Nunc Pro Tunc to the Petition Date entered on March 6, 2017 [P-230],

{N3485945.1}

The Debtors, acting by and through their officers or managers, are duly authorized and empowered to take any and all such actions as any of these may determine are necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Amended Joint Plan or the Confirmation Order.  The Debtors have duly authorized, or are empowered to duly authorize, each of the acts, documents, agreements and transactions contemplated in the Amended Joint Plan and Confirmation Order (the "**Plan Documents**") to implement, effect and consummate the Amended Joint Plan.

L.    Burden of Proof.  The Plan Proponents have met the burden of satisfying and proving the elements of Sections 1125 and 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, as further found and determined herein.

M.    Bar Dates.  On May 17, 2017, the Court entered an order (the "**Bar Date Order**") [P-368] establishing July 10, 2017, as the general deadline to file proofs of claim for prepetition claims against the Debtors (the "**General Bar Date**") and August 10, 2017, as the bar date for governmental units (the "**Governmental Unit Bar Date**").  On June 23, 2017, the Court entered an order (the "**Administrative Bar Date Order**") [P-415] establishing July 28, 2017 as the deadline to file administrative claims arising from January 30, 2017 to and including June 30, 2017 (the "**Administrative Claim Bar Date**") and also establishing July 28, 2017 as the deadline to file any Postpetition Medical Malpractice Claims that arises from incidents that occurred on or after January 30, 2017 (the "**Medical Malpractice Claim Bar Date**").

N.    Impaired Classes Entitled to Vote to Accept or Reject the Amended Joint Plan. Class 5—The CCG Unsecured Claim, Class 6—Employee Unsecured Claims,  and Class 7— General Unsecured Claims, are impaired under the Amended Joint Plan and are entitled to accept or reject the Amended Joint Plan.  Each of these classes accepted the Amended Joint Plan as set

forth in Confirmation Hearing Exhibit 1, the Ballot Certification by Craig Johnson of GCG (the "**GCG Certification**"), Mr. Johnson's testimony, and Mr. Luria's testimony.[5]   The GCG Certification, at pages 12 and 13, established that 100% of the votes (there was only one vote) in Class 5 voted favorably on the Amended Joint Plan, that for Class 6, the Employees, 299 (74.56%) voted in favor of the Amended Joint Plan, and 102 (25.44%) voted to reject it, and for Class 7, the General Unsecured Creditors, 90 (95.74%) voted in favor of the Amended Joint Plan, and 4 (4.26%) voted against it.   The GCG Certification, Mr. Johnson's testimony, and Mr. Luria's testimony further established that the dollar percentages of votes in each class in favor of the Amended Plan were more than the legally required two-thirds (2/3) for acceptance.

O.   <u>Classes Deemed To Accept the Amended Joint Plan</u>.   Class 1—Priority Non-Tax Claims, Class 2—Priority Employee Claims who opt out of the Employee Settlement (sub-class), Class 3—Secured Claims, and Class 4—the Secured Claim of CMS, are not impaired under the Amended Joint Plan and are deemed to have accepted the Amended Joint Plan pursuant to Section 1126(f) of the Bankruptcy Code.

P.   <u>Classes Deemed to Reject the Amended Joint Plan</u>.   Class 8 consists of all Interests in the Debtors and all Claims arising out of or relating thereto.   Interests in Class 8 are impaired and are deemed to reject the Amended Joint Plan.

Q.   <u>Preservation of Causes of Action</u>.   Pursuant to the Amended Joint Plan and Disclosure Statement, the Debtors have provided due and sufficient notice that the Amended Joint Plan preserves all Causes of Action, including actions under Chapter 5 of the Bankruptcy Code, except as otherwise set forth in the Amended Joint Plan and any settlement agreements approved by this Court or the Confirmation Order.

---

[5]   Mr. Luria was hired immediately prior to the Petition Date to serve as the Debtors'

{N3485945.1}

R.    The Employee Settlement.    There are currently two adversary proceedings pending before the Court and styled *Barbara Kusnick, et al v. LMCHH, PCP, LLC, et al*, Case No. 2017-2021 and *Terry King, et al v. LMCHH, PCP, LLC, et al*, Case No. 2017-2014, United States Bankruptcy Court for the Eastern District of Louisiana (the "**Warn Act Cases**").  Both actions seek the certification of a class of former Employees of the Debtors and assert claims on behalf of the class under the Workers Adjustment and Notification Act, 29 U.S.C. § 2101 *et seq.,* (the "WARN Act") and Louisiana law.  The Employee Settlement was originally presented by the Plan Proponents without input from either set of counsel in the WARN Act Case.  Thereafter, the Plan Proponents agreed to improve the Employee Settlement in the Amended Joint Plan after receiving input from and negotiating with counsel for the so-called King Plaintiffs.  The settlement is opposed by the Kusnick/Delaney Plaintiffs who object to confirmation of the Amended Joint Plan.  The Kusnick/Delaney Plaintiffs asserted the only objection to plan confirmation and that objection focuses on claimed flaws in the Employee Settlement.

S.    Proposed compromises and settlements may be approved pursuant to Bankruptcy Rule 9019 if they are (1) "fair and equitable," and (2) "in the best interests of the estate." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *see also Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 355-56 (5th Cir. 1997); *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

T.    In determining whether a settlement is "fair and equitable," courts in the Fifth Circuit evaluate the following factors:

Chief Restructuring Officer.

(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law;

(2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay;

(3) the best interests of the creditors, with proper deference to their reasonable views; and

(4) the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.

*In re Age Ref., Inc.*, 801 F.3d 530, 540 (5th Cir. 2015).

U.      "[I]n exercising its discretion, [a] Court can give more weight to one or more of the above-referenced factors than to the other factors." *In re Derosa-Grund*, 567 B.R. 773, 785 (Bankr. S.D. Tex. 2017) (citing *In re Bard*, 49 Fed. Appx. 528, 532–33 (6th Cir. 2002) (affirming bankruptcy court's ruling even though the bankruptcy court stated that: "While the Court does consider the Debtors' interest as a legitimate factor, the Court gives it less weight than the other factors.")); *see also In re Adelphia Commc'ns. Corp.*, 327 B.R. 143, 160-65 (Bankr. S.D.N.Y. 2005) (giving certain factors "some weight," "no weight," or "moderate weight").

V.      Moreover, in determining the reasonableness of a proposed settlement, a "court may give weight to the 'informed judgments of the . . . debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise.'" *In re Idearc Inc.*, 423 B.R. 138, 183 (Bankr. N.D. Tex. 2009), *subsequently aff'd sub nom. In re Idearc, Inc.*, 662 F.3d 315 (5th Cir. 2011) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991)); *see also In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness . . . .").

{N3485945.1}

W.      "[C]ompromises are a normal part of the process of reorganization, oftentimes desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly." *Cajun Elec.*, 119 F.3d at 354 (quoting *Jackson Brewing*, 624 F.2d at 602). Thus, a debtor need only show that its decision falls within the "range of reasonable litigation alternatives." *In re Roqumore*, 393 B.R. 474, 480 (Bankr. S.D. Tex. 2008) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2nd Cir. 1983))(citing *Cook v. Waldron*, No. CV-05-3438, 2006 WL 1007489, at \*4 (S.D.Tex. Apr. 18, 2006); *Nellis v. Shugrue,* 165 B.R. 115 (S.D.N.Y. 1994)).

X.      Whether to approve a proposed compromise and settlement is fully within the bankruptcy court's discretion. *Jackson Brewing*, 624 F.2d at 602-03. "In evaluating a Rule 9019 settlement, a bankruptcy court need not conduct a mini-trial to determine the probable outcome of any claims waived in the settlement. Rather, the bankruptcy court must apprise [itself] of the relevant facts and law so that [it] can make an informed and intelligent decision. *In re Age Ref.*, 801 F.3d at 541 (citing *Cajun Elec.*, 119 F.3d at 356).

Y.      In *In re Texas Extrusion Corp.*, 844 F.2d 1142 (5th Cir. 1988), the Fifth Circuit explained the strong policy favoring compromise and settlement of litigation in bankruptcy and doing so in the context of a plan:

> We will not disturb the bankruptcy court's approval of the settlement of this lawsuit contained in the plan of reorganization absent an abuse of discretion by the court. *Matter of Aweco, Inc., 725 F.2d 293* (5th Cir.), *cert. denied*, 469 U.S. 880, 105 S. Ct. 244, 83 L. Ed. 2d 182 (1984); *Matter of Jackson Brewing Co.*, 624 F.2d 599 (5th Cir.1980). We find no such abuse of discretion in this case. The bankruptcy court appears to have reached an "intelligent, objective and educated evaluation" of the settlement value of the corporate lawsuit against a "sufficient factual background." *Matter of Aweco*, 725 F.2d at 299; *Matter of Jackson Brewing*, 624 F.2d at 602. *See also Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968). It must be remembered that the evaluation of any lawsuit is quite problematic and calls for a significant degree of speculation.

844 F.2d at 1158-59.

Z.      Evidence presented at the Confirmation Hearing from the testimony of Neil Luria and Brent Barriere, Esq.,[6] established that the Employee Settlement was arrived at after several months of arm's-length negotiations with the assistance of The Hon. Robert Summerhays, U.S. Bankruptcy Judge for the Western District of Louisiana, acting as mediator.   The evidence showed that there were material risks to both the Debtors and the former Employees with respect to the likelihood of success for either on the claims being settled by the Employee Settlement, and that the underlying litigation would be complex and lengthy.   There was no evidence at the hearing to the contrary.  Evidence indicated that the Debtors and the Committee had articulated several possible defenses to the former Employees' claims, including the judicially-created liquidating fiduciary exception[7] and the statutory unforeseen business circumstances exception,[8] and that these defenses were not frivolous based on facts developed through discovery by counsel.  Evidence additionally highlighted that previous WARN Act cases had taken anywhere from two to nine years to resolve, and that former Employees had expressed their desire to receive compensation sooner rather than later.  Evidence illustrated that there was a vigorous and serious dispute about whether the former Employees' WARN Act claims, if successful, were entitled to administrative priority; if the former Employees' WARN Act claims were not entitled to administrative priority, the amount of any recovery would be greatly reduced.

AA.      Based on the testimony of Mr. Luria and Mr. Barriere, the Employee Settlement was the product of arms-length negotiations.   The testimony of Mr. Luria and Mr. Barriere further established that the improved Employee Settlement contained in the Amended Joint Plan

---

[6]      Mr. Luria is the Chief Restructuring Officer for the Debtor.  Mr. Barriere is co-counsel for approximately 130 individual former Employees which includes the King Plaintiffs.

[7]      *In re United Healthcare System, Inc.*, 200 F.3d 170, 177 (3rd Cir. 1999).

[8]      *See* 29 U.S.C. § 2102(b)(2)(A); *In re Flexible Flyer Liquidating Tr.*, 511 F. App'x 369, 372 (5th Cir. 2013).

was not a binding contract agreed to by any counsel. Instead, the evidence established that the improved Employee Settlement contained in the Amended Joint Plan was an offer of compromise and settlement from the Debtors and the Committee to each of the individual Employees that the individual Employees could accept or decline by opting out.

BB.    The acceptance by 86.7% of all of the Debtors' former Employees (671 of the Debtors' 774 Employees did not opt out of the Employee Settlement), and the acceptance by 74.3% of the Debtors' former Employees who returned timely and valid Ballots (298 out of the 401 former Employees who submitted Ballots did not opt out of the Employee Settlement), establishes the Employees' overwhelming support of the Employee Settlement.[9]    The overwhelming acceptance by Employees is a clear endorsement of the reasonableness and fairness of the settlement. Further, although 103 Employees chose not to accept the Employee Settlement, 87 of those Employees are listed as clients of the law firm representing the Kusnick/Delaney Objectors, Outten & Golden. (Confirmation Hearing Exhibit 2.) Nonetheless, 76 of the Employees listed as clients by the counsel for the Kusnick/Delaney Objectors voted to accept the Employee Settlement. This information was testified to by Mr. Luria, and was set forth in Confirmation Hearing Exhibits 3 and 8. Approximately 94% of all Employees who were not claimed to be clients of the counsel for the Kusnick/Delaney Plaintiffs agreed to the Employee Settlement. The Employees overwhelmingly voted for the Employee Settlement despite receiving a letter as part of the Solicitation Package (Confirmation Hearing Exhibit 6, pp. 164-168) from the law firm representing the Kusnick/Delaney Objectors recommending that Employees opt-out of the settlement and expressing their reasoning for rejecting the Employee Settlement.

---

[9]    *See* GCG Certification (Confirmation Hearing Exhibit 1 and P-535).

CC.     The Kusnick/Delaney Plaintiffs filed the only objection to the Employee Settlement and to confirmation of the Amended Joint Plan.  They objected on multiple grounds including, in particular, the following:

a.  Employees were supposedly not provided adequate information to permit an informed judgment on whether to accept or reject the settlement.  Employees should have been informed of the option to continue to pursue their claims which could generate larger recoveries than those provided under the Employee Settlement.

b.  The Debtor substantially underestimated the dollar amount of the claims of former Employees.   It is probable that former Employees would be the beneficiaries of a more lucrative settlement if litigation were pursued and it is probable this more lucrative settlement would be reached in the near future.

c.  There were no serious defenses to the former Employees' claims under the WARN Act.  Likewise, it cannot be seriously contested that the WARN Act claims are entitled to treatment as priority administrative expenses.

d.  An order of this Court (now subject to a motion to vacate) appointed Outten & Golden as interim lead class counsel.  As such, that firm alone could negotiate settlement.  In fact, Outten & Golden was "frozen out" on settlement negotiations.

e.  As both of the pending adversary proceedings assert that the Court should certify a class of former Employees, the Court must follow protocols for approval of settlement required by Civil Rule 23 as incorporated through Bankruptcy Rule 7023.

f.  The Employee Settlement was the product of collusion between counsel for the King Plaintiffs who support the settlement, and counsel for the Committee, the Debtor and other creditors.

DD.    The Court concludes that there is no evidence supporting the objection and rejects the Kusnick/Delaney's interpretation of the relevant law.  With respect to the specific objections of Kusnick/Delaney Plaintiffs, the Court finds the following:

a.    The Disclosure Statement, together with the accompanying correspondence of Outten & Golden and counsel for the King Plaintiffs, the firms of Fishman Haygood and Bruno & Bruno (Confirmation Hearing Exhibits 6, pp. 160-168), provided detailed information as to both the benefits of and alternatives to the Employee Settlement.  Employees were specifically and unambiguously informed that each could either accept his share of the total Employee Settlement or opt out and pursue all potential claims.  Employees were also specifically informed of what they would receive if the settlement were accepted.  Indeed, in most, if not all cases before the Court, a creditor is not informed of the specific distribution he will receive under a proposed plan.  Here, in contrast, the Ballot provided to each Employee specified the amount of his or her proposed settlement payment. Further, the Disclosure Statement and correspondence from Outten & Golden specified that Employees had the option to opt out and pursue litigation of their respective claims.  The Outten & Golden letter encouraged Employees to do so, and detailed the very information the Kusnick/Delaney Plaintiffs now assert was not provided to Employees.  The Court concludes that Employees had more than adequate information to make an informed decision on whether to accept the Employee Settlement or pursue litigation.  Of the total of 774 Employees; 103 opted out, the balance chose to accept, demonstrating substantial support for the Employee Settlement.

b.    The Kusnick/Delaney Plaintiffs submitted no evidence in support of their claim that a more lucrative settlement could be obtained in the near term.  In contrast to their unsubstantiated speculation, Mr. Barriere testified that the Employee Settlement Amount was the subject of lengthy, arms-length negotiation with

counsel for the Committee, the Debtor and other constituencies. The negotiations included two mediation sessions, face-to-face meetings, and multiple conference calls.   Mr. Barriere testified that he believed that the Employee Settlement Amount represented the maximum amount that could be obtained in the foreseeable future and without undertaking the uncertainty of extensive litigation which could result in a lesser recovery.   Mr. Barriere is an experienced trial attorney with substantial experience in complex commercial litigation.   In the absence of any conflicting evidence, the Court concludes that his evaluation of the benefit of settlement and the risk of pursuing litigation is sound and reasonable.

c.   The WARN Act and cases interpreting the WARN Act provide various affirmative defenses to employers who fail to provide the notice of employee termination contemplated by the Act.   Of particular relevance to this case are the so-called unforeseen business condition defense and the liquidating fiduciary defenses that were the subject of Mr. Barriere' testimony.   *See, e.g., In re Flexible Flyer*, 511 F. App'x 369 (5th Cir. 2013) and *In re United Healthcare Systems, Inc.*, 201 F.3d 170 (3rd Cir. 1999).   Either of these defenses, if proven, would be fatal to the Employees' WARN Act claim.   Mr. Barriere testified without contradiction that while he believed the Employees would ultimately prevail as to both defenses, each posed a serious risk.   The Committee and other creditors were particularly confident that they would prevail on the liquidating fiduciary defense based on the *United Healthcare* decision, a Chapter 11 case involving a failed hospital.   The Committee and other defense counsel insisted that *United Healthcare* is factually indistinguishable from the Bankruptcy Cases.   While counsel for the King Plaintiffs believed there was an argument that *United Healthcare* was distinguishable, he acknowledged under oath that it is far from certain how this Court or an appellate court would rule.

d. Mr. Barriere testified, and the Court agrees, that former Employees, many of whom are of modest means, could quite reasonably prefer the certainty of immediate payment to the prospect of an uncertain, if potentially larger payment in the indefinite future.  The assertion of the Kusnick/Delaney Plaintiffs that a more lucrative settlement could be reached in a matter of months appears to be based on nothing more than pure speculation.  There is no evidence that the Committee and other creditors would agree to a more generous settlement in the foreseeable future.  Indeed, the principal authorities cited to the Court involved litigation over WARN claims which extended between two and nine years.  *See, e.g., In re Flexible Flyer, supra* (case filed 2005 and claims definitely rejected in 2013); *In re A&E Liquidation*, 2017 W2 3319963 (3d Cir. 2017) (Chapter 11 case filed in Number, 2008; Third Circuit affirmed rejection of WARM claim in 2017); *Halkies v. General Dynamics*, 137 F.3d 333 (5th Cir. 1998) (Layoff in 1990; WARN claims rejected by Fifth Circuit in 1998); *In re United Healthcare*, 200 F.3d 170 (3rd Cir. 1999) (Bankruptcy filed in February, 1997 WARN claims dismissed December, 1999) and *In re world Marketing*, 564 B.R. 587 (Bankr N.D. Il. 2017) (Adversary proceeding filed by WARN claimants in October 2015; Bankruptcy Court ruled in their favor in February 2017).

e. Given the total amount of unsecured claims in this case and the total funds that are available for distribution to unsecured creditors under the Plan, the WARN Act claims have value whether classified as administrative expense claims or as an unsecured priority claim, but the statutory limitation for being an unsecured priority claim does not apply to an administrative expense claim.  The Court has not decided the issue of whether there is a claim, or whether it would be an administrative priority claim that is paid 100% of the allowed amount, but does note that at least one court has denied administrative priority when the sixty days of required notice mostly occurred pre-petition.  *See, In re Circuit City Stores,*

*Inc.*, 2010 WL 120014 (Bankr. E.D. Va. 2010) and Confirmation Hearing Exhibits 4 and 5.

f. There is no evidence of collusion between counsel for the King Plaintiffs and counsel for the Committee, the Debtor and the other creditor constituencies involved in the negotiations. On the contrary, the undisputed evidence establishes that the proposal contained in the Employee Settlement was the product of vigorous arms-length negotiations over a period of several weeks including two mediations. The Employee Settlement is of an amount less than sought by the King Plaintiffs or the Kusnick/Delaney Plaintiffs. Conversely, the payment exceeds what the Committee and other creditors wanted to pay. That is not evidence of collusion but rather the give and take of settlement negotiations. All parties were represented by experienced and highly competent counsel. That they reached a reasonable settlement which is agreeable to everyone but Outten & Golden is to be applauded in a bankruptcy case, not condemned.

g. The Court did not intend that the designation of Outten & Golden as interim lead class counsel would mean that firm alone could negotiate settlement, and the Court has not been provided any authority suggesting that role is required nor even appropriate. The evidence established that counsel for the King Plaintiffs represent approximately 130 former Employees. Counsel for the King Plaintiffs had the right to participate and negotiate. *See generally* 11 U.S.C. §1109.

h. Nor is there any evidence that Outten & Golden were excluded or as counsel asserts "frozen" out of settlement negotiations. Outten & Golden attorneys participated in both mediation sessions. Counsel for the Debtor travelled to Outten & Golden offices in New York to discuss settlement. That Outten & Golden did not reach a settlement does not suggest exclusion, but simply that the attorneys insisted on more money than the Committee and other creditors were willing to pay.

{N3485945.1}

i. The Court rejects the proposition that Civil Rule 23 dictates the procedures that must be followed to approve the Employee Settlement in the context of consideration of confirmation of plan containing individual settlements in a bankruptcy case, nor has it been cited to any authority that would lead to a different conclusion. Importantly, other than often repeating that assertion, the King/Delaney Plaintiffs have failed to identify any specific procedures that should have been implemented and were not. The Disclosure Statement and accompanying correspondence provided extensive information on the proposed settlement, Employees were provided the choice to opt out (103 did so), any Employee could file an objection and the hearing on the settlement was the subject of extensive notice. Any Employee who chose to do so had the opportunity to be heard at the confirmation hearing. Neither due process nor Civil Rule 23 requires more.

EE. The Court thus concludes and holds that the Employee Settlement set forth in the Amended Joint Plan, with respect to each Settling Employee, is fair and equitable, reasonable, and is in the best interests of the Debtors, the Estates, Employees and creditors. The Court has jurisdiction under Sections 1334(a) and (b) of title 28 of the United States Code and Section 105 of the Bankruptcy Code to approve the releases set forth in Section 6.1 of the Amended Joint Plan by each Settling Employee in connection with the Employee Settlement. Such releases are appropriate and reasonable in the context of the compromises and settlement in this case, and are voluntary releases of third parties and any former Employee could decline to give the release, and 103 did by opting out of the Employee Settlement. The procedures implemented pursuant to the Solicitation Procedures Order to determine those Employees who accepted the Employee Settlement were appropriate and

complied with the Bankruptcy code and applicable law.  Specifically, an opt out structure for persons to reject the Employee Settlement is appropriate.  *In re Erickson Inc.*, No. 16-34393-HDH, 2017 WL 1091877, at *7 (Bankr. N.D. Tex. Mar. 22, 2017) ("*The releases are consensual because they were conspicuously disclosed in boldface type in the Plan, the Disclosure Statement, and on the Ballots,* which provided parties in interest with sufficient notice of the releases, and holders of Claims or Interests entitled to vote on the Plan were given the option to opt-out of the Releases.") (emphasis added); *In re Colorado 2002B Ltd. P'ship*, No. 16-33743-BJH-11, 2017 WL 2270012, at *8 (Bankr. N.D. Tex. May 23, 2017) (ballots providing for opportunity to opt-out of releases sufficient to bind claimants who did not opt-out).

FF.    The fact that the Creditors' Committee representing all unsecured creditors supported the Amended Joint Plan as a co-proponent is also persuasive to the Court.

GG.    The Court rejects the Kusnick/Delaney Plaintiffs' argument that, as an unalterable principle of law, a compromise and settlement of the claims in a bankruptcy case of individual employees cannot be approved *as to accepting employees* under a plan of reorganization because a motion for certification of a class of employees has been filed (after the bankruptcy case and proposed plan were filed) because such employee claims can only be settled pursuant to a class action settlement.

HH.    This Court also rejects the Kusnick/Delaney Plaintiffs' arguments that a compromise and settlement with individual employees under bankruptcy procedures of individual court approved notice under Section 1125 of the Bankruptcy Code must be suspended until a class action is certified and that the provisions of the Bankruptcy Code are superseded by Civil Rule 23.  The legal standards for approval of a settlement under Civil Rule 23 are similar to

a compromise and settlement under Rule 9019 of the Federal Rules of Bankruptcy Procedure as recognized by *U.S. v. City of Miami, Fla.*, 614 F.2d 1322, 1330 (5th Cir. 1980) ("We have been unable to discern any difference in meaning between [the standards for approval of settlements in bankruptcies, class actions, and shareholder derivative suits] on what we perceive to be essentially one standard; nor does the standard vary in application between the three different types of cases.").  In both class actions and in bankruptcy, "the standard for approval has been stated both positively that the trial court must find that the settlement is fair, adequate, and reasonable." *Id.*  Thus, whether the Employee Settlement is analyzed under Civil Rule 23(e) or Rule 9019, it is fair and equitable, in the best interest of creditors and should be approved.  The Court is not duty bound to second guess the individual decisions of individual former Employees and substitute its judgment, or the judgment of Interim Class Counsel, where there has been overwhelming support and acceptance of the Employee Settlement.  The 103 persons who wanted to opt out were able to do so without penalty of any kind, and the 671 persons who want to receive money now have similarly exercised their economic judgment.

II.    The instant case is a bankruptcy settlement and not a class action, but in a class setting, individual settlements as presented in the Amended Joint Plan are acceptable.  In *In re Shell Oil Refinery*, 152 F.R.D. 526 (E.D. La. 1989), the court specifically acknowledged that "several courts have recognized that individual settlements are permissible in a class action" and that "[c]lass members are free to accept or reject individual settlement offers."  *Id.* at 525 (citing *In re General Motors Corporation Engine Interchange Litigation*, 594 F.2d 1106, 1137-40 (7th Cir. 1979); *Vernon J. Rockler & Co., Inc. v. Minneapolis Shareholders Company*, 425 F.Supp. 145, 149-50 (D. Minn. 1977); *Chrapliwy v. Uniroyal, Inc*., 71 F.R.D. 461, 464 (N.D. Ind. 1976); *Rodgers v. United States Steel Corporation*, 70 F.R.D. 639, 642-43 (W.D. Pa. 1976)).

JJ.    The individual notices and the provision of information to the Employees, together with the high number of actual Ballots received (401 of the 774 entitled to vote in Class 6 submitted timely valid Ballots), and the high number of Employees who assented to the Employee Settlement by not electing to opt out (298 out of 401 of the Class 6 Ballots cast) establishes the efficacy of the Employment Settlement process in the Bankruptcy Cases, and the Court reiterates its determination that it meets the legal standards for the Court to approve a compromise and settlement.

KK.    The Employee Settlement is fair and equitable and is in the best interests of the Debtors, the Estates, Employees, creditors, and parties in interest.  The Court has jurisdiction under Sections 1334(a) and (b) of title 28 of the United States Code and Section 105 of the Bankruptcy Code to approve the release provisions set forth in the Employee Settlement.  The release provisions set forth in the Employee Settlement are appropriate, reasonable, and in the best interests of the Debtors, the Estates, the Parties, and parties-in-interest.  The releases provided in the Employee Settlement were conspicuously disclosed in boldface type in the Amended Joint Plan, the Disclosure Statement, and on the Ballots, and provided parties in interest with sufficient notice of the releases, to holders of Employee Claims and the option to opt-out of the releases.

LL.    The CCG Settlement.    The compromise and settlement encompassed by the treatment of the CCG Unsecured Claim in Class 5 of the Amended Joint Plan (the "**CCG Settlement**") is fair and equitable, reasonable, and in the best interests of the Debtors, the Estates, creditors and parties in interest.  The Court has jurisdiction under Sections 1334(a) and (b) of title 28 of the United States Code and Section 105 of the Bankruptcy Code to approve the releases in connection with the CCG Settlement.  Such releases are appropriate, reasonable, and

in the best interests of the Debtors, the Estates, creditors, and parties-in-interest. In sum, compromising and settling a claim that would have potentially received a 94% distribution down to 50% along with other unsecured claims, and avoiding the delay and costs of litigation, and uncertainty of result, is appropriate and is approved.

MM.   Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Amended Joint Plan complies with the applicable provisions of the Bankruptcy Code, including, without limitation, Sections 1122 and 1123, thereby satisfying Section 1129(a)(1) of the Bankruptcy Code.

(i)      *Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).* In addition to Administrative Claims and Priority Tax Claims, which are not and do not need to be classified, the Amended Joint Plan designates separate Classes of Claims and Interests for and against the Debtors. The Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Amended Joint Plan. The Classes do not unfairly discriminate between holders of Claims and Interests or the holders of such Claims and Interests have consented to such classification. Thus, the Amended Joint Plan satisfies Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)     *Specify Unimpaired Classes (11 U.S.C. § 1123(a)(2)).* Article II of the Amended Joint Plan specifies that Class 1—Priority Non-Tax Claims, Class 2—Priority Employee Claims, Class 3 – Secured Claims and Class 4—The Secured Claim of CMS, are not impaired in that the legal, equitable or contractual rights of Holders of Claims or Interests in these Classes are not altered under the Amended Joint Plan, which satisfies Section 1123(a)(2) of the Bankruptcy Code.

{N3485945.1}

(iii)    *Specify Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).*  Article II of the Amended Joint Plan provides that Class 5—The CCG Unsecured Claim, Class 6—Employee Unsecured Claims,  Class 7—General Unsecured Claims and Class 8—Interests are impaired under the Amended Joint Plan which satisfies Section 1123(a)(3) of the Bankruptcy Code.

(iv)    *No Discrimination (11 U.S.C. § 1123(a)(4)).*  Article III of the Amended Joint Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, which satisfies Section 1123(a)(4) of the Bankruptcy Code.

(v)    *Implementation of the Amended Joint Plan (11 U.S.C. § 1123(a) (5)).*  Article V of the Amended Joint Plan contains numerous provisions to adequately facilitate implementation of the Amended Joint Plan, including, without limitation:  the setting of an Administrative Expense Bar Date, preserving Causes of Action belonging to the Estate, the appointment of a Plan Administrator to liquidate the remaining assets of the Debtors, providing for the dissolution of the Debtors and the means by which objections to and allowance of Claims will occur for purposes of distribution.  *See* Amended Joint Plan, Article V.  The Amended Joint Plan therefore provides adequate and proper means for its implementation and satisfies Section 1123(a)(5) of the Bankruptcy Code.

(vi)    *Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).*  Section 1123(a) (6) of the Bankruptcy Code does not apply to the Amended Joint Plan because the Debtors do not propose to issue any non-voting equity securities under the Amended Joint Plan.

(vii)    *Selection of Officers, Directors and the Trustee (11 U.S.C. § 1123(a)(7)).*
The Amended Joint Plan satisfies Section 1123(a)(7) of the Bankruptcy Code by appointing Clifford A. Zucker of CohnReznick Advisory as the Plan Administrator.

(viii)    *Additional Provisions of the Amended Joint Plan (11 U.S.C. § 1123(b)).*
The Amended Joint Plan contains additional permissive provisions, including, without limitation: (i) Section 5.14 provides for the appointment of the Plan Committee; (ii) Section 9.6 provides that all consideration exchanged under the Amended Joint Plan shall be in exchange for, and in complete satisfaction, settlement and release of, all Claims and Interests of any nature against the Debtors or any of their Estates, assets, properties or interest in property; and (iii) Sections 5.4 and 5.8 of the Amended Joint Plan provide that the Debtors and the Debtors' Estates shall retain the Causes of Action, and the Post-Effective Date Debtors and the Plan Administrator, as successors in interest to the Debtors and their Estates, may enforce, sue, settle or compromise any or all of the Causes of Action.  The injunctions and stays issued pursuant to Article IX of the Amended Joint Plan preserve and enforce the releases granted by the Amended Joint Plan and are narrowly tailored to achieve that purpose.  Such provisions, and all other provisions of the Amended Joint Plan, are consistent with Section 1123(b)(6) of the Bankruptcy Code, and not inconsistent with the applicable provisions of the Bankruptcy Code.

NN.    Plan Proponents' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).
The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Solicitation Order in transmitting the Amended Joint Plan, the Disclosure Statement, and any applicable notice thereof and has otherwise complied with the provisions of Title 11, thereby satisfying Section 1129(a)(2) of the Bankruptcy Code.

{N3485945.1}

OO.   <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Plan Proponents have

proposed the Amended Joint Plan in good faith and not by any means forbidden by law, thereby

satisfying Section 1129(a)(3) of the Bankruptcy Code.  The Amended Joint Plan is designed to

allow the Debtors to liquidate its remaining assets in a manner that will maximize recoveries to

its creditors and interest holders.  Moreover, the Amended Joint Plan itself, the process leading to

its formation, and the overwhelming support for the Amended Joint Plan received from various

parties in interest, provides independent evidence of the Plan Proponents' good faith.  The Plan

Proponents, their respective predecessors, successors and assigns (whether by operation of law or

otherwise), and current and former equity holders, officers, directors, employees, managers,

shareholders, financial advisors, attorneys, accountants, investment bankers, consultants, agents,

and professionals, or other representatives have acted in "good faith" within the meaning of

Section 1125(e) of the Bankruptcy Code, thus satisfying the "good faith" requirement of Section

1129(a)(3).   Further, the Amended Joint Plan is the product of extensive, arm's length

negotiations among the Debtors, the Creditors' Committee, and other parties-in-interest, and

reflects, where applicable, the results of these arm's length negotiations and embodies the best

interests of all of the constituencies of the Debtors' Estates.  This process is explored above and

is presented through the uncontroverted testimony of Neil Luria and Brent Barriere.   In

determining that the Amended Joint Plan has been proposed in good faith, this Court has

examined the totality of the circumstances surrounding the formulation of the Amended Joint

Plan.  The Court finds that the Amended Joint Plan was not the result of collusion.  For the same

reasons, based on evidence, the Court finds: (i) the CCG and Employee Settlements should be

approved; (ii) the Amended Joint Plan was filed in good faith and not by any means forbidden by

law; and (iii) the objection to the Amended Joint Plan filed by the Kusnick/Delaney Plaintiffs should be overruled.

PP.    <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.   Any payment made or to be made by the Debtors or by any person acquiring property under the Amended Joint Plan, for services or for costs and expenses in or in connection with the Bankruptcy Cases, or in connection with the Amended Joint Plan and incident to the Bankruptcy Cases, has been disclosed to this Court.   Any such payment made on a final basis before confirmation of the Amended Joint Plan is reasonable and any such payment to be fixed or approved on a final basis after confirmation of the Amended Joint Plan is subject to Court approval, as reasonable.   The Amended Joint Plan therefore satisfies Section 1129(a)(4) of the Bankruptcy Code.

QQ.    <u>Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5))</u>.   Pursuant to Section 1129(a)(5) of the Bankruptcy Code, the Debtors disclosed the identity of the Plan Administrator in Exhibit 1 to the Plan Supplement (Confirmation Hearing Exhibit 7).   The appointment of the Plan Administrator is consistent with the interests of the Holders of Claims and Interests and with public policy.   The provisions are consistent with the requirements of Section 1129(a)(5) and are in the best interests of creditors and therefore, the Amended Joint Plan satisfies the requirements of Section 1129(a)(5) of the Bankruptcy Code.

RR.    <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.   The Amended Joint Plan does not provide for the change of any rates subject to the oversight of a governmental regulatory commission.   Thus, Section 1129(a)(6) of the Bankruptcy Code is inapplicable.

SS.    <u>Best Interests Test (11 U.S.C. § 1129(a)(7))</u>.   All Impaired Classes of Claims and Interests will receive under the Amended Joint Plan on account of such claim or interest property

of a value, as of the effective date of the Amended Joint Plan, that is not less than the amount

that such holder would so receive or retain if the Debtors were liquidated under Chapter 7 on

such date.  Section 1129(a)(7) of the Bankruptcy Code is therefore inapplicable.

TT.   No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).  Class 5—

The CCG Unsecured Claim, Class 6—Employee Unsecured Claims,  and Class 7—General

Unsecured Claims are each Impaired classes and, as set forth in the Ballot Certification filed by

the Claims and Voting Agent (Confirmation Hearing Exhibit 1), each has voted in favor of the

Amended Joint Plan.  The Amended Joint Plan does not discriminate unfairly, and is fair and

equitable, with respect to Class 8—Interests.  Accordingly, the requirements of Section 1129(b)

are met.

UU.   Treatment of Administrative, Priority and Tax Claims (11 U.S.C. § 1129(a)(9)).

The Amended Joint Plan provides for treatment of Allowed Claims entitled to priority pursuant

to Section 507(a)(2)-(8) of the Bankruptcy Code in the manner required by Section 1129(a)(9) of

the Bankruptcy Code.  The argument by the Kusnick/Delaney Plaintiffs that this is not the case is

rejected.  The Amended Joint Plan is clear that any Employee that may not accept the Employee

Settlement that is determined to have an allowed administrative or priority claim shall be paid in

full in accordance with the provisions of Amended Joint Plan.  Further, at the Confirmation

Hearing, a $3 million reserve was agreed to be established to ensure that the 103 Employees who

opted out of the Employee Settlement could be paid in full if they prevail on their claims.  The

Kusnick/Delaney Plaintiffs agreed at the Confirmation Hearing that this reserve was adequate.

VV.   Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10)).  All Impaired Classes

of Claims, determined without including the acceptance by any insiders holding Claims in each

such Class, have voted in favor of the Amended Joint Plan. Therefore, the requirements of Section 1129(a)(10) of the Bankruptcy Code have been satisfied.

WW.    Feasibility (11 U.S.C. § 1129(a)(11)). The Amended Joint Plan is feasible as the Debtors have demonstrated, through the financial information provided in its monthly operating reports and evidence adduced at the Confirmation Hearing, that there is a high probability the Debtors possess sufficient funds to meet the requirements of the Amended Joint Plan. The Amended Joint Plan therefore complies with Section 1129(a)(11) of the Bankruptcy Code.

XX.    Payment of Fees (11 U.S.C. § 1129(a)(12)). Section 10.9 of the Amended Joint Plan provides that all fees payable pursuant to Section 1930 of Title 28 of the United States Code, shall be paid by the Debtors. Therefore the Amended Joint Plan meets the requirements of Section 1129(a)(12) of the Bankruptcy Code.

YY.    Retiree Benefits (11 U.S.C. § 1129(a)(13)). The Debtors have no obligation to pay for retiree benefits and therefore Section 1129(a)(13) is not applicable to the Amended Joint Plan.

ZZ.    Certain Payments by Individual Debtors (11 U.S.C. § 1129(a)(15)). The Debtors are not an individual and therefore Section 1129(a)(15) is inapplicable to the Amended Joint Plan.

AAA.    Transfers of Property of a Debtor that is not a Moneyed Interest (11 U.S.C. § 1129(a)(16)). The Debtors are for-profit entities and Section 1129(a)(16) by its terms applies only to corporations and trusts that are *not* "moneyed, business, or commercial." Section 1129(a)(16) is therefore inapplicable to the Amended Joint Plan.

BBB.    Principal Purpose (11 U.S.C. § 1129(d)). The avoidance of Section 5 of the Securities Act of 1933 is not the principal purpose of the Amended Joint Plan, nor is the

avoidance of taxes or any provision of applicable tax law a principal purpose of the Amended Joint Plan, and no governmental unit has objected to the confirmation of the Amended Joint Plan asserting such avoidance.  The Amended Joint Plan, therefore, satisfies the requirements of Section 1129(d) of the Bankruptcy Code.

CCC.  Good Faith Solicitation (11 U.S.C. § 1125(e)).  Based on the record in these Bankruptcy Cases, the Plan Proponents' and their respective directors, officers, employees, advisors and attorneys have acted in "good faith" within the meaning of Section 1125(e) of the Bankruptcy Code and Bankruptcy Rules with respect to all of their respective activities related to the Disclosure Statement and the Amended Joint Plan, and their participation in the activities described in Section 1125 of the Bankruptcy Code.  Accordingly, such parties are entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article IX of the Amended Joint Plan.

DDD.  Compliance with Bankruptcy Rule 3016.  The Amended Joint Plan is dated and identifies the entity submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement (Confirmation Hearing Exhibit 6 and P-507) satisfies Bankruptcy Rule 3016(b).  The Amended Joint Plan describes in specific and conspicuous language all acts to be enjoined under the Amended Joint Plan and identifies all entities that are subject to the injunctions set forth in the Amended Joint Plan in accordance with Bankruptcy Rule 3016(c).

EEE.  Compliance with Bankruptcy Rule 3018.  The evidence at the Confirmation Hearing included the Certificates of Service by Garden City Group (Confirmation Hearing Exhibits 1, 22, 23 and 24), and establish that the Disclosure Statement and Solicitation Order were transmitted to all appropriate parties and sufficient time was prescribed for the parties in interest to object to the adequacy of the Disclosure Statement or the confirmation of the

Amended Joint Plan, and the materials related to the Amended Joint Plan Procedures otherwise comply with Section 1126 of the Bankruptcy Code.   The form of acceptance or rejection properly complied with the requirements of Rule 3018(c). The requirements of Bankruptcy Rule 3018 have been satisfied.

FFF.   <u>Modifications to the Amended Joint Plan</u>.   The modifications made to the Amended Joint Plan after solicitation on the Amended Joint Plan had commenced, as reflected in these Findings and Conclusions, (i) satisfy the requirements of Section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, (ii) are not material, and (iii) do not adversely affect the treatment and rights of the Holders of Claims or Interests under the Amended Joint Plan who have not otherwise accepted such modifications.   The modification filed was done to ensure that the exculpation provision complied with *Matter of The Pacific Lumber Co.*, 584 F. 3d 229, 253 (5th Cir. 2009) which held that a plan could not exculpate outside of the Debtors, the Official Unsecured Creditors Committee, and those who act for them, where "the essential function of the exculpation clause . . . is to absolve the released parties from any negligent conduct that occurred during the course of the bankruptcy."   Accordingly, the Plan Proponents have satisfied Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 with respect to the Amended Joint Plan; and the Holders of Claims or Interests that have accepted or rejected the Amended Joint Plan (or are deemed to have accepted or rejected the Amended Joint Plan) are deemed to have accepted or rejected, as the case may be, the Amended Joint Plan, as modified, pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

GGG.   <u>Satisfaction of Confirmation Requirements</u>.   The Amended Joint Plan satisfies the requirements for confirmation set forth in Section 1129 of the Bankruptcy Code.

HHH. <u>Retention of Jurisdiction</u>.   Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, this Court, except as otherwise provided in the Amended Joint Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, these Bankruptcy Cases and the Amended Joint Plan to the fullest extent permitted by law, including, but not limited to, the matters set forth in Article X of the Amended Joint Plan, until the entry of the Final Decree.

New Orleans, Louisiana, October 2, 2017.

J. A. Brown
Jerry A. Brown
U.S. Bankruptcy Judge